23

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
RECEIVED
FILED

JAN 2 3 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| **GUADALUPE GUERRA, et al.** | § | |
| **Plaintiffs** | § | |
| | § | |
| **Vs.** | § | **CIVIL ACTION NO. B-03-142** |
| | § | |
| **ALLIED VAN LINES,** | § | |
| **Defendant** | § | |

## DEFENDANT ALLIED'S MOTION TO TRANSFER VENUE

TOM LOCKHART
Admissions ID No. 2257
Texas State Bar No. 12473500
ROGER W. HUGHES
Admissions ID No. 5950
Texas State Bar No. 10229500
**ADAMS & GRAHAM, L.L.P.**
P.O. Drawer 1429
Harlingen, Texas 78551-1429
956/428-7495; FAX: 956/428-2954

JOHN W. WATERS, JR.
LA State Bar No. 13258
LA Federal I.D. No. 13258
**BIENVENU, FOSTER, RYAN**
**& O'BANNON**
1010 Common Street, Suite 2200
New Orleans, LA 70112-2401
504/581-2146; FAX: 504/522-7859

Attorneys-in-Charge for Defendant, ALLIED VAN
LINES, INC.

TABLE OF CONTENTS

Page:

I. Certificate of Conference
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. Status of the Case and Relief Requested . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. Issues Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

IV. Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

V. Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.    Venue is Not Proper In the Southern District of Texas . . . . . . . . . . . . . . . . . . . . . 4

    B.    Transfer of Venue under 28 U.S.C. §1404 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

VI. Argument and Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.    The Southern District of Texas Is Not the Proper Venue . . . . . . . . . . . . . . . . . . 5

        1.    Venue is Determined As If Sorensen Were Still a Party . . . . . . . . . . . . . 5

        2.    No Venue under Section 1391(a)(2, 3) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        3.    Venue Under Section 1931(a)(1) Requires Plaintiff Prove
            Sorensen Subject to Personal Jurisdiction in Texas . . . . . . . . . . . . . . . . . 7

        4.    Elements of Personal Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        5.    Texas Cannot Exercise "General Jurisdiction" Over Sorensen . . . . . . . . 11

        6.    No "Specific Jurisdiction" Over Sorensen In Texas
            For This Accident . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        7.    "Fairness" Prong is Not Satisfied . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    B.    Venue Should be Transferred to Louisiana Under Section 1404(a) . . . . . . . . . 16

        1.    Location of Key Witnesses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        2.    Location of the Alleged Wrong . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

3.  Location of Books and Papers ................................. 18

4.  Costs of Trial ........................................... 18

5.  Possibility of Delay ...................................... 18

6.  Plaintiff's Choice of Venue ................................. 19

7.  Discussion .............................................. 19

VII. Conclusion ............................................... 19

TABLE OF AUTHORITIES

Page:

Cites:

*Access Telecom, Inc. v. MCI Telecommunications Corp.,*
        197 F.3d 694 (5th Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Amoco Chemical Co. v. Tex Tin Corp.,* 925 F.Supp. 1192
        (S.D.Tex. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Bearry v. Beech Aircraft Corp.,* 818 F.2d 370
        (5th Cir.1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462
        (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Central Freight Lines, Inc. v. APA Transport Corp.,*
        322 F.3d 376 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-14

*Dalton v. R & W Marine, Inc.,* 897 F.2d 1359
        (5th Cir.1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Dow Agrosciences LLC v. Bates,* 2002 WL 1205143,
        (N.D.Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Felch v. Transportes Lar-Mex SA de CV,* 92 F.3d 320
        (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 15

*Hargrove v. Underwriters at Lloyd's London,*
        937 F.Supp. 595 (S.D.Tex. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
        466 U.S. 408 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12, 13, 15

*Holmes v. Energy Catering Services, L.L.C.,*
        270 F.Supp.2d 882 n.1 (S.D.Tex. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Horihan v. Hartford Ins. Co. of the Midwest,*
        979 F.Supp. 1073 (E.D.Tex. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Horseshoe Entertainment,* 337 F.3d 429
        (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 19

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ............................... 10

*Jones v. Petty-Ray Geophysical, Geosource, Inc.*,
    954 F.2d 1061 n. 9 (5th Cir.), *cert. denied*,
    506 U.S. 867 (1992) ..................................................... 8, 9

*Lemery v. Ford Motor Co.*, 244 F.Supp.2d 720
    (S.D.Tex. 2002) ....................................................... 17, 19

*Lyons v. Swift Trans. Co.*, 2001 WL 1153001,
    (E.D.La. 2001) ................................................... 12, 14, 15

*McCaskey v. Continental Airlines, Inc.*, 133 F.Supp.2d 514
    (S.D.Tex. 2001) ........................................................ 5-7

*McGinnis v. Eli Lilly & Co.*, 181 F.Supp.2d 684
    (S.D.Tex. 2002) ....................................................... 17, 19

*Nichols v. G.D. Searle & Co.*, 991 F.2d 1195
    (4th Cir.1993) ......................................................... 10

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
    253 F.3d 865 (5th Cir.2001) ............................................. 7

*Peteet v. Dow Chem. Co.*, 868 F.2d 1428 (5th Cir.1989) .......................... 16

*Smith v. Fortenberry*, 903 F.Supp. 1018 (E.D.La. 1995) .......................... 6

*Stuart v. Spademan*, 772 F.2d 1185 (5th Cir. 1985) .............................. 11

*Summers v. Burchill*, 2003 WL 21750730,
    (N.D.Tex. 2003) ..................................................... 12, 14

*Time, Inc. v. Manning*, 366 F.2d 690 (5th Cir.1966) ............................. 16

*Vasquez v. Bridgestone/Firestone Co.*, 325 F.3d 665
    (5th Cir. 2003) ...................................................... 15, 18

*Wilson v. Belin*, 20 F.3d 644 (5th Cir.)
    *cert. denied*, 513 U.S. 930 (1994) .................................... 8, 9

Federal Rules of Civil Procedure:

Rule 45(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Federal Statutes:

28 U.S.C. §1391 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §1391(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28 U.S.C. §1391(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

28 U.S.C. §1391(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28 U.S.C. §1391(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28 U.S.C. §1391(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

28 U.S.C. §1404 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 5, 19

28 U.S.C. §1404(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

42 U.S.C. §1391(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

42 U.S.C. §1391(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

42 U.S.C. §1391(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

42 U.S.C. §1391(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

49 U.S.C. § 14102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 12

Treatises:

Charles Wright & Arthur Miller, 4 FED. PRAC. & PROC.,
      CIVIL §1069.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Charles Wright & Arthur Miller, 4 FED. PRAC. & PROC.,
      CIVIL §1069 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## DEFENDANT ALLIED'S MOTION TO TRANSFER VENUE

TO THE HONORABLE JUDGE OF THIS COURT:

Comes now Defendant Allied Van Lines, Inc. ("Allied"), and files this its MOTION TO TRANSFER VENUE and would show the Court as follows:

### I. Certificate of Conference

Defendant Allied's counsel has discussed the relief requested with counsel for Plaintiffs. No resolution could be reached and the motion is opposed.

### II. Status of the Case and Relief Requested

Plaintiffs Guerra, et al., filed a wrongful death/personal injury suit from a motor vehicle accident in Louisiana against Allied and Sorensen Moving and Storage Co., Inc. ("Sorensen"). Dkt # 1. Plaintiffs dismissed their claims against Sorensen. Dkt # 20, 22.

Allied moves to transfer venue to the District Court for the Western District of Louisiana because (1) venue is improper in the Southern District of Texas, and (2) a transfer is warranted for the convenience of the parties and in the interests of justice. 28 U.S.C. § 1404, 1406.

### III. Issues Presented

1. Plaintiffs sued Allied and Sorensen in this district. Is venue decided based on the original complaint without consideration that Plaintiff's dismissed Sorensen? If so, was venue improper in the Southern District of Texas under 28 U.S.C. § 1391 for an accident in Louisiana if Sorensen was not subject to personal jurisdiction in Texas?

2. If venue is proper, should venue be transferred under 28 U.S.C. § 1404 to the Western

1

District of Louisiana where the accident occurred?

## IV.  Factual Background

This case arises from an auto/truck collision in St. Martin Parish, Louisiana, near the city of Lafayette.[1]  The collision occurred between a car driven by Guadalupe Guerra and a truck owned by Sorensen that was transporting goods for Allied. First Amended Complaint ("Complaint"), ¶ 10; Dkt # 4.  The passengers in the Guerra vehicle included his wife Amelia, his daughters Cindy and Lisa, Jose Alfaro, and Jennifer Garza. Complaint ¶ 10; Dkt # 4. Plaintiffs all resided in the Southern District of Texas.  Complaint ¶¶ 1-3; Plaintiffs' Rule 26 Disclosures, Exh. 1, pp. 2-3.

Cindy Guerra and Jennifer Garza died as a result of the collision.  Complaint ¶ 14; Dkt # 4.  Plaintiffs Jose Alfaro and Guadalupe, Amelia, and Lisa Guerra claimed to have suffered severe burns.  Complaint ¶ 13; Dkt # 4.  They were hospitalized in Baton Rouge, Louisiana; Plaintiffs Alfaro and Lisa Guerra have now been transferred to a facility in Corpus Christi, Texas.  Plaintiffs' Rule 26 Disclosures, Exh. 1, pp. 14.

