IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| GUADALUPE AND AMELIA GUERRA,<br>INDIVIDUALLY AND GUDALUPE<br>GUERRA AS ADMINISTRATOR<br>OF THE ESTATE OF CINDY GUERRA,<br>DECEASED; AMELIA GUERRA AS<br>TEMPORARY GUARDIAN OF THE<br>ESTATE AND PERSON OF LISA<br>GUERRA, AN INCAPACITATED<br>PERSON; RENE GARZA AND<br>PATRICIA GARZA, INDIVIDUALLY<br>AND RENE GARZA AS<br>ADMINISTRATOR OF THE ESTATE<br>OF JENNIFER GARZA, DECEASED;<br>GRACIELLA MARROQUIN AS<br>TEMPORARY GUARDIAN OF THE<br>ESTATE AND PERSON OF<br>JOSE ANGEL ALFARO, JR.,<br>AN INCAPACITATED PERSON<br><br>VS.<br><br>ALLIED VAN LINES, INC. | § § § § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. B-03-142 |

United States District Court
Southern District of Texas
FILED

JUN 1 5 2004

Michael N. Milby
Clerk of Court

---

**DEFENDANT ALLIED'S (1) REPLY IN SUPPORT
OF EMERGENCY MOTION TO MODIFY SCHEDULING ORDER
AND (2) RESPONSE TO PLAINTIFFS' MOTION TO
ENFORCE SCHEDULING ORDER**

**Tom Lockhart**
**Roger W. Hughes**
**ADAMS & GRAHAM, L.L.P.**
P. O. Drawer 1429
Harlingen, TX 78551-1429

**John W. Waters, Jr.**
**BIENVENU, FOSTER, RYAN**
   **& O'BANNON**
1010 Common Street, Suite 2200
New Orleans, LA 70112-2401

**ATTORNEYS FOR DEFENDANT
ALLIED VAN LINES**

# TABLE OF CONTENTS

Page:

I. Status . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. Argument and Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    Allied Did Not Cause Any Delay. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    Choice of Law Must Be Decided Before Discovery Proceeds. . . . . . . . . . 3

        1.    Under Texas' Choice of Law Rules, Louisiana Law Controls. . . . . 4

            (a)    The Place Of The Injuries And The Injury-Producing Event Control. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

            (b)    Louisiana Is The Only Location Of The Actions That Caused The Occurrence. . . . . . . . . . . . . . . . . . . . . . . 10

            (c)    Plaintiffs Residence In Texas Alone Is Not Sufficient to Overcome the Presumption To Apply The Law Of State Where The Injury, Wrongful Conduct, And Relationship Of The Parties Occurred. . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        2.    General Choice Of Law Principles Weigh In Favor Of Louisiana Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    C.    When Section 1404(a) Factors Are Properly Considered, The Case Must Be Transferred to the Eastern District of Louisiana. . . . . . . . . . . . 15

III. Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

Page:

Cites:

*Baird v. Bell Helicopter Textron,* 491 F.Supp. 1129
    (N.D.Tex. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

*Cates v. Creamer,* 2001 U.S.Dist. Lexis 12533
    (N.D.Tex. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9-11

*Continental Grain Co. v. The Barge FBL-585,* 364 U.S. 19 (1960) . . . . . . . . . . . . . . . . . . . . . . 17

*DataTreasury Corp. v. First Date Corp.,*
    243 F.Supp.2d 591 (N.D.Tex. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414
    (Tex. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re Air Crash at Mannheim, Germany,* 769 F.2d 115
    (3d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Air Crash Disaster Near Chicago, Ill.,* 644 F.2d 594
    (7th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*In re Air Disaster at Ramstein Air Base, Germany,* 81 F.3d 570
    (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13

*In re Horseshoe Entertainment,* 337 F.3d 429 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re VOLKSWAGEN AG; Volkswagen of America, Inc.,* — F.3d —,
    2004 WL 1098840 (5th Cir., May 18, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Jarvis Christian College v. Exxon Corp.,* 845 F.2d 523
    (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Kauman v. Miller,* 405 S.W.2d 820 (Tex. Civ. App.–Beaumont 1966),
    *rev'd on other grounds,* 414 S.W.2d 164 (Tex. 1967) . . . . . . . . . . . . . . . . . . . . . . . 11

*Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Lemery v. Ford Motor Co.,* 244 F.Supp.2d 720
    (S.D. Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*McDonnell Douglas Corp. v. Polin,* 429 F.2d 30
    (3rd Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Paul Chad Brown v. Allied Van Lines, Inc.*, 16th JDC,
    Parish of St. Martin, State of La., No. 67891, Div. "B" ......................... 1

*Perkins v. Dynasty Group Auto,* 2003 Tex. App. Lexis 1046
    (Tex. App.–El Paso 2003, no pet.) ...................................... 8-11

*Ronquillo, et al. v. TransGuard, et al.*, 16th JDC,
    Parish of St. Martin, State of La., No. 67832, Div. "F" .......................... 1

*Shawn Miller, et al. v. Gorski Wladyslaw, et al.*,
    USDC, W.D. La. No. 04-CV-1250 .......................................... 1

*Spence v. Glock*, 227 F.3d 308 (5th Cir. 2000) ...................................... 8

*Torrington Co. v. Stutzman*, 46 S.W.3d 829 (Tex. 2000) ............................ 12

*Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665
    (5th Cir. 2003) ................................................ 3, 4, 6, 10, 15

*Vizcarra v. Roldan,* 925 S.W.2d 89
    (Tex. App.–El Paso 1996, no writ) ............................... 7, 9, 10, 14

Treatises:

RESTATEMENT (SECOND) CONFLICT OF LAWS § 6 .................................. 5, 15

RESTATEMENT (SECOND) CONFLICT OF LAWS §145 ................................. 4

RESTATEMENT (SECOND) CONFLICT OF LAWS § 145, cmt (e) ...................... 6

RESTATEMENT (SECOND) CONFLICT OF LAWS § 146 .............................. 6

RESTATEMENT (SECOND) CONFLICT OF LAWS § 146, cmt (d) .................... 4, 6

RESTATEMENT (SECOND) CONFLICT OF LAWS § 175 .............................. 6

RESTATEMENT (SECOND) CONFLICT OF LAWS § 175, cmt (e) .................... 4, 6

DEFENDANT ALLIED'S (1) REPLY IN SUPPORT
OF EMERGENCY MOTION TO MODIFY SCHEDULING ORDER
AND (2) RESPONSE TO PLAINTIFFS' MOTION TO
ENFORCE SCHEDULING ORDER