The accident was investigated by Louisiana State Police officers and members from the Fire Departments of Butte La Rose, Henderson, and Breaux Bridge, Louisiana, who currently reside in Louisiana. Plaintiffs' Rule 26 Disclosures, Exh. 1, pp. 4-5, 6-7, 12-13. Plaintiffs identify eleven non-party witnesses to the accident who reside in Louisiana, two who reside in North Carolina, two who live in Texas, and one who resides in Georgia. Plaintiffs' Rule 26 Disclosures, Exh. 1, pp. 8-10.  The treating physicians and healthcare

---

[1] St. Martin Parish is located in the Western District of Louisiana.  28 U.S.C. § 98(c).

2

providers for Jose Alfaro, Lisa Guerra, and Guadalupe Guerra are located in Louisiana and Texas; the treating physicians and healthcare providers for Amelia Guerra are in Louisiana. Plaintiffs' Rule 26 Disclosures, Exh. 1, pp.14-18. The coroner, morgue, and funeral homes for the deceaseds are in Louisiana. Plaintiffs' Rule 26 Disclosures, Exh. 1, pp.6, 10-11. Allied's records and employees pertinent to the case are in Illinois or Indiana. Exhs. 3 & 4.

Sorensen is a Florida corporation with no registered agent in Texas. Exh. 2, ¶ 5. All of its offices and property are in Florida; it has no office or property in Texas. Exh. 2, ¶ 5. All of its officers, directors, shareholders, and employees reside in Florida; none reside in Texas. Exh. 2, ¶ 3. It has no hauling authority outside the state of Florida. Exh. 2, ¶ 3. Its trucks can operate outside the state of Florida only under Allied's hauling authority. Exh. 2, ¶ 4. Sorensen does not advertise or solicit business in Texas. Exh. 2, ¶ 5.

As an agent for Allied, a Sorensen truck has picked up or delivered goods in Texas as follows: 2001 - 114 shipments; 2002 - 73 shipments; through October 2003 - approximately 75 shipments. Exh. 2, ¶ 6. Sorensen does not solicit customers in Texas. Exh. 2, ¶ 5. Serensen's only activities in Texas are performed as a non-carrier interstate hauling agent. Exh. 2, ¶ 4. In those cases, Allied may hire a Sorensen truck; the truck will pick up the load and transport it only under Allied's interstate motor carrier license; its trucks will have the Allied Van Lines logo on them. Exh. 2, ¶ 4. Legally, in such cases, Allied is responsible for the truck and is deemed to be the driver's employer. 49 U.S.C. § 19102; Complaint, ¶ 16.

## V. Summary of the Argument

A.    <u>Venue is Not Proper In the Southern District of Texas</u>

Venue in diversity cases is determined under 42 U.S.C. section 1391(a). Venue is not proper in Texas under section 1391(a)(2) because no part of the alleged liability-producing events occurred in Texas. Venue is not proper here under section 1391(a)(3), the "catch-all" section. It requires proof venue is not proper in any other district and venue would be proper in Louisiana under section 1391(a)(2).

Thus, venue can be sustained in Texas only under section 1391(a)(1). Because venue is determined at the time suit is filed, a subsequent change in parties does not alter the analysis. Therefore, the analysis under section 1391(a)(1) proceeds as if Sorensen were still in the case. In a multi-party case, section 1391(a)(1) requires Plaintiffs prove that all defendants are subject to personal jurisdiction in Texas.

Sorensen is not subject to personal jurisdiction in Texas. Due Process requires (1) Sorensen have sufficient minimum contacts with Texas, and (2) subjecting Sorensen to jurisdiction comports with fair play. Minimum contacts fall into two categories: "general jurisdiction" and "specific jurisdiction." There is no specific jurisdiction in Texas because the auto accident occurred in another state. General jurisdiction will not lie because Sorensen has no regular, sustained, and systematic contacts with Texas.

B.    <u>Transfer of Venue under 28 U.S.C. §1404</u>

Transfer under section 1404 requires the court consider: the location of witnesses, the location of the alleged wrong, the location of relevant books and papers, the costs of trial,

delay, and plaintiff's choice of forum. The most critical factors are the location of key non-party witnesses and the place of the alleged wrong. They clearly point to Louisiana. Few of the pertinent records are in Texas; most are in Louisiana. The costs of trial is a neutral factor. Delay is a factor only when the plaintiff can clearly prove a transfer will cause a significant delay and special factors exist; neither is the case here. Plaintiff's choice of forum is a minor factor.

Because the key non-party witnesses reside in and the alleged wrongdoing occurred in Louisiana, a section 1404 transfer should be granted.

## VI. Argument and Authorities

A.    The Southern District of Texas Is Not the Proper Venue

    1.    Venue is Determined As If Sorensen Were Still a Party

Once Allied challenges venue, Plaintiffs have the burden of proof to sustain venue. *McCaskey v. Continental Airlines, Inc.,* 133 F.Supp.2d 514, 523 (S.D.Tex. 2001). In multi-defendant cases, plaintiff has the burden to show venue for each claim and all defendants. *McCaskey,* 133 F.Supp.2d at 523. Venue is determined at the time suit is filed and is not affected by subsequent changes in parties. *Horihan v. Hartford Ins. Co. of the Midwest,* 979 F.Supp. 1073, 1076 (E.D.Tex. 1997); *Holmes v. Energy Catering Services, L.L.C.,* 270 F.Supp.2d 882, 885 n.1 (S.D.Tex. 2003). Thus, even though Sorensen was non-suited, Plaintiffs must still establish venue against Allied as if Sorensen remained a party. *Horihan,* 979 F.Supp. at 1076; *Holmes,* 270 F.Supp.2d at 885 n.1.

2.   <u>No Venue under Section 1391(a)(2, 3)</u>

28 U.S.C. §1391(a) sets venue in diversity jurisdiction cases.  Section 1391(a)(3) is a "catch-all" or default provision.  It provides that if there is no other district in which the action could be brought, then venue is proper in a district in which *any* defendant is subject to personal jurisdiction when the suit is filed.  To sustain venue under section 1391(a)(3), it must be shown that (1) no other section applies, and (2) one defendant is subject to personal jurisdiction in the district of suit.  *McCaskey,* 133 F.Supp.2d 525-26; *Hargrove v. Underwriters at Lloyd's London,* 937 F.Supp. 595, 607 (S.D.Tex. 1996).

28 U.S.C. §1391(a)(2) provides that venue is proper in any district where a substantial part of the events or omissions giving rise to the claim occurred.  Where the accident occurs is key, not where the plaintiff incurs medical treatment or expenses. *Smith v. Fortenberry,* 903 F.Supp. 1018, 1020-21 (E.D.La. 1995).  There, the accident occurred in Mississippi, but plaintiff (a Louisiana resident) sought treatment in his home state.  He sued in Louisiana.  The court transferred it to Mississippi. *Id.* at 1022.  The "events or omissions" were the negligent acts, not the treatment. *Id.* at 1020-21.  Because venue would be proper in Mississippi under section 1391(a)(2), venue could not lie in Louisiana under section 1391(a)(3). *Id.* at 1021.

The same reasoning applies here.  As in *Smith,* no substantial part of the accident occurred in Texas.  Therefore, section 1391(a)(2) does not lay venue here.  Because venue could be proper in Louisiana for both Sorensen and Allied under section 1391(a)(2), section 1391(a)(3) cannot apply.

3.    Venue Under Section 1931(a)(1) Requires Plaintiff Prove Sorensen Subject to Personal Jurisdiction in Texas

28 USC §1391(a)(1) provides that venue is proper in any district where one defendant "resides", if all defendants "reside" in that same State. Under 28 USC § 1391(c), a corporation is deemed to reside in any district in which it is subject to personal jurisdiction; if (like Texas) the state has multiple districts, it is deemed to reside in each district in which it would be subject to jurisdiction were that district a separate state.

Under section 1391(a)(1), Plaintiffs must prove two prongs. First, they must prove both Allied and Sorensen are subject to personal jurisdiction in Texas. *McCaskey,* 133 F.Supp.2d at 523-524. Second, one of them must "reside" in the Southern District. *McCaskey,* 133 F.Supp.2d at 524 n. 11; *Dow Agrosciences LLC v. Bates,* 2002 WL 1205143, *4 (N.D.Tex. 2002). For the purposes of this motion, Allied does not contest that Allied is subject to jurisdiction in Texas and in the Southern District. Therefore, the contested issue is whether Sorensen is subject to personal jurisdiction in Texas.

4.    Elements of Personal Jurisdiction

In a diversity action, a federal court may exercise personal jurisdiction over a defendant to the extent permitted by the applicable state law. *Panda Brandywine Corp. v. Potomac Elec. Power Co.,* 253 F.3d 865, 867 (5th Cir.2001). The Texas long-arm statute authorizes the exercise of personal jurisdiction to the extent allowed by the Due Process Clause of the Fourteenth Amendment. *Id.* The exercise of personal jurisdiction over a nonresident defendant comports with principles of due process when two requirements are met. First, the nonresident defendant must have purposefully availed himself of the benefits

7

and protections of the forum state by establishing "minimum contacts" with that forum state. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir.) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 315-17, (1945)), *cert. denied*, 513 U.S. 930 (1994). Second, the exercise of jurisdiction over the nonresident defendant must not offend traditional notions of fair play and substantial justice. *Wilson*, at 647 (quoting *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 113, (1987)).