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendant ALLIED VAN LINES, INC. (**"ALLIED"**) and files its REPLY

IN SUPPORT OF EMERGENCY MOTION TO MODIFY SCHEDULING ORDER and

RESPONSE TO PLAINTIFFS' MOTION TO ENFORCE SCHEDULING ORDER and would show

the Court as follows:

### I. Status

There are now three cases pending in federal and state courts in Louisiana[1] arising from the

same tragic accident that is the subject of this case– the only substantive litigation arising from this

accident that was brought in any state *other than* Louisiana.. Allied first objected to venue in its

answer filed in September 2003, and the parties discussed venue at the pretrial conference in

November 2003. Agreement to various discovery deadlines presupposed a timely ruling on venue.

On January 26, 2004, Allied advised the court that venue needed to be decided before the case "got

too far along." Allied cannot fairly proceed with discovery or trial preparation, especially in relation

to expert witnesses, until the court has decided which state's law controls and where the case will

be tried; Allied's choice of lead counsel also depends on which law applies. These issues are all

---

[1] As of last week, four cases have been filed to litigate this accident, and all except this one were
filed in Louisiana. *See (i) Shawn Miller, et al. v. Gorski Wladyslaw, et al.*, USDC, W.D. La. No. 04-CV-
1250; (ii) *Paul Chad Brown v. Allied Van Lines, Inc.*, 16th JDC, Parish of St. Martin, State of La., No.
67891, Div. "B"; and, (iii) *Ronquillo, et al. v. TransGuard, et al.*, 16th JDC, Parish of St. Martin, State of
La., No. 67832, Div. "F".
    After Allied filed its Second and Third Supplements, the third related lawsuit was filed in
Louisiana state court. Allied has removed this new suit to United States District Court for the Western
District of Louisiana, where it is pending as Cause No. 04-CV-1250, styled "Shawn Miller, et al., v.
Allied Van Lines." See attached Exh. 12. Shawn Miller as next friend of his daughter, Alexa, has sued
Allied, Gorski, and their insurer for bodily injury from the same collision.

briefed and pending.  The parties respectfully request an immediate decision so that they may move

forward as expediently, economically, and efficiently as possible.

## II.  Argument and Authorities

### A.    Allied Did Not Cause Any Delay.

Plaintiffs do not dispute that a ruling on venue and choice of law is critical to the course of

further discovery.  They do not dispute that trying this case under Louisiana law would make

significant differences in what experts are chosen, how the witnesses are examined and on what

subjects, etc.  Until the Court decides venue and choice of law, Allied is largely paralyzed in trial

preparation and discovery.  Although Allied wants to move forward and is attempting to schedule

the Plaintiffs' depositions for July 7 and 8, 2004, other facets of this case turn on venue and choice

of law, and to move forward blindly without knowing this will only result in an extraordinary waste

of time and money by the parties, and perhaps by the court.  The choice of law decision is ripe now.

The evidence on this issue is as fully developed as it can be.  The truck driver died in the accident

and his logs were destroyed.  The accident occurred in Louisiana, and Plaintiffs had no cause of

action before the collision.  There is no reason to delay this ruling.

Allied does not object to moving forward with this case or conducting discovery.  Allied's

motion reasonably requests a ruling on choice of law and venue first, so that it may conduct

discovery and develop the case appropriately.  Plaintiffs Motion to Enforce literally demands that

Allied either (1) lose all rights to designate experts, or (2) designate unnecessary experts and depose

all the experts on subjects that may be irrelevant depending on which law applies.  Avoiding

significant waste of time and money is "good cause" which warrants modification of the scheduling

order to accommodate ruling on the issues of venue and choice of law.

Much of the delay about which Plaintiffs complain resulted from Plaintiffs' request to

2

conduct discovery on venue, for extended deadlines to do so, and then, to brief the issue. The parties thoroughly discussed venue issues at their November 2003 Rule 26(f) conference. Dkt # 17, pp.2-6. Plaintiffs said they needed time to conduct discovery on venue and scheduled depositions for mid-February. Notably, Allied had already voluntarily given Plaintiffs discovery long before the January pretrial hearing *to speed up* the process. At the January 2004 hearing, Plaintiffs also requested an extension of time to March 2, 2004 to file their response to Allied's venue motion. Tr., 8. If there has been delay, it has been due to Plaintiffs' request for more time to do discovery on venue and additional time to brief the issue despite having had five months notice of Allied's challenge to venue and expedited discovery from Allied to develop the venue issue.

**B.    Choice of Law Must Be Decided Before Discovery Proceeds.**

Choice of law is critical to this case, both in its own right, and as a component of the section 1404(a) transfer analysis. There is nothing preventing a determination of the issue now, and indeed delaying its determination impedes development of the case. As discussed in prior briefing, Allied cannot select its experts or cross-examine Plaintiffs' experts, or properly examine the fact witnesses and marshal the appropriate documentary evidence for that matter, until it has been decided whether the very different law of Louisiana or Texas applies. Plaintiffs face the same dilemma and their push to move forward in ignorance of the law that applies suggests Plaintiffs may be operating with a different goal in mind, i.e., to try to force application of Texas law by default–basing their full development of the case on that assumption. Plaintiffs, like Allied, should desire a prompt ruling so that they are clear which law applies and how properly to develop their case.

The Fifth Circuit has rejected Plaintiffs' argument that venue and choice of law need not be determined expediently in the similar *forum non conveniens* context. *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665 (5th Cir. 2003). When deciding to transfer or dismiss

3

under *forum non conveniens,* a district court considers many of the same factors considered under a section 1404(a) transfer analysis, one of which is the "avoidance of unnecessary problems of conflicts of law." In *Vasquez,* the Fifth Circuit held that this element required an expedited "choice of law" decision. *Vasquez,* 325 F.3d at 680. That decision on which state's law controls was on the merits, binding on both parties and their theories and defenses in the case. *Id.* The same reasoning and rationale apply to this case. Choice of law is a necessary issue to decide when ruling on the section 1404(a) motion and for proper and efficient development of this case. There simply is no reasonable basis for deferring the determination, and there are numerous benefits to deciding it now.