The "purposeful availment" requirement of the minimum contacts inquiry "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts ... or of the 'unilateral activity of another party or a third person.' " *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). A plaintiff must establish a substantial connection between the nonresident defendant and the forum state. *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1068 n. 9 (5th Cir.), *cert. denied*, 506 U.S. 867 (1992).

The 'minimum contacts' prong of the inquiry may be further subdivided into contacts that give rise to 'specific' personal jurisdiction and those that give rise to 'general' personal jurisdiction. *Wilson*, 20 F.3d at 647. Specific jurisdiction is appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Id.* General jurisdiction, however, will attach, even if the nonresident defendant's contacts with the forum state are not directly related to the cause of action, if the defendant's contacts with the forum state are both 'continuous and systematic.' *Id.*

Finally, if the nonresident defendant's related or unrelated minimum contacts with

the forum state are sufficient, the court "must then consider whether the 'fairness' prong of the jurisdictional inquiry is satisfied." *Id.* at 647 n. 3 (citations omitted). The factors that should be considered in conducting this "fairness" inquiry are: (1) The burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies'; and (5) 'the shared interest of the several States in furthering fundamental substantive social policies.' *Id.*

In considering whether Sorensen had contacts with Texas sufficient to warrant the exercise of specific personal jurisdiction, this Court must determine whether the present litigation resulted from injuries arising out of or related to the nonresident defendant's contacts with the forum state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-16 n. 8, (1984); *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir.) (specific jurisdiction is proper only if the cause of action arises from a particular act or activity in the forum), *cert. denied*, 506 U.S. 867 (1992).

In determining any general personal jurisdiction over Sorensen, this Court must determine whether its contacts with Texas are both "continuous and systematic." *See Helicopteros*, 466 U.S. at 414 n. 9. Cases involving general jurisdiction demonstrate that the threshold contacts required for assertion of such jurisdiction must be very substantial. *See e.g., Helicopteros Nacionales*, 466 U.S. at 416-19 (concluding there was no general jurisdiction where defendant traveled to Texas to negotiate sale of helicopters, regularly purchased helicopters in Texas, and sent pilots for training to Texas); *Dalton v. R & W*

9

*Marine, Inc.*, 897 F.2d 1359, 1362-63 (5th Cir.1990) (concluding there was no general jurisdiction over defendant who chartered boats to Louisiana subsidiary resulting in almost 13% of parent's revenues, advertised in Louisiana, and purchased vessels at marshal's sales; no general jurisdiction over defendant who sold fuel to Louisiana purchasers and traveled into Louisiana territorial water); *Bearry v. Beech Aircraft Corp.,* 818 F.2d 370, 376 (5th Cir.1987) (determining there was no general jurisdiction over company that advertised in Texas as part of a national campaign and sold goods to Texas distributors via contracts entered into and executed in Kansas). "Conduct of single or isolated items of activities in a state [on] the corporation's behalf are not enough to subject it to [general jurisdiction]." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945). A court may only assert general jurisdiction over a corporate defendant if the defendant's "continuous corporate operation within a state [is] thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Id.* Infrequent visits to Texas do not qualify as the type of substantial activities that would warrant a finding of general jurisdiction in this case. *See Nichols v. G.D. Searle & Co.*, 991 F.2d 1195 (4th Cir.1993) (holding that personal jurisdiction did not exist when the defendant corporation's contacts with the forum state were insubstantial).

In rigorously applying *Helicopteros* to personal jurisdiction suits in Texas, the Fifth Circuit has even denied jurisdiction where defendant corporations have procured hundreds of millions of dollars in revenue from Texas customers. *See, e.g., Access Telecom, Inc. v. MCI Telecommunications Corp.*, 197 F.3d 694, 717-18 (5th Cir.1999) (finding no general

10

jurisdiction even though defendant's "revenues derived from Texas residents totaled millions of dollars a month."); *Bearry*, 818 F.2d at 372-76 (concluding that the flow of $250 million worth of defendant's products via Texas dealers did "not create a general presence in that state"). In these cases, the courts have meticulously distinguished between continuous and systematic contacts that constitute "doing business in Texas" (and thereby conferring personal jurisdiction), and those that merely embody "doing business with Texas." *Access Telecom*, 197 F.3d at 717 (determining that defendant's leasing of telephone circuits and other activities in Texas were aimed solely at providing and profiting from long distance communication in Mexico, and therefore were properly characterized as "doing business with Texas"); *see also, e.g., Bearry*, 818 F.2d at 375-76 (allowing defendant to evade personal jurisdiction by executing its sales contracts in Kansas, even though defendant's products were injected into the Texas market via these contracts).

  5. <u>Texas Cannot Exercise "General Jurisdiction" Over Sorensen</u>

  Sorensen does not have contacts with Texas sufficient to sustain "general" personal jurisdiction for two reasons.

  First, all its contacts with Texas are solely through its agency for Allied. Under the "fiduciary shield" doctrine, an individual's contacts within a state solely as an agent of another do not create personal jurisdiction in that state even though that state may have jurisdiction over the principal. *Stuart v. Spademan,* 772 F.2d 1185, 1197 (5th Cir. 1985), *citing* Charles Wright & Arthur Miller, 4 FED. PRAC. & PROC., CIVIL §1069 (Supp. 1984); see also Charles Wright & Arthur Miller, 4 FED. PRAC. & PROC., CIVIL §1069.5, p. 220, n.

11 (2002). The Southern District of Texas has recognized this doctrine. *Amoco Chemical Co. v. Tex Tin Corp.,* 925 F.Supp. 1192, 1201 (S.D.Tex. 1996).

Here, all of Sorensen's contacts with Texas are as an agent of Allied, and even then its employees and truck are deemed to act as Allied's agents, not Sorensen's. Sorensen cannot act as a carrier in Texas; whenever its employees delivered/pick-up a load in Texas, they did so under Allied's authority and license. Exh. 2, ¶ 4. Under federal law, during those trips, they are considered Allied's agents. 49 U.S.C. §14102. The truck transports under Allied's logo and federal license. Exh. 2, ¶ 4. Applying the fiduciary shield doctrine, none of these trips can be deemed to be Sorensen's "contacts" with Texas.

Second, even if these trips are "contacts" attributable to Sorensen, they are insufficient to support "general" jurisdiction. *Compare Helicopteros,* 466 U.S. at 418; *Central Freight Lines, Inc. v. APA Transport Corp.,* 322 F.3d 376 (5th Cir. 2003); *Felch v. Transportes Lar-Mex SA de CV,* 92 F.3d 320 (5th Cir. 1996); *Summers v. Burchill,* 2003 WL 21750730, * 2 (N.D.Tex. 2003); *Lyons v. Swift Trans. Co.,* 2001 WL 1153001, * 3 (E.D.La. 2001).

In *Helicopteros Nacionales,* plaintiffs sued Helicol, a Columbian corporation, in Texas state court for a helicopter crash in Peru. 466 U.S. at 410. Consorcio, a Texas company, hired Helicol to fly its employees to worksites in Peru. *Id.* Helicol attended one negotiation session with Consorcio in Texas, and submitted its requests for payment there. *Id.* at 411. Over a seven year period, Helicol purchased 80% of its fleet from a Texas company; it bought spare parts for them in Texas; and, it sent its pilots and maintenance

12

people to Texas for training. *Id.* Otherwise, Helicol had no employees, officers, offices, or property in Texas. *Id.* It never solicited business in Texas. *Id.*

Texas state courts held Helicol was subject to personal jurisdiction in Texas. 466 U.S. at 413. The U.S. Supreme Court reversed. *Id.* at 419. There was no "specific jurisdiction" because the helicopter crash did not "arise out of" any Helicol contact with Texas. *Id.* at 415-16. One business trip to Texas plus submitting requests for payment to a Texas company were not "continuous and systematic." *Id.* at 416. Helicol's purchases and occasional trips for training were no evidence that it was present within Texas' jurisdiction. *Id.* at 417-18.

In *Felch,* Lar-Mex, a Mexican trucking corporation, was involved in an auto accident in Mexico. 92 F.3d at 321. Lar-Mex had no US license. It had customers in Laredo that it called; it rented some trailers from a leasing company in Laredo; it had U.S. insurance for traveling with 25 miles of the borders. *Id.* at 322-23. Sometimes, Lar-Mex would drop off trailers in Laredo to deliver goods. *Id.* at 322. Lar-Mex would only drop off in Laredo, never pick up merchandise. *Id.* at 329. The district court denied Lar-Mex's challenge to personal jurisdiction and entered judgment for plaintiff. *Id.* at 321. The Fifth Circuit reversed the trial court and held that Lar-Mex's occasion transport of goods into Laredo was not "sufficiently substantial" to support general jurisdiction. *Id.* at 328.