### 1.    Under Texas' Choice of Law Rules, Louisiana Law Controls.

In a diversity case, the choice of law principles of the forum state control, in this case, Texas. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941). Texas follows the Restatement's "most significant relationship" test for tort cases and requires its application to be on an issue by issue basis. *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 421 (Tex. 1984). Section 145 of the Restatement outlines the factual issues relevant to finding which state has greater contacts:

(1)    the place where the injury occurred;

(2)    the place where the injury causing conduct occurred;

(3)    the parties' residences, domiciles, places of incorporation or headquarters;

(4)    the place where the relationship between the parties is centered.

RESTATEMENT (SECOND) CONFLICT OF LAWS § 145. Notably, if the place of injury/death and the injury-producing conduct occurred in the same state, that state's law applies unless some other state has a compelling, overriding interest. RESTATEMENT (SECOND) CONFLICT OF LAWS §§ 146, cmt (d), and 175, cmt (e).

The factual determinations of section 145 must then be considered in light of Restatement

4

§ 6, which weighs the public and policy concerns of each jurisdiction:

    (1)      A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

    (2)      When there is no such directive, the factors relevant to the choice of the applicable rule of law include:

        (a)      the needs of the interstate and international systems,

        (b)      the relevant policies of the forum,

        (c)      the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

        (d)      the protection of justified expectations,

        (e)      the basic policies underlying the particular field of law,

        (f)      certainty, predictability and uniformity of result, and

        (g)      ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) CONFLICT OF LAWS § 6.

Plaintiffs principal argument on choice of law is that Texas law should apply because they are Texans, despite the fact that the accident occurred in Louisiana and also involved numerous Louisiana residents–many of which are involved in the three related suits now pending in Louisiana courts and applying Louisiana law. Plaintiffs' argument is insufficient as a matter of law under §§145 and 6 to overcome the strong rationale for applying the law of the state: (i) where the accident occurred; (ii) the conduct causing the accident occurred; (iii) the relationship of the parties was formed; and (iv) three other suits arising from the same accident and filed in Louisiana are now pending. Louisiana has greater interests and policies concerns favoring application of its law over the law of Plaintiffs' residence when Plaintiffs were not even in their home state, the defendant is

5

not from that state, and all witnesses and documentary evidence relating to the accident are in the state where the accident occurred and the only connection between the parties was formed. *See infra*.

Plaintiffs' subsidiary argument that Gorski's driving through Texas the day before the accident somehow warrants application of Texas state begs the question. This action by Gorski was not the cause of the accident and, at best, is far too attenuated in the causal chain to influence the choice of law issue. *See Vasquez*, 325 F.3d at 674 (rejecting argument that state of product's design controlled because it ignored the production, sale, and actual failure of the product in a different state). Louisiana law governs this action.

### (a)   The Place Of The Injuries And The Injury-Producing Event Control.

In actions for personal injury or death, the law of the state where the injury occurred determines the rights and liabilities of the parties, unless some other state has a more significant relationship to the occurrence. RESTATEMENT (SECOND) CONFLICT OF LAWS §§ 146 and 175. Where the injury-producing conduct and the injury occur in the same state, that state's law controls because it has a dominant interest in regulating tortious conduct and compensating injuries within its borders. RESTATEMENT (SECOND) CONFLICT OF LAWS §§ 146, cmt (d), and 175, cmt (e).

Plaintiffs argument that the accident's occurrence in Louisiana was merely "fortuitous" fails for several reasons. *See* Response, p. 8-9 (dkt #45), *citing* RESTATEMENT (SECOND) CONFLICT OF LAWS § 145, cmt (e), and *Baird v. Bell Helicopter Textron,* 491 F.Supp. 1129, 1139 (N.D.Tex. 1980). The Northern District of Texas has clarified that "the doctrine of fortuity" only applies to aircraft injuries where the plaintiffs were passengers on the aircraft. *Cates v. Creamer,* 2001 U.S.Dist. Lexis 12533, *8 (N.D.Tex. 2001), *citing In re Air Crash Disaster Near Chicago, Ill.,* 644 F.2d 594, 615-616 (7th Cir. 1981) (holding Illinois law controlled because it was place of air crash

6

and it responded to emergency, handled the clean-up and rescue operations, had a major airport, etc.). These plaintiffs do not include "bystanders" or people on the ground, and in the instant case Plaintiffs were clearly on Louisiana soil and using Louisiana's highways when the accident occurred. *Id.*

Air crash cases also are inherently different from automobile crash cases from a regulatory standpoint: whereas a state has strong interests in and policies for regulating the use of its highways, infractions of its rules, and resolving issues with respect to injuries that occur within its boundaries and which are investigated by its state authorities; airplane crashes are inherently different and do not implicate state policies or concerns because the federal government preemptively regulates airspace and investigates air crashes. In addition, Louisiana provided emergency services and hospital treatment to all of the injured persons. Louisiana provided almost $800,000.00 in hospital services to one Plaintiff and over $1.2 million to a second Plaintiff. Louisiana hospitals have already given written notice of "privileges" (liens) on their behalf under Louisiana law.[2] Louisiana law is already implicated by the fact of these liens. Moreover, in fact and in law, these Plaintiffs did not have a cause of action until the accident in Louisiana. That the case arose in Louisiana is irrefutable.

Another Texas court has specifically declined to apply *Baird* to the automobile accident context. *Vizcarra v. Roldan,* 925 S.W.2d 89, 91 (Tex. App.–El Paso 1996, no writ). The court in *Vizcarra* concluded that Mexico's interest in regulating the activities of drivers within its borders was superior to any interest Texas had in controlling the acts of its corporations. *Id.* Moreover, even in an air crash accident, the Fifth Circuit has declined to apply Texas law based purely on the plaintiffs' residences, even despite the fortuitousness of the accident. *In re Air Disaster at Ramstein*

---

[2] LSA-R.S. 9:4752, 4753. Under Louisiana law, what Texas calls a "lien" is called a "privilege."