In *Central Freight Lines,* CFL sued APA over a breach of an alleged shipping agreement. CFL (a Texas company) had an agreement with APA (a New Jersey company) to deliver Dell computers at a fixed price to Dell customers. 322 F.3d at 379. APA had a

13

federal operating license for Texas and sent sales people there to get contracts and service accounts; it arranged "interline" shipments from Texas to customers on the East coasts. 322 F.3d at 381. However, it had no offices in Texas, was not registered in Texas, and none of its trucks ever picked up or delivered freight in Texas. *Id.* The district court dismissed APA for lack of personal jurisdiction in Texas. *Id.* at 380. The Fifth Circuit agreed, holding there was "no evidence" of general jurisdiction. *Id.*[2]

In *Lyons*, plaintiff, an train passenger, was injured in a collision with Swift's truck. 2001 WL 1153001 at * 1. The accident occurred in Mississippi, but plaintiff sued in Louisiana. *Id.* Swift was an Arizona motor carrier with a federal carrier license and an agent for service in Louisiana. *Id.* It had no terminals or employees in Louisiana, but its trucks drove through it and delivered cargo to Louisiana customers from "time to time." *Id.* at *1, 4. Four of its drivers held Louisiana drivers licenses. *Id.* at * 4. The Louisiana district court held this was not sufficiently continuous or sustained contacts to support personal jurisdiction over Swift in Louisiana, even though it was the nation's third largest interest carrier. *Id.* at * 4-5.

*See also Summers*, 2003 WL 21750730 at * 2 (suit over accident in New Mexico in Texas federal court against New Mexico cattle company; held, claim that Defendants shipped cattle to Texas feedlots and processing plants was insufficient to sustain general jurisdiction).

The lessons from *Helicopters, Felch, Central Freight Lines,* and *Lyons* are clear.

---

[2] The Fifth Circuit did find evidence of contacts showing "specific jurisdiction," i.e., the breach of contract claim was related to Texas because APA negotiated it in Texas. *Id.* at 382. However, no part of Plaintiffs' causes of action arose from contacts with Texas. *See infra.* at p. 15.

Occasionally transacting business in Texas will not suffice. The contacts must be intentional, continuous, and systematic; these concepts are applied rigorously rather than superficially. Here Sorensen's trucks handle loads to or from Texas an average of less than 10 times a month on a sporadic basis; Sorensen does not solicit business in Texas; any deliveries from or to Texas are done through Allied. If these are "contacts," then they do no rise above those found insufficient in *Helicopters, Felch, Central Freight Lines,* and *Lyons*.

6.    No "Specific Jurisdiction" Over Sorensen In Texas For This Accident

This accident occurred in Louisiana and the deaths and injuries occurred in that state. Therefore, the tort did not arise from any contact by Sorensen with Texas and there is no specific jurisdiction in Texas over Sorensen. *See Helicopteros,* 466 U.S. at 415; *Felch,* 92 F.3d at 324; *Lyons,* 2001 WL 1153001 at *2-3.

7.    "Fairness" Prong is Not Satisfied

Even if there are sufficient minimum contacts to subject Sorensen to personal jurisdiction (which Allied denies), there remains the "fairness" prong. Here the balance also tips in Sorensen's favor.

Texas does have an interest in compensation for its residents' injuries. Against that are two key factors. First, under Texas's choice of law rules, Louisiana law will control liability and damages. *Vasquez v. Bridgestone/Firestone Co.,* 325 F.3d 665, 674-675 (5th Cir. 2003). Thus, Texas' interests are measured by Louisiana law. There is no reason a Texas federal court should struggle to learn Louisiana tort law when that the latter state's federal courts have jurisdiction over Sorensen.

15

Second, the accident and the injuries occurred in Louisiana. Louisiana has a paramount interest in the safety of its highways and regulation motor carriers within its borders. The brunt of handling the accident and caring for the injured fell first upon Louisiana.

Given these factors, the "fairness" prong is not satisfied.

B.   Venue Should be Transferred to Louisiana Under Section 1404(a)

Alternatively, Allied seeks a transfer to the Western District of Louisiana, pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Under this statute, Allied bears the burden of demonstrating to the Court that it should transfer the case. *See Peteet v. Dow Chem. Co.,* 868 F.2d 1428, 1436 (5th Cir.1989) (requiring defendant to make a showing that the forum sought is more convenient); *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir.1966) (highlighting that the movant bears the burden of demonstrating that the action should be transferred). The decision to transfer a case rests within the sound discretion of the Court, and such determinations are reviewed under an abuse of discretion standard. *In re Horseshoe Entertainment,* 337 F.3d 429, 432 (5th Cir. 2003). In determining whether a venue transfer is warranted, the Court considers the following factors: the availability and convenience of witnesses and parties; the location of pertinent books and records; the cost of obtaining attendance of witnesses and other trial expenses; the place of the alleged wrong; the likelihood of delay and prejudice if transfer is granted; and plaintiffs'

16

choice of forum. *In re Horseshoe,* 337 F.3d at 434-35; *Lemery v. Ford Motor Co.,* 244 F.Supp.2d 720, 729 (S.D.Tex. 2002). The location of counsel is not a factor. *In re Horseshoe,* 337 F.3d at 434.

The convenience of key witnesses is the most significant aspect of a motion to transfer venue. *Lemery,* 244 F.Supp.2d at 730. Inconvenience to and availability of non-party witnesses is critical; convenience to witnesses controlled or employed by the parties is entitled to less deference. *Id.* The place of the alleged wrong is also of primary importance. *Id.* at 732.

Plaintiffs' choice of forum is a factor, but it is not conclusive or determinative. *In re Horseshoe,* 337 F.3d at 434. The location of books and papers is not a critical factor in personal injury actions. *Lemery,* 244 F.Supp.2d at 731. Only in special circumstances will delay and prejudice be relevant to the propriety of transfer; even then it must be shown by clear and convincing evidence. *In re Horseshoe,* 337 F.3d at 434. The mere possibility of delay alone does not merit denial. *Lemery,* 244 F.Supp.2d at 732; *McGinnis v. Eli Lilly & Co.,* 181 F.Supp.2d 684, 691-2 (S.D.Tex. 2002).

1.    Location of Key Witnesses

As shown by Exh. 1, the key non-party witnesses are the police and firefighters, all of whom reside in Louisiana. Most of the healthcare providers and non-party witnesses reside in Louisiana or outside Texas. They are not subject to this Court's subpoena power. FED. R. CIV. P. 45(b)(2). Sorensen is located in Florida; Allied's witnesses are in Indiana or Illinois. Exhs. 2, 3, & 4. Plaintiffs reside in the Southern District of Texas.

This factor clearly favors transfer.

2.    Location of the Alleged Wrong

The accident occurred in Louisiana, which is where the deaths and personal injury occurred. Under Texas' choice of law rules, Louisiana law will control. See discussion in *Vasquez*, 325 F.3d at 674-675. Clearly Louisiana has a great interest in the safety of its highways and traffic within its borders.

This factor clearly favors transfer.

3.    Location of Books and Papers

Most of the relevant records are located outside Texas. The accident investigation and most medicals are in Louisiana; Allied's records are in Indiana and Illinois; and, Sorensen's records are in Florida.

While the burden for Allied to produce its records in Texas or in Louisiana is about the same, this is not true of key records of non-parties, e.g., police and fire investigation. On the whole, this factor favors transfer.

4.    Costs of Trial

Arguably, on the whole it will be more burdensome for the Plaintiffs to attend trial in Louisiana that in Brownsville. Again the non-party witnesses tip the balance. It will be less costly for them to attend trial in Louisiana.

Therefore, this factor is either neutral or slightly favors transfer.

5.    Possibility of Delay

There is some possibility of delay if transfer is granted. However, the motion is filed

before the initial scheduling conference. The trial date is not set and is not likely to be so close as to merit denial on that basis alone. Absent strong proof of delay and special circumstances, the possibility of delay is not a proper factor. *In re Horseshoe,* 337 F.3d at 434.

Therefore this factor is neutral.

6.     Plaintiff's Choice of Venue

This factor favors retention.

7.     Discussion

The location of the alleged wrong and the convenience of key non-party witness clearly favors a section 1404 transfer. In cases where the alleged wrongdoing occurred in another district, courts usually grant a section 1404 transfer. *See e.g., Lemery,* 244 F.Supp.2d at 732-733 (wrongful death/products liability suit for auto crash in New York transferred to that district); *McGinnis,* 181 F.Supp.2d at 691-692 (wrongful death/products liability suit for taking Prozac transfer to district where deceased used drug and died).

## VII. Conclusion

Wherefore, premises considered, Defendant Allied Van Lines Inc. prays its motion be considered, the court grant an evidentiary hearing on said motion, and upon hearing same, the Court grant a transfer of venue.