*Air Base, Germany*, 81 F.3d 570, 576 (5th Cir. 1996); *see also In re Air Crash at Mannheim, Germany,* 769 F.2d 115 (3d Cir. 1985) (concerning helicopter crash).

Even the district court in *Baird*–on which Plaintiffs rely–did not rest solely on the "fortuitous" argument. *Baird* was a products case brought against Textron (a Texas company) by Canadians who were injured when a Textron helicopter crashed in Surinam. 491 F.Supp. at 1132. Textron built the copter in Texas and repaired it once there. *Id.* at 1133. No one argued Surinam law applied; rather the dispute was whether to apply Texas or Canadian law. *Id.* at 1139. The "fortuitous" discussion played little role in the court's reasoning given that Surinam was not a real consideration. *Id.* The district court chose Texas law because Textron's plant was there, its alleged negligence occurred in Texas, and the copter was made there. *Id.* at 1140-42.

This is not a products liability case. This negligence litigation, and the now *three* related cases filed and pending in Louisiana state and federal courts, result solely from a motor vehicle accident in Louisiana–under Louisiana traffic laws, investigated by Louisiana officers, involving numerous Louisiana plaintiffs and witnesses, and with treatment by Louisiana emergency personnel and doctors. The alleged injury– causing conduct–Gorski falling asleep–occurred in Louisiana. The only connection or relationship between Allied and these Plaintiffs was created in Louisiana in this accident. Thus, three out of four of the section145 factors favor application of Louisiana law here.

To the extent Plaintiffs allege negligent hiring, training, failure to monitor and the like, these "[are] not wrong unto [them]selves." *See e.g., Perkins v. Dynasty Group Auto,* 2003 Tex. App. Lexis 1046, *10-12 (Tex. App.–El Paso 2003, no pet.)[memorandum opinion (not designated for publication)] (negligently renting or entrusting car was not the conduct causing injury; falling asleep at the wheel was); *Spence v. Glock,* 227 F.3d 308, 312 (5th Cir. 2000) (defective manufacture in another state was not the place of injury, rather the injury occurred in the place where the item was

8

purchased and ultimately malfunctioned). Here, the wrong occurred when and if Gorski fell asleep or became physically disabled at the wheel in Louisiana causing the impact of the truck on the vehicles in front of it, and thereby the accident and injuries in Louisiana. *See Cates v. Creamer,* 2001 U.S.Dist.Lexis 12533 at *8, *and Perkins,* 2003 Tex. App. Lexis 1046, *10-12 (both holding that wrong was the driver falling asleep at the wheel despite long travel through other states, and that the wrong occurred in the state where driver actually fell asleep at the wheel). Section 145 clearly states that "[i]n the case of personal injuries...the place where the injury occurred is a contact that, as to most issues, plays an important role in the selection of the state of the applicable law...."

The mere fact that these particular plaintiffs, among many plaintiffs, reside in Texas, is alone insufficient to warrant application of Texas law. *Vizcarra,* 925 S.W.2d at 91 (place of auto accident in Mexico was place where the relationship between plaintiffs and defendant arose, and this in combination with the place of injury and negligence causing the accident having occurred in Mexico warranted application of Mexican law). Plaintiffs' proof supports but one of four section 145 factors, and ignores the three related suits pending in Louisiana involving Louisiana plaintiffs and citizens and invoking Louisiana law.

Moreover, as a factual matter, the occurrence of this automobile accident in Louisiana was not merely fortuitous. Driver Gorski was driving through Louisiana on a scheduled route; his presence there was not merely accidental. Nor were the Plaintiffs there purely by coincidence. En route to Florida, Plaintiffs knew and planned to travel several hours across the state of Louisiana. By doing so, Plaintiffs should have known they would have to follow Louisiana law, and they should have expected that Louisiana law would apply in the event an accident within its borders. The full force of Louisiana's resources then assisted them following this accident. By fully availing themselves of the privileges and benefits of Louisiana, Plaintiffs may not now avoid application of

9

its laws based on personal choice. *See Perkins,* 2003 Tex. App. Lexis 1046, *10-12 (in action for personal injury, law of state where injury occurred determines rights and liabilities of parties). Application of Louisiana law is not only fair in this case, it is logical and required by law.

**(b)    Louisiana Is The Only Location Of The Actions That Caused The Occurrence.**

Without citation and stretching causal connection based largely on supposition, Plaintiffs assert that their injury was "caused" in Texas because Allied's driver, Gorski, allegedly began to become tired while driving in Texas the day before the accident and allegedly exceeded his driving time while in Texas. Response, p. 9; dkt #45. The Fifth Circuit has explicitly rejected this kind of attenuation. In *Vasquez,* the estates of citizens killed in an automobile accident brought a wrongful death suit against a tire manufacturer, alleging that the tire was defective. The Court refused to find that the "conduct causing the injury" occurred where the tire was designed rather than where it was produced, sold, and actually failed to function properly. *Vasquez,* 325 F.3d at 674. In the Court's view, the plaintiffs' argument reached too far back in the causal chain. *Id.* Similarly, here, any argument that the "cause" of this accident and resulting injuries occurred a day earlier in Texas is not only speculative, but too far removed from the alleged conduct–Gorski falling asleep–and the resulting incident, which actually caused the injuries the next day in Louisiana.

Plaintiffs' argument also ignores that he likewise spent a lot of time driving through Arizona and California. Indeed, based on Plaintiffs argument, venue would lie in any state through which Gorski had driven. This position is clearly contradicted by Texas law. *See Vizcarra,* 925 S.W.2d at 91; In *Cates,* 2001 U.S.Dist.Lexis 12533, *8, the Creamers had rented a car from Hertz in Florida to drive to Spearman, Texas; they planned to driver 24 hours "straight through." 2001 U.S.Dist. Lexis 12533, *2. After Mr. Creamer had driven most of the trip, he fell asleep at the wheel, ran off the road in Bowie, Texas, and hit Cates. *Id.* at 3. Cates sued Hertz in Texas for negligent entrustment, but

claimed Florida law controlled Hertz's liability. *Id.* at *1, 7-8. The Dallas district court rejected the argument that the conduct causing injury was in Florida, the place of the entrustment. Rather, it found the conduct leading to injury was Creamer falling asleep at the wheel in Texas and hitting someone there. *Id.* at *9. The same is true here assuming Gorski did fall asleep at the wheel and caused this accident.