Respectfully submitted,

By: _____
TOM LOCKHART
Admissions ID No. 2257
Texas State Bar No. 12473500
ROGER W. HUGHES
Admissions ID No. 5950
Texas State Bar No. 10229500
**ADAMS & GRAHAM, L.L.P.**
P.O. Drawer 1429
Harlingen, Texas  78551-1429
956/428-7495; FAX: 956/428-2954

JOHN W. WATERS, JR.
LA State Bar No. 13258
LA Federal I.D. No. 13258
**BIENVENU, FOSTER, RYAN
   & O'BANNON**
1010 Common Street, Suite 2200
New Orleans, LA  70112-2401
504/581-2146; FAX: 504/522-7859

Attorney-in-Charge for Defendant, ALLIED
VAN LINES, INC.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing document was forwarded on this 23day of January, 2004, to the following counsel of record and interested parties:

Mr. Richard Warren Mithoff                              *CM/RRR 7001 2510 0004 2063 6043*
Mr. William J. Stradley                                                                        & Fax
Ms. Janie J. Jordan
**MITHOFF & JACKS, L.L.P.**
500 Dallas Street, Suite 3450
Houston, Texas 77002
ATTORNEYS FOR PLAINTIFFS

Mr. Eduardo Roberto Rodriguez                                           *Via Regular Mail*
**RODRIGUEZ, COLVIN & CHANEY**
P. O. Box 2155
Brownsville, Texas 78523-2155

TOM LOCKHART

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| GUADALUPE AND AMELIA GUERRA,<br>INDIVIDUALLY AND AS PERSONAL<br>REPRESENTATIVES OF THE ESTATE OF<br>CINDY GUERRA, DECEASED, and LISA<br>GUERRA, INDIVIDUALLY,<br><br>RENE GARZA AND PATRICIA GARZA,<br>INDIVIDUALLY AND AS PERSONAL<br>REPRESENTATIVES OF THE ESTATE OF<br>JENNIFER GARZA, DECEASED,<br><br>and<br><br>JOE ALFARO, INDIVIDUALLY,<br><br>Plaintiffs,<br><br>VS.<br><br>ALLIED VAN LINES, INC. and<br>SORENSEN MOVING AND STORAGE<br>COMPANY INC.,<br><br>Defendants. | § § § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO.  B-03-142<br><br>TRIAL BY JURY REQUESTED |

## PLAINTIFFS' INITIAL DISCLOSURES

Plaintiffs Guadalupe and Amelia Guerra, individually and as personal representatives of the estate of Cindy Guerra, deceased; Lisa Guerra, individually; Rene Garza and Patricia Garza, individually and as personal representatives of the estate of Jennifer Garza, deceased; and Joe Alfaro, individually, make these initial disclosures pursuant to Fed. R. Civ. Proc. 26(a)(1):

(A)   **Individuals Likely to Have Discoverable Information**

| NAME | INFORMATION KNOWN |
|---|---|
| Guadalupe Guerra<br>P.O. Box 481<br>Santa Rosa, Texas 78593<br>(956) 636-1383 | Plaintiff and father of Cindy Guerra, deceased, and Lisa Guerra |
| Amelia Guerra<br>P.O. Box 481<br>Santa Rosa, Texas 78593<br>(956) 636-1383 | Plaintiff and mother of Cindy Guerra, deceased, and Lisa Guerra |
| Lisa Guerra<br>P.O. Box 481<br>Santa Rosa, Texas 78593<br>(956) 636-1383 | Plaintiff and sister of Cindy Guerra, deceased |
| Omar Guerra<br>P.O. Box 481<br>Santa Rosa, Texas 78593<br>(956) 636-1383 | Son of Plaintiffs Guadalupe and Amelia Guerra and brother of Cindy Guerra, deceased, and Lisa Guerra |
| Joe Alfaro<br>P.O. Box 61<br>Santa Rosa, Texas 78593<br>(956) 636-9024 | Plaintiff |
| Graciela Marroquin<br>P.O. Box 61<br>Santa Rosa, Texas 78593<br>(956) 636-9024 | Mother of Plaintiff Joe A. Alfaro, Jr. |
| Jose Cavazos<br>P.O. Box 61<br>Santa Rosa, Texas 78593<br>(956) 636-9024 | Step-father of Plaintiff Joe A. Alfaro, Jr. |
| Rene Garza<br>P.O. Box 313<br>La Feria, Texas 78559<br>(956) 797-4645 | Plaintiff and father of Jennifer Garza, deceased |

| NAME | INFORMATION KNOWN |
|---|---|
| Patricia Garza<br>P.O. Box 313<br>La Feria, Texas 78559<br>(956) 797-4645 | Plaintiff and mother of Jennifer Garza, deceased |
| Allied Van Lines, Inc., including any employees, agents, and representatives, including Patrick McDonald, and Mark Davison of the Safety Department<br>c/o Tom Lockhart<br>Adams & Graham, L.L.P.<br>P.O. Drawer 1429<br>Harlingen, Texas 78551-1429<br>(956) 428-7495<br>and<br>John W. Waters, Jr.<br>Bienvenu, Foster, Ryan & O'Bannon<br>1010 Common Street, Suite 2200<br>New Orleans, Louisiana 70112-2401<br>(504) 581-2146 | Defendant |
| Sorensen Moving and Storage Company Inc., including any employees, agents, and representatives<br>c/o Tom Lockhart<br>Adams & Graham, L.L.P.<br>P.O. Drawer 1429<br>Harlingen, Texas 78551-1429<br>(956) 428-7495<br>and<br>John W. Waters, Jr.<br>Bienvenu, Foster, Ryan & O'Bannon<br>1010 Common Street, Suite 2200<br>New Orleans, Louisiana 70112-2401<br>(504) 581-2146 | Defendant |

| NAME | INFORMATION KNOWN |
|------|-------------------|
| Any and all employees, agents, and representatives, including Sgt. Connor, for: Louisiana State Police Department-A address/telephone number unknown | Notified Plaintiff Guadalupe Guerra of Cindy Guerra's and Jennifer Garza's death |
| Any and all employees, agents, and representatives, including Sgt. William Miller, for: Louisiana State Police Department address unknown (337) 262-3315 | Investigator |
| Any and all employees, agents, and representatives, including Sgt. Jon Fusilier, for: Louisiana State Police Department address/telephone number unknown | Witness - Investigator |
| Any and all employees, agents, and representatives, including Deputy Pat Clay for: St. Martin Sheriff's Office address/telephone number unknown | Witness - Investigator |
| St. Dan Hudson Mt. Dane Laughlin address unknown telephone number unknown | Witnesses - Investigators |
| Tfc. Donald McFarlain address unknown telephone number unknown | Witness - Investigator |
| Tfc. James Flynn address unknown telephone number unknown | Witness - Investigator |

| NAME | INFORMATION KNOWN |
|------|-------------------|
| Any and all employees, agents, and representatives, including Trooper Harold Williams for:<br>Louisiana State Police Department<br>P.O. Box 66601<br>Baton Rouge, Louisiana 70896-6601<br>(225) 295-8554 | Witness - Investigator |
| Any and all employees, agents, and representatives, including Master Trooper Richard C. Elliott for:<br>Louisiana State Police Department<br>P.O. Box 66601<br>Baton Rouge, Louisiana 70896-6601<br>(225) 295-8554 | Witness - Investigator |
| Any and all employees, agents, and representatives, including Sergeant Troy Hebert for:<br>Louisiana State Police Department<br>Troop 1<br>121 E. Pont des Mouton<br>Lafayette, Louisiana 70507<br>telephone number unknown | Investigator |
| Any and all employees, agents, and representatives, including Emmett Carson for:<br>Aero Scan<br>P.O. Box 54023<br>Lafayette, LA 70505<br>(337) 981-9430 | Took aerial photographs of scene |
| Danette Westfall<br>100 Melrose Ave, Apt. 1010<br>Natchitoches, LA 71457<br>(318) 356-8201 | Witness who took photographs |

5

| NAME | INFORMATION KNOWN |
|---|---|
| Any and all employees, agents, and representatives, including Pete Pioza (Photographer) for:<br>The Daily Advertiser<br>221 Jefferson St.<br>Lafayette, LA 70501<br>(337) 289-6300 | Newspaper who covered incident |
| Any and all employees, agents, and representatives, including Josh Noel (Reporter) and Ned Randolph (Reporter) for:<br>The Advocate<br>P.O. Box 588<br>Baton Rouge, LA 70821-0588<br>(225) 383-1111 | Baton Rouge newspaper that covered the incident |
| Any and all employees, agents, and representatives, including Deputy Coroner Scott Haydel<br>P.O. Box 247<br>St. Martinsville, LA 70582<br>(337) 394-3071 | Pronounced the victims dead and took photographs |
| Any and all employees, agents, and representatives, including Daniel J. Wiltz, M.D.<br>1117 N. Main St., Suite B<br>St. Martinsville, LA 70582<br>(337) 394-7111 | Parish Coroner |
| Any and all employees, agents, and representatives, including Jerry Harrison and John Rica, Jr., for:<br>Louisiana State Police Crime Laboratory<br>P.O. Box 66614<br>Baton Rouge, Louisiana, 70896-6614<br>(225) 925-6216 | Forensic Scientists |

6

| NAME | INFORMATION KNOWN |
|---|---|
| Any and all employees, agents, and representatives, including Marja Porteous, for:<br>Louisiana State Police Crime Laboratory<br>P.O. Box 66614<br>Baton Rouge, Louisiana, 70896-6614<br>(225) 925-6216 | Crime Lab Technician |
| Any and all employees, agents, and representatives, including Brian Wynne, for:<br>Louisiana State Police Crime Laboratory<br>P.O. Box 66614<br>Baton Rouge, Louisiana, 70896-6614<br>(225) 925-6216 | Director of Laboratory Services |
| Teresa Wladyslaw<br>1779 Eagle Ridge Blvd.<br>Palm Harbor, FL 34685<br>(727) 789-2016 | Widow of Gorski Wladyslaw, deceased, driver of Allied Van Lines, Inc. 18-wheeler |
| Any and all employees, agents, and representatives, including Deputy Eigo, for:<br>Palm Harbor County Sheriff's Office<br>address/telephone number unknown<br>Palm Harbor, FL 34685 | Notified Theresa Wladyslaw of Gorski Wladyslaw's death |
| Charles T. Fix<br>104 E. 3rd Ave.<br>Tallahassee, FL 32303<br>telephone number unknown | Moving customer on Mr. Gorski's last trip |
| Patrick James McDonald<br>address/telephone number unknown | Gave statement to police, saw Mr. Gorski on the last trip |
| Kirk Gamble<br>4343 E. Pollack Lane<br>Phoenix, Arizona 85402<br>telephone number unknown | Moving customer on Mr. Gorski's last trip |

| NAME | INFORMATION KNOWN |
|------|-------------------|
| Elizabeth Johnson<br>address unknown<br>city unknown, California<br>telephone number unknown | Moving customer on Mr. Gorski's last trip |
| Frances M. Beeler<br>505 Lancaster St. Unit 2B<br>Jacksonville, FL 32204<br>(904) 388-5999 | Moving customer on Mr. Gorski's last trip |
| Route 66 Trucking<br>Mark Szymanski<br>10909 Rose Ave.<br>Los Angeles, CA<br>(310) 836-6038 | Prior employer of Mr. Gorski |
| United Van Lines<br>Andrew Rozanski<br>1735 Bayhill Dr.<br>Oldsmar, FL<br>(727) 415-7915 | Prior employer of Mr. Gorski |
| LCM Auto Brokers<br>Peter Klesaris<br>1597 N. Hercules Ave.<br>Clearwater, FL<br>(727) 789-2016 | Prior employer of Mr. Gorski |
| Shawn Miller<br>16223 Bristoe Avenue #C<br>Baton Rouge, Louisiana 70816<br>(225) 754-7637<br>(225) 892-7665 | Witness involved in incident |
| James R. Brimer<br>2801 White Lane<br>Archdale, NC 27263<br>(336) 434-1783<br>(336) 688-1327 | Witness involved in incident |