In *Perkins,* 2003 Tex. App. Lexis 1046, *10-12., Defendants Widgren and Freeman (both foreign nationals) were part of a group that rented a vehicle from Dynasty in Florida to drive to California. The first day they drove from Florida to New Orleans; the next day they drove from New Orleans to San Antonio; the accident occurred on the third day near El Paso, apparently because Widgren fell asleep. *Id.* Freeman died from the collision, and her survivors sued Dynasty in El Paso for negligent entrustment. Applying Texas law, the trial court granted Dynasty a summary judgment. The El Paso court of appeals upheld a ruling to apply Texas law. *Id.* It rejected the argument that the conduct occurred in Florida. Citing *Cates* and *Vizcarra,* it concluded the "conduct leading to the injuries" was in Texas where Widgren fell asleep and crashed. *Id.* at *10-11, 14. The same is true here, except that Gorski's alleged negligence occurred in Louisiana.

In short, Plaintiffs' subsidiary argument that Gorski's driving through Texas the day before the accident somehow warrants application of Texas state law fails. Driving through Texas, Arizona, New Mexico, or California did not cause the accident in Louisiana, and, at best, reaches too far up the causal chain to influence the choice of law issue. No Texas case supports Plaintiffs' contention that becoming tired in Texas the day before an accident in Louisiana is an element of Plaintiffs' cause of action or requires that Texas law apply. Indeed, Texas law contradicts Plaintiffs' assertion. Texas holds that while being sleepy may be evidence of driver negligence, it is not the ultimate issue for the jury to determine. *See Kauman v. Miller,* 405 S.W.2d 820, 824 (Tex. Civ. App.–Beaumont 1966),

*rev'd on other grounds,* 414 S.W.2d 164 (Tex. 1967)(trial court properly refused to submit question on driving while fatigued because it was not the ultimate issue; fatigue cannot cause an accident unless it causes some act or omission that is the proximate cause of the collision). The same is true here.

### (c)    Plaintiffs Residence In Texas Alone Is Not Sufficient to Overcome the Presumption To Apply The Law Of State Where The Injury, Wrongful Conduct, And Relationship Of The Parties Occurred.

Plaintiffs argue that Louisiana's interest in their compensation is "vastly inferior"to Texas' interest because they are Texans, and no party is domiciled in Louisiana. Response, p. 10 (dkt #45), citing *Torrington Co. v. Stutzman,* 46 S.W.3d 829, 848, 850 (Tex. 2000). However, not only have all of the other plaintiffs from this accident filed suit in Louisiana, but in *Torrington,* the Texas Supreme Court rejected these Plaintiffs' argument. *Id.* at 850.

In *Torrington,* North Carolina survivors of a Nebraska resident sued a Texas company in products liability for a helicopter crash in North Carolina. 46 S.W.3d at 833-34, 849. The copter was made and sold in Texas; service bulletins and warnings about the defective part at issue were sent from Texas. *Id.* at 850. The parties stipulated Texas law controlled liability. *Id.* The issue was whether to apply Texas or Nebraska law on compensatory damages.

The Texas Supreme Court held that Texas law of compensatory damages applied because the product was manufactured in Texas, the defendant was domiciled in Texas, and Texas law controlled liability. *Id.* The Supreme Court rejected the plaintiffs' argument that the law of the decedent's domicile should always govern compensatory damages. *Id.* A decedent's domicile is not determinative, and plaintiffs should not be permitted to forum shop on damages any more than on liability. *Id.*

The Federal Fifth Circuit has also noted that the Restatement "place[s] more emphasis on the

12

place of the alleged misconduct"–here, the accident in Louisiana–"than on the residential preferences

of scattered plaintiffs." *In re Air Disaster at Ramstein Air Base, Germany*, 81 F.3d at 576. There,

as here, Texas law was rejected because Texas had "its only relevant contacts with th[e] case in the

fact that many, but not all, of the plaintiffs were domiciled there." *Id.* The same is true here and this

Fifth Circuit case compels a rejection of Texas law in favor of Louisiana law for the same reason.

2.    **General Choice Of Law Principles Weigh In Favor Of Louisiana Law.**

Finally, the general principles of Restatement section 6 bolster the conclusion that Louisiana

law must be applied. *See supra* p. 5-6. Plaintiffs were injured in a motor vehicle accident that

occurred only in Louisiana. Texas has no connection with or interest in the accident, other than the

fact that some–although certainly not all–of the persons injured in the accident reside there. Many

others reside in Louisiana and have filed suit in Louisiana. Three other suits are pending in Louisiana

to date. Like all of the injured parties, plaintiffs here have no relationship to Allied and would have

had none but for this accident in Louisiana.

The first three factors of section 6–the needs of the interstate systems, the relevant policies

of Louisiana, and the relevant policies of Texas and other interested states– weigh in favor of applying

Louisiana law. The parties agree that choice of law here is between Louisiana or Texas. All of the

other cases arising from this accident are applying Louisiana law. Although Texas has an interest in

ensuring that its citizens are compensated for injuries, so does Louisiana, and Louisiana citizens were

likewise injured in this accident. Louisiana has an even greater interest in regulating its highways and

resolving disputes over accidents that occurred there–especially when it involved Louisiana citizens.

Moreover, the vast majority of the witnesses are employed in Louisiana. Allied is incorporated in

Delaware, headquartered in Illinois and operates in all fifty states–Texas does not have any greater

interest than Louisiana in ensuring that this national company, with offices in both states, is held

13

responsible to the extent it is liable. The location of the accident in Louisiana and involving Louisiana residents weigh heavily in favor of applying Louisiana law. *See e.g., Vizcarra,* 925 S.W. 2d at 91-92 (applying Mexican law to motor vehicle accident that occurred in Mexico to allow Mexico to patrol its highways and where there were plaintiffs who resided in Mexico). As in *Vizcarra, id.,* Louisiana "has no reason to defer to the State of Texas for regulation of the act that caused this accident."