8

| NAME | INFORMATION KNOWN |
|---|---|
| Thomas J. Welburn<br>5329 Greywood Dr.<br>Greensboro, NC 27406<br>(336) 676-7713<br>(336) 327-6152 | Witness involved in incident |
| Kristen M. Bybee<br>Jason Bybee<br>554 Brooklyn<br>Jefferson, Louisiana 70121<br>(504) 251-6472<br>(504) 701-4409 | Witness involved in incident |
| Matthew Voelkel<br>2006 S. Salcedo St.<br>City unknown, Louisiana<br>(504) 231-7408 | Witness involved in incident |
| Lea Guidry<br>5865 Castile Ave.<br>Baton Rouge, Louisiana 70806<br>(225) 281-5686 | Witness involved in incident |
| Paul M. Trahan<br>746 Fawn Lake<br>Baton Rouge, Louisiana 70816<br>(225) 274-9164 - home<br>(225) 932-2718 - office | Witness involved in incident |
| Ray Ronquillo, III<br>Kimberly M. Ronquillo<br>2600 Vulcan St.<br>Harvey, Louisiana 70058<br>(504) 366-8647<br>(504) 368-3551<br>(504) 628-7700 cell | Witnesses involved in incident |
| Chad Dunn<br>2454 Sherry St.<br>Denham Springs, Louisiana 70726<br>(225) 664-5317 | Witness involved in incident |

| NAME | INFORMATION KNOWN |
|---|---|
| Paul Brown<br>1205 W. Circle Dr. #16<br>Vidor, Texas 77662<br>(409) 780-0639 cell<br>(409) 786-4308 | Witness involved in incident |
| Dr. Ken S. LeBlanc<br>100 Lakewood Dr.<br>Lafayette, Louisiana 70503<br>(337) 237-9209 - home<br>(337) 406-9994 - work | Eyewitness to incident |
| Gerald D. Valentine<br>P.O. Box 1937<br>Crystal Beach, Texas 77650<br>(409) 684-0089 | Eyewitness to incident |
| Jeffery Hebert<br>Kimberly Hebert<br>210-23 W. Pont Des Mouton Rd.<br>Lafayette, Louisiana 70507<br>(337) 237-5263 | Eyewitnesses to incident |
| Richard Reed<br>2163 Pinehurst Dr.<br>LaPlace, Louisiana 70068<br>(985) 653-8204 | Eyewitness to incident |
| Noble Spear<br>1231 Millcrest Walk<br>Congers, Georgia 30012<br>(770) 602-1358 | Eyewitness to incident |
| Andrew Hebert<br>10554 Oak Bend Dr.<br>Baton Rouge, Louisiana 70809<br>(225) 806-9301 | Eyewitness to incident |
| Any and all employees, agents, and representatives for:<br>Pellerin's Funeral Home<br>address/telephone number unknown | Funeral Home where deceased Plaintiffs were taken |

| NAME | INFORMATION KNOWN |
|------|-------------------|
| Any and all employees, agents, and representatives, including Marcus W. Hebert, for:<br>David Funeral Home - Lafayette<br>316 Youngsville Highway<br>Lafayette, LA 70508<br>telephone number unknown | Funeral Director for Jennifer Garza and Cindy Guerra |
| Any and all employees, agents, and representatives for:<br>Lafayette Parish Morgue<br>address unknown<br>(337) 291-7100 | Held bodies of the deceased for pick up by St. Martinsville Parish Morgue |
| Ralph Calais<br>Calais' Wrecker Service<br>1019A Holden Calais Rd.<br>Breaux Bridge, LA 70517<br>(337) 667-6154 | Owner, storage facility for Plaintiffs' Guerras Suburban involved in incident |
| Richard C. Baker<br>Rick's Towing & Recovery, Inc.<br>3437 Pinhook Rd.<br>Lafayette, LA 70508<br>(337) 837-2561 | Storage facility for Allied Van Lines, Inc.'s 18-wheeler being driven by Gorski Wladyslaw, deceased |
| Beverly Barton<br>Attorney at Law<br>Qualcomm, Inc.<br>Legal Department<br>5775 Morehouse Drive<br>San Diego, CA 92121<br>(858) 651-4295 | Qualcomm records |
| M. Ray Hartmann III<br>Qualcomm, Inc.<br>Gray Cary Ware & Freidenrich LLP<br>4365 Executive Dr., Suite 1100<br>San Diego, CA 92121-2133<br>(858) 638-6936 | Qualcomm Attorney who may have records pertinent to the case |

11

| NAME | INFORMATION KNOWN |
|---|---|
| Any and all employees, agents, and representatives for: AT&T Wireless address/telephone number unknown | May have phone records for Mr. Gorski pertinent to the case. |
| Maximo Galvan Santa Rosa School District Business Office P.O. Box 395 Santa Rosa, Texas 78593 telephone number unknown | Employer of Guadalupe and Amelia Guerra |
| Any and all employees, agents, and representatives for: St. Martin Sheriff's Office address/telephone number unknown | Investigator |
| Andrew Hargroder, M.D. 59335 River West Dr., Suite E Plaquemine, Louisiana 70764 (225) 685-0385 | Treater of Plaintiffs Joe Alfaro and Lisa Guerra |
| Raymond B. Acebo, M.D. 2601 Hospital Blvd. Corpus Christi, TX 78405 (361) 653-4541 | Treater |
| Any and all employees, agents, and representatives, including Richard E Zuschlag, for: Acadian Ambulance P.O. Box 98000 Lafayette, LA 70509-8000 (337) 291-3333 | Ambulance service for Guadalupe, Amelia, and Lisa Guerra and Joe Alfaro |
| Any and all personnel identified in the records of: Bayou Blue Rescue Department a/k/a Bayou Blue Fire Department address/telephone number unknown | Assisted at scene |

12

| NAME | INFORMATION KNOWN |
|---|---|
| Any and all personnel, including Chief Avery Thomas, identified in the records of:<br>Butte La Rose Fire Department address/telephone number unknown | Assisted at scene |
| Any and all personnel identified in the records of:<br>Henderson Fire Department address/telephone number unknown | Assisted at scene |
| Any and all personnel, including Lionel "Terry" Theriot, Jr., Fire Chief, identified in the records of:<br>Breaux Bridge Fire Department 225 North Main Street Breaux Bridge, Louisiana 70517 (337) 332-1122 | Assisted at scene |
| Any and all employees, agents, or representatives for:<br>KADN TV Channel 15 1500 Eraste Landry Rd. Lafayette, LA 70506 telephone number unknown | Reported on incident. |
| Any employees, agents, or representatives, including James Warner, News Director, for:<br>KATC TV Channel 3 1103 Eraste Landry Rd. Lafayette, LA 70506 (337) 236-6394 | Videotape of scene |
| Any employees, agents, or representatives, including Dee E. Stanley, News Director, for:<br>KLFY TV Channel 10 1808 Eraste Landry Rd. Lafayette, LA 70506 (337) 981-4844 | Videotape of scene and transcript |

13

| NAME | INFORMATION KNOWN |
|---|---|
| Any employees, agents, or representatives for:<br>KPLC TV Channel 7<br>320 Division St.<br>Lake Charles, LA 70601<br>(337) 439-9071 | Videotape of scene and transcript |
| Any employees, agents, or representatives for:<br>WAFB TV Channel 9<br>844 Government St.<br>Baton Rouge, LA 70802<br>(225) 383-9999 | Videotape of scene and transcript |
| Any employees, agents, or representatives for:<br>WGNO TV Channel 26<br>1400 Poydras, Suite 745<br>New Orleans, LA 70112<br>(504) 525-3838 | Videotape of scene |
| Any employees, agents, or representatives for:<br>WNOL TV Channel 38<br>1400 Poydras, Suite 745<br>New Orleans, LA 70112<br>(504) 525-3838 | Reported on incident. |
| Any and all medical and health personnel including, Dr. Ray Acebo, Dr. Lee, and Dr. Fernandez, identified in the records of:<br>Warm Springs Rehabilitation Hospital<br>2606 Hospital Blvd.<br>Corpus Christi, Texas 78405<br>(361) 902-4804 | Treater of Plaintiffs Joe Alfaro and Lisa Guerra |
| Mary Kendall, M.D.<br>Ochsner Clinic Foundation Baton Rouge<br>9001 Summa Avenue<br>Baton Rouge, LA 70809<br>(225) 761-5402 | Treaters of Joe Alfaro |