This was true in *Vizcarra* even though Mexico, similar to Louisiana, had adopted laws limiting the extent of liability in negligence cases–and this is a negligence case as well. Factors four through seven of section 6–the protection of justified expectations, the basic policies underlying the particular field of law, certainty, predictability and uniformity of result, and ease in the determination and application of the law to be applied–are furthered on this basis by applying Louisiana law. Louisiana has a strong policy interest in applying its laws, including its more restrictive laws regarding punitive damages. *See id.* Parties residing in and traveling through Louisiana should fully expect to be governed by Louisiana laws while availing themselves of Louisiana highways and authorities and emergency personnel, all of which are paid for by Louisiana taxpayers. Louisiana's legislature has made a conscious policy decision to regulate recovery in its tort law, and that policy must be respected when the accident occurred in the state, was investigated and handled by state authorities, involved Louisiana parties, and three additional Louisiana suits are pending. *See id.*

Indeed, given that three additional lawsuits emanating from the same accident are now pending in Louisiana, the policy concerns for certainty, predictability, and uniformity of result demand that Louisiana law be applied to all cases and to compensate all parties in connection with this singular Louisiana accident. Based on the Napoleonic Code and its unique duty/risk tort law that differs from the common law of the other forty-nine states, ease in determination and application of

14

Louisiana's law to all parties and disputes resulting from this accident also militates in favor of a choice of Louisiana law for all facets of this single accident. RESTATEMENT (SECOND) CONFLICT OF LAWS § 6. *See also Vasquez*, 325 F.3d at 674-75 (noting that undercutting state's right to apply laws restricting recovery would also undercut that state's policy decision to create a more hospitable climate for investment and recreation, while also preventing uniformity and certainty in its decisions). In sum, Louisiana has the most significant connection to this case, as well as the other three pending cases, and thus Louisiana law must be applied. *Id.*

**C.    When Section 1404(a) Factors Are Properly Considered, The Case Must Be Transferred to the Eastern District of Louisiana.**

Allied has heretofore thoroughly briefed the reasons why this case should be transferred to Louisiana. In applying § 1404(a), the court first must determine whether the district to which transfer is sought is one in which the claim could have been filed originally. Here, *all of the other cases* litigating this accident have been filed in Louisiana, and it is undisputed that this case could have been filed there originally. *In re VOLKSWAGEN AG; Volkswagen of America, Inc.,* — F.3d —, 2004 WL 1098840 (5th Cir., May 18, 2004). In *Volkswagen*, the Fifth Circuit explained that § 1404(a) focuses on "the convenience of the parties and witnesses" and "the interests of justice." The factors to be considered in the analysis include private and public concerns. The private concerns are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. [citations omitted]. The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and, (4) the avoidance of unnecessary problems of conflict of laws or the application of foreign law. *Id.*

Allied incorporates its prior briefing on these concerns and only summarizes some of the most important facts here. Of the private factors, it cannot be disputed that the accident itself occurred in Louisiana, and consequently, the entire investigation, emergency response and extensive medical treatment took place there. At least eleven of the listed fact witnesses are in Louisiana, and they are also employed there. Significantly, Plaintiffs themselves are not well enough to attend the trial, no matter where it is held. Their desire to have the trial in Brownsville does nothing to facilitate their ability to attend, and likewise, holding the trial in the venue which gives everyone compulsory process over the majority of the key witnesses,[3] a judge with knowledge of Louisiana law, and is the district of the accident, would not pose a hardship on the injured Plaintiffs. There is no evidence or assertion that the injured Plaintiffs will be active participants in the trial, and there is no impediment to the Plaintiffs who were not injured to travel to Louisiana. See *Lemery v. Ford Motor Co.*, 244 F.Supp.2d 720, 731 (S.D. Tex. 2002). All of the "private concerns" mitigate in favor of transferring the case to Louisiana.

As for the public concerns, the same is true. The administrative difficulties flowing from court congestion are significant in the Southern District of Texas. Indeed, Plaintiffs filed this lone Texas case in the busiest district in the country. According to the Administrative Office of the United States Courts, Southern Texas leads the Fifth Circuit, and ranks second in the nation, in its number of case filings. It leads the nation in the number of criminal case filings, which often take precedent over civil cases. The Southern District of Texas, according to Judicial Workload Statistics released

---

[3] Compulsory process over the witnesses is a very important factor. Despite the witnesses affidavits or letter "agreements" which they provided to the Plaintiffs, circumstances can change. The *only* assurance that *any* of the parties has that these witnesses will actually be at trial is to require their attendance by subpoena. Even a willing witness can be required for other reasons to be somewhere else, and there is no remedy without a subpoena. Compulsory process is an important right of the Defendant, and it should not be taken away. Defendant's right to compulsory process of the fact witnesses surrounding the accident and response thereto is available only in Louisiana.

16

at this year's Fifth Circuit Judicial Conference, received over 12,617 new cases in 2003, compared to the mere 3,976 filed in the Western District of Louisiana. The Western District of Louisiana is certainly able to give this case and the Plaintiffs a timely trial and the time and attention this case deserves. In addition, a Louisiana judge will have the requisite familiarity with the applicable law and will already understand the intricacies of it. Louisiana law, as we have previously discussed, is different in numerous material respects from Texas law. A local judge is less likely to create a conflict in the law. Moreover, Louisiana has a significant interest in regulating its highways and enforcing its traffic laws, as well as deciding disputes that injure people on its soil and require the use of its investigatory, emergency and medical resources.

The pendency of the three related suits, one of which is in federal court in the Western District, bear heavily on the interests of justice and weigh strongly in favor of a transfer here. *Continental Grain Co. v. The Barge FBL-585,* 364 U.S. 19, 26 (1960); *Jarvis Christian College v. Exxon Corp.,* 845 F.2d 523, 528-29 (5th Cir. 1988); *DataTreasury Corp. v. First Date Corp.,* 243 F.Supp.2d 591, 594 (N.D.Tex. 2003). "Since *Continental Grain,* a number of courts, including the Fifth Circuit, have held that the existence of related litigation in a transferee court is a factor that weighs strongly in favor of transfer." *Id.* Accordingly, all of the public interest concerns inherent in a §1404(a) analysis also require transfer of this case to Louisiana–the state where the accident occurred and whose law applies.