14

| NAME | INFORMATION KNOWN |
|------|-------------------|
| Any employees, agents, or representatives for:<br>Anesthesiology Group Assoc.<br>8212 Summa Ave.<br>Baton Rouge, LA  70809<br>(225) 769-4403 | Treater for Joe Alfaro and Lisa Guerra |
| Any employees, agents, or representatives:<br>Baton Rouge Cardiology Center<br>5231 Brittany Dr.<br>Baton Rouge, LA 70808<br>(225) 769-0933 | Treater for Joe Alfaro |
| Any employees, agents, or representatives for:<br>Baton Rouge Radiology Group, Inc.<br>P.O. Box 14530<br>Baton Rouge, LA  70898<br>(225) 769-6700 | Treater for Joe Alfaro, Guadalupe Guerra, and Lisa Guerra |
| Any employees, agents, or representatives for:<br>Eye Laser & Surgery Center<br>8777 Bluebonnet, Suite B<br>Baton Rouge, LA  70810<br>(225) 262-4335 | Treater for Joe Alfaro |
| Any employees, agents, or representatives for:<br>Louisiana Cardiology Associates, LLC<br>5228 Dijon Dr.<br>Baton Rouge, LA  70808-4395<br>(225) 767-3984 | Treater for Joe Alfaro |
| Any employees, agents, or representatives for:<br>Louisiana Emergency & Trauma Specialists<br>P.O. Box 82879<br>Baton Rouge, LA 70884<br>(225) 819-1082 | Treater for Joe Alfaro, Guadalupe Guerra and Lisa Guerra |

| NAME | INFORMATION KNOWN |
|---|---|
| Any employees, agents, or representatives for:<br>Pathology Associates of Southern Louisiana, Inc.<br>P.O. Box 1736<br>Shreveport, LA  71166<br>(225) 344-1246 | Treater for Joe Alfaro and Lisa Guerra |
| Any employees, agents, or representatives for:<br>Renal Associates<br>P.O. Box 83130<br>Baton Rouge, LA 70884<br>(225) 767-4893 | Treater for Joe Alfaro |
| Any employees, agents, or representatives for:<br>Southern Medical Corporation<br>P.O. Box 84007<br>Baton Rouge, LA 70884-4007<br>(225) 756-5355 | Treater for Joe Alfaro |
| Any employees, agents, or representatives for:<br>Our Lady of the Lake Regional Medical Center<br>P.O. Box 14790<br>Baton Rouge, LA  70898<br>(225) 765-8872 | Treater for Amelia Guerra |
| Any employees, agents, or representatives for:<br>Pathology Group of Louisiana<br>P.O. Box 84030<br>Baton Rouge, LA  70884-4030<br>(225) 769-9993 | Treater for Amelia Guerra |
| Any employees, agents, or representatives for:<br>Professional Emergency Services<br>P.O. Box 532714<br>Atlanta, GA 30353<br>(800) 868-4872 | Treater for Amelia Guerra |

16

| NAME | INFORMATION KNOWN |
|---|---|
| Any employees, agents, or representatives for: Aesthetic Surgery Center, Inc. 8777 Bluebonnet Blvd. Baton Rouge, LA 70810 (225) 766-1899 | Treater for Guadalupe Guerra |
| John Williams address/telephone number unknown | Treater for Guadalupe Guerra |
| Smith Family Clinic address/telephone number unknown | Treater for Guadalupe Guerra |
| Any employees, agents, or representatives for: McAllen Medical Center 301 West Expressway 83 McAllen, TX 78503-3098 (956) 632-4000 | Treater for Guadalupe Guerra |
| Dr. Oliveira address/telephone number unknown | Treater for Guadalupe Guerra |
| Franklin Harris address/telephone number unknown | Treater for Lisa Guerra |
| Any employees, agents, or representatives for: Lifeguard Aeromed Ambulance Inc. 151 Commander Rd. Fort Worth, TX 76106 telephone number unknown | Treater for Lisa Guerra |
| Any employees, agents, or representatives for: Vascular Surgery Assoc. address/telephone number unknown | Treater for Lisa Guerra |

| NAME | INFORMATION KNOWN |
|------|-------------------|
| Any and all medical and health personnel identified in the records, including Andrew Hargroder, M.D., Robin Comeaux, RN, BSN, and Angelle Randle or her successor, custodian of medical records, and billing records of: Baton Rouge General Medical Center Burn Center 3600 Florida Blvd. Baton Rouge, LA 70806 or P.O. Box 2511 Baton Rouge, LA 70821 (225) 381-6545 | Treater of Joe Alfaro, Lisa Guerra, and Guadalupe Guerra |
| Charlie Clark Nissan, including any employees, agents, representatives, and custodians of records, and including Ms. Lou Gideon 3500 W. Expressway 83 Harlingen, Texas 78552 (956) 423-6975 | Joe Alfaro's employer |

This list represents individuals known to Plaintiffs likely to have discoverable information. The above individuals may have knowledge of the circumstances surrounding the incident in question and their treatment of the Plaintiffs Guadalupe Guerra, Amelia Guerra, Lisa Guerra, and Joe Alfaro. Plaintiffs Guadalupe Guerra, Amelia Guerra, Lisa Guerra, and Joe Alfaro's treating physicians and health care providers may be asked to give opinions regarding their medical condition in the past, present, and future, their injuries, diagnoses, disabilities, necessary and reasonable treatment for such injuries and disabilities, and reasonable and customary charges for such treatment and prognosis.

18

(B)  **Documents, Data Compilations, and Tangible Things Within the Possession,
Custody, or Control of Plaintiffs**

The following documents, data compilations, and tangible things are within the

possession, custody or control of the Plaintiffs:

a.    Medical records regarding Lisa Guerra from the Baton Rouge General
      Medical Center Burn Center (already produced to Defendants);

b.    Medical records regarding Joe Alfaro from the Baton Rouge General
      Medical Center Burn Center (already produced to Defendants);

c.    Billing records regarding Lisa Guerra from the Baton Rouge General
      Medical Center Burn Center (already produced to Defendants);

d.    Billing records regarding Joe Alfaro from the Baton Rouge General
      Medical Center Burn Center (already produced to Defendants);

e.    Complete billing record regarding Lisa Guerra from the Baton Rouge
      General Medical Center Burn Center (see attached);

f.    Complete billing record regarding Joe Alfaro from the Baton Rouge
      General Medical Center Burn Center (see attached);

g.    Incident report of the Louisiana State Police Department (see
      attached);

h.    Supplemental report of the Louisiana State Police Department (see
      attached);

i.    Death Certificate of Cindy Guerra, deceased, (see attached);

j.    Death Certificate of Jennifer Garza, deceased, (see attached);

k.    Employment records of Joe Alfaro from Charlie Clark Nissan (see
      attached);

l.    Newspaper articles (see attached);

m.    Garza family photographs (see attached);

n.    Aerial photographs from Aero Scan (see attached);

o.   Coroner photographs (see attached);

p.   Photographs taken by witness Danette Westfall (see attached);

q.   Personal photographs taken of Joe Alfaro prior to the incident, including photograph of Joe Alfaro and Lisa Guerra at their prom (see attached);

r.   Additional photographs taken of Joe Alfaro in the Baton Rouge General Medical Center Burn Unit (see attached);

s.   Photographs taken by Ian Jones, Ph.D. (see attached);

t.   Louisiana State Police Department photographs (see attached);

u.   Photographs taken of the Suburban, Honda and Blazer vehicles involved in the incident of 07/20/03 (see attached);

v.   Photographs of the Grand Prix involved in the incident (see attached);

w.   Photographs of the Toyota Sequoia and the Toyota Sienna involved in the incident (see attached);

x.   Videotapes from KATC TV Channel 3, KLFY TV Channel 10, KPLC TV Channel 7, WAFB TV Channel 9, and WGNO TV Channel 26;

y.   Transcripts of the incident from KLFY TV Channel 10, KPLC TV Channel 7, and WAFB TV Channel 9 (see attached);

z.   Photographs of the scene taken by Aero Scan (see attached); and

AA.   Scene photographs taken 07/23/03 (see attached).

If Defendants do not already have a copy of any of the above items or documents and would like a copy, please contact Plaintiffs' counsel and a copy will be provided.

20

(C)    **Damage Calculation and Supporting Documents**

Plaintiff Joe Alfaro has already incurred approximately $1,217,368.99 in medical expenses and continues to incur medical expenses as a result of the incident in question. Plaintiff Lisa Guerra has already incurred approximately $882,870.84 in medical expenses and continues to incur medical expenses as a result of the incident in question. Plaintiff Guadalupe Guerra has already incurred approximately $22,023.75 in medical expenses and continues to incur medical expenses as a result of the incident in question. Plaintiff Amelia Guerra has already incurred approximately $2,958.09 in medical expenses and continues to incur medical expenses as a result of the incident in question. Plaintiffs are claiming (a) loss of future earning capacity, (b) physical impairment, both past and future, (c) physical pain, both past and future, and (d) expenses for medical care, nursing care, custodial care, and therapy for both past and future.