### III. Conclusion.

For these reasons and those stated in our prior briefs on these issues, Defendant Allied Van Lines respectfully asks the Court to decide the pending issues of venue, choice of law, and set a schedule for continued discovery. The current discovery cut-off is August 2, 2004, and the parties need prompt rulings on these issues so that they may proceed. Venue and choice of law affect many

17

critical strategic, factual, and legal decisions that Allied must make before discovery can proceed. An immediate decision on both venue and choice of law is required to avoid irreparable harm to the parties in their discovery efforts and trial preparation. Further delay will only cause harm to the parties.

A motion to transfer venue should take "top priority" in handling the case. *In re Horseshoe Entertainment*, 337 F.3d 429, 433 (5th Cir. 2003). Judicial economy requires that the parties not be burdened with discovery on the merits before receiving a ruling on a motion to transfer venue. *McDonnell Douglas Corp. v. Polin*, 429 F.2d 30, 31 (3rd Cir. 1970). The same reasoning applies, especially in this case, to the choice of law.

While Allied wants to give the court time to carefully consider these issues, Allied's venue motion has been pending for several months, and Plaintiff's Motion to Enforce, seeking effective death penalties on the defense if discovery does not proceed, compels Allied to seek an immediate ruling from this Court on these issues.

ALLIED VAN LINES requests the court grant its motion to transfer venue, decide that Louisiana law controls this litigation, abate and/or modify the scheduling order, and deny Plaintiffs' motion, and grant any other relief necessary.

Respectfully submitted,

By: _____

**Tom Lockhart**
Texas State Bar No. 12473500
Texas Federal I.D. No. 2257
**Roger W. Hughes**
Texas State Bar No. 10229500
Texas Federal ID No. 5950

18

**ADAMS & GRAHAM, L.L.P.**
P. O. Drawer 1429
Harlingen, TX 78551-1429
Phone No.: (956)428-7495;
Fax:(956)428-2954

**John W. Waters, Jr.**
LA State Bar No. 13258
LA Federal I.D. No. 13258
**BIENVENU, FOSTER, RYAN
    & O'BANNON**
1010 Common Street, Suite 2200
New Orleans, LA  70112-2401
Phone: (504) 581-2146;
Fax: (504) 522-7859

Attorneys for *Defendant* ALLIED VAN LINES

<u>Certificate of Service</u>

I hereby certify that on this the 15th day of June, 2004, a true and correct copy of the above and foregoing pleading was mailed to counsel for Plaintiffs as follows:

Mr. Richard Warren Mithoff                    *Via CM/RRR 7003 2260 0000 0440 3081*
Mr. William J. Stradley
Ms. Janie J. Jordan
**MITHOFF & JACKS, L.L.P.**
500 Dallas Street, Suite 3450
Houston, Texas 77002
***Attorneys for Plaintiffs***

Mr. Eduardo Rodriguez                         *Via Ordinary Mail*
Mr. Joseph A. Rodriguez
Mr. R. Patrick Rodriguez
**RODRIGUEZ, COLVIN & CHANEY, L.L.P.**
1201 East Van Buren
Brownsville, TX 78520

**TOM LOCKHART**

19

JS 44 (Rev. 3/99)

**CIVIL COVER SHEET** CV04-1250 L-O

MAGISTRATE JUDGE HILL

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
Shawn Miller, individually and on behalf of his minor child, Alexa Miller

**DEFENDANTS**
Gorski Wladyslaw, Allied Van Lines & TransGuard Insurance Company of America

**(b)** County of Residence of First    State of LA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed    State of Florida
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Steven A. DeBosier
E.Eric Guiard & Associates
1075 Government St., Baton Rouge, LA 70802
(225) 379-3333

Attorneys (If Known)
John W. Waters, Jr., H.F. Foster, III
Bienvenu, Foster, Ryan & O'Bannon
1010 Common Street, Suite 2200
New Orleans, LA 70112 (504) 310-1500

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
X 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | X 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | X 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY / PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander ☐ 365 Personal Injury — Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | PROPERTY RIGHTS | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability PERSONAL PROPERTY | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle ☐ 370 Other Fraud | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| | X 350 Motor Vehicle ☐ 371 Truth in Lending | | | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability ☐ 380 Other Personal Property Damage | LABOR | SOCIAL SECURITY | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| REAL PROPERTY | CIVIL RIGHTS PRISONER PETITIONS | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | FEDERAL TAX SUITS | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment Habeas Corpus: | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare ☐ 535 Death Penalty | | | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 Original Proceeding
X 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 USC 1332 and USC 1446 - Plaintiffs seek damages for bodily injury due to negligence of diverse defendants as a result of a motor vehicle accident allegedly the fault of Allied's driver, Gorski.

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $    CHECK YES only if demanded in complaint: JURY DEMAND: ☐ Yes  X No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE See attached Supplement    DOCKET NUMBER See attached Supplement

DATE 6/8/04    SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

JS 44 Reverse (Rev. 12/96)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

## Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.      (a) Plaintiffs-Defendants.  Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

        (b.) County of Residence.  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

        (c) Attorneys.  Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.     Jurisdiction.  The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States, are included here.

United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.    Residence (citizenship) of Principal Parties.  This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.     Nature of Suit.  Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.      Origin.  Place an "X" in one of the seven boxes.

Original Proceedings.  (1) Cases which originate in the United States district courts.

Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment.  (7) Check this box for an appeal from a magistrate judge's decision.

VI.     Cause of Action.  Report the civil statute directly related to the cause of action and give a brief description of the cause.

VII.    Requested in Complaint.  Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand.  In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.   Related Cases.  This section of the JS-44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

Date and Attorney Signature.  Date and sign the civil cover sheet.

**Supplement to Section VIII., Related Cases, of Civil Cover Sheet (JS-44)**

Re:  *"Shawn Miller, Individually & On Behalf Of His Minor Child, Alexa Miller v. Gorski Wladyslaw, Allied Van Lines, & TransGuard Insurance Company of America"*

There is pending in the United States District Court for the Southern District of Texas, Brownsville Division, the matter entitled *"Guadalupe and Amelia Guerra, Individually and as Personal Representatives of the Estate of Cindy Guerra, Deceased, and Lisa Guerra, Individually Rene Garza and Patricia Garza, Individually and as Personal Representative of the Estate of Jennifer Garza, Deceased, and Joe Alfaro, Individually, vs. Allied Van Lines, Inc. and Sorenson Moving and Storage Company, Inc.",* Civil Action No. B-03-142, assigned to the Hon. Hilda Hilda G. Tagle.