Plaintiffs have provided billing records and will continue to provide billing records and damage calculation information as it is received. Plaintiffs are also providing the employment records of Joe Alfaro and has provided all medical records in their possession.

Plaintiffs will provide a limited medical authorization to Defendants so that they may obtain billing records.

(D)    **Insurance Agreements That May Be Used To Satisfy Judgment**

Defendants have produced insurance agreements to Plaintiffs.

Plaintiffs reserve the right to supplement these initial disclosures in accordance with the Federal Rules of Civil Procedure.

21

Respectfully submitted,

MITHOFF & JACKS, L.L.P.

_____
RICHARD WARREN MITHOFF
ATTORNEY IN CHARGE FOR PLAINTIFFS
State Bar No. 14228500
Federal I.D. No. 2102
WILLIAM J. STRADLEY
State Bar No. 19353000
Federal I.D. No. 397
JANIE L. JORDAN
State Bar No. 11012700
Federal I.D. No. 17407
500 Dallas, Suite 3450
Houston, Texas 77002
(713) 654-1122
(713) 739-8085 [FAX]

Eduardo Roberto Rodriguez
State Bar No. 17144000
Federal I.D. No. 1944
Joseph A. (Tony) Rodriguez
State Bar No. 17146600
Federal I.D. No. 10107
R. Patrick Rodriguez
State Bar No. 24002861
Federal I.D. No. 22949
RODRIGUEZ, COLVIN & CHANEY, L.L.P.
Local Counsel
P.O. Box 2155
Brownsville, Texas 78522
(956) 542-7441
(956) 541-2170 (Fax)

Counsel for Plaintiffs, Guadalupe and Amelia
Guerra, individually and as personal
representatives of the estate of Cindy Guerra,
deceased; Lisa Guerra, individually; Rene Garza
and Patricia Garza, individually and as personal
representatives of the estate of Jennifer Garza,
deceased; and Joe Alfaro, individually

22

I certify that to the best of my knowledge, information, and belief, that this disclosure is complete and correct as of November _24th_ , 2003.

JANIE L. JORDAN

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was forwarded to all counsel of record by certified mail, return receipt requested, and/or hand delivery, and/or fax transmission, this _24th_ day of November, 2003.

Mr. Eduardo Roberto Rodriguez
Mr. Joseph A. (Tony) Rodriguez
Mr. R. Patrick Rodriguez
Rodriguez, Colvin & Chaney, L.L.P.
P.O. Box 2155
Brownsville, Texas 78522

Mr. Tom Lockhart
Mr. Roger Hughes
Adams & Graham, L.L.P.
P.O. Drawer 1429
Harlingen, Texas 78551-1429

Mr. John W. Waters, Jr.
Bienvenu, Foster, Ryan & O'Bannon
1010 Common St., Suite 2200
New Orleans, Louisiana 70112-2401

JANIE L. JORDAN

23

## AFFIDAVIT OF SCOTT SORENSEN

THE STATE OF FLORIDA

COUNTY OF _Brevard_

     **BEFORE ME**, the undersigned Notary Public in and for the State of Florida on this day personally appeared **SCOTT SORENSEN** known to me to be the person whose name is subscribed hereto, who being first duly sworn in the manner provided by law, on oath stated as follows:

1.    "My name is **SCOTT SORENSEN**.  I am over the age of eighteen (18) years and competent to testify.  I have personal knowledge of the facts contained in this affidavit and they are true and correct.

2.    I am President of **SORENSEN MOVING AND STORAGE COMPANY, INC.** ("SORENSEN")

3.    **SORENSEN** is and has always been a moving and storage company incorporated in the State of Florida.    All of **SORENSEN'S** offices and property are located in Florida.  All of **SORENSEN'S** shareholders, directors, officers, and employees reside in Florida.  All truck's registered in **SORENSEN'S** name are titled and registered in the state of Florida.  **SORENSEN** has no hauling authority outside the state of Florida.

4.    **SORENSEN'S** only interstate activities (outside the State of Florida) are performed as the hauling agent for Allied Van Lines, Inc. ("Allied"), an interstate carrier for household goods.  **SORENSEN** has an agency contract with Allied.  Whenever **SORENSEN'S** trucks operate outside Florida, they operate only under Allied's hauling authority.  Whenever **SORENSEN'S** trucks operate outside Florida, the tractor has a sign that it is operated by Allied Van Lines and carries Allied's DOT number; the trailer has Allied's name written in large letters and **SORENSEN'S** name written in small letters underneath.

5.    **SORENSEN** has never had an office or place of business in the State of Texas, never maintained any bank accounts in Texas, never had a telephone listing in Texas, never kept books or records in Texas, never paid any taxes in Texas, never solicited or advertised for business in Texas, never been qualified or authorized to do business in Texas, never consented to be sued or brought suit in Texas, and never designated any agent for service of process upon it in Texas.    6.

**SORENSEN'S** only activities in the Texas are performed as a noncarrier interstate hauling agent for Allied Van Lines, Inc. These activities consist of providing independent contractor truckers, tractor trailer rigs and trailers for interstate hauling of household goods which pass through Texas, loading shipments, and packing 50% of these shipments, as agent for Allied Van Lines, Inc. In 2001, **SORENSEN**, as agent for Allied, provided independent contractor truckers, tractor trailer rigs and trailers for 114 shipments that either originated in or ended in Texas. In 2002, **SORENSEN**, as agent for Allied, provided independent contractor truckers, tractor trailer rigs and trailers for 73 shipments that either originated in or ended in Texas. Through October 2003, **SORENSEN**, as agent for Allied, provided independent contractor truckers, tractor trailer rigs and trailers for approximately 75 shipments that either originated in or ended in Texas.

Further, Affiant sayeth not.

**SORENSEN MOVING AND STORAGE COMPANY, INC.**

By: _____

Scott Sorensen
It's: President

**SWORN TO AND SUBSCRIBED** before me, the undersigned authority, by the said **SCOTT SORENSEN**, on the 23rd day of January, 2004, to certify which witness my hand and seal of office.

Notary Public in and for the

State of Florida

(NOTARY SEAL)

Print Name: Jennifer Grant



## <u>AFFIDAVIT OF MARK DAVISON</u>

**THE STATE OF INDIANA**

**COUNTY OF ALLEN**

     **BEFORE ME,** the undersigned Notary Public in and for the State of Indiana, on this day personally appeared MARK DAVISON known to me to be the person whose name is subscribed hereto, who being first duly sworn in the manner provided by law, on oath stated as follows:

1.     My name is Mark Davison.  I am over the age of eighteen (18) years and competent to testify.  I have personal knowledge of the facts contained in this affidavit, and they are true and correct.

**2.**     I am the Director of Safety Administration for **ALLIED VAN LINES, INC. ("ALLIED").**

3.     Any records of **ALLIED** pertaining to any drivers obtained through Sorensen Moving & Storage, Inc. ("Sorensen"), any trailer/tractor rigs or trailers of Sorensen **ALLIED** utilized for interstate hauling, and the accident in question are located in either Fort Wayne, Indiana, or Westmont, Illinois.

4.     Any **ALLIED** employee knowledgeable about **ALLIED'S**  drivers obtained through Sorensen, any trailer/tractor rigs or trailers of Sorensen **ALLIED** utilized for interstate hauling, and the accident in question resides in Illinois or Indiana.

Further, Affiant sayeth not.

              By: _____
                      Mark Davison

Its: _Director of Safety Administration_

**SWORN TO AND SUBSCRIBED** before me, the undersigned authority, by the said ___Mark Davison___, on the ___21st___ day of January, 2004, to certify which witness my hand and seal of office.

_Rita I. Svec_

Notary Public in and for the State of _Indiana_

(NOTARY SEAL)

Print Name: _RITA I. SVEC_

My Commission Expires:

_3-24-08_

<u>**AFFIDAVIT OF THOMAS M. LAMBERT**</u>

**THE STATE OF ILLINOIS**

**COUNTY OF DU PAGE**

      **BEFORE ME,** the undersigned Notary Public in and for the State of Illinois, on this day personally appeared THOMAS M. LAMBERT known to me to be the person whose name is subscribed hereto, who being first duly sworn in the manner provided by law, on oath stated as follows:

1.     My name is Thomas M. Lambert. I am over the age of eighteen (18) years and competent to testify. I have personal knowledge of the facts contained in this affidavit, and they are true and correct.

**2.**     I am the Director of Agency Development of **ALLIED VAN LINES, INC. ("ALLIED").**

3.     Any records of **ALLIED** pertaining to its Agency relationship with Sorensen Moving & Storage, Inc. ("Sorenson"), and the accident in question are located in Westmont, Illinois.

4.     Any **ALLIED** employee knowledgeable about **ALLIED'S** Agency relationship with Sorenson and the accident in question resides in Illinois or Indiana.

Further, Affiant sayeth not.

By: _____
         Thomas M. Lambert

Its: <u>Director of Agency Development</u>

**SWORN TO AND SUBSCRIBED** before me, the undersigned authority, by the said ___Thomas M. Lambert___, on the ___20___ day of January, 2004, to certify which witness my hand and seal of office.

_____
Notary Public in and for the State of Illinois

Print Name: VALANN R. ZITKO

(NOTARY SEAL)

"OFFICIAL SEAL."
VALANN R ZITKO
Notary Public, State of Illinois
My Commission Expires 01/25/06