The aforementioned action in the Southern District of Texas (Civil Action No. B-03-142) involves different plaintiffs but arises out of the same accident as the one at issue in the case now being removed to the Western District of Louisiana. Allied is the sole remaining defendant in the action in the Southern District of Texas and is effectively the only defendant in the action being removed (the other defendants being Allied's liability insurer, TransGuard Insurance Company of America, which has been sued under Louisiana's "Direct Action" statute, LRS 22:655, and Wladyslaw Gorski, incorrectly referred to in plaintiffs' *Petition For Damages* as "Gorski Wladyslaw", who was driving for Allied and died in the accident in question, and is not a proper party).

Allied Van Lines has denied that venue is proper in the Southern District of Texas and has filed a motion in Civil Action No. B-03-142 to transfer venue to this, the United States District Court for the Western District of Louisiana, where the accident occurred. That motion is presently under submission to Judge Tagle.

June 8, 2004

BIENVENU, FOSTER, RYAN & O'BANNON

BY: _____

JOHN W. WATERS, JR. (#13258) - T.A.
H. F. FOSTER, III (#5739)
MICHAEL F. BOLLMAN (#17918)
1010 Common Street, Suite 2200
New Orleans, LA 70112-2401
(504) 310-1500
Direct: (504) 310-1560
Fax: (504) 522-7859
jwaters@bfrob.com
*Attorneys for defendants, Allied Van Lines* and
*TransGuard Insurance Company of America*

U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
FILED

JUN - 9 2004

ROBERT H. SHEMWELL, CLERK
BY _____
                    DEPUTY

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE-OPELOUSAS DIVISION

SHAWN MILLER, INDIVIDUALLY
& ON BEHALF OF HIS MINOR CHILD,
ALEXA MILLER

VERSUS

GORSKI WLADYSLAW, ALLIED
VAN LINES, & TRANSGUARD
INSURANCE COMPANY OF AMERICA

*
*
*

*

*

*
*

CIVIL ACTION
NO.

# CV04-1250 L-O

SECTION "" MAG. ()

JUDGE        MAGISTRATE JUDGE Hill

MAGISTRATE

## NOTICE OF REMOVAL
### (28 USC 1332 AND USC 1446)

I.

Defendants, ALLIED VAN LINES and TRANSGUARD INSURANCE COMPANY OF AMERICA, give

notice to the Clerk, 16th Judicial District Court for the Parish of St. Martin, State of Louisiana and

to all adverse parties, that is:

> Shawn Miller, individually & on behalf of his minor child, Alexa Miller, plaintiffs,
> through their attorney of record, Steven A. DeBosier, 1075 Government Street, Baton
> Rouge, Louisiana, 70802

that pursuant to *28 USC 1332* and *28 USC 1446* they have filed this *Notice* and removed the action

described hereinbelow to the United States District Court for the Western District of Louisiana, to-

wit:

> "*Shawn Miller, individually & On Behalf Of His Minor Child, Alexa Miller v. Gorski*

-1-

*Wladyslaw, Allied Van Lines, & TransGuard Insurance Company of America*", No. 68012, Section C, on the docket of the 16th Judicial District Court for the Parish of St. Martin, State of Louisiana

and that they have done so on the date set forth in the Certificate which follows.

## II.

The grounds for removal are these:

(1)    The amount in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs; and

(2)    The matter in controversy is between citizens of different states because:

    (A)    plaintiffs, Shawn Miller and his minor child, Alexa Miller, are residents of the Parish of East Baton Rouge, State of Louisiana; and

    (B)    defendant, Wladyslaw Gorski (incorrectly referred to in plaintiffs' *Petition For Damages* as "Gorski Wladyslaw") died in the accident in question and is not a proper party, but in any case was a resident of the State of Florida;

    (C)    defendant, ALLIED VAN LINES, is a corporation organized under the laws of the State of Delaware with its principal place of business in the State of Illinois; and

    (D)    defendant, TRANSGUARD INSURANCE COMPANY OF AMERICA, is an insurer organized under the laws of, and with its principal place of business in the State of Illinois.

## III.

Defendants, ALLIED VAN LINES and TRANSGUARD INSURANCE COMPANY OF AMERICA, first received notice on June 7, 2004, when ALLIED VAN LINES received a copy of plaintiffs' *Petition For Damages*, that is, within thirty (30) days of the filing of this *Notice*.

## IV.

This removal action was commenced on the 8th day of June, 2004, and removal has been effected within one (1) year after its commencement.

## V.

-2-

Wladyslaw Gorski (incorrectly referred to in plaintiffs' *Petition For Damages* as "Gorski Wladyslaw") died in the accident in question and is not a proper party, but in any case has not been served and need not join in this removal.

## VI.

Copies of all process, pleadings, and orders served on ALLIED VAN LINES are attached to this *Notice* and have been filed with it. TRANSGUARD INSURANCE COMPANY OF AMERICA is advised that it has been served through the Louisiana Secretary of State's office which has mailed suit papers but as of this filing those have not been received by TRANSGUARD INSURANCE COMPANY OF AMERICA.

## VII.

This *Notice* is being promptly given to all adverse parties, a copy is being promptly filed with the Clerk of the State Court designated in Paragraph I above, and it has been signed pursuant to Rule 11 of the *Federal Rules of Civil Procedure*.

BIENVENU, FOSTER, RYAN & O'BANNON

BY: _____
JOHN W. WATERS, JR. (#13258) - T.A.
H. F. FOSTER, III (#5739)
MICHAEL F. BOLLMAN (#17918)
1010 Common Street, Suite 2200
New Orleans, LA 70112-2401
(504) 310-1500
Direct: (504) 310-1560
Fax: (504) 522-7859
jwaters@bfrob.com
*Attorneys for defendants, Allied Van Lines* and
*TransGuard Insurance Company of America*

## CERTIFICATE

I hereby certify that a copy of the above and foregoing has been served upon all counsel of

-3-

record by depositing same in the United States Mail, postage pre-paid, June 8, 2004.

-4-