

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

**United States District Court**
**District of Texas**
**FILED**

**JUN 2 9 2004**

**Michael N. Milby**
**Clerk of Court**

| | | |
|---|---|---|
| GUADALUPE GUERRA, *et al.*, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  B-03-142 |
| | § | (JURY) |
| ALLIED VAN LINES, INC., | § | |
| | § | |
| *Defendant.* | § | |

---

## PLAINTIFFS' MOTION TO RECONSIDER
## TRANSFER ORDER

---

**MITHOFF & JACKS, L.L.P.**

RICHARD WARREN MITHOFF
*Attorney-in-Charge for Plaintiffs*
State Bar No. 14228500
Federal I.D. No. 2102
WILLIAM J. STRADLEY
State Bar No. 19353000
Federal I.D. No. 397
JANIE L. JORDAN
State Bar No. 11012700
Federal I.D. No. 17407
HERRICK L. SOVANY
State Bar No. 24037533
Federal I.D. 33292
500 Dallas, Suite 3450
Houston, Texas 77002
(713) 654-1122
(713) 739-8085 [FAX]

**RUSSELL J. WEINTRAUB**
State Bar No. 21098500
*Of Counsel*
727 E. 26th Street
Austin, Texas 78705

**RODRIGUEZ, COLVIN, CHANEY**
**& SAENZ, L.L.P.**

EDUARDO ROBERTO RODRIGUEZ
State Bar No. 17144000
Federal I.D. No. 1944
R. PATRICK RODRIGUEZ
State Bar No. 24002861
Federal I.D. No. 22949
*Local Counsel*
P.O. Box 2155
Brownsville, Texas  78522
(956) 542-7441
(956) 541-2170 [FAX]

**ALEXANDER DUBOSE JONES**
**& TOWNSEND LLP**

KEVIN DUBOSE
State Bar No. 06150500
Federal I.D. No. 20300
*Of Counsel*
1844 Harvard
Houston, Texas  77008
(713) 523-2358
(713) 522-4553 [FAX]

ATTORNEYS FOR PLAINTIFFS

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF RELEVANT PLEADINGS AND EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    I.     The "Place of the Wrong" does not Compel Transfer to Louisiana. . . . . . . . . . . 7

    II.    The Convenience of "Key Witnesses" does not Compel Transfer to Louisiana. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    III.    The Inevitable Delay of a Transfer Weighs in Favor of Retaining the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION AND PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CERTIFICATE OF CONFERENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# TABLE OF CITATIONS

**CASES**                                                                                    **Page**

*American General Fire & Cas. v. Wal-Mart Stores, Inc.,*
    791 F. Supp. 763 (W.D. Ark. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Babcock v. Johnson,*
    12 N.Y.2d 473, 191 N.E.2d 279 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Dobelle v. Nat'l R.R. Passenger Corp.,*
    628 F. Supp. 1518 (S.D.N.Y. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Harris v. Berkowitz,*
    433 So.2d 613 (Fla. App. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Ingersoll v. Klein,*
    106 Ill. App. 330, 245 N.E.2d 288 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Lemery v. Ford Motor Co.,*
    244 F. Supp. 2d 720 (S.D. Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13, 15

*Mohamed v. Mazda Motor Corp.,*
    90 F. Supp.2d 757 (E.D. Tex. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Romero v. Int'l Terminal Op. Co.,*
    358 U.S. 354 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Simon v. United States,*
    341 F.3d 193 (3rd Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Torrington v. Stutzman,*
    36 S.W.3d 511 (Tex.App.–Beaumont 1999),
    *affirmed in part, reversed in part, 46 S.W.3d 829 (Tex. 2000)* . . . . . . . . . . . . . . . . . . . 11

*Torrington v. Stutzman,*
    46 S.W.3d 829 (Tex. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 16

*Vizcarra v. Roldan,*
    925 S.W.2d 89 (Tex. App.—El Paso 1996, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## REGULATIONS

37 TEX. ADMIN. CODE § 3.62(c)(5) ............................................... 3

49 C.F.R. § 390.5 ............................................................. 3

49 C.F.R. § 395.3(a) .......................................................... 7

49 C.F.R. § 395.3(a)(1) ....................................................... 3

49 C.F.R. § 395.3(a)(2) ....................................................... 3

49 C.F.R. § 395.3(b)(1)-(2) ................................................... 3

## RESTATEMENTS

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 cmt. e (1971) ................. 10, 11

TO THE HONORABLE HILDA TAGLE:

## INTRODUCTION

On June 21, 2004, this Court granted the motion of Defendant Allied Van Lines, Inc. ("Allied") to transfer this case to the Western District of Louisiana. The Court's opinion supporting the order of transfer is thorough and thoughtful, and reflects a difficult decision reached after careful consideration of voluminous briefing. Plaintiffs hesitate to ask the Court to review any additional materials.

Nevertheless, after reviewing the Court's opinion, and the Plaintiffs' responses to the motion to transfer and their supplements, Plaintiffs fear that their prior briefing may have failed to adequately apprise the Court of the nature of their cause of action, the facts already elicited in preliminary discovery and expert reports that support that cause of action, and the legal authorities that demonstrate how these facts impact the transfer analysis. Plaintiffs will endeavor not to repeat facts or authorities already urged, but to call the Court's attention to facts not previously highlighted and authorities not previously cited.

The central point is this: This case is not about a simple motor vehicle collision between private individuals, nor is it limited to the vicarious liability of an employer for the driving negligence of its truck driver. Rather, it is about a corporate failure to adhere to federal driving regulations, which, if enforced, would have caused this driver to be grounded for two days while still in Texas, so that he never would have even entered Louisiana for this collision to take place.

The alleged negligence of Allied in Texas is neither theoretical nor attenuated — it was a but-for cause of the collision. That fact significantly impacts the analysis of where the wrongful conduct occurred and the convenience of the "key" witnesses. Because those are the only two factors found to favor transfer, Dkt. # 49 at 4-7 (finding these two factors to favor transfer), 7-9 (finding other

1

factors inconsequential), Plaintiffs respectfully request that the Court reconsider its decision to transfer this case to the Western District of Louisiana.

## ISSUES PRESENTED

1.  Whether the "place of wrong" factor compels a transfer to Louisiana when:

    • there is substantial evidence of significant wrongful conduct and violations of motor carrier safety regulations under both federal and Texas laws by Allied that occurred in Texas that have been admitted by Allied; and

    • Louisiana was the fortuitous site where Allied's driver collided into Plaintiffs' vehicle a short time after both vehicles had crossed the state line from Texas to pass through Louisiana en route to Florida.

2.  Whether the convenience of "key witnesses" compels a transfer to Louisiana when:

    • the key issue in this case is not what happened at the site of the collision—which is not in dispute—but what caused Allied's driver to be impaired by sleep deprivation, and none of those expert witnesses is located in Louisiana; and

    • none of the witnesses referred to by Allied is favorable to Allied, nor are they likely to be called as witnesses by Allied, since they all place the blame for the collision on Allied.

3.  Whether the delay inevitably caused by transfer should be taken into consideration when additional delay is highly prejudicial to the Plaintiffs and their families, but benefits Allied.

4.  Whether the Court should consider the physical condition of Plaintiffs, who, because of injuries caused by Allied, are receiving medical treatment in the Southern District of Texas and will be greatly inconvenienced if compelled to appear in the Western District of Louisiana.

## SUMMARY OF RELEVANT PLEADINGS AND EVIDENCE

Plaintiffs' claims are based on the statutory duty imposed on Allied to ensure that its trucks are operated safely in accordance with both federal and Texas law. This collision occurred because a fatigued driver was allowed, and even encouraged, by Allied's system-wide policies and procedures to violate the Texas and federal rules and regulations regarding hours of service.

2

Since Allied's operations fall within the definition of a "motor carrier," and the vehicle operated was a "commercial motor vehicle," Allied's operations fall within the jurisdiction of the Federal Motor Carrier Safety Administration (FMCSA)[1] and are governed by the Federal Motor Carrier Safety Regulations ("FMCSR")[2], as prescribed by the U.S. Department of Transportation ("DOT"). These regulations have been adopted by the State of Texas with exemptions not applicable to this case.[3]

The safety rules applicable to motor carriers are contained in 49 C.F.R., Parts 325-397. *See* App. A, at 3 (Expert Report of Paul O'Neill). These regulations limit the number of hours a truck driver can drive and work. Specifically, there is a "10-Hour Rule," which provides that a driver may not drive more than 10 hours following 8 consecutive hours off duty in 2 periods of 2 or more hours each in a sleeper-berth-equipped vehicle. *See* 49 C.F.R. § 395.3 (a)(1); App. A, at 9. There is a "15-Hour On Duty Rule," which provides that a driver may not drive after 15 hours on duty following 8 consecutive hours off duty. *See* 49 C.F.R. § 395.3(a)(2); App. A., at 10. Finally, there is an "Hours of Service Rule," which provides that a driver may not drive after having been on duty 70 hours in 8 consecutive days, or 60 hours in 7 consecutive days. *See* 49 C.F.R. § 395.3(b)(1)-(2); App. A, at 9. These rules were enacted to protect the public from the most dangerous driver on the road—a fatigued truck driver likely to fall asleep at the wheel. *See* App. C, at 13 (Expert Report of Whitney Morgan).

In this case, Allied's driver, Wladyslaw Gorski, violated *all* of the Texas and federal hours

---

[1]    49 C.F.R. § 390.5 (definitions); App. A , at 3 (Expert Report of Paul O'Neill). Two of the FMCSA's many areas of jurisdictional responsibility include Driver Qualification and Hours of Service. App. A, at 3.

[2]    Allied is primarily engaged in the for-hire transportation of household goods by motor vehicle and has been assigned US DOT Identification number 76235 by the U.S. Department of Transportation. App. A, at 3.

[3]    *See* 37 TEX. ADMIN. CODE § 3.62(c)(5) (App. B)

3

of service regulations on July 19-20, 2003—*while he was in the state of Texas*—and Allied did nothing about it. *See* App. A, at 8, 12; App. D, at 9 (Expert Report of Mike Rone). Gorski began this trip in Florida, heading cross-country to deliver several loads to California. App. E-2, at 3 (Investigative Report). After delivering these loads, Gorski drove back and forth between California and Arizona picking up several loads before heading back to Florida. App. E-2, at 3. On the day of the collision, Gorski was transporting several loads of household goods that had to be in Florida on July 21, 2003—the day after the collision. App. E-2, at 41-42. There is no question that Gorski violated *all* of the applicable Texas and federal hours of service rules and regulations while he was in Texas and that Allied took no action. It was in Texas that Gorski violated the 10-hour driving rule. App. A, at 12; App. D, at 9. It was in Texas that Gorski violated the 15-hour-on-duty rule. App. A, at 12; App. D, at 9. It was in Texas that Gorski violated the maximum-hours-on-duty rule (70 hours in 8 days). App. A, at 12; App. D, at 9. He stopped in Highlands, Texas, just east of Houston, at 1:30 a.m. on the morning of July 20, after driving almost 1,400 miles, with one stop of approximately 4.75 hours near Tucson, Arizona, and three other brief stops. App. A, at 10; App. F, at 8-9 (Qualcomm records). When he left Highlands, Texas on July 20, 2003, he was in violation of the maximum-hours-on-duty rule (70 hours in 8 days). App. A, at 12; App. D, at 9.

Allied had the tools readily available to electronically monitor, track the drivers' trip progress, and communicate with Gorski. App. A, at 12; App. C, at 10; *see, e.g.*, App. F. The Allied tractor that Gorski was driving was equipped with a Qualcomm GPS device that gave Allied the location of the tractor-trailer as it made its way cross-country. App. A, at 10. Gorski's locations were periodically transmitted to Allied using this system. App. A, at 10; App. F. But Allied failed to use such information in monitoring its drivers—as it is statutorily required to do. *See* App. A, at 10 (GPS records mismatch with Gorski's logs was around 20% far exceeding the FMCSA's [DOT's]

acceptable threshold of 10%).

Gorski also consistently engaged in "log falsification" by recording his daily loading and unloading time as off-duty or in the sleeper berth of his vehicle. App. A, at 10. That practice allowed him to conceal a major portion of his on-duty time, presumably to reduce the amount of on-duty time accumulated over a 7 or 8-day period. App. A, at 10; *see, e.g.*, App. D, at 6-8 (summarizing 97 log falsifications on 73 days of logs between 1/20/03 to 7/13/03). One of Plaintiffs' experts has expressed the opinion that Allied "well knew that the activities of Mr. Gorski (and other drivers as well) during the loading and unloading process of his vehicle were not 'off duty' (or sleeper berth time). . . . In my opinion, it appears that they chose to 'look the other way' and allow the drivers to record such time as off duty or in the sleeper berth. Concealing on duty time under the circumstances is considered log falsification." App. A, at 11.

Reasonably prudent motor carriers should perform "falsification audits" to insure that its drivers' logs accurately reflect work and driving activities of the driver and identify the drivers that are not compliant and take corrective action. App. D, at 4-5. The motor carrier is expected to perform these audits to insure it is not "permitting" a driver to violate the DOT rules and regulations, leading to fatigue and the potential for serious accidents. App. D, at 5. This is one of the carrier's most important responsibilities under the regulations.[4] App. D, at 5. One of Plaintiffs' experts has

---

[4]     The DOT Interpretations of sections 395.3 and 395.8 clearly spell this out:
*Question 8:* Are carriers liable for the actions of their employees even though the carrier contends that it did not require or permit the violations to occur?
*Guidance:* Yes. Carriers are liable for the actions of their employees. Neither intent to commit, nor actual knowledge of, a violation is a necessary element of that liability. Carriers "permit" violations of the hours of service regulations by their employees if they fail to have in place management systems that effectively prevent such violations.
                                         * * *
*Question 21:* What is the carrier's liability when its drivers falsify records of duty status?
*Guidance:* A carrier is liable both for the actions of its drivers in submitting false documents and for its own actions in accepting false documents. Motor carriers have a duty to require drivers to observe the FMCSRs.

App. D, at 3-4.

5

stated:

> Allied does not have a falsification audit that would effectively identify drivers that are falsifying their logs, in order to conceal violations of the hours of service rules and regulations, as specified in 49CFR395. Their process is to only check drivers who receive roadside inspections and/or have an accident. Then they only check that specific day.
>
> <div align="center">* * *</div>
>
> It is my opinion that Allied permits its drivers to falsify their logs and that Allied does not have an effective management system in place to insure logs are accurate.
>
> It is my opinion that Allied is aware of the risks of an inadequate falsification audit and that Allied nevertheless proceeded to retain Gorski, among others, as a qualified driver in conscious disregard for the safety of the motoring public.

App. D, at 5-6.

> Another of Plaintiffs' experts confirms that Allied's log scanning system is a farce:

> According to the testimony of Mr. Davison, Allied's safety director, they audit 100% of the drivers logs on a computer system for hours of service, and there is only a report generated when there is a violation noted. Of course, this is a system that audits the logs on face value, just as they are turned in by the driver(s), with no genuine effort being made by Allied to audit the logs for falsification on a regular basis. **Their log scanning system is actually garbage in, garbage out**, and would result in mainly form-and-manner violations. Drivers could never log a fuel stop, never log loading, never log unloading, drop trips, compress time, compress miles, log on-duty functions as off-duty, and never get caught. This also amounts to aiding and abetting the drivers in violating the FMCSR's, which is a violation of §390.13.

App. C, at 10 (emphasis added).

Thus, as a result of Allied's policies and procedures, on July 20, 2003, Gorski was not fit to drive, and was in violation of *all* of the applicable Texas and federal regulations in place to prevent a tragic incident. App. A, at 12; App. D, at 9. Gorski should not have been driving at all, and Allied was required to stop him **before he ever left the Houston area** on July 20, 2003. App. A, at 12; App. D, at 9. Allied had the means to electronically monitor, track Gorski's trip progress, and communicate with him, but failed to use such information in monitoring its drivers—as it is statutorily required to do. Allied had ample evidence from its own loading, trip history, delivery,

<div align="center">6</div>

and satellite records that Gorski had **grossly** exceeded the legal allowable driving hours and was not qualified to drive **at all** on July 20th.  In fact, Gorski would not have accrued enough off-duty hours to get back on the road legally **until July 22, 2003**—two days after the collision.  App. D, at 9. Thus, Allied's failures—which occurred in Texas—were a direct, but-for cause of this collision.

## ARGUMENT

The Court weighed the appropriate balancing factors in considering a motion to transfer, and found that two of those factors favored transfer.  *See* Dkt. # 49 at 4-7.  Accordingly, Plaintiffs respectfully request that the Court consider additional argument and authorities regarding those two factors: place of the wrong, and convenience of "key" witnesses.

I.     **The "Place of the Wrong"does not Compel Transfer to Louisiana.**

As set forth in detail in the previous section, Plaintiffs have alleged, and will produce expert testimony to prove, that this incident occurred in large part because of the conduct of Allied in Texas in allowing Gorski to drive without adequate sleep, in violation of Texas and federal regulations. Those regulations prohibit a driver from driving in excess of the prescribed hours, **or an employer allowing a driver to drive** in excess of the designated hours, thus imposing liability on the employer as well as the driver.  *See* 49 C.F.R. § 395.3(a).  When Gorski left Highlands, Texas on July 20, 2003, Allied was violating a statutory duty to monitor his driving to assure that it was in compliance with Texas and federal regulations.  Those violations occurred in Texas.

Because of Allied's failure to monitor his driving, Gorski was allowed to "accumulate[] a sleep debt of major magnitude," App. G, at 1-2 (Expert Report of William C. Dement, M.D., Ph.D.), and the "impaired consciousness" of the driver "due to sleep deprivation and fatigue" was "the cause of the accident."  App. G, at 1-2.  This problem, in turn, was directly attributable to the conduct of Allied:

7

> This accident situation was foreseeable, and is an example of an accident waiting to happen. It demonstrated a conscious disregard for the safety of the public on the part of Allied, and Mr. Gorski. It is clear from the evidence produced that Allied was not effectively monitoring it's drivers, especially Mr. Gorski. It is my opinion, within a reasonable degree of certainty in the field of commercial motor vehicle compliance and safety, that Allied caused and/or contributed to the cause of the accident involving Mr. Gorski's vehicle, and the Guerra vehicle. The conduct of both Mr. Gorski and Allied fell well below the safety standards established by the FMCSR's for the protection of others. Compliance with the applicable safety requirements, which are established for safe operation, and protection of the public, is a clear duty to all commercial motor vehicle operators, and the facts of this case demonstrate both knowledge and willfulness on the part of Mr. Gorski and Allied.

App. C, at 13.

The Court's opinion observes in a footnote that Plaintiffs have argued that various acts of corporate misconduct did not occur in Louisiana, but points out that the Plaintiffs' Third Amended Complaint fails to allege where those acts did occur. *See* Dkt. # 49 at 6 n.2. Although Plaintiffs believed that it was Allied's burden, as the party seeking to transfer, to prove factors that favor Louisiana rather than Plaintiffs' burden to prove factors that favor Texas, *see* Dkt. # 32 at 12, if the pleadings are a problem, Plaintiffs should be allowed to amend rather than have their case transferred. Although Plaintiffs originally did not allege specifically where those wrongful acts occurred it is clear that Allied allowed Gorski to drive when he was in violation of Texas and federal regulations in Texas. Accordingly, Plaintiffs have filed a motion seeking permission to file an amended pleading to make that point clear.

It is certainly possible for a wrongful act in one location to result in a physical injury in another location. For example, in one of the cases cited in the Court's opinion, *Lemery v. Ford Motor Co.*, 244 F. Supp.2d 720, 732 (S.D. Tex. 2002), the court "f[ou]nd some merit to the plaintiffs' reasoning" that the place of wrong was where the car was manufactured, not where the accident occurred. That court decided to transfer, but only because the place of manufacture was not in Texas, where the plaintiffs were asserting venue.

Similarly, in *Vizcarra v. Roldan*, 925 S.W.2d 89 (Tex. App.—El Paso 1996, no writ), a Texas state court addressed the possibility of a cause of action against an employer related to the negligence of the driver that would have made the place of the wrongful act in Texas, even though the collision occurred in a neighboring jurisdiction:

> [Plaintiff] attempted to submit a negligent hiring or negligent entrustment theory against [employer]. Had [plaintiff] marshaled sufficient facts, the negligent hiring of [employee] or the negligent entrustment of the truck to [employee] might have involved a sufficient corporate act occurring in Texas to give Texas an interest in applying its law to this case. The trial court, however, found that the evidence was insufficient to submit these theories, and that finding is not challenged on appeal.

*Id.* at 91 n.1. Thus, in *Vizcarra* the place of the wrong did not turn out to be Texas because there was no evidence of negligent hiring and entrustment. By contrast, in this case there is substantial expert evidence that Allied never should have let Gorski start driving again in Texas on the morning of July 20, 2003, and Allied has **admitted** falsification of the driving logs.[5]

Federal cases involving air traffic controllers also have embraced the notion that the place of wrong can be in a place other than the place of physical injury. When the negligence of the

---

[5]     Allied's national director of safety administration who investigated the collision has admitted violating hours of service regulations and falsification of logs:

Q.     He says that he examined the two-week period from June 30, '03 to July 13, '03, and determined, using supporting documents, that there was a distinct pattern of inaccurate and/or false entries in those records. I assume you have not done any independent research that would indicate that that is a false conclusion?

A.     We have not done an independent study ourselves.

Q.     Do you believe that to be an accurate conclusion based on his study?

A.     Yes, I do.

Q.     He then goes through and itemizes each of those failures, which I won't take you through now because you have obviously been through them, and concludes that, "It is apparent that there were several times that the duty status record was falsified in an attempt to conceal hours of on-duty time and also the driving time it took to get to the locations. It is also my opinion that Mr. Gorski exceeded the 10-hour driving rule on 7-19-03 by two to five -- by two to four hours."
       And you believe that to be an accurate statement as well based on his investigation?

A.     Yes, I do.

Mark Davison Depo. at 31:17-32:16 (regarding Master Trooper Elliot's conclusions after his log audit of Gorski's logs and other documents provided to him by Allied) (App. I).

9

controllers occurs in a state different from the state where the plane crashed, courts have held that "the place where the act or omission occurred" is not the place of the crash but the place where the controllers were negligent. *See, e.g., Simon v. United States*, 341 F.3d 193 (3rd Cir. 2003) (applying Indiana law when act of air traffic controllers in Indiana caused an airplane crash in Kentucky).

Plaintiffs have argued in this case that the occurrence of this collision in Louisiana was merely a fortuity: that is, because Allied's sleep-deprived driver was an accident looking for a place to happen from the time he left Highlands, Texas, App. C, at 13, it was entirely fortuitous that he did not overtake the Guerra's automobile until both vehicles had crossed Texas and entered Louisiana.

The Restatement (Second) of Conflict of Laws identifies fortuity as any circumstance depriving the place of injury of importance in choice of law. "Situations do arise, however, where the place of injury will not play an important role in the selection of the state of the applicable law. This will be so, for example, when the place of injury can be said to be fortuitous or when for other reasons it bears little relation to the occurrence and the parties with respect to the particular issue (see § 146, Comments d-e) [giving an example in which although a state is the place of both conduct and injury 'its relationship to the occurrence and the parties is insubstantial']." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 cmt. e (1971).

In *Torrington Co. v. Stutzman*, the Texas Supreme Court adopted the Restatement's position that fortuity deprives the place of injury of importance in choice of law, 46 S.W.3d 829, 849 (Tex. 2000) (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 cmt. e, and describing it as "noting that when, as here, the place of injury is fortuitous, then place of injury is not an important contact."). In *Torrington*, when the Texas Supreme Court characterizes the place of injury as "fortuitous," in all likelihood it was referring to the fact that a helicopter manufactured with a defective bearing was, like Gorski, an accident looking for a place to happen, and it was not referring

to the fact that the helicopter crashed in Alabama and was stationed in North Carolina. *See Torrington*, 46 S.W.3d at 849; 36 S.W.3d 511, 521 (Tex.App.–Beaumont 1999), *affirmed in part, reversed in part*, 46 S.W.3d 829 (Tex. 2000).

      The Court's opinion dismisses the Plaintiffs' fortuity argument, suggesting that it is a concept that is relegated to product liability law. *See* Dkt. # 49 at 6-7, 9. Yet the concept is not limited to product liability law. *See Romero v. Int'l Terminal Op. Co.*, 358 U.S. 354, 384 (1959) (personal injury case for injury to foreign seaman on a foreign ship in New York harbor; held that the recovery a foreign seaman may receive "should not depend on the wholly fortuitous circumstances of the place of injury"); *Harris v. Berkowitz*, 433 So.2d 613, 614-15 (Fla. App. 1983) (auto accident; held that place of injury does not play a significant role in selection of applicable law when it is "fortuitous or bears little relation to the occurrence"); *Babcock v. Johnson*, 12 N.Y.2d 473, 482, 191 N.E.2d 279 (1963) (auto accident involving New York residents; New York law applied despite fact that accident fortuitously occurred in Ontario); *Ingersoll v. Klein*, 106 Ill. App. 330, 338, 245 N.E.2d 288, 292 (1969) (drowning case; Illinois had more significant interest as domicile state of decedent than Iowa "whose only interest arises from the fortuitous occurrence of the accident in that state"); *Dobelle v. Nat'l R.R. Passenger Corp.*, 628 F. Supp. 1518, 1528-29 (S.D.N.Y. 1986) (train accident that occurred in New Jersey on train from New York to Philadelphia; held Pennsylvania had more significant interest since misconduct took place in Pennsylvania and place of injury was "largely fortuitous"). As these cases demonstrate, the application of the concept of fortuity is not neatly broken down into categories, so that it is used only in products liability cases, but not in negligence cases. Rather, it is a broad concept that diminishes the importance of the place of injury when that jurisdiction "bears little relation to the occurrence and the parties with respect to the particular issue." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 cmt. e. In this case, the Plaintiffs

began their trip in Texas, with a destination of Florida, after which they planned to return to Texas, without any destination in Louisiana. Similarly, the Allied driver began this leg of his trip in California, with a final destination of Florida. Accordingly, this was a situation in which Louisiana truly had no significant relationship with either party. The driving time-bomb represented by the Allied driver could have gone off anywhere in any of the several states between Texas and Florida; it was merely a fortuity that he happened to explode while passing through Louisiana.

This Court's opinion also suggests that the "place of wrong" analysis is different in products liability cases than it is in driving negligence cases, citing *Mohamed v. Mazda Motor Corp.*, 90 F. Supp.2d 757, 776 (E.D. Tex. 2000). But the *Mohamed* case never says that the place of wrong must always be the place of injury in all non-products case. It merely says that in that particular case, which was a products liability case, the place of accident was a "red herring for transfer analysis," and that it would have had greater importance if the plaintiff had merely sued the driver of the other car for negligent driving. *Id.* at 776. But this case is not merely about allegations of negligent driving against the driver, Gorski, but—far more importantly from a public safety standpoint—about allegations against Allied for allowing Gorski to be on the road in violation of federal and state regulations. Like *Mohamed,* this case involves allegations over and above allegations of driver negligence at the site of the collision.

As Plaintiffs have explained throughout, Allied is **directly** liable for the collision. The place of the injury could have been anywhere that Gorski's fatigue eventually caught up with him; but the place of the wrong—the violations of Texas and federal motor carrier regulations and wrongful conduct giving rise to the injury—occurred when Allied allowed Gorski to resume driving in an impaired condition in Texas. The "place of the wrong" factor does not weigh in favor of Louisiana.

12

## II.    The Convenience of "Key Witnesses" does not Compel Transfer to Louisiana.

The analysis of the convenience of witnesses can only be determined by a review of the testimony those witnesses can offer and how the party who would seek to call the witness would be prejudiced by that party's inability to bring those witnesses to trial. *Lemery*, 244 F. Supp.2d at 730. Allied has not demonstrated how the testimony from these witnesses can be used by Allied to support its claims or defenses.

This is not a case in which there is disagreement about when or where or the circumstances under which this collision occurred. All the witnesses agree about what happened—the Allied truck collided violently at a high speed with stopped traffic, causing several vehicles to explode into flames, killing and seriously burning a number of occupants of those vehicles. App. H (eyewitness statement excerpts); App. E-1, at 38-60. The Louisiana State Police officer investigating this incident, Tfc. Harold Williams, confirms this in the Crash Report: "...an Allied Van Line truck which failed to slow or stop for the congestion ahead and ran into the rear of the traffic..." App. E-1, at 23-26. Master Trooper Richard C. Elliot, concluded in his investigative report:

> It is my opinion that Mr Gorski was apparently fatigued and possibly distracted at the time of the crash. In reviewing the Duty Status Records and statements given by the individual customers he delivered Household Good shipments to, it is apparent that there were several times that the Duty Status Record was falsified in an attempt to conceal hours of On Duty time and also the driving time it took to get to the locations. It is also my opinion that Mr Gorski exceeded the 10 hour driving rule on 07-19-03 by 2- 4 hours(refer to cell phone records).

App. E-2, at 4.

Obviously, Allied would not want to call any of these witnesses who would testify *against* Allied. *See generally* App. H; App. E-1, at 23-26, 38-60; App. E-2. Since all the witnesses agree on how the accident occurred, the central question is **why Gorski plowed through stopped traffic, killing and injuring Plaintiffs.** The critical testimony on this question will come from Plaintiffs'

13

experts and Allied's experts—if any—who will testify to what caused Gorski to violently collide with stopped traffic.

In this regard, this case is remarkably similar to *American General Fire & Cas. v. Wal-Mart Stores, Inc.*, 791 F. Supp. 763, 768 (W.D. Ark. 1992). That case involved a fire in Louisiana caused by an iron that did not automatically shut off. Suit was brought in the Western District of Arkansas, where the iron was manufactured. The manufacturer filed a motion to transfer venue for the convenience of the parties and witnesses, arguing that the site of the fire was in Louisiana, and most of the witnesses regarding the facts surrounding the plaintiff's claims were located in Louisiana. The court, relying on section 3851 of Wright, Miller & Cooper, held:

> While there would undoubtedly be some testimony from Louisiana witnesses concerning the fire, plaintiff asserts that this testimony will be of 'qualified value since it is undisputed that a fire occurred.... Instead, the critical testimony will probably come from defendants' agents and expert(s), and the plaintiff's expert(s), who will testify as to the cause and origin of the fire as well as any defect in the iron.'

> The court believes that defendants have not fulfilled their burden of showing that a transfer of this action to Louisiana is warranted. **While it may well be the case that, in terms of sheer numbers, most of the witnesses who are likely to testify at trial would come from Louisiana, that alone is not enough to warrant a transfer**. The 'key witnesses,' as plaintiff points out, are likely to be experts and the court has no way of knowing where those witnesses will come from. In any event, because those experts will be under the control and direction of the parties, there is no reason to believe that either convenience or justice will be furthered by transferring this case to Louisiana. Defendants have the burden of showing that a transfer is appropriate, and they have not fulfilled that burden.

*American General Fire & Casualty*, 791 F. Supp. at 768 (emphasis added). The defendants' motion to transfer venue was denied. *Id.*

As in *American General*, the "key witnesses" in this case are not going to be the eyewitnesses who saw the injurious event in Louisiana—whether the fire in *American General* or the fiery collision in this case. The key witnesses are those who will attempt to explain why Gorski failed to react to stopped traffic, and why he was on the road in an impaired condition. Allied has

14

not shown that any of those witnesses are in Louisiana.

Even if the eyewitnesses to the accident and the original health care providers were the "key witnesses" in this case, Allied has never affirmatively stated that it would call any of these witnesses —**all of whom are adverse to Allied**—to testify at trial. Moreover, even if the eyewitnesses who agreed to come to trial reneged, and even if this Court did not have subpoena power over them or the treating physicians in Louisiana, Allied would not be able to show any prejudice or harm. The only parties who could possibly be harmed would be the Plaintiffs, who bear the burden of proving the cause of the accident, and the necessity and cost of medical care, not Allied.

The location of "key witnesses" does not favor Louisiana, and any inconvenience in access to Louisiana witnesses would not prejudice Allied in any way. This Court should retain venue.

## III.    The Inevitable Delay of a Transfer Weighs in Favor of Retaining the Case.

Although the Court's opinion states that delay should be a factor in deciding whether to transfer "[o]nly in 'rare and special circumstances,'" Dkt. # 49 at 8, other courts disagree. *See Lemery*, 244 F. Supp.2d at 730 ("Furthermore, the possibility of delay or prejudice if the case is transferred always plays a large role in the court's venue analysis.").

Plaintiffs agree with the Court that "some delay is always possible when a case is transferred." Dkt. # 49 at 8. Plaintiffs anticipate that a transfer of this case to Lafayette, Louisiana, probably would delay the final resolution of Plaintiffs' case for a year or more beyond the present setting just three months away. A new court would have to enter a new scheduling order and a new trial setting.

Delay will not adversely affect Allied. In fact, delay has been the blueprint for Allied's litigation strategy in this case from the outset. In contrast, delay will have a devastating effect on the three families involved. They already have sustained the loss of two children, burned alive at the

15

scene, and the severe burning and disfigurement of two other children who survived. The medical costs alone now exceed $2,000,000, and those costs continue on a day-to-day basis with the children's care in Brownsville, where the families have been long time residents.[6]

These families are not wealthy. They cannot continue their financial struggle indefinitely. Allied's negligence caused their unspeakable tragedy. Allied should not now be permitted to compound the tragedy by seeking an unwarranted delay. Justice delayed in this case will truly be justice denied.

## CONCLUSION AND PRAYER FOR RELIEF

Based on the information before it at the time, this Court concluded that the decision to transfer was "a close call." Dkt. # 49 at 9. With the addition of these facts and additional authorities, Plaintiffs respectfully pray that this decision will no longer be a close call. For all these reasons, Plaintiffs respectfully request that the Court hold a hearing on this matter, reconsider its decision to transfer this case to the Western District of Louisiana, and retain the case on this Court's docket. Plaintiffs also request any and all other relief to which they are entitled.

---

[6]    In the context of the choice of law analysis for compensatory damages, the Texas Supreme Court has recently declared that the most important factor for a court to consider, above all others, is the place where the plaintiffs are residing and receiving medical care, as well as that state's interest in seeing that such plaintiffs are adequately compensated for their injuries. *See Torrington*, 46 S.W.2d at 849.

16

Respectfully submitted,

MITHOFF & JACKS, L.L.P.

*Of Counsel:*

RUSSELL J. WEINTRAUB
State Bar No. 21098500
727 E. 26th Street
Austin, Texas 78705

KEVIN DUBOSE
State Bar No. 06150500
Federal I.D. No. 20300
ALEXANDER DUBOSE JONES
       & TOWNSEND LLP
1844 Harvard
Houston, Texas  77008
(713) 523-2358
(713) 522-4553 [FAX]

RICHARD WARREN MITHOFF
*Attorney-in-Charge for Plaintiffs*
State Bar No. 14228500
Federal I.D. No. 2102
WILLIAM J. STRADLEY
State Bar No. 19353000
Federal I.D. No. 397
JANIE L. JORDAN
State Bar No. 11012700
Federal I.D. No. 17407
HERRICK L. SOVANY
State Bar No. 24037533
Federal I.D. 33292
500 Dallas, Suite 3450
Houston, Texas 77002
(713) 654-1122
(713) 739-8085 [FAX]

EDUARDO ROBERTO RODRIGUEZ
State Bar No. 17144000
Federal I.D. No. 1944
R. PATRICK RODRIGUEZ
State Bar No. 24002861
Federal I.D. No. 22949
*Local Counsel*
RODRIGUEZ, COLVIN, CHANEY
      & SAENZ, L.L.P
P.O. Box 2155
Brownsville, Texas  78522
(956) 542-7441
(956) 541-2170 [FAX]

ATTORNEYS FOR PLAINTIFFS

17

## CERTIFICATE OF CONFERENCE .

I hereby certify that Plaintiffs' counsel has conferred with defense counsel regarding the filing of Plaintiffs' Motion to Reconsider Transfer Order. Counsel for Defendant, Allied Van Lines, Inc., is opposed to this motion.

RICHARD WARREN MITHOFF

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was forwarded to all counsel of record by certified mail, return receipt requested, and/or hand delivery, and/or fax transmission, this 21st day of June, 2004.

Mr. Tom Lockhart                           Mr. John W. Waters, Jr.
Mr. Roger Hughes                           Bienvenu, Foster, Ryan & O'Bannon
Adams & Graham, L.L.P.                     1010 Common St., Suite 2200
P.O. Drawer 1429                           New Orleans, Louisiana 70112-2401
Harlingen, Texas 78551-1429

RICHARD WARREN MITHOFF

18

# APPENDICES

| Appendix | Document | Page |
|---|---|---|
| A | Expert Report of Paul O'Neill (*See* Dkt. # 39 for full report) | 3-6 |
| B | 37 TEX. ADMIN. CODE § 3.62(c)(5) | 3 |
| C | Expert Report of Whitney Morgan (*See* Dkt. # 39 for full report) | 3, 4, 6, 8 |
| D | Expert Report of Mike Rone (*See* Dkt. # 39 for full report) | 4-7 |
| E-1 | Tfc. Harold Williams' Crash Report [Louisiana State Police Uniform Motor Vehicle Crash Report] | 13 |
| E-2 | Master Trooper Richard C. Elliot's Investigative Report [Commercial Vehicle Post-Crash Investigative Report] | 4, 13 |
| F | Qualcomm Records | 4 |
| G | Expert Report of William C. Dement, M.D., Ph.D. (*See* Dkt. # 39 for full report) | 7 |
| H | Eyewitness Statement Excerpts (*See* App. E-1, *infra*) | 13 |
| I | Mark Davison Deposition Excerpts | 9 |



# MOTOR CARRIER SAFETY
# SERVICES INTERNATIONAL, INC.
### 45 ESOPUS DRIVE
### SPRING HILL ESTATES
### CLIFTON PARK, NY 12065

Paul O'Neill
President

Phone: (518) 373-9655
FAX: (518) 383-3393
E-Mail: PONEILL524@AOL.COM

April 30, 2004

Mr. William Stradley, Attorney
Ms. Janie Jordan, Attorney
Mithoff & Jacks, LLP
Law Offices
One Allen Center, Penthouse
500 Dallas
Houston, TX 77002

RE: Guerra, Garza, et al
vs.
Allied Van Lines, Inc.
Civil Action Number B-03-142

Dear Mr. Stradley and Ms. Jordan:

This report represents my findings, conclusions and opinions regarding the referenced Civil Action Case. A list of documents reviewed and other sources of information on which I have based my comments, opinions and conclusions are identified as Exhibit A and attached to this report.

For the past 39 years I have been employed in the field of Motor Carrier Safety. For approximately 30 of those years I was employed by the Federal Highway Administration and it's predecessor, the Interstate Commerce Commission, in positions dedicated to the enforcement of the Federal Motor Carrier Safety Regulations (FMCSR) applicable to motor carriers.

During the first 22 years of employment with the above named agencies, I was a Motor Carrier Safety Investigator assigned to offices in Trenton, NJ and Scranton, PA. During that period of time I conducted in excess of 1000 "Compliance Reviews" of motor carriers operations in

1

assessing their compliance with the Federal Motor Carrier Safety Regulations. I also conducted accident investigations, complaint investigations, enforcement investigations, driver/vehicle roadside inspections and provided training to agency and state personnel during that time period. The last 8 years of employment with the Federal Highway Administration was in management roles at the Albany, NY FHWA offices, first as a State Director and later as the Regional Program Coordinator for the Northeast Region. These positions were dedicated wholly to motor carrier safety.

Attached as Attachment B is a copy of my resume and Curriculum Vitae outlining my experience and duties over a period of about 39 years. I wish it to be incorporated into and be considered as part of this report.

<div align="center">

**Accident Overview**

</div>

The accident occurred on Interstate 10 Eastbound in the Parish of Saint Martin, Louisiana, near mile marker 123, at approximately 5:20 pm CDST, July 20, 2003. The vehicles involved were a Commercial Motor Vehicle (CMV) driven by Wladyslaw (Vladek) Gorski operating under the of authority of Allied Van Lines, Inc., Fort Wayne, IN, and 10 other vehicles consisting of 2 commercial motor vehicles and 8 passenger autos.

The accident involved the driver of the Allied vehicle failing to slow or stop his vehicle as he approached the slower moving or stopped traffic causing his vehicle to strike several other vehicles.

**The Vehicles Involved**

**The Allied Vehicle**
The Allied vehicle consisted of a 1999 Volvo tractor equipped with a diesel engine, tandem drive axles and a sleeper cab, pulling a 1999 Kent van type tandem axle semi trailer. The tractor was owned by the driver; the semi trailer by an Allied Van Lines agent, Sorenson Moving and Storage Co., Melbourne, FL. The unit was being operated under the authority of Allied Van Lines, Inc., and engaged in the transportation of 6 shipments of household goods en route from points in AZ and CA to several locations in FL. The common industry terminology for the relationship between Allied and Gorski under that type arrangement would be that of an "owner operator".

**The Other vehicles**
The other vehicles consisted of two commercial motor vehicles and 8 passenger automobiles. Since the police report identifies the type vehicles and their operators, I will not discuss it here or attach a copy of the report. You and other interested parties are in possession of certified copies of those reports.

<div align="center">

2

</div>

**Findings, Conclusions and Opinions**

**Applicability of the Federal Motor Carrier
Safety Regulations to Allied Van Lines, Inc.**

The safety rules applicable to motor carriers are contained in 49 CFR, Parts 325 through 397 and are commonly referred to as the Federal Motor Carrier Safety Regulations (FMCSR). All references to the FMCSR in this report represent the regulations in effect at the time of the Allied accident in July, 2003.

Allied Van Lines operations fall within the definition of a "motor carrier" as defined in Section 390.5 of the FMCSR. A copy is included in Attachment C for reference. Allied is primarily engaged in the for hire transportation of household goods by motor vehicle and have been assigned US DOT Identification number 76235 by the US Department of Transportation .

Section 390.5 of the FMCSR also defines a "Commercial Motor Vehicle" (CMV). A copy is included with Attachment C. With regard to the vehicle operated by Allied, it met the definition of a CMV due to the gross vehicle weight and/or gross weight rating being 10,001 pounds or more. The Allied vehicle would far exceed the 10,001 pounds threshold.

Section 390.3 of the FMCSR establishes the general applicability of the regulations. A copy is attached as Attachment D. Since Allied's operations meet the definition of a motor carrier and the vehicle operated met the definition of a CMV, their operations in general, and with specific regard to this accident, clearly fall within jurisdiction of the US DOT (FMCSA) and the rules/regulations of the FMCSR. Those rules/regulations are covered in Parts 325 through 397 of the FMCSR.

The Federal Motor Carrier Safety Administration (FMCSA) is an operating element within the US Department of Transportation delegated the responsibility to administer and enforce the Federal Motor Carrier Safety Regulations (FMCSR). Two of their many areas of jurisdictional responsibility include Driver Qualification and Hours of Service. I will discuss driver qualification first. All references to the FMCSR in this report represent the rules in effect at the time Mr. Gorski's employment began with Allied including up until the time of the accident.

3

**Driver Qualification:**

The driver qualification rules are contained in Part 391 of the FMCSR. Section 391.21, copy attached as Attachment E, deals with the requirement that a driver prepare/submit/file an employment application listing certain information.

As mentioned earlier in this report, the driver of the Allied CMV was Mr. Wladyslaw Gorski, a resident of Palm Harbor, Florida. Mr. Gorski was 47 years of age at the time of the accident (DOB 9-12-55) and had been employed by Allied as an owner operator (private contractor) since about 4-29-99.

On March 31, 1999, driver Gorski filed an employment application with Allied. Attachment G to this report contains a copy of the employment application, identified as Court/Case Exhibit numbers 00184 through 00186. As required by FMCSR Sections 391.21 (b) (10) and (11), the application listed his employers for the past 10 years as well as his activities during those periods of employment. That information is as follows:

> (1) From 1-98 to the present (3-31-99), he listed his employment as long distance interstate tractor trailer driver for Route 66 Trucking of Los Angeles, CA.

> (2) From 1-97 through 1-98, he listed his employment as a long distance mover/driver assistant driving tractor trailers for United Van Lines, Inc., Oldsmar, FL.

> (3) From 3-92 through 1-97, he lists his employment as a local driver towing trucks for LCM Auto Brokers of Clearwater, FL.

On the portion of the application listing driving experience, Gorski indicated that he drove a tractor and semi-trailer 86,000 interstate miles from 1998 to present (3-31-99). By referring to the dates shown on the employment application discussed above, that would encompass the period of time he showed as being employed by Route 66 Trucking and United Van Lines.

On that portion of the application listing "licenses held" (refer to Court/Case Exhibit 00185 in Attachment G), Gorski indicates that he was issued his Florida "CDL" license on 3-25-99. The same date of CDL issue is shown on the initial driving record abstract obtained from FL by Allied on 4-13-99. Please refer to Attachment H which includes FL MVR driving record report, Court/Case Exhibit 00200. The driving record also indicates that that date was the original issue date (of the CDL).

Obtaining a driving record report (commonly referred to as an MVR abstract) upon hiring a driver is required by FMCSR Section 391.23 (a) (1). A copy of that Section of the regulations attached as Attachment F.

4

A review of the information on Mr. Gorski's employment application and the FL MVR report reveals obvious inconsistencies. It would (or should) lead one to question the truthfulness of the information he provided concerning his past employment record and experience. It is my opinion that there were numerous "red flags" (alerts/questions regarding inconsistencies) that should have been obvious during Allied's pre-hire process, as follows.

How was it possible for him to have driven CMVs requiring a Commercial Driver's License for 86, 000 miles when his initial CDL was not issued until just 6 days before he filed his employment application with Allied? How was it possible for him to have driven a tractor trailer (requiring a CDL) for two past employers over 2 + year period (1-97 to present) when the initial CDL was not issued until 3-25-99?

The above information/discrepancies should have been of serious concern to Allied, ie; was the information provided by Gorski on his employment application false or did he drive a CMV illegally for over two years? That appears not to have been of concern to or taken into consideration by Allied.

Section 391.23 (a) (2) of the FMCSR (refer to Attachment F) requires motor carriers to investigate a driver's employment record during the past 3 years. That period of time would encompass the period that Gorski listed as being employed by Route 66 Trucking, United Van Lines and a portion of his employment with LCM Auto Brokers.

Allied delegated their "past employer investigation" responsibility to an entity called Baley, Hinchy, Downs and Associates, Inc. (will be referred to as BHD&A in this report). Outsourcing that requirement is not prohibited under the FMCSR but the carrier (Allied in this instance) is responsible that it be done.

BHD&A was successful in contacting Route 66 Trucking via phone on 4-15-99 in verifying that Gorski was employed by them as a tractor trailer driver during the period of time shown on his employment application (1-98 to present). There were no unfavorable comments. BHD&A reported the inquiry and responses back to Allied via an "Employment History Report". Please refer to Court/Case Exhibit numbers 00189 through 00191 contained in Attachment H.

BHD&A was also successful in contacting LCM Auto Brokers in verifying that Gorski was employed by them during the period of time shown on the employment application. There were no unfavorable comments. Please refer to the BHD&A Employment History Report, Exhibit number 00191.

HHD&A attempted to contact United Van Lines, Inc. at their corporate office in Fenton, MO on 4-14-99 to verify Gorski's employment with them. They were advised by United that they had no record of Gorski being employed by them.

5

BHD&A then attempted on 4-16-99 to contact United Van Lines in Oldsmar, FL, the address shown on Gorski's employment application. They reported back to Allied in substance, that they were unable to locate a company by that name at that location via the telephone numbers provided, directory assistance, public library or Chamber of Commerce. The unsuccessful attempts to verify Gorski's employment with United are included in Attachment H and identified as Court/Case Exhibits 00189, 00190 and 00191.

On that portion of the application where the applicant (Gorski) listed the education he had received, Gorski indicated that he attended a truck driving school named R & E of Tampa, Inc. Please refer to Court/Case Exhibit 00185 contained in Attachment G.

BHD&A attempted to contact R & E of Tampa on 4-14-99 but was unsuccessful via all the avenues attempted. That included directory assistance, the Chamber of Commerce and the library. None had a record of R & E of Tampa. They reported that to Allied via Court/Case Exhibit 00192 contained in Attachment H.

A question was asked on Mr. Gorski's application filed with Allied as to whether or not he had ever been convicted for drugs. He answered yes. There is no evidence that Allied pursued that issue.

In spite of the numerous inconsistencies between Mr. Gorski's application and the findings of BHD&A, Allied considered Mr. Gorski "qualified" as a driver on 4-29-99 and placed him into service. Please refer to Court/Case Exhibit 002881 contained in Attachment H.

That, in my opinion, was a gross error on behalf of Allied. The numerous inconsistencies between the information shown on Mr. Gorski's application and the findings of BHD&A were more than adequate to "red flag" (alert/stop) the hiring process until the inconsistencies were resolved or reconciled. They were obviously ignored and the driver placed in service.

On July 28, 1999, Teresa Gorski, spouse of Mr. Gorski, provided a statement to Allied stating that her husband was employed by Andrew Rozanski, Inc., an owner operator for United Van Lines, Inc. from January, 1997 through January, 1998. She provided an address and phone number for Rozanski in Oldsmar, FL. The statement was dated approximately 3 months after Mr. Gorski was placed in service.

Mrs. Gorski's statement was apparently meant to satisfy the FMCSR requirement contained in Section 391.23(a) (2) regarding past employer investigations. It is my opinion, based on almost 40 years experience in the field of motor carrier safety, it did not; the inconsistencies discovered by BHD&A during their inquiries raised serious issues that should not have been ignored or passed over with a statement from the driver's spouse. I doubt that Mrs. Gorski at the time was in a position where she would contradict her husband regarding the information he provided Allied on his employment application.

I have read the depositions of Allied employees regarding this accident, including several involved in the pre-hire process. Based on the testimony contained in several of the depositions, it appears to me that Allied considered the above method an acceptable means of investigation and verification of a driver's past employment.

In my 40 years of experience, I cannot recall another carrier having a policy to solicit and/or accept a close relative's statement as verification of employment or experience. There is no evidence that any effort was made by Allied to pursue the issue beyond the point of receiving Teresa Gorski's statement. As a minimum, Allied could have contacted United Van Lines to verify that Rozanski was an owner operator or agent for them.

Also, they could have attempted to contact Rozanski since an address and phone number were provided. There is no evidence that either contact was attempted, or that Mr. Gorski was contacted to discuss and reconcile the inconsistencies between BHD&A's findings and his employment application.

Discussed earlier in this report, were BHD&A's findings that they were unable to locate/verify the driving school, R&E of Tampa, Inc. There is no evidence that Allied pursued that issue beyond being notified by BHD&A.

On May 9, 2000, the FL Department of Highway Safety and Motor Vehicles notified Mr. Gorski in substance that he had received his CDL through a third party tester that had been decertified. He was requested to call a specific telephone number no later than June 8, 2000 to schedule an appointment to take an examination or receive further instructions. If he did not call the specified phone number by 5:00 pm on the date specified, his CDL was to be cancelled. A copy of this correspondence is included in Attachment I as Swygart Exhibit # 4.

There is no evidence that Allied had received a copy of the above correspondence. However, the FL MVR report obtained by Allied in late 2000 indicated a cancellation of his CDL effective 6-29-00. There is no evidence that Allied followed through with the State of FL to determine the reason for the cancellation. Had they done that, the reason would have been evident.

On or about 12-19-01, the State of Florida, Division of Driver Licenses, provided correspondence to Allied via facsimile regarding driver Gorski's CDL. A copy is included as Attachment I.

The correspondence, dated 12-20-01, was a copy of a letter to Mr. Gorski advising him in substance that his license is not under suspension and that he had 30 days to apply for a license.

The correspondence and FL MVR mentioned in the 4 preceding paragraphs indicating a CDL cancellation, in my opinion, should have been of very serious concern to Allied. There were clear signals of a potential problem with Mr. Gorski's CDL including the possibility that it was improperly issued. It appears to me that this was the CDL he was initially issued on 3-25-99 and listed on his Allied employment application.

7

In conclusion regarding Mr. Gorski being qualified as a driver by Allied Van Lines, in my opinion, they did not take the pre-hire and driver qualification process seriously in "qualifying" Mr. Gorski as an interstate tractor trailer driver. Facts in support of that opinion were covered in the preceding several paragraphs under this heading.

It appears to me that they went "through the motions" of investigating this driver's background simply to satisfy the regulatory requirements of FMCSR Section 391.23 rather than "weeding out" a potential problem driver. The serious inconsistent findings of BHD&A regarding Gorski's past employment, driving experience, CDL and education were ignored and never reconciled or resolved.

The above conclusions are based on approximately 40 years experience in enforcing the FMCSR safety rules and assisting carriers to effectively comply with them in all areas, first as a Federal Agent and now as a safety consultant. My advice to carriers has always been, "don't hire your problems; make sure that inconsistencies on employment applications are reconciled/resolved before a driver is allowed to drive."

Also, over a period of 2 years after he was hired, information Allied received from the State of Florida should have raised suspicions/concerns regarding the validity of Mr. Gorski's CDL. Based on the documents and depositions I have reviewed, there are indications that his CDL may have been fraudulently obtained.

**Hours of Service and Drivers Logs.**

The hours of service rules applicable to interstate carriers of property are contained in FMCSR Part 395, Sections 395.1 through 395.8. A copy regulations in effect at the time of this accident in July, 2003 are included with this report as Attachment J.

At the time of the accident on July 20, 2003, Mr. Gorski was en route to Florida with several household goods shipments loaded in AZ and CA. In the weeks prior to that, he had delivered a load of household goods from Florida to California points.

I have reviewed numerous documents regarding Mr. Gorski's activities covering a period beginning several weeks prior to the accident and continuing up to the accident time. Those documents included the LA State Police Accident Investigation report, drivers logs, satellite global positioning (GPS) records, cellular phone records, vehicle loading information, computerized communication records, dispatch documents and customer signed statements.

Based on the information and documents reviewed, I reconstructed Mr. Gorski's activities covering the time period from 7-12-03 through to the time of the accident on 7-30-03 using primarily QualCom GPS records and other timed documents. I have concluded that at the time of the accident, Mr. Gorski had been on duty approximately 81 hours during the 8 day period ending at the time of the accident, and on duty approximately 75 hours during the 7 day period ending at the time of the accident.

8

FMCSR Section 395.3 (b) (1) [Hours of service rule (See Exhibit J)] provides in substance that a driver may not drive after having been on duty 60 hours in 7 consecutive days. I have concluded that at the time of the accident, Mr. Gorski had been driving approximately 15 hours beyond his 60th hour on duty. That would place him in clear violation of the FMCSR rules governing driver's hours of service. He should not have been on the road at all on 7-20-03.

The facts in support of that conclusion are based on the documents/records reviewed as discussed above. The excess driving would be considered a very serious violation of the hours of service rules by FMCSA or any regulatory agency with jurisdiction, such that the driver would have been placed "out of service" on site if stopped during a roadside inspection. Had he undergone a driver/vehicle roadside inspection, he would have been placed "out of service" for at least 2 consecutive days based on the hours of service rules and driver "out of service criteria" in effect at the time.

FMCSR Section 395.3 (b) (2) provides an optional rule that carriers are permitted to use if they operate vehicles every day of the week. It provides in substance that a driver cannot drive after having been on duty 70 hours in 8 consecutive days. Based on the documents reviewed, I have concluded that driver Gorski had been driving approximately 11 hours since his 70th hour on duty at the time of the accident. Facts in support of that conclusion were previously discussed.

The excess driving time beyond the 70 hour/8 day limitation by Mr. Gorski would be considered a very serious violation of the rules by FMCSA or any regulatory agency with jurisdiction, such that the driver would have been placed out of service for 2 days if stopped during a roadside inspection. Consequently, he should not have been driving at all at the time of the accident.

In conclusion regarding FMCSR Sections 395.3 (b) (1) and (b) (2), I have concluded that Mr. Gorski was driving his vehicle grossly beyond the maximum time allowed regardless of whether his duty time is/was calculated using the 60 hour/7 day rule or the 70 hour/8 day rule. In calculating the past 7 or 8 days hours of service, I attempted to give Mr. Gorski every benefit of the doubt regarding his daily duty activities.

FMCSR Section 395.3 (a) provides in substance that a driver may not drive more than 10 hours following 8 consecutive hours off duty. The rules provide in Section 395.1 (g) that drivers may accumulate the 8 hours off duty in 2 periods of 2 or more hours each in a sleeper berth equipped vehicle. Mr. Gorski's vehicle was sleeper berth equipped.

In reconstructing Mr. Gorski's activities, I have concluded that on the trip east from CA, he had grossly exceeded the 10 hour driving limitation on that portion of the trip from a point near Boulevard, CA on 7-18-03 up until his arrival near Houston, TX (Highland, TX) in the early am of 7-20-03. It is my opinion that he drove approximately 25 hours since his last 8 consecutive hours off duty between the time he left Boulevard, CA at about 7:30 pm (EDST) on 7-18-03 and his arrival in the Houston, TX (Highland, TX) area at 1:30 am on 7-20-03. That is in gross

9

violation of the 10 hour driving rule; approximately 15 hours in excess of what is allowed by the regulation. The distance from Boulevard, CA to the Houston, TX area is approximately 1350/1400 miles.

FMCSR Section 395.3 (a) (2) provides in substance that a driver may not drive after 15 hours on duty following 8 consecutive hours off duty. I have concluded that on the portion trip from Boulevard, CA to the Houston, TX area described above, Mr. Gorski had driven approximately 9.75 hours beyond that by the time he arrived in the Houston, TX area in the early am of 7-20-03. That would also be considered a gross violation of the 15 hour driving rule.

At the time of the accident, Mr. Gorski was not driving in excess of the FMCSR 10 and 15 hour driving rule. My plotting of his trip indicates that he had the opportunity to obtain about 10.5 hours rest in the Houston/Highland, TX area before departing there about noon on (EDST) 7-20-03. It appears that he had driven between 4 and 5 hours at the time of the accident, making one stop along the way of about 1.5 hours, and traveled about 240 miles. However, as mentioned earlier in this report, he was in gross violation of the 70 hour/8 day rule at the time of the accident.

As stated earlier in this report, Mr. Gorski's activities over the several day period prior to the accident were "plotted" using QualCom GPS records primarily. The mileage distances were determined using several computerized mileage programs including DeLorme, PC Miler and Rand McNally MileMaker. There were slight variations between the several programs but nothing of significance.

I also reviewed Mr. Gorski's logs for several months prior to the accident to determine if they truly represented his activities, using whatever timed documents that were available, primarily the QualCom GPS records. I would estimate that the "mismatch rate" between Mr. Gorski's logs and the timed records that FMCSA would consider log falsification was about 20%. That is far in excess of FMCSA's acceptable threshold of 10 %.

In the review of Mr. Gorski's log I noted another distinct pattern of log falsification that I consider more serious than the GPS record mismatches. He consistently followed the practice of recording the major portion of his daily loading and unloading time on the logs as off duty or in the sleeper berth of his vehicle. Following that practice allowed him to conceal a major portion of his true on duty time, presumably to reduce the amount of on duty time accumulated over a 7 or 8 day period. That constitutes drivers' log falsification.

According to the testimony of several deposed witnesses, Allied had a log accuracy monitoring system in place which they considered adequate. It amounted to manual review of the logs of those drivers inspected during roadside inspections or involved in accidents. It appears that the reviews were limited to those drivers and that the review covered those dates (accident/inspection) only. Such a limited review of the logs is not an effective system for a carrier the size of Allied. In my opinion, it is akin to attacking an elephant with a needle.

Very few carriers of Allied's size in this day and age are monitoring logs manually. Unless a high number of personnel are assigned the task, it will not be very effective. If adequate personnel are assigned it becomes costly with many of the violations not being detected due to human error. Based on reading the depositions of Allied's personnel, it appeared that no more than one person was assigned to monitoring logs for accuracy and it was a collateral duty. In my opinion, that is inadequate.

There are many systems on the market to perform log monitoring both for log accuracy and hours of service. Both "in house" and outsourcing systems are available. Most of those system use internal (or external) timed data that can be downloaded and checked electronically against the logs to determine their accuracy. Typical timed data could be fuel purchase time and location data, loading/unloading data, electronic dispatch data and selective GPS data. In all probability Allied had access to much if not most of this data. According to one of the depositions I reviewed, Allied had considered using such a system but had not done so by the time the accident occurred, nor had they done so by February, 2004.

Allied had access to other more basic information available in their system that could be used to improve and enforce drivers' log accuracy. In my opinion, they well knew that the activities of Mr. Gorski (and other drivers as well) during the loading and unloading process of his vehicle were not "off duty" (or sleeper berth time). He was considered the "Van Foreman" and responsible for at least supervising the loading/unloading process and the other responsibilities such as load inventory and damage detection. The definition of "on duty time" in FMCSR Section 395.2 encompasses the duties of Driver Gorski while loading/unloading his vehicle.

No one knew better than Allied, the activities entailed by the drivers while the vehicle was being loaded or unloaded. In my opinion, it appears that they chose to "look the other way" and allow the drivers to record such time as off duty or in the sleeper berth. Concealing on duty time under the circumstances is considered log falsification. I would consider the log falsification in this regard in Allied's operation more serious than the time and location "mismatches" I noted.

### Final Conclusions

I have concluded that Allied did not act in a prudent and responsible way in the driver qualification process regarding driver Gorski. Facts in support of that conclusion were previously covered. There were numerous evident "red flags" based on a simple review of his application alone. They were previously discussed. However, Allied chose to pursue the pre-hire process without reconciling the inconsistencies with Mr. Gorski, instead, requesting past employer investigations be done by BHD&A. Then after BHD&A reported problems in verifying his past employment and education, Allied chose not to pursue the matter relying on Teresa Gorski's statement - obtained almost 3 months after he commenced driving.

The "red flags" continued to surface during Mr. Gorski's driving career with Allied regarding the validity of how his CDL was obtained. However, Mr. Gorski continued to drive up until the time of the accident.

I have formed the same conclusions regarding Mr. Gorski's hours of service and log accuracy. He was in gross violation of the 70 hour/8 day driving limitation at the time of the accident, and had been in gross violation of both the 10 and 15 hour driving limitations on the day preceding the accident and in the early am on the day of the accident . In my opinion Allied did not act in a prudent and responsible manner by not monitoring Mr. Gorski's log accuracy and thereby permitting him to grossly exceed the hours of service limitations (such as was detected/plotted) on the trip from CA to FL.  In my opinion, that constitutes gross negligence. Allied had the tools to electronically monitor and track his trip progress, communicate with him, and "shut him down" due to excess hours. They did not.

This report represents my final review, findings, opinions and conclusions regarding this accident. However I wish to retain the right to supplement or revise the report in the event of additional information coming to my attention.

Yours truly,

Paul L. O'Neill



**Texas Administrative Code**

| | |
|---|---|
| **Title 37** | Public Safety and Corrections |
| **Part 1** | Texas Department of Public Safety |
| **Chapter 3** | Traffic Law Enforcement |
| **Subchapter D** | Traffic Supervision |
| **Rule §3.62** | **Regulations Governing Transportation Safety** |

(a) General. The director of the Texas Department of Public Safety incorporates, by reference, the Federal Motor Carrier Safety Regulations, Title 49, Code of Federal Regulations, Parts 382, 385, 386, 390-393, and 395-397 including amendments and interpretations thereto. The rules adopted herein are to ensure that:

(1) a commercial motor vehicle is safely maintained, equipped, loaded, and operated;

(2) the responsibilities imposed on a commercial motor vehicle's operator do not impair the operator's ability to operate the vehicle safely; and,

(3) the physical condition of a commercial motor vehicle's operator enables the operator to operate the vehicle safely.

(b) Terms. Certain terms, when used in the federal regulations as adopted in subsection (a) of this section, will be defined as follows:

(1) the definition of motor carrier will be the same as that given in Texas Transportation Code §643.001(6);

(2) hazardous material shipper means a consignor, consignee, or beneficial owner of a shipment of hazardous materials;

(3) interstate or foreign commerce will include all movements by motor vehicle, both interstate and intrastate, over the streets and highways of this state;

(4) department means the Texas Department of Public Safety;

(5) director means the director of the Texas Department of Public Safety or the designee of the director;

(6) regional highway administrator means the director of the Texas Department of Public Safety;

(7) farm vehicle means any vehicle or combination of vehicles controlled and/or operated by a farmer or rancher being used to transport agriculture products, farm machinery, and farm supplies to or from a farm or ranch;

(8) commercial motor vehicle has the meaning assigned by Texas Transportation Code §548.001(1);

(9) foreign commercial motor vehicle has the meaning assigned by Texas Transportation Code, §648.001;

(10) agricultural commodity is defined as an agricultural, horticultural, viticultural, silvicultural, or vegetable product, bees and honey, planting seed, cottonseed, rice, livestock or a livestock product, or poultry or a poultry product that is produced in this state, either in its natural form or as processed by the producer, including wood chips. The term does not include a product which has been stored in a facility not owned by its producer;

(11) planting and harvesting seasons are defined as January 1 to December 31; and,

(12) producer is defined as a person engaged in the business of producing or causing to be produced for commercial purposes an agricultural commodity. The term includes the owner of a farm on which

v

the commodity is produced and the owner's tenant or sharecropper.

(c) Applicability.
    (1) The regulations shall be applicable to the following vehicles:
        (A) a vehicle with an actual gross weight, a registered gross weight, or a gross weight rating in excess of 26,000 pounds when operating intrastate;
        (B) a farm vehicle with an actual gross weight, a registered gross weight, or a gross weight rating in excess of 48,000 pounds when operating intrastate;
        (C) a vehicle designed to transport more than 15 passengers, including the driver; and,
        (D) a vehicle transporting hazardous material requiring a placard.
    (2) a motor carrier transporting household goods for compensation in intrastate commerce in a vehicle not defined in Texas Transportation Code, §548.001(1) is subject to the record keeping requirements in 49 Code of Federal Regulations, Part 395 and the hours of service requirements specified in this subchapter.
    (3) a foreign commercial motor vehicle that is owned or controlled by a person or entity that is domiciled in or a citizen of a country other than the United States.
    (4) a contract carrier transporting the operating employees of a railroad on a road or highway of this state in a vehicle designed to carry 15 or fewer passengers.
    (5) All regulations contained in Title 49, Code of Federal Regulations, Parts 382, 385, 386, 390-393 and 395-397, and all amendments thereto pertaining to interstate drivers and vehicles are also adopted except as otherwise excluded.
    (6) Nothing in this section shall be construed to prohibit an employer from requiring and enforcing more stringent requirements relating to safety of operation and employee health and safety.

(d) Exemptions. Exemptions to the adoption in subsection (a) of this section were made pursuant to Texas Transportation Code, §§644.052-644.054, and are adopted as follows:
    (1) Such regulations shall not apply to the following vehicles when operated intrastate:
        (A) a vehicle used in oil or water well servicing or drilling which is constructed as a machine consisting in general of a mast, an engine for power, a draw works, and a chassis permanently constructed or assembled for such purpose or purposes;
        (B) a mobile crane which is an unladen, self-propelled vehicle constructed as a machine used to raise, shift, or lower weights;
        (C) a vehicle transporting a seed cotton module; or,
        (D) concrete pumps.
    (2) Drivers in intrastate commerce will be permitted to drive 12 hours following eight consecutive hours off duty.
    (3) Drivers in intrastate commerce who are not transporting hazardous materials and were regularly employed in Texas as commercial vehicle drivers prior to August 28, 1989, are not required to meet the medical standards contained in the federal regulations.
        (A) For the purpose of enforcement of this regulation, those drivers who reached their 18th birthday on or after August 28, 1989, shall be required to meet all medical standards.
        (B) The exceptions contained in this paragraph shall not be deemed as an exemption from drug testing requirements contained in Title 49, Code of Federal Regulations, Part 382.
    (4) The maintenance of any type of government form, separate company form, driver's record of duty status, or a driver's daily log is not required if the vehicle is operated within a 150 air-mile radius of the driver's normal work reporting location if;
        (A) the owner has another method by which he keeps, as a business record, the date, time and location of the delivery of product or service so that a general record of the driver's hours of service may be compiled; or
        (B) another law requires or specifies the maintenance of delivery tickets, sales invoices, or other documents which show the date of delivery and quantity of merchandise delivered, so that a gen-

eral record of the driver's hours of service may be compiled; and

(C) the business records generally include the following information:

(i) the time the driver reports for duty each day;

(ii) the total number of hours the driver is on duty each day;

(iii) the time the driver is released from duty each day; and

(iv) the total time on duty for the preceding seven days in accordance with Title 49, Code of Federal Regulations, Part 395.8(j)(2) for drivers used for the first time or intermittently.

(5) The provisions of Title 49, Code of Federal Regulations, §395.3 shall not apply to drivers transporting agricultural commodities in intrastate commerce for agricultural purposes within a 150 air-mile radius from the source of the commodities or the distribution point for the farm supplies during planting and harvesting seasons.

(6) Unless otherwise specified, a motor carrier transporting household goods for compensation in intrastate commerce in a vehicle not defined in Texas Transportation Code §548.001(1) is subject to the record keeping requirements in Title 49, Code of Federal Regulations, Part 395 and the hours of service requirements specified in this subchapter.

(7) Unless otherwise specified, a contract carrier is subject only to Title 49, Code of Federal Regulations, Part 391, except 391.11(b)(4) and Subpart E, Parts 393, 395, and 396, except §396.17.

(e) Exceptions. Exceptions adopted by the director of the Texas Department of Public Safety not specified in Texas Transportation Code, §644.053, are as follows:

(1) Title 49, Code of Federal Regulations, Part 393.86, requiring rear-end protection shall not be applicable provided the vehicle was manufactured prior to September 1, 1991 and is used solely in intrastate commerce.

(2) Drivers of vehicles under this section operating in intrastate transportation shall not be permitted to drive after having worked and/or driven for 70 hours in any consecutive seven-day period.

(3) Drivers of vehicles operating in intrastate transportation claiming the 150 mile radius exemption in subsection(d)(4) of this section must return to the work reporting location and be released from work within 12 consecutive hours.

(4) Title 49, Code of Federal Regulations, Part 391.11b(l), is not adopted for intrastate drivers. The minimum age for an intrastate driver shall be 18 years of age.

(5) Title 49, Code of Federal Regulations, Part 391.11b(2), is not adopted for intrastate drivers. An intrastate driver must have successfully passed the examination for a Texas Commercial Driver's License and be a minimum age of 18 years old.

(6) The Alcohol Testing Regulations of Title 49, Code of Federal Regulations, Part 382 will become effective January 1, 1996, for intrastate drivers.

(7) The Drug Testing Regulations of Title 49, Code of Federal Regulations, Part 382, as in effect on December 21, 1990, under Part 391.81, remain in effect under this adoption of Part 382.

(8) Texas Transportation Code, §547.401 and §547.404, concerning brakes on trailers weighing 15,000 pounds gross weight or less take precedence over the brake requirements in the federal regulations for trailers of this gross weight specification unless the vehicle is required to meet the requirements of Federal Motor Vehicle Safety Standard No. 121 (49 Code of Federal Regulations 571.121) applicable to the vehicle at the time it was manufactured.

(9) Texas Transportation Code, Chapter 642, concerning identifying markings on commercial motor vehicles shall take precedence over Title 49, Code of Federal Regulations, Part 390.21, for vehicles operated in intrastate commerce.

(10) Title 49, Code of Federal Regulations, Part 390.23 (Relief from Regulations), is adopted for intrastate motor carriers with the following exceptions:

(A) Title 49, Code of Federal Regulations, Part 390.23(a)(2) is not applicable to intrastate motor carriers making residential deliveries of heating fuels, public utilities as defined in the Public Utility Regulatory Act, the Gas Utility Regulatory Act, and the Texas Water Code and charged with the responsibility for maintaining essential services to the public to protect health and safety provided

the carrier:

(i) documents the type of emergency, the duration of the emergency, and the drivers utilized; and

(ii) maintains the documentation on file for a minimum of six months.

(B) The requirements of Title 49, Code of Federal Regulations, Parts 390.23(c)(1) and (2), for intrastate motor carriers shall be:

(i) the driver has met the requirements of Texas Transportation Code §644; and

(ii) the driver has had at least eight consecutive hours off-duty when the driver has been on duty for 15 or more consecutive hours, or the driver has been on duty for more than 70 hours in seven days.

(f) Vision Waiver. Under this section, the Texas Department of Public Safety may provide a waiver for a person who is otherwise disqualified under Title 49, Code of Federal Regulations, Part 391.41(b)(10) provided that intrastate drivers meet the vision standards specified in §16.9 of this title (relating to Qualifications to Drive in Intrastate Commerce).

(1) Applications for a waiver shall be accepted by the Texas Department of Public Safety's License Issuance Bureau.

(2) Waivers will be approved by the director or his designee and issued in conjunction with the medical examiner's certificate required by Title 49, Code of Federal Regulations, Part 391.43.

(3) Waivers granted under this paragraph are valid for a period not to exceed two years after the date of the medical examiner's physical examination of the vision waiver applicant.

(4) Applications for renewals will be granted provided the applicant continues to meet the vision standards adopted by the Texas Department of Public Safety (intrastate drivers must meet vision standards specified in §16.9 of this title, relating to Qualifications to Drive in Intrastate Commerce) and all other requirements of Title 49, Code of Federal Regulations, Part 391.43.

(5) Applicants denied a waiver may appeal the decision of the department by contacting the director, in writing, within 20 days after receiving notification of the denial. The request for an appeal must contain the name, address and driver's license number of the applicant, the reasons why the waiver should be granted, and include all pertinent documents which support the reasons why the waiver should be granted. The denial is stayed pending the review of the director. The decision of the director is final.



P.O. Box 531195/Birmingham, Alabama 35253-1195
1801 Oxmoor Road/Suite 100/Birmingham, Alabama 35209
Ph. 205-871-4455/Fax: 205-871-9070

May 5, 2004


William J. Stradley, Esquire
Janie L. Jordan, Esquire
Mithoff & Jacks, L.L.P.
One Allen Center, Penthouse
500 Dallas
Houston, Texas 77002

Re: *Guadalupe and Amelia Guerra, et al. vs. Allied Van Lines, Inc.*

Dear Counselors:

The following is a list of the case material received and reviewed in the above styled matter:

1.    Accident Report, Supplemental Reports and Records (03/05/04) - 418 pages
2.    Complaint (03/05/04) - 9 pages
3.    Driver Qualification Records (03/05/04) - 191 pages
4.    Satellite Tracking Records (03/05/04) - 77 pages
5.    DOT Compliance Review (04/05/04) - 33 pages
6.    Deposition of Thomas M. Lambert (04/05/04) - 63 pages
7.    Exhibits to the Deposition of Thomas M. Lambert (04/05/04) - 61 pages
8.    Deposition of Mark Davison (04/05/04) - 85 pages
9.    Exhibits to the Deposition of Mark Davison Including Logs (04/05/04) - 53 pages
10.   Certified copy of the Louisiana State Police Accident Report (04/09/04) - 113 pages
11.   Department of Transportation Audit Records of Allied Van Lines (04/09/04) - 33 pages
12.   AT&T cell phone records pertaining to Wladyslaw Gorski (04/09/04) - 36 pages
13.   The 2003 Allied Van Foreman Manual (04/09/04)- 647 pages
14.   The 2002 Safety Release from Mark Davison (04/09/04) - 28 pages
15.   The AVL Inspections for 2002-2003 pertaining to Allied Van Lines (04/09/04) - 84 pages
16.   Deposition of Mike Vaculik (04/09/04) - 26 pages with Video
17.   Exhibits to the Deposition of Mike Vaculik (04/09/04) - 26 pages
18.   Deposition of Sam Jameson (04/09/04) - 31 pages with Video
19.   Exhibits to the Deposition of Sam Jameson (04/09/04) - 33 pages
20.   Deposition of Theresa Swygart (04/09/04) - 83 pages with Video
21.   Exhibits to Deposition of Theresa Swygart (04/09/04) - 117 pages
22.   Deposition of Judy Kindley (04/09/04) - 26 pages with Video



List of case material continued:

23.  Exhibits to Deposition of Judy Kindley (04/09/04) - 6 pages
24.  Deposition of Chris Peotrowski (04/09/04) - 49 pages with Video
25.  Exhibits to Deposition of Chris Peotrowski (04/09/04) - 115 pages
26.  Deposition of Jeff Moore (04/09/04) - 39 pages with Video
27.  Exhibits to Deposition of Jeff Moore (04/09/04) - 52 pages

The following is a report, per your request, of my initial opinions in this matter and is based upon my review of the above listed documents, as well as my education, experience and training. I reserve the right to add to, change and/or modify my report should additional information become available that may require me to do so.

I am a 1975 graduate of the University of Tennessee (Knoxville) with a Bachelor of Science degree in Business Administration and a major in Transportation. From 1975 to 1982, I was employed as a Special Agent (Highway Safety Management Specialist) for the U.S. Department of Transportation, Federal Highway Administration, Bureau of Motor Carrier Safety in the Birmingham, Alabama field office. During that time, I worked with and was trained by a former Interstate Commerce Commission (ICC) Safety Investigator who had also been employed as a director of safety in the trucking industry. The ICC had the responsibility for truck safety regulation and enforcement from 1935 (Motor Carrier Act, Interstate Commerce Act) until 1966 when the D.O.T. was formed and the safety regulations were transferred.

I received several hundred hours of training at the U.S. Department of Transportation, Transportation Safety Institute in Oklahoma City, including fundamentals and advanced hazardous materials compliance training. I am experienced and trained in commercial motor vehicle safety, motor carrier safety, motor carrier/vehicle regulatory enforcement, accident investigation/reconstruction, commercial motor vehicle operations, inspection & maintenance, cargo loading & securement, and hazardous materials shipping/transportation just to name some of the areas of my qualifications. I personally performed over 500 audits of commercial motor carriers/shippers, performed over 10,000 inspections of commercial motor vehicles and drivers, made more than 100 enforcement cases, and investigated/reconstructed more than 50 commercial motor vehicle accidents and hazardous materials incidents.

Since 1983, I have been employed full time as President of Motor Carrier Safety Consulting, Inc. (MCSC) in Birmingham, Alabama. MCSC provides a wide variety of services to the commercial motor carrier industry. I was personally hired by the State of Alabama to train the DPS State Troopers after Alabama adopted the safety regulations. You may refer to my professional resume for a more detailed explanation of my education, experience and training in the area of commercial motor vehicle compliance/enforcement/safety.



**Accident Description:**

A brief description of the accident, as taken from the Louisiana State Troopers accident report is as follows: On July 20, 2003 at 1720 hours on I-10 eastbound, at mile post 123 in St. Martin, Louisiana traffic began to slow to a stop due to a previous crash eastbound near milepost 125. At the rear of this group of traffic was an Allied Van Lines truck which failed to slow or stop for the congestion ahead and ran into the rear of the traffic, setting off a chain reaction of collisions between the eleven vehicles involved. As a result five people were killed at the scene and seven others were transported for injuries ranging from minor to critical.

**Discussion/Opinions:**

According to the FMCSA management information system as of July 20, 2003 (attachment to the accident investigation report), Allied Van Lines, Inc. of Fort Wayne, Indiana is a DOT authorized (USDOT #76235, MC #15735) for hire interstate motor carrier of household goods and other commodities. Allied was operating with 4,431 power units, and 3,500 drivers. The last known mileage for Allied was 124,440,000 in the year 2000. For the period of 7/20/01 to 7/20/03, Allied had a total of 4,931 driver roadside inspections with a driver out-of-service percentage of 11.9% (the national average was 7.21%), and a total of 3,094 vehicle roadside inspections with a vehicle out-of-service percentage of 19.3% (the national average was 22.9%). Allied also had a total of 88 crashes reported, with 2 fatalities, 37 injuries, and 49 towed vehicles. A DOT compliance review completed 8/23/02 resulted in a safety rating of satisfactory on 9/17/02.

The driver of the Allied truck, Mr. Gorski, was in possession of a Florida Class A CDL license # G620880553320, issued 3/25/99 (temporary CDL was issued 3/18/99). Mr. Gorski was operating his commercial motor vehicle under the operating authority of Allied Van Lines at the time of the accident, as noted in the Louisiana State Troopers Accident Investigation, as well as in the sworn testimony of Allied officials, and the driver qualification file.

A review of the personnel/qualification file for Mr. Gorski reveals a number of 'red flags' which should have been discovered by Allied, and which should have brought into serious question the qualifications of Mr. Gorski, and precluded his hiring by Allied to operate a tractor semi-trailer on their behalf.

The Federal Motor Carrier Safety Regulations (FMCSR's) require that a motor carrier not require or permit a person to drive a commercial motor vehicle unless that person is properly qualified to drive, per the requirements of Part 391 of the FMCSR's. The FMCSR's go on to say that a person must, by reason of experience, training, or both, be able to safely operate the type of commercial motor vehicle he drives per §391.11(b)(3).



Mr. Gorski was hired by Allied on 4/29/99, just 35 days after receiving his commercial drivers license. His application for employment, dated 3/31/99, was received by Allied 4/14/99. Mr. Gorski showed on his application that he attended truck driving school at R&E of Tampa, Florida in September (25th) of 1996. There is no evidence of his having actually graduated (certificate), or having received a CDL as a result of the school, and Allied was unable to locate the school to investigate. The DOT recommends 320 hours or eight (8) weeks of training for the drivers of tractor semi-trailers (Student Manual Model Curriculum for Training Tractor-Trailer Drivers - 1985).

Mr. Gorski shows on his application that he drove 86,000 interstate miles in a tractor semi-trailer from 1/1/98 to 3/31/99, but did not receive his CDL until 3/25/99 (also shown on his application), six (6) days before completing the application with Allied. On his application he lists his prior employers as W.G. Contractor driving a cube van from 3/88 to 3/92 (self-employed and Allied requires verification of self-employment), LCM Auto Brokers driving a towing truck from 3/92 to 1/97, United Van Lines driving a tractor semi-trailer from 1/97 to 1/98, and Route 66 Trucking from 1/98 to present (he left it blank). The relevant driving experience for Allied would be what was purported to be tractor trailer driving with United Van Lines, and with Route 66 Trucking. The Allied investigation into Mr. Gorski's prior employment with United Van Lines, made for them by a third party company (Baily, Hinchy, Downes & Assoc.), revealed that United had no record of his employment. The only evidence to support this employment was a letter received from Mr. Gorski's wife Teresa, dated 7/28/99, saying that her husband was a mover/driver assistant for an owner/operator leased to United. This would not comply with the FMCSR's which require that the investigation of the drivers employment record be made with the past employer per §391.23, and a letter from Mr. Gorski's wife would not comply. It should be noted that the manager of driver qualifications for Allied, Mr. Jeff Moore, said in his deposition that "it is an acceptable practice" for a driver's wife to verify employment. This is a violation of FMCSR §390.3 which requires the employer to be knowledgeable of the FMCSR's, to instruct their employees in the applicable regulations, and to see that they comply. Also, this experience does not support any actual driving experience on the part of Mr. Gorski, as it would appear that he was a driver helper, and certainly would not have been properly licensed to operate a tractor semi-trailer. The third party investigator also indicates that they contacted Route 66 Trucking on 4/15/99, and verified that he worked 1/98 to 4/15/99 as an interstate tractor trailer driver of household goods, but that mileage was not applicable (shown on the form as N/A).

This certainly should also bring this employment into question due to the fact that Mr. Gorski did not even receive his CDL until 3/25/99, and there was no mileage indicated. Route 66 Trucking is listed in the Federal Motor Carrier Safety Administration (FMCSA) management information system database (available over the internet as www.safersys.org), as of 4/18/2004, as an authorized (USDOT #713952, MC #328868) for hire interstate carrier of general freight, including: metal, refrigerated food, beverages, fresh produce, meat, and paper products.

-4-



They are a small carrier with 11 drivers and 7 power units, and their operating authority does not include household goods. Based on the records produced by Allied, there was no actual verified experience for Mr. Gorski in the operation of household goods tractor semi-trailers.

Also, the information on his application is inconsistent with regard to his listing of driving experience and work history. The driving experience section of the application shows that he drove straight trucks locally from 3/1/88 to 1/1/97, and then drove tractor semi-trailers interstate from 1/1/98 to present (3/31/99), which has a one year gap from 1/1/97 to 1/1/98. His employment history section shows that he was working from 1/97 to 1/98 for United Van Lines. This discrepancy was noted by Allied on their form sheet (bates stamp #002880) on 8/15/99, but there is no evidence that it was investigated. Allied's safety policy states that incomplete, incorrect, or falsified applications will subject the prospective driver to rejection. FMCSR §390.35 prohibits the falsification, reproduction, or alteration of certificates, reports and records required by the safety regulations.

The application for employment is not in compliance with the FMCSR's §391.21, because it does not have a section for the list of traffic violations required (Gorski had a citation for driving the wrong way on a one way street 9/25/96), and did not have the required signature certification. Also, Mr. Gorski left the section for all accidents in the last three years blank, which should have been marked 'None' if he had not had any, and should have been investigated by Allied. Allied's safety policy states that incomplete, incorrect, or falsified applications will subject the prospective driver to rejection (bates #002349).

The motor vehicle record check obtained by Allied on 4/13/99 for Mr. Gorski shows four prior violations going back to August 25, 1992. The violations listed are speeding (84/65) 8/25/92, speeding (82/65) 1/28/94, improper lane change 9/1/94, and driving the wrong way on a one way street 9/25/96. The FMCSR's in §383.5 define serious traffic violations, which can disqualify the driver of a commercial motor vehicle, and each of these would meet that definition. Mr. Gorski was convicted of excessive speeding, which is defined as 15 miles per hour or more above the posted speed limit, on two occasions, and an improper lane change, which were all within a 3 year period. Had Mr. Gorski been operating a commercial motor vehicle requiring a CDL, he would have been automatically disqualified for the period of 120 days. This is something that should have been taken into consideration by Allied prior to hiring Mr. Gorski, due to the serious nature and because they indicate the driver has exhibited a disregard for the safety of the public.



Mr. Gorski also reveals on his application for employment that he has been convicted for use or possession of drugs or controlled substances, but leaves blank the information related to the date and location of the conviction. There is no evidence that this was ever investigated further by Allied, and this is something that should have been done according to the testimony of Mr. Moore (Allied's manager of driver qualifications), and Ms. Peotrowski (Allied's senior background investigator). Allied's safety policy (bates #002349) states that background and criminal investigation charges are $100.00 per application (billed to the agent whether or not the applicant becomes qualified to operate with Allied), and there is no evidence of this being done.

These discrepancies or 'red flags' should have been discovered by Allied during the hiring process, and should have all been properly investigated in an effort to properly qualify Mr. Gorski, per the FMCSR's and Allied's own company policies for qualification of drivers. Had Allied followed the required driver qualification process, following the FMCSR's and their own policies, they should have determined that Mr. Gorski was not qualified by reason of experience, training, or both, to safely operate a commercial motor vehicle. This was in violation of FMCSR §391.11(b)(3).

Mr. Gorski was subsequently disqualified by Allied on 12/8/99 (bates #002895) and 12/13/99 (bates #002891) for failing to provide Allied with his certificate/record of violations for the prior 12 months as required by §391.27 of the FMCSR's, which was due by 11/30/99. According to the driver file, notices were provided 11/19/99 (bates #002896), 12/8/99, and 12/9/99 (bates #002893) before Mr. Gorski was disqualified on 12/8/99 & 12/13/99. This demonstrates one of the inherent delay problems with managing driver compliance long distance as Allied does with their various agency drivers.

Mr. Gorski had his Independent Contractors' Occupational Accident Program Insurance with Vanguard Insurance Agency canceled effective May 11, 1999 and May 27, 1999 (bates #002898 & 002899). Also, Mr. Gorski had his capacity as a driver of commercial motor vehicles questioned by the State of Florida, May 9, 2000, for having received his CDL through a third party tester who had been decertified. He was given 30 days by the State of Florida to take the required exam, or have his CDL canceled. The State of Florida subsequently canceled Mr. Gorski's drivers license indefinitely effective 6/29/00. This would have automatically disqualified Mr. Gorski from operating a commercial motor vehicle on behalf of Allied or any other motor carrier per FMCSR §391.15(b)(1)(2). The evidence indicates that there were several Allied drivers on the list of drivers who had received their CDL through the decertified third party tester. Again on December 20, 2001, Mr. Gorski received another letter from the State of Florida indicating that his driving privilege was not under revocation or suspension, advising him to present the letter as his authority to apply for a license in 30 days.



There is no evidence in the file that Allied took any action pertaining to these license cancellations and problems, which should have been reported to Allied by Mr. Gorski, and was made known to them in a November 6, 2000 MVR report from DAC Services.

A review of Mr. Gorski's logs shows pattern logging (logging the same thing, and same amount of time on a regular basis), as well as falsification. When comparing the fuel purchase records and the Qualcomm records, revealed numerous violations for log falsification. Allied would not have discovered these violations because they do not use fuel purchase records, or the Qualcomm records to audit the logs for accuracy. Mr. Gorski was not logging his fuel stops, and many of his stops shown on his logs were not locations where he purchased fuel. Many of the Qualcomm locations and times did not correspond to the locations and times shown on the drivers logs, and many were hundreds of miles off.

Mr. Gorski logged very little time on line 4 for on-duty not driving, and too much time on line 1 for off duty. On duty time means all time from the time a driver begins to work or is required to be in readiness to work until the time the driver is relieved from work and all responsibility for performing work. On duty time includes: all time at a plant, terminal, facility, or other property of a motor carrier or shipper, or on any public property, waiting to be dispatched, unless the driver has been relieved from duty by the motor carrier; all time inspecting, servicing, or conditioning any commercial motor vehicle at any time,; all driving time as defined in the term driving time; all time, other than driving time, in or upon any commercial motor vehicle except time spent resting in a sleeper berth; all time loading or unloading a commercial motor vehicle, supervising, or assisting in the loading or unloading, attending a commercial motor vehicle being loaded or unloaded, remaining-in-readiness to operate the commercial motor vehicle, or in giving or receiving receipts for shipments loaded or unloaded; all time repairing, obtaining assistance, or remaining in attendance upon a disabled commercial motor vehicle; all time spent providing a breath sample or urine specimen, including travel time to and from the collection site, in order to comply with the random, reasonable suspicion, post accident, or follow-up testing required by the regulations when directed by a motor carrier; performing any other work in the capacity, employ, or service of a motor carrier; and performing any compensated work for a person who is not a motor carrier.

Mr. Gorski does not show all of his time on his logs for on-duty functions, and when he does, he always shows 15 minutes for inspections, generally shows two hours or less for loading and unloading, and does not log his fuel stops. It would not be reasonable to believe that Mr. Gorski could load and/or unload all of Allied customers household goods within an hour or two on a regular basis. This is a method of logging used by drivers to disguise hours of service, by compressing time, and mis-logging time, to allow more time for driving. The Louisiana State Police investigation revealed additional log irregularities, including those with respect to the activities of Mr. Gorski when there was no log to rely on, and are detailed in the police report.

-7-



The evidence indicates that the logging methodology used by Mr. Gorski was condoned by Allied, since he was logging this way consistently, and there is no evidence that Allied ever took any action to discover it, or to put a stop to it. Allied's safety director, Mr. Davison, testified that "the false log auditing program is designed to use whatever time dated documents that might cross our desks in our day to day operations." However, according to the testimony of Mr. Davison and other Allied personnel, the methodology used to verify the accuracy of the logs utilized only accidents and roadside inspections.

This would never have discovered any of the type of falsification that was going on with Mr. Gorski. Mr. Davison also testified that Allied does not keep any statistics for false logs, and that it is done on an individual driver basis. With that being said, even if Allied did have an effective false log auditing program, they would not know the extent of the problem and whether or not it was isolated or systemic. This is a program designed to fail, amounts to aiding and abetting, on the part of Allied, which is a violation of FMCSR §390.13, requiring that no person shall aid, abet, encourage, or require a motor carrier or its employees to violate the regulations.

In order for Mr. Gorski to log time during a tour of duty as off-duty time, he must have been relieved of all duty and responsibility for the care and custody of the vehicle, its accessories, and any cargo or passengers it may be carrying. The duration of the drivers relief from duty must be a finite period of time which is of sufficient duration to ensure that the accumulated fatigue resulting from operating a commercial motor vehicle will be significantly reduced. It the driver has been relieved from duty, as noted, the duration of the relief from duty must have been made known to the driver prior to the driver's departure in written instructions from the employer. During the stop, and for the duration of the stop, the driver must be at liberty to pursue activities of his own choosing and to leave the premises where the vehicle is situated.

This would be especially difficult for drivers of moving vans, who are responsible for the packing, marking, and loading of people's furniture and other household goods. On July 1st, Mr. Gorski shows two (2) hours for inspection and loading, and then never shows any time for unloading. He does not show any time the rest of the month, through the 13th for fuel, loading, or unloading. As a matter of fact, after July 1st, Mr. Gorski never shows any other on-duty not driving function on his logs other than 15 minute inspections each day.

Mr. Davison also testified that the fuel receipts are not analyzed in conjunction with the logs, and are not a document that is of value to his department, because they are not time stamped. Most fuel purchase program providers can and will provide times on the fuel reports if the carrier wants them, but regardless of times, they can be used to show if the driver stopped in that location, and whether or not he shows any time on line 4.



According to the Carrier Snapshot Profile, Allied had 3,094 vehicle roadside inspections in the 24 month period between 7/20/01 and 7/20/03, which works out to an average of 1,547 vehicle inspections per year. Allied had 3,500 drivers operating over-the-road on any given day, some five (5) days a week. This means that less than half of the drivers are getting inspected at a roadside inspection once a year, and some drivers may be checked more than once.
Allied has 3,500 drivers generating around 70,000 logs a month (figuring 20 working days per month), and with some 1,547 roadside inspections a year or 129 inspections per month, that works out to only 0.221% of the logs actually being checked, using the roadside inspections. With regard to Mr. Gorski specifically, he had three prior accidents/incidents (10/16/99 sideswipe, 8/10/00 sideswipe & 8/21/01 backing), and no evidence in his file or on his logs for the year, of any roadside inspections.

In over four (4) years of employment with Allied, Mr. Gorski would have had only three supporting documents checked against his logs for falsification, with none of them checking for loading or unloading times. This is a system designed to fail, allowing drivers to falsify their logs, because the drivers know that critical supporting documents are not being checked. Even more importantly, Allied knows this as well. It is set up to check for the fewest number of supporting documents possible, requiring the least manpower. Not only is it totally ineffective, but allows the drivers to know that they will almost never be checked, and allows them to know exactly what/when they will be checked.

The FMCSR's (in the regulatory guidance) list an entire litany of supporting documents required to be retained by a motor carrier for a period of 6 months from the date of receipt, which are maintained in the ordinary course of business and used by the motor carrier to verify the information recorded on the driver's record of duty status. While the DOT does not mandate exactly which documents the motor carrier should use to check against the logs, clearly the documents chosen by Allied have the least impact and frequency, and allow the drivers the most leeway when it comes to falsifying their logs in a manner that provides the greatest benefit to their ability to drive as much as possible.

**MCSC**

FMCSR §395.8(k)(1) requires motor carriers to retain all supporting documents at their principal places of business for a period of 6 months from date of receipt. Examples are: bills of lading, carrier pros, freight bills, dispatch records, driver call-in records, gate record receipts, weight/scale tickets, fuel receipts, fuel billing statements, toll receipts, international registration plan receipts, international fuel tax agreement receipts, trip permits, port of entry receipts, cash advance receipts, delivery receipts, lumper receipts, interchange and inspection reports, lessor settlement sheets, over/short and damage reports, agricultural inspection reports, Commercial Vehicle Safety Alliance reports, accident reports, telephone billing statements, credit card receipts, driver fax reports, on-board computer reports, border crossing reports, custom declarations, traffic citations, over-weight/oversize reports and citations, and/or other documents directly related to the motor carrier's operation, which are retained by the motor carrier in connection with the operation of its transportation business. Supporting documents may include other documents which the motor carrier maintains and can be used to verify information on the driver's records of duty Status. If these records are maintained at locations other than the principal place of business but are not used by the motor carrier for verification purposes, they must be forwarded to the principal place of business upon a request by an authorized representative of the FHWA or State official within 2 business days.

The biggest time variable affecting the hours of service of the drivers for household goods motor carriers is the time spent by their drivers loading and unloading. These drivers have scheduled appointments with customers for pick-up and delivery, and many of the trucks are equipped with GPS satellite tracking communication devices that can be used to determine when the drivers arrive and when they depart each location. According to the testimony of Mr. Davison, Allied's safety director, they audit 100% of the drivers logs on a computer system for hours of service, and there is only a report generated when there is a violation noted. Of course, this is a system that audits the logs on face value, just as they are turned in by the driver(s), with no genuine effort being made by Allied to audit the logs for falsification on a regular basis. Their log scanning system is actually garbage in, garbage out, and would result in mainly form-and-manner violations. Drivers could never log a fuel stop, never log loading, never log unloading, drop trips, compress time, compress miles, log on-duty functions as off-duty, and never get caught. This also amounts to aiding and abetting the drivers in violating the FMCSR's, which is a violation of §390.13. A reasonably prudent carrier would have had a false log audit program which was reasonably effective in discovering false logs which could adversely affect their driver's hours of service and potential fatigue resulting from the operation of commercial motor vehicles. The police investigation into this accident developed several internal Allied documents (found in the supplemental report section) which provide detail as to the various loads, origins, destinations, dates, times, weights, etc. It would also be reasonable for a carrier, such as Allied, to vary the documents being checked periodically, to keep the drivers from being able to use it to their advantage, by knowing exactly which documents would be checked.



Mr. Gorski violated the FMCSR's Commercial Drivers License Standards (FMCSR §383) including:

✓ **Safe vehicle control** - Mr. Gorski's speed and space was too fast and too close for conditions of road, weather, and traffic. Mr. Gorski failed to note the traffic slowdown, and so control his vehicle to avoid collision.

✓ **Proper visual search** - Mr. Gorski failed to recognize the hazards related to overall conditions, and the traffic ahead, indicating potential fatigue.

✓ **Proper communications** - Mr. Gorski failed to use his horn or lights to warn other motorists of the impending collision, indicating potential fatigue.

✓ **Speed Management** - at 60 miles per hour (the accident report shows Mr. Gorski's speed to be just above the posted speed limit of 60 mph) perception time for an alert driver is about 3/4 second or 66 feet, the average driver has a reaction time of 3/4 second or another 66 feet, and brake lag time for a commercial air brake vehicle is about ½ second or another 44 feet for a total distance from hazard perception to initial braking of 176 feet.

✓ **Space Management** - the rule of thumb for drivers of commercial motor vehicles when managing space ahead is at least one second for each ten feet of vehicle length with an additional second for speeds greater than 40 miles per hour. Based on 60 miles per hour, and 60-65 feet of length for an average tractor semi-trailer, the above simple formula translates to 7 seconds of following distance. Drivers should pick a reference point and count from the time the vehicle ahead passes that point.

✓ **Hazard perception** - it is important for drivers to recognize potential hazards and hazardous situations in order to be prepared to respond properly. Commercial truck drivers sit much higher in their vehicle than do the drivers of automobiles, and therefore have an advantage of being able to look over other vehicles and observe road conditions sooner. Had Mr. Gorski been alert and keeping a proper lookout, he should have been able to control his vehicle.

✓ **Emergency maneuvers** - when you don't give yourself enough time to react to hazardous situations, they will quickly become emergency situations. There is no evidence that Mr. Gorski made appropriate accident avoidance maneuvers to avoid the collision.



Stopping is not always the safest thing to do in an emergency, especially when there is not enough room to stop. When you don't have enough room to stop, you may have to steer away from what is ahead. However, you must have time and distance to do so.

✓ **Air brake knowledge** - truck drivers need to know more about air brake systems than with the simpler systems used on light vehicles. Air brake systems have a lag time before they activate, while lighter vehicles using hydraulic brake systems do not. This lag time increases stopping distances. Drivers should brake in such a manner so they can steer and keep the vehicle in a straight line, by using either controlled braking or stab braking to avoid locking the wheels and going into a skid.

This accident was preventable on the part of Mr. Gorski because he:

1. Failed to maintain a safe following distance.
2. Failed to keep his vehicle under control.
3. Failed to ascertain whether traffic was moving slowly, stopped or slowing down for any reason.
4. Misjudged the rate of overtaking.
5. Was not operating at a speed consistent with the existing conditions of road weather and traffic.
6. Failed to control speed so that he could stop within the assured clear distance.
7. Failed to accurately observe existing conditions.
8. Was in violation of applicable safety regulations.

The following factors can be involved in a truck driver's performance of duties: abrupt schedule changes and rotating work schedules, which may result in irregular sleep patterns and a driver beginning a trip in a fatigued condition; long hours; extended time away from family and friends, which with irregularity in work, rest, and eating patterns, adverse road, weather and traffic conditions, which may cause delays and lead to hurriedly loading or unloading cargo in order to compensate for the lost time; as well as environmental conditions such as excessive vibration, noise, and extremes in temperature.

Based on the Qualcomm satellite tracking records, Mr. Gorski drove approximately 3,218 miles beginning 7/13/03 at 0350, and ending 7/20/03 at exit 121 on I-10, which would require approximately 60 hours of driving (the miles and hours are based on using a computer software program called PC Miler which is used by the USDOT to compute point to point mileages).



This does not include the hours of on-duty not driving time worked by Mr. Gorski for all of his on-duty functions related to inspections, fueling, loading, unloading, paperwork, etc. Mr. Gorski would have had only about 1.25 hours available per day, for the 8 day period, for on-duty not driving. Based on the evidence in this case, the circumstances of the accident, and the gross falsification of Mr. Gorski's records of duty status, it is reasonable to opine that Mr. Gorski was at some level of fatigue at the time of the accident.

**Conclusion(s):**

This accident situation was foreseeable, and is an example of an accident waiting to happen. It demonstrated a conscious disregard for the safety of the public on the part of Allied, and Mr. Gorski. It is clear from the evidence produced that Allied was not effectively monitoring it's drivers, especially Mr. Gorski. It is my opinion, within a reasonable degree of certainty in the field of commercial motor vehicle compliance and safety, that Allied caused and/or contributed to the cause of the accident involving Mr. Gorski's vehicle, and the Guerra vehicle. The conduct of both Mr. Gorski and Allied fell well below the safety standards established by the FMCSR's for the protection of others. Compliance with the applicable safety requirements, which are established for safe operation, and protection of the public, is a clear duty of all commercial motor vehicle operators, and the facts of this case demonstrate both knowledge and willfulness on the part of Mr. Gorski and Allied.

My fees for litigation consulting services are $195.00 per hour, and $250.00 per hour for deposition and trial testimony, with a $1,500.00 non-refundable retainer fee paid in advance. I have attached a list of known publications, as well as a listing of my testimony within the preceding four years.

Respectfully submitted,

Whitney G. Morgan
Safety Consultant

P.O. Box 270209
Flower Mound, Tx. 75027

972-355-7096

# RMR CONSULTANTS

May 6, 2004

William Stradley
Mithoff & Jacks, L.L.P.
One Allen Center
Penthouse
500 Dallas
Houston, TX 77002

Re: Civil Action No. B-03-142; *Guadalupe and Amelia Guerra, Individually and as Personal Representatives of the Estate of Cindy Guerra, Deceased; Lisa Guerra, Individually; Rene Garza and Patricia Garza, Individually and as Personal Representatives of the Estate of Jennifer Garza, Deceased; and Joe Alfaro, Individually vs. Allied Van Lines, Inc.,* In the United States District Court for the Southern District of Texas, Brownsville Division

Dear Mr. Stradley:

Per your request, I have reviewed the following material in the above referenced case in order to form opinions and make this report to you. I may use these documents as exhibits to support my opinions:

1. Plaintiffs' Second Set of Written Questions To Defendant Allied Van Lines, Inc.
2. Plaintiffs' Second Request For Production To Defendant, Allied Van Lines, Inc.
3. Responses to Plaintiffs' First Set Of Written Questions To Defendant Allied Van Lines, Inc.
4. Defendant's Objections and Responses To Plaintiffs' First Request For Production
5. Plaintiffs' Third Set Of Written Questions To Defendant Allied Van Lines, Inc.
6. Plaintiffs' Fourth Request For Production To Defendant, Allied Van Lines, Inc.
7. Plaintiff's Sixth Request for Production to Defendant, Allied Van Lines, Inc.
8. Defendant Allied's Responses to Plaintiff's Sixth Request for Production
9. Defendant Allied's Responses to Plaintiff's Second set of Written Questions
10. Driver Revenue information produced by Allied Van Lines, Inc.
11. Satellite message history ( Bates stamp nos. 00215-00244)
12. Log tracking records (Bates stamp nos. 00245-00248)
13. Trip History records (Bates stamp nos. 00249-00252)
14. Mr. Gorski's phone records (Bates stamp nos. 00258-00259)
15. Mr. Gorski's driver daily log (Bates stamp nos. 00260-00405)
16. Satellite message history records (Bates stamp nos. 002793-02806)
17. Satellite message history (Bates stamp nos. 003086-003116)
18. Combination report (Bates stamp nos. 001140-001141)
19. Miles and Fuel by state (Bates stamp nos. 001148-001222)
20. Comdata Documents produced by Allied Van Lines, Inc. (Bates stamp nos. 003136-003155)
21. Deposition of Mark Davison
22. Deposition of Thomas M. Lambert
23. Deposition of Chris Peotrowski
24. Deposition of Theresa M. Swygart
25. Deposition of Judy K. Kindley

*Consultants to the Transportation Industry*

26. Deposition of Michael J. Vaculik
27. Deposition of Samuel Y. Jameson
28. Deposition of Jeff Moore
29. Reports produced by, log auditing software
30. PC Miler mileage software
31. Federal Highway Administration website, www.Safersys.org and MCMIS Report
32. State of Louisiana Department of Public Safety's Commercial Vehicle Post Crash Investigative Report
33. Certified copy of Louisiana State Police accident report
34. Documents produced by Allied Van Lines, Inc. numbered 1-5
35. AT&T Wireless phone records for Mr. Gorski
36. Federal Motor Carrier Safety Regulations
37. Trip records for Mr. Gorski (Bates Stamp nos. 3278-3401)
38. Trip detail reports (Bates stamp nos. 1143-1147)
39. Trip information records (bates nos. 2387-2394)
40. Shipping documents from Mr. Gorski's shipments (Bates nos. 3402-3981; 253-257 and 2429-2772)
41. Definition of Malice provided

The following is a preliminary report of my opinions in this matter, which are given with reasonable certainty and are based upon a review of the above materials, my education and experience in the Transportation Industry. I reserve the right to add to, change and or modify my opinions, should additional information become available. I am attaching as Exhibit 1 to this report a current copy of my Curriculum Vitae as evidence of my qualifications to review the information requested and to formulate the opinions I have offered.

You have asked me to review these documents and other items needed in order to formulate opinions as to:

1. How does a prudent motor carrier perform normal log audits for compliance with the Federal Motor Carrier Safety Regulations and how do they perform false log audits.
2. Whether or not Allied Van Lines, Inc. acted as a prudent motor carrier in their log falsification audit program.
3. Accuracy of Vladek Gorski's logs when compared to supporting documents that are maintained by Allied Van Lines, Inc. in their normal course of business.
4. In addition, reconstruct Vladek Gorski's driving, on duty and off duty times from 7-2-03 until time of accident on 7-20-03, using the supporting documents furnished by Allied Van Lines, Inc.

**Summary of facts**

Allied Van Lines, Inc. (Allied) is a Interstate Motor Carrier authorized to handle Household Goods authorized under MC-15735 and USDOT number 76235.

Vladek Gorski (Gorski) was an Independent Contractor, operating a commercial motor vehicle, under the control of Allied and their Interstate operating authority since approximately April of 1999.

Allied was responsible, under the Federal Motor Carrier Safety Regulations, to insure Gorski was properly qualified, and licensed and was responsible for insuring he complied with the Federal Motor Carrier Safety Regulations.

Gorski was fatally injured in an accident at milepost 123 of Interstate 10, eastbound lane, at approximately 5:20 PM CDT on July 20, 2003 which resulted in 5 total fatalities, 7 non fatal injuries and involving 10 other vehicles.

The accident was investigated by the Louisiana State Police, by Trooper Richard C. Elliott, report number LABF003584.

2

Allied performs audits on its drivers' logs to insure that when they are turned in, they meet Federal Regulations.

Allied's falsification audit, to insure the logs turned in are true and correct, consists of when and if a driver receives a roadside inspection that inspection is matched up to the drivers' log for that day for accuracy. In addition, if a driver is involved in an accident, the log for that day is again matched for accuracy. Allied has no other falsification audit to monitor drivers on a regular basis.

Allied has a policy on log violations and assigns a point value to the different violations based on severity. A driver can accumulate 150 points, in a twelve month period classified as retrainable violations, before he/she is disqualified. They must go through retraining at the 50 and 100 point levels.

Allied has a policy on other compliance violations which includes false logs, in which if a driver accumulates 100 points they will be placed in a final warning status. Should the driver receive an additional 25+, they will be disqualified.

From the Allied documents provided to me so far, Allied has various documents that are maintained in their normal course of business, to determine if a drivers' logs are false:

1. Qualcomm position report
2. Log tracking report showing pickup and deliveries
3. Fueling information
4. Roadside inspections and/or accident reports

**Regulations and Practices**

**390.5 Definitions.**

Employee means any individual, other than an employer, who is employed by a employer and who in the course of his or her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle), a mechanic, and a freight handler. Such term does not include an employee of the United States, any State, any political subdivision of a State, or any agency established under a compact between States and approved by the Congress of the United States who is acting within the course of such employment.

**395.3 Maximum driving time**

(a) Except as provided in 395.1(b)(1), 395.1(f), and 395.1(h), no motor carrier shall permit or require any driver used by it to drive nor shall any such driver drive:
    (1) More than 10 hours following 8 consecutive hours off duty; or
    (2) For any period after having been on duty 15 hours following 8 consecutive hours off duty.
(b) No motor carrier shall permit or require a driver of a commercial motor vehicle to drive, nor shall any driver drive, regardless of the number of motor carriers using the driver's services, for any period after –
    (1) Having been on duty 60 hours in any 7 consecutive days if the employing motor carrier does not operate commercial motor vehicles every day of the week; or
    (2) Having been on duty 70 hours in any period of 8 consecutive days if the employing motor carrier operates commercial motor vehicles every day of the week.

*DOT Interpretations – 395.3*

*Question 7:* What is the liability of a motor carrier for hours of service violations?

*Guidance:* The carrier is liable for violations of the hours of service regulations if it had or should have had the means by which to detect the violations. Liability under the FMCSRs does not depend upon actual knowledge of the violations.

3

*Question 8:* Are carriers liable for the actions of their employees even though the carrier contends that it did not require or permit the violations to occur?

*Guidance:* Yes. Carriers are liable for the actions of their employees. Neither intent to commit, nor actual knowledge of, a violation is a necessary element of that liability. Carriers "permit" violations of the hours of service regulations by their employees if they fail to have in place management systems that effectively prevent such violations.

**395.8 Driver's record of duty status**

(e) Failure to complete the record of duty activities of this section or 395.15, failure to preserve a record of such duty activities, or making of false reports in connection with such duty activities shall make the driver and/or the carrier liable to prosecution.

(k) **Retention of driver's record of duty status.**
    (1) Each motor carrier shall maintain records of duty status and all supporting documents for each driver it employs for a period of six months from the date of receipt.

*DOT Interpretations – 395.8*

*Question 10:* What regulation, interpretation, and/or administrative ruling requires a motor carrier to retain supporting documents and what are those documents?

*Guidance:* Section 395.8(k)(1) requires motor carriers to retain all supporting documents at their principal places of business for a period of 6 months from date of receipt.

Supporting documents are the records of the motor carrier which are maintained in the ordinary course of business and used by the motor carrier to verify the information recorded on the driver's record of duty status. Examples are: bills of lading, carrier pros, freight bills, dispatch records, driver call-in records, gate record receipts, weight/scale tickets, fuel receipts, fuel billing statements, toll receipts, international registration plan receipts, international fuel tax agreement receipts, trip permits, port of entry receipts, cash advance receipts, delivery receipts, lumper receipts, interchange and inspection reports, lessor settlement sheets, over/short and damage reports, agricultural inspection reports, CVSA reports, accident reports, telephone billing statements, credit card receipts, driver fax reports, on-board computer reports, border crossing reports, custom declarations, traffic citations, overweight/oversize reports and citations, and/or other documents directly related to the motor carrier's operation, which are retained by the motor carrier in connection with the operation of its transportation business. Supporting documents may include other documents which the motor carrier maintains and can be used to verify information on the driver's records of duty status. If these records are maintained at locations other than the principal place of business but are not used by the motor carrier for verification purposes, they must be forwarded to the principal place of business upon a request by an authorized representative of the FHWA or State official within 2 business days.

*Question 21:* What is the carrier's liability when its drivers falsify records of duty status?

*Guidance:* A carrier is liable both for the actions of its drivers in submitting false documents and for its own actions in accepting false documents. Motor carriers have a duty to require drivers to observe the FMCSRs.

The practice of reasonably prudent motor carriers is to perform "falsification audits" on its drivers' record of duty status (log) to insure that the logs reflect the accurate recording of work and driving activities of the driver.

Motor carriers normally use the following documents in performing "falsification audits":
1. Satellite positioning reports (Qualcomm)
2. Fueling reports from credit card fueling companies that reflect the date and time of fuel purchases and/or cash advances.
3. Bills of lading or reports that show the pickup and delivery activities of the driver.
4. Driver call in records or other dispatch records that would contain the call in or reporting times and locations of the drivers.

4

5. Roadside inspection reports and/or accident reports
6. Any other document that could verify the driver's location with a date and time at that location.

## Analysis of facts and opinions formulated

### Prudent motor carrier log audits and falsification audits of drivers logs

It is my opinion that reasonably prudent motor carriers perform hours of service and falsification audits of its company's driver logs. The audit of the drivers' log for compliance with the Federal Motor Carrier Safety Regulations is normally performed by inputting the log into a specialized computer program. The log auditing program reads the information inputted and compares the log information to the hours of service rules, in the regulations, for compliance.

The falsification audit process is normally a manual process or a combination manual/computer assisted process. The computer checks for a specific driver duty status, on specific days, with the information that is manually entered or imported from another source, such as, fuel card purchase data.

The carrier normally selects its best sources of information to ease the process. In this case, the best source of information that Allied would have available to it would be the Qualcomm position reports and fuel/cash advance information from Comdata. The Qualcomm information, where available would be the best source of information, providing multiple date, time and location information. This information can be easily compared to the drivers' logs and determine if the driver is filling his/her logs out accurately and honestly. The Comdata fuel/cash advance information could be automatically imported into the log audit program and automatically verified for accuracy.

All prudent motor carriers perform log and falsification audits to insure the drivers are compliant with the DOT regulations and identify the drivers that are not compliant and take corrective action. This is done because the motor carrier is expected to perform these type audits in order to insure they are not "permitting" a driver to violate the DOT rules and regulations, which is one of their most important responsibilities under the regulations, leading to fatigue and the potential for serious accidents.

### Allied's log falsification audits

It is my opinion that Allied does not have a falsification audit that would effectively identify drivers that are falsifying their logs, in order to conceal violations of the hours of service rules and regulations, as specified in 49CFR395. Their process is to only check drivers who receive roadside inspections and/or have a accident. Then they only check that specific day.

Any driver who has been with Allied for a period of time, would have had knowledge of what Allied checks for in their audit process. Drivers can avoid log falsification issues by avoiding roadside inspection stations and when they do receive an inspection insure they are accurate on that one day, for the time of the inspection and/or accident. This type of audit in no way will deter drivers from falsifying their logs.

It is my opinion that Allied permits its drivers to falsify their logs and that Allied does not have an effective management system in place to insure logs are accurate.

It is my opinion that Allied is aware of the risks of an inadequate falsification audit and that Allied nevertheless proceeded to retain Gorski, among others, as a qualified driver in conscious disregard for the safety of the motoring public:

Q. **. Have you or has anyone at Allied ever undertaken to put together existing technology such as that, such as technology that allows you to actually track where a ***driver is and compare that to what his logbook says he's doing?

A. No, we have never done that.
******

5

Q.  It's pretty important, is it not, for safety reasons, that drivers stay within the Department of Transportation regulations?

A.  Sure it is.

Q.  It's pretty important that logs not be falsified?

A.  Yes, that's important.

Q.  It's pretty important that drivers not be off running routes and accumulating more hours that they should safely?

A.  That's correct.

Q.  It can be a very, very dangerous thing if drivers are falsifying logs and doing things that allow them to drive while too fatigued, too tired to make correct decisions?

A.  Assuming if they are running over their hours and they are fatigued, yeah, that would be a dangerous situation.

Q.  Since this accident, have you or has anyone with Allied undertaken any kind of investigation into a way to combine existing technology and monitor a driver so that you can compare what a driver is actually doing versus what his log is saying he's doing?

A.  We have had discussions, but we have not gotten to a point where we have put anything -- did an analysis or put a program in place to do that.

Q.  That could potentially prevent a lot of deadly accidents, could it not?

A.  It's possible.

From the deposition of Mark Davison, Director of Safety Administration, P. 81-83.


**Gorski log falsification audit January 20, 2003 through July 13, 2003**

I performed a falsification audit on the logs supplied for the above dates, I found the following falsifications:

1.  **January**
    a.  1-23-03 Fueled in Albuquerque, NM – No time logged for fuel stop.
    b.  1-24-03 Fueled in Pearl, MS – No time logged for fuel stop.
    c.  1-25-03 Fueled in Brunswick, GA – No time logged for fuel stop.
    d.  1-28-03 Unloaded two shipments in Miami, FL – Log shows off duty.
    e.  1-29-03 Unloaded Naples, FL – No time logged for stop or time unloading.

2.  **February**
    a.  2-3-03 Loaded at Boca Raton, FL - No time logged for the stop or time for loading.
    b.  2-3-03 Fueled in Punta Gorda, FL – No time logged for fuel stop.
    c.  2-6-03 Fueled in St. Augustine, FL – No time logged for fuel stop.
    d.  2-6-03 Fueled in Brunswick, GA – No time logged for fuel stop.
    e.  2-11-03 Unloaded Westerly, RI – No time logged for stop or time for unloading.
    f.  2-14-03 Fueled in Carmel Church – No time logged for fuel stop.
    g.  2-17-03 Unloaded Atlanta, GA – No time logged for stop or time for unloading.
    h.  2-17-03 Fueled in Atlanta, GA – No time logged for fuel stop.
    i.  2-19-03 Fueled in Seffner, FL – No time logged for fuel stop.
    j.  2-24-03 Fueled in Seffner, FL – No time logged for fuel stop.
    k.  2-25-03 Fueled in Seffner, FL – No time logged for fuel stop.
    l.  2-28-03 Loaded at Pine Hills, FL and Casselberry, FL- Only one stop shown being picked up from Orlando, FL.

6

2. **March**
   a. 3-1-03 Loaded at Newport, FL – No time logged for stop or time for unloading.
   b. 3-1-03 Fueled in Gulfport, MS – No time logged for fuel stop.
   c. 3-2-03 Fueled in Orange, TX – No time logged for fuel stop.
   d. 3-3-03 Fueled in Phoenix, AZ – No time logged for fuel stop.
   e. 3-4-03 Unloaded Burbank, CA – All time logged at stop was off duty.  No time logged for unloading.
   f. 3-7-03 Unloaded Escondido, CA - All time logged at stop was off duty.  No time logged for unloading.
   g. 3-7-03 Unloaded at Lemore, CA – Log shows off duty for entire day.  The delivery stop was not logged.
   h. 3-8-03 Unloaded Roseville, CA – All time logged at stop was off duty.  No time logged for unloading.
   i. 3-10-03 Fueled in Ripon, CA – No time logged for fuel stop.
   j. 3-12-03 Fueled in Bakersfield, CA – No time logged for fuel stop.
   k. 3-16-03 Fueled in Thousand Oaks, CA – No time logged for fuel stop.
   l. 3-17-03 Fueled in Eloy, AZ – No time logged for fuel stop.
   m. 3-17-03 Fueled in Las Cruces, NM – No time logged for fuel stop.
   n. 3-18-03 Fueled in San Antonio, TX – No Time logged for fuel stop.
   o. 3-19-03 Fueled in New Orleans, LA – No time logged for fuel stop.
   p. 3-19-03 Fueled in Gulfport, MS – No time logged for fuel stop.
   q. 3-20-03 Unloaded Dunedin, FL – Log shows off duty for entire day.  The delivery stop was not logged.
   r. 3-21-03 Unloaded Tampa, FL - Log shows off duty for entire day.  The delivery stop was not logged.
   s. 3-26-03 Fueled in Ocala, FL – No time logged for fuel stop.
   t. 3-28-03 Fueled in Florence, SC – No time logged for fuel stop.
   u. 3-28-03 Fueled in Rutherglen, VA – No time logged for fuel stop.
3. **April**
   a. 4-1-03 Fueled in Milford, CT – No time logged for fuel stop.
   b. 4-4-03 Fueled in Carney's Point, NJ – No time logged for fuel stop.
   c. 4-5-03 Fueled in Carmel Church, VA – No time logged for fuel stop.
   d. 4-6-03 Fueled in Brunswick, GA – No time logged for fuel stop.
   e. 4-10-03 Unloaded Miami, FL – No time logged for stop or time for unloading.
   f. 4-24-03 Fueled in Punta Gorda, FL – No time logged for fuel stop
   g. 4-25-03 Fueled in Seffner, FL – No time logged for fuel stop.
   h. 4-28-03 Fueled in Midway, FL – No time logged for fuel stop.
   i. 4-28-03 Fueled in Gulfport, MS – No time logged for fuel stop.
   j. 4-29-03 Fueled in San Antonio, TX – No time logged for fuel stop.
   k. 4-30-03 Fueled in Anthony, TX – No time logged for fuel stop.
4. **May**
   a. 5-3-03 Unloaded Huntington Beach, CA – No time logged for stop or time for unloading.
   b. 5-9-03 Fueled in Ripon, CA – No time logged for fuel stop.
   c. 5-11-03 Fueled in Portland, OR – No time logged for fuel stop.
   d. 5-12-03 Fueled in Tacoma, WA – No time logged for fuel stop.
   e. 5-13-03 Fueled in Lodi, CA – No time logged for fuel stop.
   f. 5-17-03 Fueled in Las Cruces, NM – No time logged for fuel stop.
   g. 5-30-03 Fueled in Polk City, FL – No time logged for fuel stop.
5. **June**
   a. 6-4-03 Fueled in Jackson, GA – No time logged for fuel stop.
   b. 6-4-03 Fueled in San Antonio, FL – No time logged for fuel stop.
   c. 6-5-03 Fueled in Knoxville, TN – No time logged for fuel stop.
   d. 6-8-03 Fueled in Pensacola, FL – No time logged for fuel stop.
   e. 6-9-03 Loaded Pensacola, FL – No time logged for stop or time for loading.
   f. 6-9-03 Fueled in Gulfport, MS – No time logged for fuel stop.
   g. 6-12-03 Fueled in Kansas City, MO – No time logged for fuel stop.
   h. 6-13-03 Fueled in Emporia, KS – No time logged for fuel stop.
   i. 6-13-03 Fueled in Oklahoma City, Ok – No time logged for fuel stop.
   j. 6-14-03 Fueled in Albuquerque, NM – No time logged for fuel stop.

7

    k.  6-15-03 Fueled in Barstow, CA – No time logged for fuel stop.

    l.  6-18-03 Loading at two stops in Ojai, CA . Log shows off duty Ventura, Ca.  No time logged for stop or time for loading.

    m.  6-18-03 Fueled in Thousand Oaks, CA – No time logged for fuel stop.

    n.  6-19-03 Fueled in Phoenix, AZ – No time logged for fuel stop.

    o.  6-21-03 Pickup Dallas, TX – No time logged for stop or time for loading.

    p.  6-21-03 Fueled in Dallas, TX – No time logged for fuel stop.

    q.  6-21-03 Fueled in Greenwood, LA – No time logged for fuel stop.

    r.  6-21-03 Unloaded Shreveport, LA – Log shows off duty.  No time logged for unloading.

    s.  6-24-03 Unloaded Cape Coral, FL – No time logged for stop or time for unloading.

    t.  6-24-03 Fueled in Punta Gorda, FL – No time logged for fuel stop.

    u.  6-25-03 Unloaded Groveland, FL – Log shows off duty for entire day.  The delivery stop was not logged.

    v.  6-30-03 Loaded St. Petersburg, FL – No time logged for stop or time for loading.

    w.  6-30-03 Loaded Belleair, FL – No time logged for stop or time for loading.

    x.  6-30-03 Fueled in Punta Gorda, FL – No time logged for fuel stop.

**6.  July**

    a.  7-2-03 Loaded Orlando, FL – Log shows off duty.  No time logged for loading (3580 lbs.).

    b.  7-3-03 Loaded Pensacola, FL – No time logged for stop or time for loading (4920 lbs.).

    c.  7-3-03 Fueled in Gulfport, MS – No time logged for fuel stop.

    d.  7-4-03 Log shows starting to drive in Beaumont, TX at 8:15 AM.  Qualcomm shows starting to drive in Lake Charles, LA at 11:09 AM.

    e.  7-4-03 Fueled in San Antonio, TX – No time logged for fuel stop.

    f.  7-5-03 Log shows in sleeper and off duty between 12:15 PM and 8:15 PM at Phoenix, AZ. Qualcomm shows driving from 93 miles ESE El Paso, TX at 12:12 PM to 31 miles SSE Chandler, AZ at 8:07 PM.

    g.  7-5-03 Fueled in Anthony, TX – No time logged for fuel stop.

    h.  7-5-03 Fueled in Las Cruces, NM – No time logged for fuel stop.

    i.  7-6-03 Unloaded Newport Beach, CA No time logged for stop or time unloading (3580 lbs.).

    j.  7-7-03 Unloaded Moorpark, CA – No time logged for stop or time for unloading (3084 lbs.).

    k.  7-7-03 Unloaded Carpinteria, CA dropped at Santa Maria – Log shows off duty.  No time logged for unloading (1840 lbs.).

    l.  7-8-03 Unloaded Lemore, CA – Log shows off duty.  No time logged for unloading (4920 lbs.).

    m.  7-9-03 Unloaded Alameda, CA dropped at Hayward, CA – No time logged for stop or time for unloading (7240 lbs.).

    n.  7-9-03 Unloaded Castro Valley, CA – No time logged for stop or time unloading (1359 lbs.).

    o.  7-10-03 Fueled in Lebec, CA – No time logged for fuel stop.

    p.  7-10-03 Fueled in Santa Nella, CA – No time logged for fuel stop.

    q.  7-11-03 Loaded in San Diego, CA – No time logged for loading.

Summary – 97 log falsifications on 73 days of logs

In addition to the above apparent falsifications there are numerous suspicious log entries involving times for loading and unloading.  Gorski shows some time for loading and/or unloading, on the stops he actually logs, but will include additional time as off duty or sleeper berth time at the same location.

It is my opinion that Gorski intentionally falsified his logs in order to cover up hours of service violations and that these falsifications should have been easily detected by Allied.

In conclusion, it is further my opinion that Gorski and Allied, based on the definitions provided to me, acted with gross neglect and malice in operating a commercial motor vehicle and with total disregard of the Federal Motor Carrier Safety Regulations.

Gorski's time and logs audited, verified and reconstructed from 7-2-03 through 7-20-03
(Includes total hours worked from 6-25 through 7-1-03)

I audited and reconstructed Gorski's logs from the above dates and found the following driving rule violations.

1.  7-5-03 Drove while being on duty for 32.75 hours
2.  7-5-03 Drove while being on duty  for 78.75 hours in 8 days
3.  7-5-03 Drove after driving 10 hours by 24.75 hours
4.  7-6-03 Drove while being on duty for 89.25 hours in 8 days
5.  7-7-03 Drove after being on duty for 102.75 hours in 8 days
6.  7-8-03 Drove after being on duty for 107.75 hours in 8 days
7.  7-8-03 Drove while being on duty for 19.25 hours
8.  7-8-03 Drove after driving 10 hours by 1 hour
9.  7-9-03 Drove after being on duty for 104.5 hours in 8 days
10. 7-10-03 Drove after being on duty for 91.50 hours in 8 days
11. 7-11-03 Drove after being on duty for 92.5 hours in 8 days
12. 7-11-03 Drove after driving for 10 hours by 2.5 hours
13. 7-11-03 Drove while being on duty for 16.5 hours
14. 7-13.03 Drove after being on duty for 70.5 hours in 8 days
15. 7-14-03 Drove after being on duty for 73 hours in 8 days
16. 7-15-03 Drove after being on duty for 70.5 hours in 8 days
17. 7-19-03 Drove after driving for 10 hours by 16.75 hours
18. 7-19-03 Drove while being on duty for 30 hours
19. 7-19-03 Drove after being on duty for 72.5 hours in 8 days
20. 7-20-03 At time of accident on duty for 78.25 hours in 8 days

It is my opinion, all time spent driving on 7-20-03, the day of the accident, was in violation of the 70 hour driving rule in the Federal Motor Carrier Safety Regulations and Gorski should not have been driving on 7-20-03. Gorski would not have had any substantial driving hours available until 7-22-03.

Enclosed with this report are copies of the logs that I reconstructed from July 2, 2003 through July 20, 2003. I used the material supplied and reviewed along with other items and software listed in this report to reconstruct the logs for this time period.

**Summary of violations:**
4– 10 Hour driving rule violations
4 – 15 Hour driving rule violations
12 – 70 Hour driving rule violations
20– Total driving rule violations in 16 work days (2 days off duty)

I am being compensated for my time to review and provide expert opinions in this case and if asked or required to give testimony by deposition and/or trial.  My fees are as follows:

$150.00 per hour to review and write reports
$250.00 per hour to appear for depositions and/or trial. Plus all expenses

I have testified as an expert witness one time at trial.

November 2002
*Walter Shook v. Williams Insulation Co. of Austin and Glenn Watson, Jointly and Severally*
40th District Court, Waxahachie, TX

9

I have been deposed as an expert witness in the below cases:

November 2001
*Western American, L.L.C. v Robbie Morrow, et al*
U.S. District Court, Western District, Lafayette Division.
Case No. CV99-2217

June 2002
*Health Settings leasing, LLC and Donald Stadler d/b/a Biotek vs. Gainey Transportation Services,*
*Inc. and Sullivan Transfer Company*
Cause No. 01-812
Dallas , TX

September 2002
*Walter Shook v. Williams Insulation Co. of Austin and Glenn Watson, Jointly and Severally*
40th District Court, Waxahachie, TX

June 2003
*Daniel Joseph Skaggs, et al v. Safe Tire Disposal Corp. Of Texas, et al.*
172nd District Court of Jefferson County, TX
Cause No. E164484

July 2003
*Renee Ledezma and Fernando Garza v. Willie Forrest, Individually, and Dr. Pepper Bottling*
*Company of Texas.*
County Court at Law No. 2 of Dallas County, TX

January 2004
*Heiskell v. Metal Chemicals Corporation, et al.*
Circuit Court of Marion County, West Virginia
Civil Action No.: 02-C-114

If you have any questions, please do not hesitate to contact this office.

Sincerely,

Mike Rone
CFS/D

10

## STATE OF LOUISIANA
## UNIFORM MOTOR VEHICLE TRAFFIC CRASH REPORT

**\* 3 2 0 3 7 5 1 \***

TOTAL NUMBER OF VEHICLES INVOLVED: 11

LAT. 30.34803N
LONG. 91.70155W

DATE OF CRASH: 0 7 2 0 2 0 0 3     TIME (0000): 1 7 2 0     DISTRICT/ZONE: N/A     TROOP: I

PAGE #: 0 1

CONSTR./MAINT. ZONE ☐     HIT & RUN ☐
CODE X
PROPERTY DAMAGE X     PHOTOS MADE ☐
CODE A
RR TRAIN INVOLVED ☐     FATALITY X

I-306(035m

IN PARISH OF: STE Martin     PARISH CODE: 50

ON PRIMARY ROADWAY: I 10

MILEPOST: 123.0     CITY OR TOWN: N/A

DISTANCE: 0 0 0 8.0     MILES ☒ FEET ☐     NE E ☐ SW ☐     STREET/HIGHWAY: LA 347     ☐ AT INTERSECTION     ☒ NOT AT INTERSECTION

DISTANCE: N/A.     MILES ☐ FEET ☐     NE ☐ SW ☐     STREET/HIGHWAY: N/A     ☐ AT INTERSECTION     ☐ NOT AT INTERSECTION

CRASH OCCURRED ON: A
A. INTERSTATE
B. US. HWY
C. STATE HWY
D. PARISH ROAD
E. CITY STREET
F. PRIVATE PROPERTY
G. TOLL ROAD
H. OTHER

**VEHICLE #01**

A. PASSENGER CAR     D. A, B, OR C WITH TRAILER     G. OFF-ROAD VEHICLE     J. OTHER BUS     M. TRUCK WITH TRAILER(S)
B. LT. TRUCK (P.U., ETC.)     E. MOTORCYCLE     H. EMERGENCY VEHICLE     K. MOTOR HOME     N. FARM EQUIPMENT
C. VAN     F. PEDALCYCLE     I. SCHOOL BUS     L. SINGLE UNIT TRUCK     O. OTHER

m

YEAR: 1999     MAKE: Volvo     MODEL: Tractor Truc     # DOORS: 2     # AXLES: 05     # TIRES: 18

V.I.N.: 4VG7DARJ1XW782348     VEHICLE TOWED: A     A. YES  B. NO  C. LEFT AT SCENE     REMOVED BY: Rick's Towing

LICENSE PLATE: YEAR: 2004     STATE: FL     NUMBER: A5321K     TYPE: Apportioned

REASON TOWED: A
A. VEHICLE DAMAGE
B. DRIVER ARRESTED
C. INSURANCE VIOLATION
D. OTHER

TRAILER DESCRIPTION: YEAR: 1999     MAKE: KENT     TYPE: Van     LICENSE PLATE: YEAR: Perm     STATE: FL     NUMBER: C2620R

DRIVER'S NAME (LAST,FIRST,MI): Wladyslaw Gorski     DATE OF BIRTH: 0 9 1 2 1 9 5 5

| | POSI-TION | EJEC-TION | TRAP/EXTRI-CATED | OCC PROT SYS | SEX | RACE | AGE | INJUR |
|---|---|---|---|---|---|---|---|---|
| | A | A | C | D | H | M W | 47 | A |

STREET ADDRESS: 1779 Eagle Ridge Blvd     TELEPHONE #: N/A

CITY: Palm Harbor     STATE: FL     ZIP: 34685

INSTRUCTED TO EXCHANGE INFORMATION? ☒ YES ☐ NO

TRANSPORTED TO MEDICAL FACILITY: B
A. YES  C. UNKNOWN
B. NO  D. REFUSED AID

NAME OF FACILITY: Lafayette Parish Morgue

STATE: FL     CLASS: A     ENDORSEMENTS: N/A     DRIVER'S LICENSE NUMBER: G62088055330

OWNER'S NAME (LAST,FIRST,MI OR COMPANY NAME):

SAME AS DRIVER? ☒ YES ☐ NO
SR-10 FURNISHED? ☐ YES ☒ NO
PROOF OF INSURANCE? ☒ YES ☐ NO
NOTICE OF VIOLATION ISSUED? ☐ YES ☒ NO

CODE

STREET ADDRESS:

CITY:     STATE:     ZIP:

OCCUPANT'S NAME (LAST,FIRST,MI): None

| | POSI-TION | EJEC-TION | TRAP/EXTRI-CATED | OCC PROT SYS | SEX | RACE | AGE | INJUR |
|---|---|---|---|---|---|---|---|---|

STREET ADDRESS:     TRANSPORTED TO MEDICAL FACILITY: A. YES  C. UNKNOWN  B. NO  D. REFUSED AID     NAME OF FACILITY:

CITY:     STATE:     ZIP:

INVESTIGATING AGENCY: Louisiana State Police / Troop I     TIME OF NOTIFICATION: 1720     TIME OF ARRIVAL: 1749     TIME ALL LANES OPENED: 0512

INVESTIGATION COMPLETE: ☐ YES ☒ NO

INVESTIGATING POLICE AGENCY: A     A. STATE  C. PARISH  B. CITY  D. OTHER     REPORT COMPLETED: 0 8 1 5 2 0 0 3

**STATE OF LOUISIANA**
**UNIFORM MOTOR VEHICLE TRAFFIC CRASH REPORT**
**CONTRIBUTING FACTORS AND CONDITIONS**

COMPUTER NUMBER    PAGE #

`3 2 0 3 7 5 1` - `0 3`

`I - 3 0 1 6 (OSM)`

WRITE APPROPRIATE LETTER IN BLOCK

## ROAD SURFACE (ONE PER COLUMN) — [A]  [A]

A. DRY
B. WET
C. SNOW/SLUSH
D. ICE
E. CONTAMINANT (SAND, MUD, DIRT, OIL, ECT.)
F. UNKNOWN
G. OTHER

A. CONCRETE
B. BLACK TOP
C. BRICK
D. GRAVEL
E. DIRT
F. UNKNOWN
G. OTHER

## ROADWAY CONDITIONS — [J]

A. NO DEFECTS
B. DEFECTIVE SHOULDERS
C. HOLES
D. DEEP RUTS
E. BUMPS
F. LOOSE SURFACE MATERIAL
G. CONSTRUCTION, REPAIR
H. OVERHEAD CLEARANCE LIMITED
I. CONSTRUCTION - NO WARNING
J. PREVIOUS CRASH
K. FLOODING
L. ANIMAL IN ROADWAY
M. OBJECT IN ROADWAY
N. OTHER DEFECTS

## TYPE OF ROADWAY — [A]

A. ONE-WAY ROAD
B. TWO-WAY ROAD WITH NO PHYSICAL SEPARATION
C. TWO-WAY ROAD WITH A PHYSICAL SEPARATION
D. TWO-WAY ROAD WITH A PHYSICAL BARRIER
E. UNKNOWN
F. OTHER

## WEATHER — [A]

A. CLEAR
B. CLOUDY
C. RAIN
D. FOG/SMOKE
E. SLEET/HAIL
F. SNOW
G. SEVERE CROSSWIND
H. BLOWING SAND, SOIL, DIRT, SNOW
I. UNKNOWN
J. OTHER

## LIGHTING — [A]

A. DAYLIGHT
B. DARK - NO STREET LIGHTS
C. DARK - CONTINUOUS STREET LIGHT
D. DARK - STREET LIGHT AT INTERSECTION ONLY
E. DUSK
F. DAWN
G. UNKNOWN

## VIOLATION — 1 [S]  2 [U]

A. EXCEEDING STATED SPEED LIMIT
B. EXCEEDING SAFE SPEED LIMIT
C. FAILURE TO YIELD
D. FOLLOWING TOO CLOSELY
E. DRIVING LEFT OF CENTER
F. CUTTING IN, IMPROPER PASSING
G. FAILURE TO SIGNAL
H. CUT CORNER ON LEFT TURN
I. TURNED FROM WRONG LANE
J. OTHER IMPROPER TURNING
K. DISREGARDED TRAFFIC CONTROL
L. IMPROPER STARTING
M. IMPROPER PASSING
N. IMPROPER BACKING
O. FAILED TO SET OUT FLAGS, FLARES
P. FAILED TO DIM HEADLIGHTS
Q. DRIVER CONDITION
R. CARELESS OPERATION
S. UNKNOWN VIOLATIONS
U. NO VIOLATIONS
V. OTHER

## KIND OF LOCATION — [G]

A. MANUFACTURING OR INDUSTRIAL
B. BUSINESS CONTINUOUS
C. BUSINESS, MIXED RESIDENTIAL
D. RESIDENTIAL DISTRICT
E. RESIDENTIAL SCATTERED
F. SCHOOL OR PLAYGROUND
G. OPEN COUNTRY
H. OTHER

## REASON FOR MOVEMENT — 1 [K]  2 [J]

A. TO AVOID OTHER VEHICLE
B. TO AVOID PEDESTRIAN
C. TO AVOID ANIMAL
D. TO AVOID OTHER OBJECT
E. PASSING
F. VEHICLE OUT OF CONTROL, NOT PASSING
G. VEHICLE OUT OF CONTROL, PASSING
H. FOR TRAFFIC CONTROL
I. DUE TO CONGESTION
J. DUE TO PRIOR CRASH (COLLISION)
K. DUE TO DRIVER VIOLATION
L. DUE TO DRIVER VIOLATION
M. DUE TO VEHICLE CONDITION (FAILURE)
N. DUE TO PAVEMENT CONDITION
O. HIGH WIND
P. NORMAL MOVEMENT
Q. REASON UNKNOWN
R. OTHER

## PRIMARY FACTOR — [D]

## SECONDARY FACTOR — [A]

A. VIOLATIONS
B. MOVEMENT PRIOR TO CRASH
C. VISION OBSCUREMENTS
D. CONDITION OF DRIVER
E. VEHICLE CONDITIONS
F. ROAD SURFACE
G. ROADWAY CONDITION
H. LIGHTING
I. WEATHER
J. TRAFFIC CONTROL
K. KIND OF LOCATION
L. CONDITION OF PEDESTRIAN
M. PEDESTRIAN ACTIONS

## ACCESS CONTROL — [C]

A. NO CONTROL (UNLIMITED ACCESS TO ROADWAY)
B. PARTIAL CONTROL (LIMITED ACCESS TO ROADWAY)
C. FULL CONTROL (ONLY RAMP ENTRANCE & EXIT)
D. UNKNOWN
E. OTHER

## VISION OBSCUREMENTS — 1 [O]  2 [O]

A. RAIN, SNOW, ETC. ON WINDSHIELD
B. WINDSHIELD OTHERWISE OBSCURED
C. VISION OBSCURED BY LOAD
D. TREES, BUSHES, ETC.
E. BUILDING
F. EMBANKMENT
G. SIGN BOARDS
H. HILLCREST
I. PARKED VEHICLES
J. MOVING VEHICLES
K. BLINDED BY HEADLIGHTS
L. BLINDED BY SUNGLARE
M. DISTRACTED BY NEON LIGHTS IN FIELD OF VIEW
N. NO OBSCUREMENTS
O. NO OBSCUREMENTS
P. OTHER

## CONDITION OF DRIVER — 1 [K]  2 [A]

A. NORMAL
B. INATTENTIVE OR DISTRACTED
C. PHYSICAL IMPAIRMENT (EYES, EAR, LIMB)
D. ILLNESS
E. FATIGUED
F. APPARENTLY ASLEEP/BLACKOUT
G. HAD BEEN DRINKING - IMPAIRED
H. HAD BEEN DRINKING - NOT IMPAIRED
I. DRUG USE - IMPAIRED
J. DRUG USE - NOT IMPAIRED
K. UNKNOWN
L. OTHER

## VEHICLE LIGHTING — 1 [D]  2 [B]

A. HEADLIGHTS ON
B. HEADLIGHTS OFF
C. DAYTIME RUNNING LIGHTS
D. UNKNOWN

## HARMFUL EVENTS

A. OVERTURNED
B. FIRE/EXPLOSION
C. IMMERSION
D. JACKKNIFE
E. OTHER NONCOLLISION
F. PEDESTRIAN
G. PEDALCYCLE
H. RAILWAY TRAIN
I. ANIMAL
J. MOTOR VEHICLE IN TRANSPORT
K. MOTOR VEHICLE IN TRANSPORT IN OTHER ROADWAY
L. PARKED MOTOR VEHICLE
M. OTHER OBJECT (NOT FIXED)

N. IMPACT ATTENUATOR
O. BRIDGE-PIER OR ABUTMENT
P. BRIDGE-PARAPET END
Q. BRIDGE-RAIL
R. GUARDRAIL FACE
S. GUARDRAIL END
T. MEDIAN BARRIER
U. HIGHWAY TRAFFIC SIGN POST
V. OVERHEAD SIGN SUPPORT
W. LUMINAIRE/LIGHT SUPPORT
X. UTILITY POLE
Y. OTHER POLE

Z. CULVERT
AA. CURB
BB. EMBANKMENT
CC. MAIL BOX
DD. DITCH

EE. FENCE
FF. TREE
GG. UNKNOWN
HH. OTHER FIXED OBJECT

| | VEH 1 | VEH 2 |
|---|---|---|
| FIRST HARMFUL EVENT | [J] | [J] |
| MOST HARMFUL EVENT | [B] | [J] |

## RELATION TO ROADWAY — [A]

A. ON ROADWAY
B. SHOULDER
C. MEDIAN
D. BEYOND SHOULDER - LEFT
E. BEYOND SHOULDER - RIGHT
F. OFF ROADWAY
G. GORE
H. UNKNOWN
I. OTHER

## ALIGNMENT — [A]

A. STRAIGHT-LEVEL
B. STRAIGHT-LEVEL ELEVATED
C. CURVE-LEVEL
D. CURVE-LEVEL ELEVATED
E. ON GRADE-STRAIGHT
F. ON GRADE-CURVE
G. HILLCREST-STRAIGHT
H. HILLCREST-CURVE
I. DIP, HUMP-STRAIGHT
J. DIP, HUMP-CURVE
K. UNKNOWN
L. OTHER

## MOVEMENT PRIOR TO CRASH — 1 [B]  2 [Q]

A. STOPPED
B. PROCEEDING STRAIGHT AHEAD
C. TRAVELING WRONG WAY
D. BACKING
E. CROSSED MEDIAN INTO OPPOSING LANE
F. CROSSED CENTER LINE INTO OPPOSING LANE
G. RAN OFF ROAD (NOT WHILE MAKING TURN AT INTERSECTION)
H. CHANGING LANES ON MULTI-LANE ROAD
I. MAKING LEFT TURN
J. MAKING RIGHT TURN
K. STOPPED PREPARING TO, OR MAKING U-TURN
L. MAKING TURN, DIRECTION UNKNOWN
M. STOPPED, PREPARING TO TURN LEFT
N. STOPPED PREPARING TO TURN RIGHT
O. SLOWING TO MAKE LEFT TURN
P. SLOWING TO MAKE RIGHT TURN
Q. SLOWING TO STOP
R. PROPERLY PARKED
S. PARKING MANEUVER
T. ENTERING TRAFFIC FROM SHOULDER
U. ENTERING TRAFFIC FROM MEDIAN
V. ENTERING TRAFFIC FROM PARKING LANE
W. ENTERING TRAFFIC FROM PRIVATE LANE
X. ENTERING FREEWAY FROM ON RAMP
Y. LEAVING FREEWAY VIA OFF RAMP
Z. OTHER OR UNKNOWN

## VEHICLE CONDITION — 1 [L]  2 [K]

A. DEFECTIVE BRAKES
B. DEFECTIVE HEADLIGHTS
C. DEFECTIVE REAR LIGHTS
D. DEFECTIVE SIGNAL LIGHTS
E. ALL LIGHTS OUT
F. DEFECTIVE STEERING
G. TIRE FAILURE
H. WORN OR SMOOTH TIRES
I. ENGINE FAILURE
J. DEFECTIVE SUSPENSION
K. NO DEFECTS OBSERVED
L. UNKNOWN DEFECTS
M. OTHER

## TRAFFIC CONTROL CONDITIONS — 1 [A]  2 [A]

A. CONTROLS FUNCTIONING
B. CONTROLS NOT FUNCTIONING
C. CONTROLS OBSCURED
D. LANE MARKING UNCLEAR OR DEFECTIVE
E. NO CONTROLS
F. CONDITION UNKNOWN

## TRAFFIC CONTROL — 1 [A]  2 [A]

A. STOP SIGN
B. YIELD SIGN
C. RED SIGNAL ON
D. YELLOW SIGNAL ON
E. GREEN SIGNAL ON
F. GREEN TURN ARROW ON
G. RIGHT TURN ON RED
H. LIGHT PHASE UNKNOWN
I. FLASHING YELLOW
J. FLASHING RED
K. OFFICER, WATCHMAN
L. RR CROSSING, SIGN
M. RR CROSSING, SIGNAL

N. RR CROSSING, NO CONTROL
O. WARNING SIGN (SCHOOL, ETC.)
P. SCHOOL FLASHING SPEED SIGN
Q. YELLOW NO PASSING LINE
R. WHITE DASHED LINE
S. YELLOW DASHED LINE
T. BIKE LANE
U. CROSSWALK
V. NO CONTROL
W. UNKNOWN
X. OTHER

## ALCOHOL/DRUG INVOLVEMENT

| | #1 | #2 |
|---|---|---|
| | [F] | [A] |

ALCOHOL/DRUGS PRESENT
A. NEITHER ALCOHOL OR DRUGS PRESENT
B. YES (ALCOHOL PRESENT)
C. YES (DRUGS PRESENT)
D. YES (ALCOHOL AND DRUGS PRESENT)
E. NOT REPORTED
F. UNKNOWN

ALCOHOL — [C]
A. TEST REFUSED
B. NO TEST GIVEN
C. TEST GIVEN, RESULTS PENDING
D. TEST GIVEN, BAC ____    ____ g% ____
E. UNKNOWN

DRUGS — [B]
A. TEST NOT GIVEN
B. TEST GIVEN, RESULTS PENDING
C. DRUGS REPORTED (SPECIFY)
D. UNKNOWN

SUSPECTED DRUGS

*CODE A* *CODE A*

**STATE OF LOUISIANA**
**UNIFORM MOTOR VEHICLE TRAFFIC CRASH REPORT**
**VEHICLE / PEDESTRIAN SUPPLEMENT**

PAGE #

3.2.0.3.7.5.1 - 05

I-3016 (Bssm)

[X] VEHICLE
[ ] PEDESTRIAN

**VEHICLE #** 03

| | | |
|---|---|---|
| A. PASSENGER CAR | E. MOTORCYCLE | I. SCHOOL BUS | M. TRUCK WITH TRAILER(S) |
| B. LT. TRUCK (P.U., ETC.) | F. PEDALCYCLE | J. OTHER BUS | N. FARM EQUIPMENT |
| C. VAN | G. OFF-ROAD VEHICLE | K. MOTOR HOME | O. OTHER |
| D. A, B, OR C WITH TRAILER | H. EMERGENCY VEHICLE | L. SINGLE UNIT TRUCK | |

} M

| YEAR | MAKE | MODEL | # DOORS | # AXLES | # TIRES |
|---|---|---|---|---|---|
| 1999 | International | Tractor Truc | 2 | 04 | 14 |

**V.I.N.** 2HSFHAER4XC081966

VEHICLE TOWED [B]  A.YES  B. NO  C. LEFT AT SCENE

REMOVED BY Driver

**LICENSE PLATE**
| YEAR | STATE | NUMBER | TYPE |
|---|---|---|---|
| 2004 | NC | LB3810 | Apportioned |

REASON TOWED
A. VEHICLE DAMAGE
B. DRIVER ARRESTED
C. INSURANCE VIOLATION
D. OTHER

**TRAILER DESCRIPTION**
| YEAR | MAKE | TYPE | LICENSE PLATE YEAR | STATE | NUMBER |
|---|---|---|---|---|---|
| 1999 | Great De | Van | 2004 | NC | L813706 |

**DRIVER'S NAME (LAST,FIRST,MI)** Brimer James R

**DATE OF BIRTH** 12 03 1974

| POSITION | EJEC-TION | TRANS EXTRI-CATED | OCC PROT SYS | SEX | RACE | AGE | INJURY |
|---|---|---|---|---|---|---|---|
| A | A | A | D | D | m | w | 28 | D |

STREET ADDRESS 2801 White Lane    TELEPHONE # N/A

CITY Archdale    STATE NC    ZIP 27263

TRANSPORTED TO MEDICAL FACILITY [D]  A. YES  C. UNKNOWN  B. NO  D. REFUSED AID

| STATE | CLASS | ENDORSEMENTS | DRIVER'S LICENSE NUMBER |
|---|---|---|---|
| NC | A | | 00000000089548 79 |

INSTRUCTED TO EXCHANGE INFORMATION? [X] YES [ ] NO

NAME OF FACILITY

**OWNER'S NAME (LAST,FIRST,MI OR COMPANY NAME)** Carolina Truck Leasing Inc

SAME AS DRIVER? [ ] YES [X] NO
SR-10 FURNISHED? [ ] YES [X] NO
PROOF OF INSURANCE? [X] YES [ ] NO
NOTICE OF VIOLATION ISSUED? [ ] YES [X] NO

STREET ADDRESS 1924 Brentwood St.

CITY High Point    STATE NC    ZIP 27260

**OCCUPANT'S NAME (LAST,FIRST,MI)** Welburn Thomas J

| POSITION | EJEC-TION | TRANS EXTRI-CATED | OCC BAG | OCC PROT SYS | SEX | RACE | AGE | INJURY |
|---|---|---|---|---|---|---|---|---|
| J | A | A | D | A | m | w | 25 | D |

STREET ADDRESS 5329 Greywood Dr.    TRANSPORTED TO MEDICAL FACILITY [D]  A. YES  C. UNKNOWN  B. NO  D. REFUSED AID

CITY Greensboro    STATE NC    ZIP 27406

NAME OF FACILITY

**PEDESTRIAN'S NAME (LAST,FIRST,MI)** N/A

TRANSPORTED TO MEDICAL FACILITY  A. YES  C. UNKNOWN  B. NO  D. REFUSED AID

NAME OF FACILITY

STREET ADDRESS    TELEPHONE #

CITY    STATE    ZIP

CODE A

| | LIGHT | DARK | | LIGHT | DARK | | SEX | RACE | AGE | INJURY CODE |
|---|---|---|---|---|---|---|---|---|---|---|
| UPPER BODY CLOTHING | [ ] | [ ] | LOWER BODY CLOTHING | [ ] | [ ] | | [ ] | [ ] | [ ] | [ ] |

**CODES**

| SEATING POSITION | EJECTION | TRAPPED OR EXTRICATED | AIRBAG | OCCUPANT PROTECTION SYSTEM USED | INJURY |
|---|---|---|---|---|---|
| A - FRONT SEAT-LEFT SIDE (MOTORCYCLE DRIVER) | I - SLEEPER SECTION OF CAB (TRUCK) | A - NOT EJECTED | A - NOT TRAPPED | A - DEPLOYED | A - NONE USED-VEHICLE OCCUPANT | A - FATAL |
| B - FRONT SEAT-MIDDLE | K - PASSENGER IN OTHER ENCLOSED PASSENGER OR CARGO AREA (NON-TRAILING UNIT) | B - TOTALLY EJECTED | B - TRAPPED/EXTRI-CATED | B - NOT DEPLOYED | B - SHOULDER BELT ONLY USED | B - INCAPACITA-TING/SEVERE |
| C - FRONT SEAT-RIGHT SIDE | | C - PARTIALLY EJECTED | C - TRAPPED/NOT EXTRICATED | C - NOT DEPLOY-ED/SWITCH OFF | C - LAP BELT ONLY USED | C - NON-INCAPA-CIATING/ MODERATE |
| D - SECOND SEAT-LEFT SIDE (MOTORCYCLE PASSENGER) | L - PASSENGER IN OTHER UNENCLOSED PASSENGER OR CARGO AREA (NON-TRAILING UNIT) | D - UNKNOWN | D - UNKNOWN | | D - SHOULDER AND LAP BELT USED | |
| E - SECOND SEAT-MIDDLE | M - PASSENGER ON TRAIN OR STREETCAR | | | D - NOT APPLICABLE | E - CHILD SAFETY SEAT IMPROPERLY USED | D - POSSIBLE/ COMPLAINT |
| F - SECOND SEAT-RIGHT SIDE | N - TRAILING UNIT | | | E - UNKNOWN | F - CHILD SAFETY SEAT USED | E - NO INJURY |
| G - THIRD ROW-LEFT SIDE (MOTORCYCLE PASSENGER) | O - RIDING ON VEHICLE EXTERIOR (NON-TRAILING UNIT) | | | | G - HELMETS USED | |
| H - THIRD ROW-MIDDLE | P - UNKNOWN | | | | H - RESTRAINT USE UNKNOWN | |



**STATE OF LOUISIANA**
**UNIFORM MOTOR VEHICLE TRAFFIC CRASH REPORT**
**VEHICLE / PEDESTRIAN SUPPLEMENT**

[X] VEHICLE
[ ] PEDESTRIAN

COMPUTER NUMBER: 3 2 0 3 7 5 1 - 0 1 7
I-3016 055m
PAGE #

**VEHICLE #** `0 4`

A. PASSENGER CAR
B. LT. TRUCK (P.U., ETC.)
C. VAN
D. A, B, OR C WITH TRAILER
E. MOTORCYCLE
F. PEDALCYCLE
G. OFF-ROAD VEHICLE
H. EMERGENCY VEHICLE
I. SCHOOL BUS
J. OTHER BUS
K. MOTOR HOME
L. SINGLE UNIT TRUCK
M. TRUCK WITH TRAILER(S)
N. FARM EQUIPMENT
O. OTHER

} `B`

| YEAR | MAKE | MODEL | # DOORS | # AXLES | # TIRES |
|---|---|---|---|---|---|
| 1999 | GMC | Suburban | 4 | 02 | 04 |

**V.I.N.** `3 G K E C 1 6 R 3 X G 5 4 4 3 5 1`

VEHICLE TOWED `A`  A. YES  B. NO  C. LEFT AT SCENE

REMOVED BY `Calais's Towing`

| LICENSE PLATE YEAR | STATE | NUMBER | TYPE | REASON TOWED |
|---|---|---|---|---|
| 2003 | Tx | H24CNC | Passenger Car | A. VEHICLE DAMAGE `A` B. DRIVER ARRESTED C. INSURANCE VIOLATION D. OTHER |

| TRAILER DESCRIPTION | MAKE | TYPE | LICENSE PLATE YEAR | STATE | NUMBER |
|---|---|---|---|---|---|
| N/A | | | N/A | | |

**DRIVER'S NAME (LAST,FIRST,MI)** `Guerra Guadalupe R Jr`

DATE OF BIRTH `05 05 1951`

STREET ADDRESS `P.O. Box 481 Santa Vista Ave.`  TELEPHONE # `N/A`

CITY `Santa Rosa`  STATE `Tx`  ZIP `78593`

| POSI-TION | EJEC-TION | TRAN EXTRI-CATED | AIR BAG | OCC PROT SYS | SEX | RACE | AGE | INJURY |
|---|---|---|---|---|---|---|---|---|
| A | A | B | E | H | m | H | 52 | C |

TRANSPORTED TO MEDICAL FACILITY
A. YES  C. UNKNOWN
B. NO  D. REFUSED AID  `A`

| STATE | CLASS | ENDORSEMENTS | DRIVER'S LICENSE NUMBER | INSTRUCTED TO EXCHANGE INFORMATION? |
|---|---|---|---|---|
| Tx | C | N/A | 00000000002019276 | [X] YES [ ] NO |

NAME OF FACILITY `Baton Rouge General`

**OWNER'S NAME (LAST,FIRST,MI OR COMPANY NAME)**

SAME AS DRIVER?  [X] YES  [ ] NO
SR-10 FURNISHED?  [ ] YES  [X] NO
PROOF OF INSURANCE?  [X] YES  [ ] NO

STREET ADDRESS

CITY _____ STATE _____ ZIP _____

NOTICE OF VIOLATION ISSUED?  [ ] YES  [X] NO

**OCCUPANT'S NAME (LAST,FIRST,MI)** `Guerra Amelia`

| POSI-TION | EJEC-TION | TRAN EXTRI-CATED | AIR BAG | OCC PROT SYS | SEX | RACE | AGE | INJURY |
|---|---|---|---|---|---|---|---|---|
| C | A | B | E | H | F | H | 51 | C |

STREET ADDRESS `P.O. Box 481 Santa Vista Ave.`

TRANSPORTED TO MEDICAL FACILITY
A. YES  C. UNKNOWN
B. NO  D. REFUSED AID  `A`

NAME OF FACILITY `Our Lady of the Lake`

CITY `Santa Rosa`  STATE `Tx`  ZIP `78593`

**PEDESTRIAN'S NAME (LAST,FIRST,MI)** `N/A`

TRANSPORTED TO MEDICAL FACILITY
A. YES  C. UNKNOWN
B. NO  D. REFUSED AID

NAME OF FACILITY

STREET ADDRESS _____ TELEPHONE # _____

CITY _____ STATE _____

CODE A

| UPPER BODY CLOTHING | LIGHT [ ] | DARK [ ] | LOWER BODY CLOTHING | LIGHT [ ] | DARK [ ] | SEX [ ] | RACE [ ] | AGE [ ] | INJURY CODE [ ] |
|---|---|---|---|---|---|---|---|---|---|

| SEATING POSITION | EJECTION | TRAPPED OR EXTRICATED | AIRBAG | OCCUPANT PROTECTION SYSTEM USED | INJURY |
|---|---|---|---|---|---|
| A - FRONT SEAT-LEFT SIDE (MOTORCYCLE DRIVER) B - FRONT SEAT-MIDDLE C - FRONT SEAT-RIGHT SIDE D - SECOND SEAT-LEFT SIDE (MOTORCYCLE PASSENGER) E - SECOND SEAT-MIDDLE F - SECOND SEAT-RIGHT SIDE G - THIRD ROW-LEFT SIDE (MOTORCYCLE PASSENGER) H - THIRD ROW-MIDDLE | J - SLEEPER SECTION OF CAB (TRUCK) K - PASSENGER IN OTHER ENCLOSED PASSENGER OR CARGO AREA (NON-TRAILING UNIT) L - PASSENGER IN OTHER UNENCLOSED PASSENGER OR CARGO AREA (NON-TRAILING UNIT) M - PASSENGER ON TRAIN OR STREETCAR N - TRAILING UNIT O - RIDING ON VEHICLE EXTERIOR (NON-TRAILING UNIT) | A - NOT EJECTED B - TOTALLY EJECTED C - PARTIALLY EJECTED D - UNKNOWN | A - NOT TRAPPED B - TRAPPED/EXTRI-CATED C - TRAPPED/NOT EXTRICATED D - UNKNOWN | A - DEPLOYED B - NOT DEPLOYED C - NOT DEPLOY-ED/SWITCH OFF D - NOT APPLICABLE E - UNKNOWN | A - NONE USED-VEHICLE OCCUPANT B - SHOULDER BELT ONLY USED C - LAP BELT ONLY USED D - SHOULDER AND LAP BELT USED E - CHILD SAFETY SEAT IMPROPERLY USED F - CHILD SAFETY SEAT USED MODERATE G - HELMETS USED H - RESTRAINT USE UNKNOWN | A - FATAL B - INCAPACITA-TING/SEVERE C - NON-INCAPA-CITATING/ MODERATE D - POSSIBLE/ COMPLANT E - NO INJURY |



**STATE OF LOUISIANA**
**UNIFORM MOTOR VEHICLE TRAFFIC CRASH REPORT**
**VEHICLE / PEDESTRIAN SUPPLEMENT**

PAGE # : 3 2 0 3 7 5 1 - 0 9

I-30lle (088m)

[X] VEHICLE

[ ] PEDESTRIAN

**VEHICLE #** `0 5`

A. PASSENGER CAR
B. LT. TRUCK (P.U., ETC.)
C. VAN
D. A, B, OR C WITH TRAILER

E. MOTORCYCLE
F. PEDALCYCLE
G. OFF-ROAD VEHICLE
H. EMERGENCY VEHICLE

I. SCHOOL BUS
J. OTHER BUS
K. MOTOR HOME
L. SINGLE UNIT TRUCK

M. TRUCK WITH TRAILER(S)
N. FARM EQUIPMENT
O. OTHER

} `C`

| YEAR | MAKE | MODEL | # DOORS | # AXLES | # TIRES |
|------|------|-------|---------|---------|---------|
| 2 0 0 3 | O l d s m o b i l e | S i l h o u e t t e | 4 | 0 2 | 0 4 |

V.I.N. `1 G N D X 0 3 E 3 D 3 0 8 7 7 5`  VEHICLE TOWED `A`  A. YES  B. NO  C. LEFT AT SCENE  REMOVED BY `Huvel's Towing`

| LICENSE PLATE | YEAR | STATE | NUMBER | TYPE | REASON TOWED |
|---------------|------|-------|--------|------|--------------|
| | 2 0 0 4 | V A | J F W 5 6 2 4 | Passenger Car | A. VEHICLE DAMAGE  B. DRIVER ARRESTED  C. INSURANCE VIOLATION  D. OTHER  `A` |

**TRAILER DESCRIPTION** YEAR `N/A` MAKE TYPE LICENSE PLATE `N/A` YEAR STATE NUMBER

**DRIVER'S NAME (LAST,FIRST,MI)** `Bybee Kristin Michelle`

DATE OF BIRTH `0 3 / 0 1 9 7 0`

STREET ADDRESS `554 Brooklyn Ave`  TELEPHONE # `N/A`

CITY `Jefferson`  STATE `LA`  ZIP `7 0 1 2 1`

| POSI-TION | EJEC-TION | TRANS EXTRI-CATED | AIR BAG | PROT SYS | SEX | RACE | AGE | INJURY |
|-----------|-----------|-------------------|---------|----------|-----|------|-----|--------|
| A | A | A | B | D | F | W | 3 3 | D |

TRANSPORTED TO MEDICAL FACILITY `D`  A. YES  C. UNKNOWN  B. NO  D. REFUSED AID

INSTRUCTED TO EXCHANGE INFORMATION? [X] YES [ ] NO  NAME OF FACILITY

| STATE | CLASS | ENDORSEMENTS | DRIVER'S LICENSE NUMBER |
|-------|-------|--------------|--------------------------|
| L A | E | N/A | 0 0 0 0 0 0 0 0 0 7 5 7 6 5 7 4 |

**OWNER'S NAME (LAST,FIRST,MI OR COMPANY NAME)** `Alamo Financing LP`

SAME AS DRIVER? [ ] YES [X] NO

SR-10 FURNISHED? [ ] YES [X] NO

STREET ADDRESS `4680 Conference Way South`

PROOF OF INSURANCE? [X] YES [ ] NO

CITY `Boca Raton`  STATE `FL`  ZIP `33431`

NOTICE OF VIOLATION ISSUED? [ ] YES [X] NO

**OCCUPANT'S NAME (LAST,FIRST,MI)** `Bybee Jason`

| POSI-TION | EJEC-TION | TRANS EXTRI-CATED | AIR BAG | OCC PROT SYS | SEX | RACE | AGE | INJURY |
|-----------|-----------|-------------------|---------|--------------|-----|------|-----|--------|
| C | A | A | B | D | M | W | 3 0 | D |

STREET ADDRESS `554 Brooklyn Ave`  TRANSPORTED TO MEDICAL FACILITY `D`  A. YES  C. UNKNOWN  B. NO  D. REFUSED AID  NAME OF FACILITY

CITY `Jefferson`  STATE `LA`  ZIP `70121`

**PEDESTRIAN'S NAME (LAST,FIRST,MI)** `N/A`

TRANSPORTED TO MEDICAL FACILITY  A. YES  C. UNKNOWN  B. NO  D. REFUSED AID  NAME OF FACILITY

STREET ADDRESS  TELEPHONE #

CITY  STATE  ZIP

CODE A

| | LIGHT | DARK | | LIGHT | DARK | SEX | RACE | AGE | INJURY CODE |
|-|-------|------|-|-------|------|-----|------|-----|-------------|
| UPPER BODY CLOTHING | | | LOWER BODY CLOTHING | | | | | | |

| SEATING POSITION | EJECTION | TRAPPED OR EXTRICATED | AIRBAG | OCCUPANT PROTECTION SYSTEM USED | INJURY |
|------------------|----------|-----------------------|--------|--------------------------------|--------|
| A - FRONT SEAT-LEFT SIDE (MOTORCYCLE DRIVER)  B - FRONT SEAT-MIDDLE  C - FRONT SEAT-RIGHT SIDE  D - SECOND SEAT-LEFT SIDE (MOTORCYCLE PASSENGER)  E - SECOND SEAT-MIDDLE  F - SECOND SEAT-RIGHT SIDE  G - THIRD ROW-LEFT SIDE (MOTORCYCLE PASSENGER)  H - THIRD ROW-MIDDLE | J - SLEEPER SECTION OF CAB (TRUCK)  K - PASSENGER IN OTHER ENCLOSED PASSENGER OR CARGO AREA (NON-TRAILING UNIT)  L - PASSENGER IN OTHER UNENCLOSED PASSENGER OR CARGO AREA (NON-TRAILING UNIT)  M- PASSENGER ON TRAIN OR STREETCAR  N - TRAILING UNIT  O - RIDING ON VEHICLE EXTERIOR (NON-TRAILING UNIT) | A - NOT EJECTED  B - TOTALLY EJECTED  C - PARTIALLY EJECTED  D - UNKNOWN | A - NOT TRAPPED  B - TRAPPED/EXTRI-CATED  C - TRAPPED/NOT EXTRICATED  D - UNKNOWN | A - DEPLOYED  B - NOT DEPLOYED  C - NOT DEPLOY-ED/SWITCH OFF  D - NOT APPLICABLE  E - UNKNOWN | A - NONE USED-VEHICLE OCCUPANT  B - SHOULDER BELT ONLY USED  C - LAP BELT ONLY USED  D - SHOULDER AND LAP BELT USED  E - CHILD SAFETY SEAT IMPROPERLY USED  F - CHILD SAFETY SEAT USED  G - HELMETS USED  H - RESTRAINT USE UNKNOWN | A - FATAL  B - INCAPACITA-TING/SEVERE  C - NON-INCAPA-CITATING/MODERATE  D - POSSIBLE/COMPLAINT  E - NO INJURY |

**STATE OF LOUISIANA**
**UNIFORM MOTOR VEHICLE TRAFFIC CRASH REPORT**
**VEHICLE / PEDESTRIAN SUPPLEMENT**

COMPUTER NUMBER: 3 2 0 3 7 5 1 - 1 1
PAGE #

I-30116603501

[X] VEHICLE
[ ] PEDESTRIAN

**VEHICLE #** 0 6

| | | | |
|---|---|---|---|
| A. PASSENGER CAR | E. MOTORCYCLE | I. SCHOOL BUS | M. TRUCK WITH TRAILER(S) |
| B. LT. TRUCK (P.U., ETC.) | F. PEDALCYCLE | J. OTHER BUS | N. FARM EQUIPMENT |
| C. VAN | G. OFF-ROAD VEHICLE | K. MOTOR HOME | O. OTHER |
| D. A, B, OR C WITH TRAILER | H. EMERGENCY VEHICLE | L. SINGLE UNIT TRUCK | |

} A

YEAR: 1 9 9 7
MAKE: Honda
MODEL: Civic
# DOORS: 2
# AXLES: 0 2
# TIRES: 0 4

V.I.N.: 1 H G E J 8 2 4 1 V L 0 8 6 9 0 0
VEHICLE TOWED: B
A. YES
B. NO
C. LEFT AT SCENE
REMOVED BY: Driver

LICENSE PLATE:
YEAR: 2 0 0 4
STATE: LA
NUMBER: K T P 4 6 4
TYPE: Passenger Car

REASON TOWED
A. VEHICLE DAMAGE
B. DRIVER ARRESTED
C. INSURANCE VIOLATION
D. OTHER

TRAILER DESCRIPTION:
YEAR: N/A
MAKE:
TYPE:
LICENSE PLATE:
YEAR: N/A
STATE:
NUMBER:

**DRIVER'S NAME (LAST,FIRST,MI)**: Guidry Les C
DATE OF BIRTH: 0 2 1 9 1 9 7 9

STREET ADDRESS: 5865 Castille Ave
TELEPHONE #: N/A

| | POSI-TION | EJEC-TION | TRAP EXTRI-CATED | AIR BAG | OCC PROT SYS | SEX | RACE | AGE | INJURY |
|---|---|---|---|---|---|---|---|---|---|
| | A | A | A | B | D | F | W | 24 | D |

CITY: Baton Rouge
STATE: LA
ZIP: 7 0 8 0 6

TRANSPORTED TO MEDICAL FACILITY
A. YES  C. UNKNOWN
B. NO  D. REFUSED AID
D

STATE: LA
CLASS: E
ENDORSEMENTS: N/A
DRIVER'S LICENSE NUMBER: 0 0 0 0 0 0 0 0 0 6 6 4 1 2 8 9
INSTRUCTED TO EXCHANGE INFORMATION? [X] YES [ ] NO
NAME OF FACILITY:

**OWNER'S NAME (LAST,FIRST,MI OR COMPANY NAME)**

SAME AS DRIVER? [X] YES [ ] NO
SR-10 FURNISHED? [ ] YES [X] NO
PROOF OF INSURANCE? [X] YES [ ] NO
NOTICE OF VIOLATION ISSUED? [ ] YES [X] NO

STREET ADDRESS:
CITY:
STATE:
ZIP:

**OCCUPANT'S NAME (LAST,FIRST,MI)**: None

| | POSI-TION | EJEC-TION | TRAP EXTRI-CATED | AIR BAG | OCC PROT SYS | SEX | RACE | AGE | INJUR |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

STREET ADDRESS:
TRANSPORTED TO MEDICAL FACILITY
A. YES  C. UNKNOWN
B. NO  D. REFUSED AID
NAME OF FACILITY:
CITY:
STATE:
ZIP:

**PEDESTRIAN'S NAME (LAST,FIRST,MI)**: N/A
TRANSPORTED TO MEDICAL FACILITY
A. YES  C. UNKNOWN
B. NO  D. REFUSED AID
NAME OF FACILITY:

STREET ADDRESS:
TELEPHONE #:
CITY:
STATE:

CODE A

UPPER BODY CLOTHING: LIGHT [ ] DARK [ ]
LOWER BODY CLOTHING: LIGHT [ ] DARK [ ]
SEX [ ]
RACE [ ]
AGE [ ]
INJURY CODE [ ]

| SEATING POSITION | EJECTION | TRAPPED OR EXTRICATED | AIRBAG | OCCUPANT PROTECTION SYSTEM USED | INJURY |
|---|---|---|---|---|---|
| A - FRONT SEAT-LEFT SIDE (MOTORCYCLE DRIVER) | J - SLEEPER SECTION OF CAB (TRUCK) | A-NOT EJECTED | A-NOT TRAPPED | A-DEPLOYED | A-NONE USED-VEHICLE OCCUPANT | A-FATAL |
| B - FRONT SEAT-MIDDLE | K - PASSENGER IN OTHER ENCLOSED PASSENGER OR CARGO AREA (NON-TRAILING UNIT) | B-TOTALLY EJECTED | B-TRAPPED/EXTRI-CATED | B-NOT DEPLOYED | B-SHOULDER BELT ONLY USED | B-INCAPACITA-TING/SEVERE |
| C - FRONT SEAT-RIGHT SIDE | | C-PARTIALLY EJECTED | C-TRAPPED/NOT EXTRICATED | C-NOT DEPLOY-ED/SWITCH OFF | C-LAP BELT ONLY USED | C-NON-INCAPA-CITATING/ |
| D - SECOND SEAT-LEFT SIDE (MOTORCYCLE PASSENGER) | L - PASSENGER IN OTHER UNENCLOSED PASSENGER OR CARGO AREA (NON-TRAILING UNIT) | D-UNKNOWN | D-UNKNOWN | D-NOT APPLICABLE | D-SHOULDER AND LAP BELT USED | MODERATE |
| E - SECOND SEAT-MIDDLE | M- PASSENGER ON TRAIN OR STREETCAR | | | E-UNKNOWN | E- CHILD SAFETY SEAT IMPROPERLY USED | D-POSSIBLE/ COMPLAINT |
| F - SECOND SEAT-RIGHT SIDE | N- TRAILING UNIT | | | | F-CHILD SAFETY SEAT USED | E-NO INJURY |
| G - THIRD ROW-LEFT SIDE (MOTORCYCLE PASSENGER) | O- RIDING ON VEHICLE EXTERIOR (NON-TRAILING UNIT) | | | | G-HELMETS USED | |
| | | | | | H-RESTRAINT USE UNKNOWN | |

**STATE OF LOUISIANA**
**UNIFORM MOTOR VEHICLE TRAFFIC CRASH REPORT**
**VEHICLE / PEDESTRIAN SUPPLEMENT**

COMPUTER NUMBER: `3 2 0 3 7 5 1` - `1 3`

PAGE #: `1 3`

`I-3016 (0550)`

[X] VEHICLE
[ ] PEDESTRIAN

**VEHICLE #** `0 7`

A. PASSENGER CAR
B. LT. TRUCK (P.U., ETC.)
C. VAN
D. A, B, OR C WITH TRAILER
E. MOTORCYCLE
F. PEDALCYCLE
G. OFF-ROAD VEHICLE
H. EMERGENCY VEHICLE
I. SCHOOL BUS
J. OTHER BUS
K. MOTOR HOME
L. SINGLE UNIT TRUCK
M. TRUCK WITH TRAILER(S)
N. FARM EQUIPMENT
O. OTHER

`B`

| YEAR | MAKE | MODEL | # DOORS | # AXLES | # TIRES |
|---|---|---|---|---|---|
| 2 0 0 0 | GMC | Jimmy | 4 | 0 2 | 0 4 |

**V.I.N.** `1 G K C S 1 3 W 7 Y 2 1 9 9 6 8 0`

VEHICLE TOWED `B`
A. YES
B. NO
C. LEFT AT SCENE

REMOVED BY: Driver

REASON TOWED
A. VEHICLE DAMAGE
B. DRIVER ARRESTED
C. INSURANCE VIOLATION
D. OTHER

**LICENSE PLATE**

| YEAR | STATE | NUMBER | TYPE |
|---|---|---|---|
| 2 0 0 4 | LA | V 6 8 8 7 9 5 | Private Truck |

**TRAILER DESCRIPTION** None
MAKE ___ TYPE ___
**LICENSE PLATE** None
YEAR ___ STATE ___ NUMBER ___

**DRIVER'S NAME (LAST,FIRST,MI)** Trahan Paul M

**DATE OF BIRTH** `0 7 2 1 1 9 5 2`

**STREET ADDRESS** 746 Fawn Lake
**TELEPHONE #** N/A
**CITY** Baton Rouge **STATE** LA **ZIP** 7 0 8 1 6

| POSI-TION | EJEC-TION | TRAP/EXTRI-CATED | AIR BAG | OCC PROT SYS | SEX | RACE | AGE | INJURY |
|---|---|---|---|---|---|---|---|---|
| A | A | B | D | m | W | 5 0 | D |

TRANSPORTED TO MEDICAL FACILITY
A. YES  C. UNKNOWN
B. NO   D. REFUSED AID   `D`

**STATE** LA **CLASS** E **ENDORSEMENTS** N/A **DRIVER'S LICENSE NUMBER** 0 0 0 0 0 0 0 0 3 3 4 0 4 3 0

INSTRUCTED TO EXCHANGE INFORMATION? [X] YES [ ] NO

NAME OF FACILITY ___

**OWNER'S NAME (LAST,FIRST,MI OR COMPANY NAME)**

SAME AS DRIVER? [X] YES [ ] NO
SR-10 FURNISHED? [ ] YES [X] NO

**STREET ADDRESS** ___

PROOF OF INSURANCE? [X] YES [ ] NO

**CITY** ___ **STATE** ___ **ZIP** ___

NOTICE OF VIOLATION ISSUED? [ ] YES [X] NO

**OCCUPANT'S NAME (LAST,FIRST,MI)** None

| POSI-TION | EJEC-TION | TRAP/EXTRI-CATED | AIR BAG | OCC PROT SYS | SEX | RACE | AGE | INJURY |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

**STREET ADDRESS** ___
TRANSPORTED TO MEDICAL FACILITY
A. YES  C. UNKNOWN
B. NO   D. REFUSED AID
NAME OF FACILITY ___
**CITY** ___ **STATE** ___ **ZIP** ___

**PEDESTRIAN'S NAME (LAST,FIRST,MI)** N/A

TRANSPORTED TO MEDICAL FACILITY
A. YES  C. UNKNOWN
B. NO   D. REFUSED AID
NAME OF FACILITY ___

**STREET ADDRESS** ___ **TELEPHONE #** ___
**CITY** ___ **STATE** ___ **ZIP** ___

CODE A

| | LIGHT | DARK | | LIGHT | DARK | SEX | RACE | AGE | INJURY CODE |
|---|---|---|---|---|---|---|---|---|---|
| UPPER BODY CLOTHING | | | LOWER BODY CLOTHING | | | | | | |

**CODES**

| SEATING POSITION | EJECTION | TRAPPED OR EXTRICATED | AIRBAG | OCCUPANT PROTECTION SYSTEM USED | INJURY |
|---|---|---|---|---|---|
| A - FRONT SEAT-LEFT SIDE (MOTORCYCLE DRIVER)<br>B - FRONT SEAT-MIDDLE<br>C - FRONT SEAT-RIGHT SIDE<br>D - SECOND SEAT-LEFT SIDE (MOTORCYCLE PASSENGER)<br>E - SECOND SEAT-MIDDLE<br>F - SECOND SEAT-RIGHT SIDE<br>G - THIRD ROW-LEFT SIDE (MOTORCYCLE PASSENGER)<br>H - THIRD ROW-MIDDLE | J - SLEEPER SECTION OF CAB (TRUCK)<br>K - PASSENGER IN OTHER ENCLOSED PASSENGER OR CARGO AREA (NON-TRAILING UNIT)<br>L - PASSENGER IN OTHER UNENCLOSED PASSENGER OR CARGO AREA (NON-TRAILING UNIT)<br>M - PASSENGER ON TRAIN OR STREETCAR<br>N - TRAILING UNIT<br>O - RIDING ON VEHICLE EXTERIOR (NON-TRAILING UNIT)<br>P - UNKNOWN | A - NOT EJECTED<br>B - TOTALLY EJECTED<br>C - PARTIALLY EJECTED<br>D - UNKNOWN | A - NOT TRAPPED<br>B - TRAPPED/EXTRI-CATED<br>C - TRAPPED/NOT EXTRICATED<br>D - UNKNOWN | A - DEPLOYED<br>B - NOT DEPLOYED<br>C - NOT DEPLOY-ED/SWITCH OFF<br>D - NOT APPLICABLE<br>E - UNKNOWN | A - NONE USED-VEHICLE OCCUPANT<br>B - SHOULDER BELT ONLY USED<br>C - LAP BELT ONLY USED<br>D - SHOULDER AND LAP BELT USED<br>E - CHILD SAFETY SEAT IMPROPERLY USED<br>F - CHILD SAFETY SEAT USED<br>G - HELMETS USED<br>H - RESTRAINT USE UNKNOWN | A - FATAL<br>B - INCAPACITA-TING/SEVERE<br>C - NON-INCAPA-CITATING/ MODERATE<br>D - POSSIBLE/ COMPLAINT<br>E - NO INJURY |

**STATE OF LOUISIANA**
**UNIFORM MOTOR VEHICLE TRAFFIC CRASH REPORT**
**VEHICLE / PEDESTRIAN SUPPLEMENT**

COMPUTER NUMBER: 3 2 0 3 7 5 1 - 7 5
I-3016 (860m)

PAGE #

[X] VEHICLE
[ ] PEDESTRIAN

**VEHICLE #** 0 8

A. PASSENGER CAR  E. MOTORCYCLE  I. SCHOOL BUS  M. TRUCK WITH TRAILER(S)
B. LT. TRUCK (P.U., ETC.)  F. PEDALCYCLE  J. OTHER BUS  N. FARM EQUIPMENT
C. VAN  G. OFF-ROAD VEHICLE  K. MOTOR HOME  O. OTHER
D. A, B, OR C WITH TRAILER  H. EMERGENCY VEHICLE  L. SINGLE UNIT TRUCK
} C

| YEAR | MAKE | MODEL | # DOORS | # AXLES | # TIRES |
|------|------|-------|---------|---------|---------|
| 2 0 0 1 | T o y o t a | S i e n n a | 4 | 0 2 | 0 4 |

**V.I.N.** 4 T 3 Z F 1 3 C 6 1 U 3 4 3 6 2 2
VEHICLE TOWED: A  A. YES  B. NO  C. LEFT AT SCENE
REMOVED BY: Cheif's Towing

REASON TOWED
A. VEHICLE DAMAGE
B. DRIVER ARRESTED
C. INSURANCE VIOLATION
D. OTHER
A

| | YEAR | STATE | NUMBER | TYPE |
|--|------|-------|--------|------|
| **LICENSE PLATE** | 2 0 0 5 | L A | U S W 0 1 3 7 2 | P a s s e n g e r   C a r |

**TRAILER DESCRIPTION** N/A
YEAR | MAKE | TYPE
LICENSE PLATE N/A | YEAR | STATE | NUMBER

**DRIVER'S NAME (LAST,FIRST,MI)**
Ronquillo Kimberly M

DATE OF BIRTH 0 9 / 1 0 / 1 9 6 8

**STREET ADDRESS** 2600 Vulcan Dr.    TELEPHONE # N/A
**CITY** Harvey    STATE LA    ZIP 7 0 0 5 8

| POSITION | EJECTION | TRAPPED EXTRI-CATED | AIR BAG | OCC PROT SYS | INDI | RACE | AGE | INJURY |
|----------|----------|---------------------|---------|--------------|------|------|------|--------|
| A | A | A | A | D | F | W | 3 4 | C |

TRANSPORTED TO MEDICAL FACILITY
A. YES  C. UNKNOWN
B. NO  D. REFUSED AID   A
NAME OF FACILITY: Our Lady of The Lake

| STATE | CLASS | ENDORSEMENTS | DRIVER'S LICENSE NUMBER | INSTRUCTED TO EXCHANGE INFORMATION? |
|-------|-------|--------------|--------------------------|--------------------------------------|
| L A | E | N/A | 0 0 0 0 0 0 0 0 0 2 8 7 3 8 4 5 | [X] YES  [ ] NO |

**OWNER'S NAME (LAST,FIRST,MI OR COMPANY NAME)**
Hibernia National Bank

SAME AS DRIVER?  [ ] YES  [X] NO
SR-10 FURNISHED?  [ ] YES  [X] NO

**STREET ADDRESS** 455 South Gulph Rd. Ste 201
**CITY** King of Russia    STATE PA    ZIP 19406

PROOF OF INSURANCE?  [X] YES  [ ] NO
NOTICE OF VIOLATION ISSUED?  [ ] YES  [ ] NO

**OCCUPANT'S NAME (LAST,FIRST,MI)**

| POSITION | EJECTION | TRAPPED EXTRI-CATED | AIR BAG | OCC PROT SYS | SEX | RACE | AGE | INJURY |
|----------|----------|---------------------|---------|--------------|-----|------|------|--------|

**STREET ADDRESS**    TRANSPORTED TO MEDICAL FACILITY
A. YES  C. UNKNOWN
B. NO  D. REFUSED AID
NAME OF FACILITY

**CITY**    STATE    ZIP

**PEDESTRIAN'S NAME (LAST,FIRST,MI)**
N/A

TRANSPORTED TO MEDICAL FACILITY
A. YES  C. UNKNOWN
B. NO  D. REFUSED AID
NAME OF FACILITY

**STREET ADDRESS**    TELEPHONE #
**CITY**    STATE    ZIP

CODE A

| | LIGHT | DARK | | LIGHT | DARK | | SEX | RACE | AGE | INJURY CODE |
|--|-------|------|--|-------|------|--|-----|------|-----|-------------|
| UPPER BODY CLOTHING | | | LOWER BODY CLOTHING | | | | | | | |

| SEATING POSITION | EJECTION | TRAPPED OR EXTRICATED | AIRBAG | OCCUPANT PROTECTION SYSTEM USED | INJURY |
|------------------|----------|------------------------|--------|----------------------------------|--------|
| A- FRONT SEAT-LEFT SIDE (MOTORCYCLE DRIVER)<br>B- FRONT SEAT-MIDDLE<br>C- FRONT SEAT-RIGHT SIDE<br>D- SECOND SEAT-LEFT SIDE (MOTORCYCLE PASSENGER)<br>E- SECOND SEAT-MIDDLE<br>F- SECOND SEAT-RIGHT SIDE<br>G- THIRD ROW-LEFT SIDE (MOTORCYCLE PASSENGER)<br>H- THIRD ROW-MIDDLE | J- SLEEPER SECTION OF CAB (TRUCK)<br>K- PASSENGER IN OTHER ENCLOSED PASSENGER OR CARGO AREA (NON-TRAILING UNIT)<br>L- PASSENGER IN OTHER UNENCLOSED PASSENGER OR CARGO AREA (NON-TRAILING UNIT)<br>M- PASSENGER ON TRAIN OR STREETCAR<br>N- TRAILING UNIT<br>O- RIDING ON VEHICLE EXTERIOR (NON-TRAILING UNIT)<br>P- UNKNOW | A- NOT EJECTED<br>B- TOTALLY EJECTED<br>C- PARTIALLY EJECTED<br>D- UNKNOWN | A- NOT TRAPPED<br>B- TRAPPED/EXTRI-CATED<br>C- TRAPPED/NOT EXTRICATED<br>D- UNKNOWN | A- DEPLOYED<br>B- NOT DEPLOYED<br>C- NOT DEPLOY-ED/SWITCH OFF<br>D- NOT APPLICABLE<br>E- UNKNOWN | A- NONE USED-VEHICLE OCCUPANT<br>B- SHOULDER BELT ONLY USED<br>C- LAP BELT ONLY USED<br>D- SHOULDER AND LAP BELT USED<br>E- CHILD SAFETY SEAT IMPROPERLY USED<br>F- CHILD SAFETY SEAT USED<br>G- HELMETS USED<br>H- RESTRAINT USE UNKNOWN | A- FATAL<br>B- INCAPACITA-TING/SEVERE<br>C- NON-INCAPA-CITATING/MODERATE<br>D- POSSIBLE/COMPLAINT<br>E- NO INJURY |

**STATE OF LOUISIANA**
**UNIFORM MOTOR VEHICLE TRAFFIC CRASH REPORT**
**VEHICLE / PEDESTRIAN SUPPLEMENT**

COMPUTER NUMBER

PAGE #

3 2 0 3 7 5 1 - 1 7

I-3016 (OSM)

[X] VEHICLE
[ ] PEDESTRIAN

**VEHICLE #** 0 9

A. PASSENGER CAR
B. LT. TRUCK (P.U., ETC.)
C. VAN
D. A, B, OR C WITH TRAILER

E. MOTORCYCLE
F. PEDALCYCLE
G. OFF-ROAD VEHICLE
H. EMERGENCY VEHICLE

I. SCHOOL BUS
J. OTHER BUS
K. MOTOR HOME
L. SINGLE UNIT TRUCK

M. TRUCK WITH TRAILER(S)
N. FARM EQUIPMENT
O. OTHER

} B

**YEAR** 2 0 0 3   **MAKE** Toyota   **MODEL** Sequoia   **# DOORS** 4   **# AXLES** 0 2   **# TIRES** 0 4

**V.I.N.** 5 T D Z T 3 8 A 3 5 1 9 3 8 7 4   **VEHICLE TOWED** A   A. YES  B. NO  C. LEFT AT SCENE   **REMOVED BY** Guy's Towing

| LICENSE PLATE | YEAR None | STATE | NUMBER None | TYPE Transit | | REASON TOWED A. VEHICLE DAMAGE B. DRIVER ARRESTED C. INSURANCE VIOLATION D. OTHER A |

| TRAILER DESCRIPTION | YEAR N/A | MAKE | TYPE | LICENSE PLATE N/A | YEAR | STATE | NUMBER |

**DRIVER'S NAME (LAST,FIRST,MI)** Ronquillo Raymond M I I I   **DATE OF BIRTH** 0 2 1 3 1 9 6 7

**STREET ADDRESS** 2600 Vulcan Dr.   **TELEPHONE #** N/A

| | POSITION | EJECTION | TRAPPED EXTRICATED | AIR BAG | OCC PROT SYS | SEX | RACE | AGE | |
| | A | A | B | D | M | W | 3 5 | |

**CITY** Harvey   **STATE** LA   **ZIP** 70058

TRANSPORTED TO MEDICAL FACILITY
A. YES  C. UNKNOWN
B. NO  D. REFUSED AID

**STATE** LA  **CLASS** E  **ENDORSEMENTS** N/A  **DRIVER'S LICENSE NUMBER** 0 0 0 0 0 0 0 0 0 2 7 6 5 1 4 2

INSTRUCTED TO EXCHANGE INFORMATION? [X] YES [ ] NO

NAME OF FACILITY

**OWNER'S NAME (LAST,FIRST,MI OR COMPANY NAME)** Bohn Brothers Toyota

SAME AS DRIVER? [ ] YES [X] NO

SR-10 FURNISHED? [ ] YES [X] NO

**STREET ADDRESS** 3611 Lapalco Blvd

PROOF OF INSURANCE? [X] YES [ ] NO

**CITY** Harvey   **STATE** LA  **ZIP** 70058

NOTICE OF VIOLATION ISSUED? [ ] YES [X] NO

**OCCUPANT'S NAME (LAST,FIRST,MI)** Ronquillo Ray

| | POSITION | EJECTION | TRAPPED EXTRICATED | AIR BAG | OCC PROT SYS | SEX | RACE | AGE | |
| | I | A | A | D | D | M | W | 0 8 | |

**STREET ADDRESS** 2600 Vulcan Dr.

TRANSPORTED TO MEDICAL FACILITY
A. YES  C. UNKNOWN
B. NO  D. REFUSED AID   D

NAME OF FACILITY

**CITY** Harvey   **STATE** LA  **ZIP** 70058

**PEDESTRIAN'S NAME (LAST,FIRST,MI)** N/A

TRANSPORTED TO MEDICAL FACILITY
A. YES  C. UNKNOWN
B. NO  D. REFUSED AID

NAME OF FACILITY

**STREET ADDRESS** _____   **TELEPHONE #** _____

**CITY** _____   **STATE** _____

CODE A

| | LIGHT | DARK | | LIGHT | DARK | SEX | RACE | AGE | INJURY CODE |
| UPPER BODY CLOTHING | [ ] | [ ] | LOWER BODY CLOTHING | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] |

| CODES | | | | | | |
|---|---|---|---|---|---|---|
| **SEATING POSITION** | | **EJECTION** | **TRAPPED OR EXTRICATED** | **AIRBAG** | **OCCUPANT PROTECTION SYSTEM USED** | **INJURY** |
| A - FRONT SEAT-LEFT SIDE (MOTORCYCLE DRIVER) B - FRONT SEAT-MIDDLE C - FRONT SEAT-RIGHT SIDE D - SECOND SEAT-LEFT SIDE (MOTORCYCLE PASSENGER) E - SECOND SEAT-MIDDLE F - SECOND SEAT-RIGHT SIDE G - THIRD ROW-LEFT SIDE (MOTORCYCLE PASSENGER) H - THIRD ROW-MIDDLE | J - SLEEPER SECTION OF CAB (TRUCK) K - PASSENGER IN OTHER ENCLOSED PASSENGER OR CARGO AREA (NON-TRAILING UNIT) L - PASSENGER IN OTHER UNENCLOSED PASSENGER OR CARGO AREA (NON-TRAILING UNIT) M - PASSENGER ON TRAIN OR STREETCAR N - TRAILING UNIT O - RIDING ON VEHICLE EXTERIOR (NON-TRAILING UNIT) P - UNKNOWN | A - NOT EJECTED B - TOTALLY EJECTED C - PARTIALLY EJECTED D - UNKNOWN | A - NOT TRAPPED B - TRAPPED/EXTRI-CATED C - TRAPPED/NOT EXTRICATED D - UNKNOWN | A - DEPLOYED B - NOT DEPLOYED C - NOT DEPLOY-ED/SWITCH OFF D - NOT APPLICABLE E - UNKNOWN | A - NONE USED-VEHICLE OCCUPANT B - SHOULDER BELT ONLY USED C - LAP BELT ONLY USED D - SHOULDER AND LAP BELT USED E - CHILD SAFETY SEAT IMPROPERLY USED F - CHILD SAFETY SEAT USED G - HELMETS USED H - RESTRAINT USE UNKNOWN | A - FATAL B - INCAPACITA-TING/SEVER C - NON-INCAP/ CITATING/ MODERATE D - POSSIBLE/ COMPLAINT E - NO INJURY |

STATE OF LOUISIANA
**UNIFORM MOTOR VEHICLE TRAFFIC CRASH REPORT**
VEHICLE / PEDESTRIAN SUPPLEMENT

COMPUTER NUMBER: `3 2 0 3 7 5 1` - `1 9`    PAGE #

`I-3016 (BSM)`

[X] VEHICLE
[ ] PEDESTRIAN

**VEHICLE #** `1 0`

A. PASSENGER CAR | E. MOTORCYCLE | I. SCHOOL BUS | M. TRUCK WITH TRAILER(S)
B. LT. TRUCK (P.U., ETC.) | F. PEDALCYCLE | J. OTHER BUS | N. FARM EQUIPMENT
C. VAN | G. OFF-ROAD VEHICLE | K. MOTOR HOME | O. OTHER
D. A, B, OR C WITH TRAILER | H. EMERGENCY VEHICLE | L. SINGLE UNIT TRUCK

} `B`

| YEAR | MAKE | MODEL | # DOORS | # AXLES | # TIRES |
|---|---|---|---|---|---|
| 2 0 0 0 | Jeep | Cherokee | 2 | 0 2 | 0 4 |

V.I.N. `1 J 4 G 2 5 8 8 Y C 2 8 3 5 2 3`   VEHICLE TOWED [X] A. YES [ ] B. NO [ ] C. LEFT AT SCENE   REMOVED BY *Gary's Towing*

| LICENSE PLATE YEAR | STATE | NUMBER | TYPE | REASON TOWED |
|---|---|---|---|---|
| 2 0 0 3 | LA | KEE739 | Passenger Car | A. VEHICLE DAMAGE / B. DRIVER ARRESTED / C. INSURANCE VIOLATION / D. OTHER — `A` |

| TRAILER DESCRIPTION | MAKE | TYPE | LICENSE PLATE YEAR | STATE | NUMBER |
|---|---|---|---|---|---|
| N/A | | | N/A | | |

**DRIVER'S NAME (LAST, FIRST, MI)** `Dunn Chad A`   DATE OF BIRTH `0 2 1 1 9 7 4`

STREET ADDRESS *2454 Sherry*   TELEPHONE # N/A

CITY *Denham Springs*   STATE LA   ZIP 70726

| POS-TION | EJEC-TION | TRAP/EXTRI-CATED | AIR BAG | OCC PROT SYS | SEX | RACE | AGE | INJURY |
|---|---|---|---|---|---|---|---|---|
| A | A | B | E | D | M | W | 29 | D |

TRANSPORTED TO MEDICAL FACILITY [ ] A. YES [ ] C. UNKNOWN [ ] B. NO [ ] D. REFUSED AID — N/A

STATE `LA`  CLASS `E`  ENDORSEMENTS `N/A`  DRIVER'S LICENSE NUMBER `0 0 0 0 0 0 0 0 5 7 9 0 6 6 0`   INSTRUCTED TO EXCHANGE INFORMATION? [X] YES [ ] NO   NAME OF FACILITY *Our Lady of the Lake*

**OWNER'S NAME (LAST, FIRST, MI OR COMPANY NAME)**

SAME AS DRIVER? [X] YES [ ] NO
SR-10 FURNISHED? [ ] YES [X] NO

STREET ADDRESS

PROOF OF INSURANCE? [X] YES [ ] NO

CITY ___ STATE ___ ZIP ___

NOTICE OF VIOLATION ISSUED? [ ] YES [X] NO

**OCCUPANT'S NAME (LAST, FIRST, MI)** `Dunn Karla S`

| POS-TION | EJEC-TION | TRAP/EXTRI-CATED | AIR BAG | OCC PROT SYS | SEX | RACE | AGE | INJURY |
|---|---|---|---|---|---|---|---|---|
| C | A | C | E | D | F | W | 28 | A |

STREET ADDRESS *2454 Sherry*   TRANSPORTED TO MEDICAL FACILITY [ ] A. YES [ ] C. UNKNOWN [ ] B. NO [ ] D. REFUSED AID — `B`   NAME OF FACILITY *Lafayette Parish Morgue*

CITY *Denham Springs*   STATE LA   ZIP 70726

**PEDESTRIAN'S NAME (LAST, FIRST, MI)** `N/A`   TRANSPORTED TO MEDICAL FACILITY [ ] A. YES [ ] C. UNKNOWN [ ] B. NO [ ] D. REFUSED AID

STREET ADDRESS ___ TELEPHONE # ___

CITY ___ STATE ___ ZIP ___

*CODE A*

| UPPER BODY CLOTHING | LIGHT | DARK | LOWER BODY CLOTHING | LIGHT | DARK | SEX | RACE | AGE | INJURY CODE |
|---|---|---|---|---|---|---|---|---|---|
| | [ ] | [ ] | | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] |

**CODES**

| SEATING POSITION | EJECTION | TRAPPED OR EXTRICATED | AIRBAG | OCCUPANT PROTECTION - SYSTEM USED | INJURY |
|---|---|---|---|---|---|
| A - FRONT SEAT-LEFT SIDE (MOTORCYCLE DRIVER) | A - NOT EJECTED | A - NOT TRAPPED | A - DEPLOYED | A - NONE USED-VEHICLE OCCUPANT | A - FATAL |
| B - FRONT SEAT-MIDDLE | B - TOTALLY EJECTED | B - TRAPPED/EXTRI-CATED | B - NOT DEPLOYED | B - SHOULDER BELT ONLY USED | B - INCAPACITA-TING/SEVERE |
| C - FRONT SEAT-RIGHT SIDE | C - PARTIALLY EJECTED | C - TRAPPED/NOT EXTRICATED | C - NOT DEPLOY-ED/SWITCH OFF | C - LAP BELT ONLY USED | C - NON-INCAPA-CITATING/ |
| D - SECOND SEAT-LEFT SIDE (MOTORCYCLE PASSENGER) | D - UNKNOWN | D - UNKNOWN | D - NOT APPLICABLE | D - SHOULDER AND LAP BELT USED | MODERATE |
| E - SECOND SEAT-MIDDLE | | | E - UNKNOWN | E - CHILD SAFETY SEAT IMPROPERLY USED | D - POSSIBLE/ COMPLAINT |
| F - SECOND SEAT-RIGHT SIDE (MOTORCYCLE PASSENGER) | | | | F - CHILD SAFETY SEAT USED | E - NO INJURY |
| G - THIRD ROW-LEFT SIDE | | | | G - HELMETS USED | |
| H - THIRD ROW-MIDDLE | | | | H - RESTRAINT USE UNKNOWN | |
| I - THIRD ROW-RIGHT SIDE | | | | | |

J - SLEEPER SECTION OF CAB (TRUCK)
K - PASSENGER IN OTHER ENCLOSED PASSENGER OR CARGO AREA (NON-TRAILING UNIT)
L - PASSENGER IN OTHER UNENCLOSED PASSENGER OR CARGO AREA (NON-TRAILING UNIT)
M - PASSENGER ON TRAIN OR STREETCAR
N - TRAILING UNIT
O - RIDING ON VEHICLE EXTERIOR (NON-TRAILING UNIT)
P - UNKNOWN

STATE OF LOUISIANA
**UNIFORM MOTOR VEHICLE TRAFFIC CRASH REPORT**
VEHICLE / PEDESTRIAN SUPPLEMENT

PAGE #

3203751 - 2

I-3016 (058m)

[X] **VEHICLE**

[ ] **PEDESTRIAN**

**VEHICLE #** | 1/1

- A. PASSENGER CAR
- B. LT. TRUCK (P.U., ETC.)
- C. VAN
- D. A, B, OR C WITH TRAILER
- E. MOTORCYCLE
- F. PEDALCYCLE
- G. OFF-ROAD VEHICLE
- H. EMERGENCY VEHICLE
- I. SCHOOL BUS
- J. OTHER BUS
- K. MOTOR HOME
- L. SINGLE UNIT TRUCK
- M. TRUCK WITH TRAILER(S)
- N. FARM EQUIPMENT
- O. OTHER

} 1/1

**YEAR** 1992 **MAKE** Peterbilt **MODEL** Tractor Truck **# DOORS** 2 **# AXLES** 05 **# TIRES** 18

**V.I.N.** 1XPSD89X1NN314058 **VEHICLE TOWED** A
A. YES
B. NO
C. LEFT AT SCENE
**REMOVED BY** Rick's Towing

**LICENSE PLATE** **YEAR** Unk **STATE** Tx **NUMBER** Unknown **TYPE** Temporary
**REASON TOWED**
A. VEHICLE DAMAGE
B. DRIVER ARRESTED
C. INSURANCE VIOLATION
D. OTHER
A

**TRAILER DESCRIPTION** **YEAR** 1980 **MAKE** TRAN **TYPE** Flatbed **LICENSE PLATE** **YEAR** 2004 **STATE** Tx **NUMBER** Z08865

**DRIVER'S NAME (LAST,FIRST,MI)** Brown Paul C **DATE OF BIRTH** 06 09 1975

**STREET ADDRESS** 1205 West Circle #16 **TELEPHONE #** N/A

**CITY** Vidor **STATE** Tx **ZIP** 77662

| | POSITION | EJECTION | TRAP EXTRI-CATED | AIR BAG | OCC PROT SYS | SEX | RACE | AGE | INJURY |
|---|---|---|---|---|---|---|---|---|---|
| | A | A | A | D | D | M | W | 28 | D |

**TRANSPORTED TO MEDICAL FACILITY** A. YES C. UNKNOWN B. NO D. REFUSED AID
D

**STATE** TX **CLASS** A **ENDORSEMENTS** N/A **DRIVER'S LICENSE NUMBER** 00000000045799 88 **INSTRUCTED TO EXCHANGE INFORMATION?** [X] YES [ ] NO **NAME OF FACILITY**

**OWNER'S NAME (LAST,FIRST,MI OR COMPANY NAME)**

| | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

SAME AS DRIVER? [X] YES [ ] NO

SR-10 FURNISHED? [ ] YES [X] NO

**STREET ADDRESS**

PROOF OF INSURANCE? [X] YES [ ] NO

**CITY** **STATE** **ZIP**

NOTICE OF VIOLATION ISSUED? [ ] YES [X] NO

**OCCUPANT'S NAME (LAST,FIRST,MI)**
None

| | POSITION | EJECTION | TRAP EXTRI-CATED | AIR BAG | OCC PROT SYS | SEX | RACE | AGE | INJURY |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

**STREET ADDRESS** **TRANSPORTED TO MEDICAL FACILITY** A. YES C. UNKNOWN B. NO D. REFUSED AID **NAME OF FACILITY**

**CITY** **STATE** **ZIP**

**PEDESTRIAN'S NAME (LAST,FIRST,MI)**
N/A

**TRANSPORTED TO MEDICAL FACILITY** A. YES C. UNKNOWN B. NO D. REFUSED AID

**NAME OF FACILITY**

**STREET ADDRESS** **TELEPHONE #**

**CITY** **STATE**

**UPPER BODY CLOTHING** LIGHT [ ] DARK [ ]    **LOWER BODY CLOTHING** LIGHT [ ] DARK [ ]    SEX [ ] RACE [ ] AGE [ ] INJURY CODE [ ]

CODE A

---

**CODES**

| SEATING POSITION | EJECTION | TRAPPED OR EXTRICATED | AIRBAG | OCCUPANT PROTECTION SYSTEM USED | INJURY |
|---|---|---|---|---|---|
| A- FRONT SEAT-LEFT SIDE (MOTORCYCLE DRIVER)<br>B - FRONT SEAT-MIDDLE<br>C - FRONT SEAT-RIGHT SIDE<br>D - SECOND SEAT-LEFT SIDE (MOTORCYCLE PASSENGER)<br>E - SECOND SEAT-MIDDLE<br>F - SECOND SEAT-RIGHT SIDE<br>G - THIRD ROW-LEFT SIDE (MOTORCYCLE PASSENGER)<br>H - THIRD ROW-MIDDLE<br>I - THIRD ROW-RIGHT SIDE | J - SLEEPER SECTION OF CAB (TRUCK)<br>K - PASSENGER IN OTHER ENCLOSED PASSENGER OR CARGO AREA (NON-TRAILING UNIT)<br>L - PASSENGER IN OTHER UNENCLOSED PASSENGER OR CARGO AREA (NON-TRAILING UNIT)<br>M- PASSENGER ON TRAIN OR STREETCAR<br>N- TRAILING UNIT<br>O- RIDING ON VEHICLE EXTERIOR (NON-TRAILING UNIT)<br>P- UNKNOWN | A-NOT EJECTED<br>B-TOTALLY EJECTED<br>C-PARTIALLY EJECTED<br>D-UNKNOWN | A-NOT TRAPPED<br>B-TRAPPED/EXTRI-CATED<br>C-TRAPPED/NOT EXTRICATED<br>D-UNKNOWN | A-DEPLOYED<br>B-NOT DEPLOYED<br>C-NOT DEPLOY-ED/SWITCH OFF<br>D-NOT APPLICABLE<br>E-UNKNOWN | A-NONE USED-VEHICLE OCCUPANT<br>B-SHOULDER BELT ONLY USED<br>C-LAP BELT ONLY USED<br>D-SHOULDER AND LAP BELT USED<br>E-CHILD SAFETY SEAT IMPROPERLY USED<br>F-CHILD SAFETY SEAT USED<br>G-HELMETS USED<br>H-RESTRAINT USE UNKNOWN | A-FATAL<br>B-INCAPACITA-TING/SEVERE<br>C-NON-INCAPA-CITATING/MODERATE<br>D-POSSIBLE/COMPLAINT<br>E-NO INJURY |

STATE OF LOUISIANA
UNIFORM MOTOR VEHICLE TRAFFIC CRASH REPORT
NARRATIVE SUPPLEMENT

COMPUTER NUMBER     PAGE #

3 2 0 3 7 5 1      2 3

I-3016 (086m)

# CRASH SYNOPSIS

This crash involved a total of eleven vehicles, eight passenger and three commercial (eighteen wheelers) vehicles. Based upon my investigation, which included the position of vehicles at final rest, contact damage to vehicles, physical evidence on roadway, driver and witness statements, the following was determined: all vehicles involved were eastbound on the elevated portion of I-10 near milepost 123 in St. Martin parish. Traffic began to slow to a stop due to a previous crash eastbound near milepost 125. At the rear of this group of traffic was an Allied Van Line truck which failed to slow or stop for the congestion ahead and ran into the rear of the traffic, setting off a chain reaction of collisions between the eleven vehicles involved. As a result, five people were killed at the scene and seven others were transported for injuries ranging from minor to critical.

Based upon the vehicles at final rest (see rough sketch of scene and also reconstruction drawing), contact damage areas of vehicles, physical evidence on roadway, and driver and witness statements, the following is the sequence of events of the crash. The Allied Van Line truck was traveling East in the left lane approximately one quarter of mile west of mile post 123, traveling slightly above the posted speed limit of sixty miles per hour (see Dr. Ken S. LeBlanc's witness statement).

According to drivers (see James Brimer and Shawn Miller statements) and witness (see Jeffery Hebert statement), the Allied Van Line appears to have struck the rear left of the Pontiac Grand Prix (vehicle # 2), which was in the right lane of travel and moving toward the right shoulder when struck. This impact appears to have occurred with the front right of the tractor. Next, the rear left side of the Allied Van Line trailer side swiped the rear right corner of the International tractor trailer (vehicle #3), as evident by the orange paint transfer resembling that of the Allied Van line truck color, on the areas of contact damage. The first two impacts indicate that the Pontiac Grand Prix (vehicle #2) was slightly behind and to the right of the International tractor trailer (vehicle #3) when struck, and that the Allied Van line truck (vehicle #1) was attempting to either change from the left to the right lane, or, was trying to go between the two lanes of traffic.

After the second impact, with the International tractor (vehicle #3), the Allied Van Line truck struck the rear of the G.M.C. Suburban (vehicle #4) which was in the right lane, (see Lisa M. Guerra's statement as dictated to Tfc. Harold Williams, and James Brimer's witness statement), also tire marks located on roadway (see items E, F, G, & H on the Legend portion of this report), for the third collision. It was this impact which caused the G.M.C. Suburban to catch fire.

As a result of the third collision, between the Allied Van Line truck (vehicle #1) and the G.M.C. Suburban (vehicle # 4), the G.M.C. Suburban (vehicle #4) was knocked forward into the rear of an Oldsmobile Silloutte van (vehicle #5), see statements from Kristen Bybee (driver of vehicle #5), Jason Bybee and Matthew Voelkel (passengers in vehicle #5). This was the fourth collision involved in this crash.

The fifth collision appears to have occurred between the Allied Van Line truck (vehicle #1) and the Toyota Sienna van (vehicle #8). See statement from Ray Ronquillo (driver of vehicle #9), also tire mark on road way (see items # L & M in the legend). As a result of this crash, the sixth collision occurred between the Toyota

COPY A

INVESTIGATING OFFICER'S INITIALS _2/6/_

STATE OF LOUISIANA
UNIFORM MOTOR VEHICLE TRAFFIC CRASH REPORT
NARRATIVE SUPPLEMENT

COMPUTER NUMBER     PAGE #

3 20 3 7 5 1     2 5

I-3016 (0381)

Sgt. Hebert advised that two subjects had been transported to Baton Rouge burn unit by Acadian Air Med. He advised that there were five possible deaths. He advised, at this time, that our main object was to render medical assistance as quickly as possible to those in need and preserve our crash scene. Once everyone who was in need of medical attention had been cared for, we began interviewing witnesses and drivers who remained on the crash scene. I spoke to Deputy Pat Clay with St. Martin S.O. He advised that he responded to a crash on I-10 at milepost 125. He advised on his arrival the vehicle was in the roadway. Deputy Clay advised that he removed the vehicle from the roadway and the traffic was starting to flow slowly. He advised that he then heard a loud explosion behind him. Deputy Clay said there was fire and smoke as far as he could see. He said he responded to the crash by traveling west on the eastbound lanes of I-10. He advised, on his arrival, that civilians were helping subjects out of burning vehicles. Deputy Clay advised that he immediately called for medical assistance and the fire department.

Sgt. Hebert requested that the coroner be en route to the crash scene. At 2126 hours, that Deputy Coroner (Scott Haydel) he pronounced one subject in the Allied tractor truck dead. At 2130 hours Deputy Coroner Scott Haydel pronounced two subjects dead in the suburban. At 2135 hours he pronounced two subjects dead in the Jeep Cherokee. All subjects were burnt beyond recognition and were unable to be identified on the scene. All bodies were transported to Pellerin's Funeral Home to be identified by the coroner. Deputy Coroner Scott Haydel drew blood from the body of the driver of the Allied truck driver and the specimens of bloods were released to Sgt. Troy Hebert. Sgt. Troy Hebert later entered the blood specimens into evidence at Troop I for chemical analysis. Blood results are pending on driver #1. Deputy Coroner Scott Haydel advised that Mr. Guerra Guadalupe, the driver the GMC suburban, made positive identification on the two deceased passengers in his vehicle. He also advised that Mr. Chad Dunn the driver of the Jeep Cherokee, made positive identification on the two passengers in his vehicle. The driver of the Allied Van Line was positively identified the morning of July 21, 2003 by a representative of Allied Trucking.

We were later assisted by Tfc. Donald Mc Farlain, Sgt. Jon Fusilier and Tfc. James Flynn in my investigation. Tfc. Mc Farlain assisted in rendering medical assistance, getting witness statements, the inventory of crashed vehicles and marking vehicles at their points of rest. Sgt. Fusilier assisted in securing the crash scene and getting witness statements. Tfc. Flynn is our team Accident Reconstructionist. Tfc. Flynn took progressive ground photos of the crash and photos of each vehicle at its resting point. He was then flown above the crash scene by Louisiana State Police air support where he took aerial photos of the crash. Tfc. Flynn also prepared a vehicle damage analysis report on each vehicle involved in the crash before they were released to the towing companies. After all subjects involved in the crash received medical attention and were transported to the appropriate medical facilities, we secured the crash scene to further investigate the crash. Sgt. Hebert, Tfc. Mc Farlian, Tfc. Flynn and I, using spray paint, marked each vehicle at its point of rest after impact. Assisted by Troop I Accident Reconstructionist, ST. Dan Hudson and MT. Dane Laughlin, we identified the remains and markings of physical evidence on the roadway, assessed crash contact and induce damages, transferred paint markings and the position of each vehicle at its point of rest. This supports the conclusion of our investigation as to what occurred prior to, during and after the crash. ST. Hudson and MT. Laughlin, using a total station then measured and recorded the crash scene to scale, in its post crash setting.

M/T Richard Elliot arrived on the crash scene to inspect the tractor truck that allegedly caused the crash. Trooper Elliot advised the mechanical functions of the truck were burnt and there was nothing left to inspect. He also advised that he would be doing a post crash investigation to make sure that driver and his company

INVESTIGATING OFFICER'S INITIALS

**STATE OF LOUISIANA**
**UNIFORM MOTOR VEHICLE TRAFFIC CRASH REPORT**
**ALTERNATIVE GRID**

COMPUTER NUMBER    PAGE #
3 2 0 3 7 5 1 - 2 7

I-3016 (85mi)



NORTH

I-10 EASTBOUND

DRAWN BY: ST. DAN HUDSON

CODE A

I-3016 (Bryan)

COMPUTER NUMBER    PAGE #

3203751    29

| Point θ a point on the north edge of pavement at the # 66 seam | | | N | S | E | W |
|---|---|---|---|---|---|---|
| Description of Point | | | N | S | E | W |
| Black Pontiac Grand Am RR | | A | | 36.2 | | 430.0 |
| | RL | B | | 31.2 | | 430.6 |
| | FL | C | | 31.2 | | 414.5 |
| | FR | D | | 35.8 | | 414.5 |
| Start of tire mark | | E | | 15.4 | | 312.0 |
| Start of tire mark | | F | | 21.7 | | 309.7 |
| End of tire mark | | G | | 22.3 | | 288.9 |
| End of tire mark | | H | | 15.4 | | 262.9 |
| White truck trailer | RR | I | | 13.0 | | 270.4 |
| | FR | J | | 10.1 | | 223.0 |
| White truck cab | FR | K | | 8.3 | | 203.4 |
| Start of tire mark | | L | | 14.7 | | 230.2 |
| End of tire mark | | M | | 8.9 | | 151.3 |
| GMC Suburban | FL | N | | 32.6 | | 156.2 |
| | FR | O | | 26.5 | | 155.9 |
| | RR | P | | 26.5 | | 140.2 |
| | RL | Q | | 33.0 | | 140.5 |
| Blue paint on rail | | R | | | | 104.7 |
| Maroon Van | RR | S | | 24.5 | | 102.0 |
| | RL | T | | 19.8 | | 100.0 |
| | FL | U | | 29.2 | | 86.7 |
| | FR | V | | 33.2 | | 89.8 |
| Green Honda | FL | W | | 23.0 | | 47.0 |
| | FR | X | | 18.4 | | 47.0 |
| | RR | Y | | 18.8 | | 33.0 |

CODE A



**VEHICLE NO.** `01`

## STATE OF LOUISIANA
## UNIFORM TRUCK/BUS CRASH SUPPLEMENT

**COMPUTER NUMBER** `3 2 0 3 7 5 1` - **PAGE #** `3 3`

`I-3016 (85ah)`

**WHEN TO USE THIS FORM: ANSWERS TO QUESTIONS BELOW DETERMINE USE.**
**DID THIS CRASH INVOLVE —**

1. A COMMERCIAL TRUCK WITH AT LEAST 2 AXLES, 6 TIRES OR HAZ MAT PLACARD? [X] YES [ ] NO

2. A BUS WITH SEATS FOR 16 OR MORE PERSONS, INCLUDING DRIVER? [ ] YES [X] NO

STOP. IF RESPONSE TO BOTH QUESTIONS IS "NO," DO NOT FILL OUT FORM. IF RESPONSE IS "YES" TO 1 OR 2, PROCEED TO QUESTION 3.

**DID THIS CRASH RESULT IN —**

3. PERSON(S) FATALLY INJURED? [X] YES [ ] NO

4. INJURED PERSON(S) TAKEN AWAY FOR MEDICAL ATTENTION? [X] YES [ ] NO

5. VEHICLE(S) TOWED DUE TO DAMAGE? [X] YES [ ] NO

STOP. IF RESPONSE TO 3,4, AND 5 IS "NO," DO NOT COMPLETE THIS FORM. IF RESPONSE IS "YES" TO 3, 4, OR 5, PLEASE COMPLETE THIS FORM.

### SCREENING INFORMATION

**NUMBER OF QUALIFYING VEHICLES INVOLVED:**
TRUCKS WITH 2 OR MORE AXLES, 6 OR MORE TIRES OR A HAZ MAT PLACARD `03`

BUSES DESIGNED TO CARRY 16 OR MORE PERSONS `00`

**NUMBER OF VEHICLES PROVIDED ASSISTANCE OR TOWED FROM SCENE DUE TO DAMAGE** `08`

**NUMBER OF PERSONS:**
SUSTAINING FATAL INJURIES `05`

TRANSPORTED FOR IMMEDIATE MEDICAL TREATMENT `05`

**TOTAL NUMBER OF SUPPLEMENT FORMS REQUIRED** `03`

### VEHICLE INFORMATION

**VEHICLE CONFIGURATION** `6`

1. BUS
2. SINGLE UNIT TRUCK, 2 AXLES, 6 TIRES
3. SINGLE UNIT TRUCK, 3 OR MORE AXLES
4. TRUCK/ TRAILER
5. TRUCK/TRACTOR
6. TRACTOR/SEMI-TRAILER
7. TRACTOR/DOUBLES
8. LOG TRUCK
9. OTHER HEAVY TRUCK

**CARGO BODY TYPE** `2`

1. BUS
2. VAN/ENCLOSED BOX
3. CARGO TANK
4. FLATBED
5. DUMP TRUCK
6. CONCRETE MIXER
7. AUTO TRANSPORTER
8. LOG TRUCK
0. OTHER / GARBAGE/REFUSE

**GROSS VEHICLE WEIGHT RATING (GVWR)**

TRUCK, TRACTOR OR BUS `0 0 4 0 0 0 0`

TRAILER OR TRAILERS TOTAL `0 0 4 0 0 0 0`

**TOTAL NO. OF AXLES (INCL. TRAILERS)** `0 5`

TRANSPORTING HAZARDOUS MATERIALS? [ ] YES [X] NO    CLASS `_ . _`    ID NO.

HAZARDOUS MATERIAL RELEASED FROM CONTAINER? [ ] YES [X] NO    CLASS `_ . _`    ID NO.

DID THIS VEHICLE HAVE A HAZARDOUS MATERIAL PLACARD? [ ] YES [X] NO    CLASS `_ . _`    ID NO.

### CARRIER INFORMATION

**NAME:** `Allied Van Lines Inc`

**STREET ADDRESS:** `5001 US Hwy 30 West`

**CITY:** `Fort Wayne`    **STATE** `IN`    **ZIP** `46818`

**CARRIER: PHONE NO.** `800-489-0636`

**SOURCE:**
1. SHIPPING PAPERS  3. DRIVER
2. VEHICLE SIDE  4. OTHER   `4`

**IDENTIFICATION NUMBERS:**    NONE = 0

### DRIVER INFORMATION

**STATE NO.** `Unknown`    **STATE**

(LAST,FIRST,MI) `Wladyslaw Gorski`

**US DOT** `0 0 0 0 0 0 7 6 2 3 5`

**SEE VEHICLE CRASH REPORT FOR ADDITIONAL DRIVER INFORMATION**

**ICC MC** `0 0 0 0 0 0 1 5 7 3 5`

### SEQUENCE OF EVENTS (FOR THIS VEHICLE)

EVENT #1 `J`    EVENT #2 `F`    EVENT #3    EVENT #4

A. RAN OFF ROAD
B. JACKKNIFED
C. OVERTURNED OR ROLLOVER
D. DOWNHILL RUNAWAY
E. CARGO LOSS OR SHIFT
F. EXPLOSION OR FIRE
G. SEPARATION OF UNITS
H. OTHER
COLLISION INVOLVING
I. PEDESTRIAN
J. MOTOR VEHICLE IN TRANSPORT
K. PARKED VEHICLE
L. TRAIN
M. PEDALCYCLE
N. ANIMAL
O. FIXED OBJECT
P. OTHER

**COMMENTS:**

CODE A

**INVESTIGATING OFFICER'S INITIALS** `H.W.`

VEHICLE NO. **11**

## STATE OF LOUISIANA
## UNIFORM TRUCK/BUS CRASH SUPPLEMENT

COMPUTER NUMBER **3 2 0 3 7 5 1 - 3 5**  PAGE #

**I-3016 (858m)**

**WHEN TO USE THIS FORM:** ANSWERS TO QUESTIONS BELOW DETERMINE USE.
**DID THIS CRASH INVOLVE —**

1. A COMMERCIAL TRUCK WITH AT LEAST 2 AXLES, 6 TIRES OR HAZ MAT PLACARD? [X] YES [ ] NO

2. A BUS WITH SEATS FOR 16 OR MORE PERSONS, INCLUDING DRIVER? [ ] YES [X] NO

**DID THIS CRASH RESULT IN —**

3. PERSON(S) FATALLY INJURED? [X] YES [ ] NO

4. INJURED PERSON(S) TAKEN AWAY FOR MEDICAL ATTENTION? [X] YES [ ] NO

5. VEHICLE(S) TOWED DUE TO DAMAGE? [X] YES [ ] NO

**STOP.** IF RESPONSE TO BOTH QUESTIONS IS "NO," DO NOT FILL OUT FORM. IF RESPONSE IS "YES" TO 1 OR 2, PROCEED TO QUESTION 3.

**STOP.** IF RESPONSE TO 3, 4, AND 5 IS "NO," DO NOT COMPLETE THIS FORM. IF RESPONSE IS "YES" TO 3, 4, OR 5, PLEASE COMPLETE THIS FORM.

### SCREENING INFORMATION

**NUMBER OF QUALIFYING VEHICLES INVOLVED:**
TRUCKS WITH 2 OR MORE AXLES, 6 OR MORE TIRES OR A HAZ MAT PLACARD **0 3**
BUSES DESIGNED TO CARRY 16 OR MORE PERSONS **0 0**

**NUMBER OF VEHICLES PROVIDED ASSISTANCE OR TOWED FROM SCENE DUE TO DAMAGE** **0 8**

**NUMBER OF PERSONS:**
SUSTAINING FATAL INJURIES **0 5**
TRANSPORTED FOR IMMEDIATE MEDICAL TREATMENT **0 5**
TOTAL NUMBER OF SUPPLEMENT FORMS REQUIRED **0 3**

### VEHICLE INFORMATION

**6** | VEHICLE CONFIGURATION

| | | |
|---|---|---|
| 1 BUS | 4 TRUCK/ TRAILER | 7 TRACTOR/DOUBLES |
| 2 SINGLE UNIT TRUCK, 2 AXLES, 6 TIRES | 5 TRUCK/TRACTOR | 8 LOG TRUCK |
| 3 SINGLE UNIT TRUCK, 3 OR MORE AXLES | 6 TRACTOR/SEMI-TRAILER | 9 OTHER HEAVY TRUCK |

**4** | CARGO BODY TYPE

| | | |
|---|---|---|
| 1 BUS | 4 FLATBED | 7 AUTO TRANSPORTER |
| 2 VAN/ENCLOSED BOX | 5 DUMP TRUCK | 8 LOG TRUCK |
| 3 CARGO TANK | 6 CONCRETE MIXER | 9 GARBAGE/REFUSE 0 OTHER |

**GROSS VEHICLE WEIGHT RATING (GVWR)**
TRUCK, TRACTOR OR BUS **0 0 4 0 0 0 0**
TRAILER OR TRAILERS TOTAL **0 0 3 0 0 0 0**

**TOTAL NO. OF AXLES (INCL. TRAILERS)** **0 5**

TRANSPORTING HAZARDOUS MATERIALS? [ ] YES [X] NO   CLASS [ . ]   ID NO. [ ]

HAZARDOUS MATERIAL RELEASED FROM CONTAINER? [ ] YES [X] NO   CLASS [ . ]   ID NO. [ ]

DID THIS VEHICLE HAVE A HAZARDOUS MATERIAL PLACARD? [ ] YES [X] NO

### CARRIER INFORMATION

NAME: **Dynasty Transportation**
STREET ADDRESS: **POB 91825**
CITY: **Lafayette**   STATE **LA**   ZIP **70509**
CARRIER: PHONE NO. **337-984-2174**

SOURCE:
1. SHIPPING PAPERS  3. DRIVER
2. VEHICLE SIDE  4. OTHER   **3**

IDENTIFICATION NUMBERS:   NONE = 0

### DRIVER INFORMATION

STATE NO. **Unknown**   STATE [ ]

(LAST, FIRST, MI)
**Brown Paul C**

US DOT **0 0 0 0 0 2 8 6 6 0 0**

SEE VEHICLE CRASH REPORT FOR ADDITIONAL DRIVER INFORMATION

ICC MC **0 0 0 0 0 1 9 4 7 0 5**

**SEQUENCE OF EVENTS (FOR THIS VEHICLE)**

EVENT #1 **J**   EVENT #2 **F**   EVENT #3 [ ]   EVENT #4 [ ]

A. RAN OFF ROAD
B. JACKKNIFED
C. OVERTURNED OR ROLLOVER
D. DOWNHILL RUNAWAY
E. CARGO LOSS OR SHIFT
F. EXPLOSION OR FIRE
G. SEPARATION OF UNITS
H. OTHER
**COLLISION INVOLVING**
I. PEDESTRIAN
J. MOTOR VEHICLE IN TRANSPORT
K. PARKED VEHICLE
L. TRAIN
M. PEDALCYCLE
N. ANIMAL
O. FIXED OBJECT
P. OTHER

COMMENTS: _____

CODE A

INVESTIGATING OFFICER'S INITIALS **W.W.**

3203751    3

I-3016 Coss

**Louisiana State Police Crime Laboratory**

Scientific Analysis Report

Lab Case #: SP-006308-03

Agency Case #:

Case Officer: Harold Williams

Parish of Offense:     St Martin
State Computer Number:

```
IMPORTANT
```

**DISTRICT ATTORNEY'S
COPY**

LSP - I
121 E. Pont des Mouton
Lafayette, LA 70507

References:
WLADYSLAW  GORSKI

**ANALYSIS REQUESTED**

Blood Alcohol Analysis.  This examination was completed on 7/30/2003.

**EVIDENCE SUBMITTED**

On 7/23/2003 at  9:44 AM, Crime Lab Technician Marja Porteous received the following evidence from the LSP
- I via Dane Laughlin:

   Evidence Submission 0001:     One sealed blood alcohol kit containing two (2) vials of blood.

**RESULTS**

Subject: WLADYSLAW  GORSKI                     Blood Alcohol Result: No ethyl alcohol detected.
Driver's License #: G620880553320(FL)

The requested toxicological analysis is pending.

Analysis of this specimen was performed in accordance with the Rules and Regulations for Blood Alcohol Testing as approved by the Louisiana
Department of Public Safety and Corrections utilizing a Hewlett-Packard Gas Chromatograph, Model 5890 Series II, Serial no. 2921 A 24058.

Analysis Performed by:                                 Report Certified By:

CODE
A

John Ricca Jr.                                       Brian Wynne
Forensic Scientist                                   Director of Laboratory Services

R E C E I V E D

AUG 12 2003

LA STATE POLICE
TROOP I

P.O. Box 66614, Baton Rouge, Louisiana, 70896-6614
Phone (225) 925-6216  Fax (225) 925-6217

Page 1 of 1

COMPUTER NUMBER  PAGE #

3 2 0 3 7 5 1 - 3 9

I-3016 (035m)

**STATE OF LOUISIANA**
**UNIFORM MOTOR VEHICLE TRAFFIC CRASH REPORT**
**DRIVER/WITNESS VOLUNTARY STATEMENT**

DATE _July 20_ TIME _6pm_ PLACE _123 Mile Marker I-10 East_

I, _Dr. Ken S. LeBlanc_ AM _48_ YEARS OF AGE,

MY ADDRESS IS _100 Lakewood Dr. Lafayette LA 70503_

AND MY TELEPHONE NUMBER IS (_337_) _237_ - _9209 (h)_ 337 406-9994(c

I was traveling East (to B.R.) on I-10. At approx ~~6 pm~~ 5:30
at the 123 mile Marker I noticed the traffic stopped
in Both E. bound lanes, I was about 1/4 mile behind when
the Orange Allied Van 18 wheeler passed me on my left.
I was traveling approx. 60 when the Van passed me
on my left at at least 10 mph faster than me.
The next thing I saw was the Orange Allied Van
plow into the rear of the stopped traffic. I saw a
white SUV fly up in the air and burst into flames, then
another 2-3 vehicles seemed to explode all at the
same time. It appeared that the Allied Van was
still traveling at a fair rate of speed when he hit due
to the significant "Domino" effect that I saw. My 2
daughters were afraid to let me go try to help the injured
due to the massive fire. I was the 1st vehicle behind
the accident, 2-3 seconds faster I would have been in
it. In my ~~opin~~ opinion, the entire accident was caused
by the Allied Van line (Orange) 18 wheeler. He failed to slow
down.

THE ABOVE STATEMENT, TO THE BEST OF MY KNOWLEDGE, IS A TRUE AND CORRECT
ACCOUNT OF MY RECOLLECTION IN THE ABOVE DESCRIBED MOTOR VEHICLE CRASH

SIGNED: _Ken LeBlanc M_

CODE A

OFFICER TAKING STATEMENT: _Tfc. Harold Williams_

SIGNATURE: _Tfc. Harold Williams 1243_

INVESTIGATING OFFICER'S INITIALS _H.W._

**STATE OF LOUISIANA**
**UNIFORM MOTOR VEHICLE TRAFFIC CRASH REPORT**
**DRIVER/WITNESS VOLUNTARY STATEMENT**

COMPUTER NUMBER    PAGE #
3 2 0 3 7 5 1 - 41
I-3011c(085x)I 10

DATE 7/20/03    TIME 6:30 PM    PLACE Mile MKR 123 E Bound

I, Gerald D. Valentine    AM 54    YEARS OF AGE,

MY ADDRESS IS P.O. BOX 1937   Crystal Beach, TX 77650

AND MY TELEPHONE NUMBER IS ( 409 ) 684 – 0089 .

At approximately 5:15 PM I was on I10 1 mile East of
Butte LaRose, La on the east bound side at mile marker
123 broke down in my 92 Jeep Cherokee. A wrecker was
loading up my Jeep on the shoulder of Atchafalaya Bridge when
traffic was at a stand still due to a wreck earlier up ahead.
All of a sudden a Allied Van Line 18 wheeler came blowing
by us at a very high rate of speed. The driver did not even
seem to slow until he was right on top of the dead still
traffic. The 18 wheel wheeler careened off of another 18
wheeler, then smashed into a white Suburban, then kept
smashing cars for a long distance. The Suburban and other
vehicles caught Fire immediately causing deaths and severe
casualties.

CODE
A

THE ABOVE STATEMENT, TO THE BEST OF MY KNOWLEDGE, IS A TRUE AND CORRECT
ACCOUNT OF MY RECOLLECTION IN THE ABOVE DESCRIBED MOTOR VEHICLE CRASH

SIGNED: Gerald D. Jerry Valentine

OFFICER TAKING STATEMENT: Tfc. Harold Williams

SIGNATURE: Tfc. Harold Williams 1740

INVESTIGATING OFFICER'S INITIALS: H.W.

STATE OF LOUISIANA
UNIFORM MOTOR VEHICLE TRAFFIC CRASH REPORT
DRIVER/WITNESS VOLUNTARY STATEMENT

COMPUTER NUMBER   PAGE #

3 2 0 3 7 5 1 - 4 3

I-3016(035-11)

DATE _07-23-03_   TIME _0820hh_ PLACE _Baton Rouge General Hospital_

I, _Lisa M. Guerra_   AM _20_ YEARS OF AGE,

MY ADDRESS IS _P.O. Box 481, Santa Rosa, Tx. 78593_

AND MY TELEPHONE NUMBER IS (_956_) _636_ - _1383_.

_On July 20, 2003, my family and I were traveling on_
_I-10 east in the outside lane. We approached slow moving_
_traffic and my father also slowed down. There were_
_several moving vehicles ahead of us who slowed down for_
_unknown reasons. Suddenly our van was struck from the rear_
_and I was thrown out onto the road. When I looked_
_back our van was on fire and started to move back to_
_avoid the flames._

CODE
A

THE ABOVE STATEMENT, TO THE BEST OF MY KNOWLEDGE, IS A TRUE AND CORRECT
ACCOUNT OF MY RECOLLECTION IN THE ABOVE DESCRIBED MOTOR VEHICLE CRASH

SIGNED: _Injured_

OFFICER TAKING STATEMENT: _Tfc Herald Williams_

SIGNATURE: _Tfc Herald Williams #240_

INVESTIGATING OFFICER'S INITIALS _H.W._

STATE OF LOUISIANA
UNIFORM MOTOR VEHICLE TRAFFIC CRASH REPORT
DRIVER/WITNESS VOLUNTARY STATEMENT

COMPUTER NUMBER     PAGE #
3 2 0 3 7 5 1 - 4 5
I-3016 (case)

DATE 7/20/03     TIME 6:30 PLACE LA mp 123 I10 E
I, James Robby Brimer     AM   28   YEARS OF AGE,
MY ADDRESS IS 2801 White Ln Archdale, NC 27263
AND MY TELEPHONE NUMBER IS (336) 434 - 1783     cell # (336) 688-13

I, Rob Brimer, come around curve 1.5 miles b/4 accident and seen traffic was stopped. I turned on my 4-way flashers to warn traffic + slowed to a stop. I looked in my mirror and saw Allied transfer in Right lane change to left lane, the lane I was in, and then change back to the Right lane to avoid hitting my rear. In doing so the Allied transfer clipped my trailer, on the right side, then hit the truck on right lane, causing it to burst into flames. Then the Allied truck slid into left rail on bridge and came to a stop. At that time I tried to help as much as I could.

Passenger #1   Thomas J Welborn
5329 Greywood Dr C5
Greensboro NC 27406
336-676-7713   336-327-6152
DOB 04/29/58

CODE
A

THE ABOVE STATEMENT, TO THE BEST OF MY KNOWLEDGE, IS A TRUE AND CORRECT
ACCOUNT OF MY RECOLLECTION IN THE ABOVE DESCRIBED MOTOR VEHICLE CRASH

SIGNED: James R Brimer

OFFICER TAKING STATEMENT: Tfc. Harold Williams

SIGNATURE: Tfc. Harold Williams 1740

INVESTIGATING OFFICER'S INITIALS: H.W.

STATE OF LOUISIANA
UNIFORM MOTOR VEHICLE TRAFFIC CRASH REPORT
DRIVER/WITNESS VOLUNTARY STATEMENT

COMPUTER NUMBER: 3 2 0 3 7 5 - 8 7    PAGE #

I-3016 (030m)

DATE 7/20/03    TIME 6:05    PLACE I-10 past Henderson

I, Kristin Bybee    AM 33    YEARS OF AGE,

MY ADDRESS IS 554 Brooklyn Ave Jefferson, LA 70121

AND MY TELEPHONE NUMBER IS (504) 251-6472.

I was driving and saw a tow truck on the
r.h. side of the hwy & it looked like
there were cars stopped in the road up
ahead about 100 ft. or so, so I immediately
slowed down and got in the r.h. lane
I think we came to a stop and all of
a sudden we heard crashing behind us and
I looked in the mirror and saw the orange
Allied truck plowing through and debris flying
and next thing I know we were hit from
behind. When we were able to get out, we
saw the lady on fire behind us from the white
van.

CODE A

THE ABOVE STATEMENT, TO THE BEST OF MY KNOWLEDGE, IS A TRUE AND CORRECT
ACCOUNT OF MY RECOLLECTION IN THE ABOVE DESCRIBED MOTOR VEHICLE CRASH

SIGNED: Kristin Bybee

OFFICER TAKING STATEMENT: Tfc. Harold Williams 1240

SIGNATURE: Tfc. Harold Williams

INVESTIGATING OFFICER'S INITIALS H.W.

**STATE OF LOUISIANA**
**UNIFORM MOTOR VEHICLE TRAFFIC CRASH REPORT**
**DRIVER/WITNESS VOLUNTARY STATEMENT**

COMPUTER NUMBER | PAGE #
3 2 0 3 7 5 1 - 4 9

I-3016(055m)

DATE 7-20-03   TIME 8:35  PLACE I-10 East Bnd Mile 1a

I, Paul C Brown _____ AM 28 _____ YEARS OF AGE,

MY ADDRESS IS 1205 W Circle Drive Vidor TX 77662

AND MY TELEPHONE NUMBER IS (409) 786 - 4308 .
                            Cell 409 - 790 - 0659

I was traveling eastbound I-10 at mile mkr 123
Slowing to traffic conguestion because of an accident
ahead merging traffic was to a stop + go crawl
I was hit from the Rear of my vehicle. I got out
Saw flames then tried to call for help.

CODE
A

THE ABOVE STATEMENT, TO THE BEST OF MY KNOWLEDGE, IS A TRUE AND CORRECT
ACCOUNT OF MY RECOLLECTION IN THE ABOVE DESCRIBED MOTOR VEHICLE CRASH

SIGNED: Paul C Brown

OFFICER TAKING STATEMENT: Tfc Harold Williams

SIGNATURE: Tfc Harold Williams 240

INVESTIGATING OFFICER'S INITIALS H.W.

STATE OF LOUISIANA
UNIFORM MOTOR VEHICLE TRAFFIC CRASH REPORT
DRIVER/WITNESS VOLUNTARY STATEMENT

COMPUTER NUMBER   PAGE #
3 2 0 3 7 5 1  -  5 1
I-3016 (0800)

DATE 7-20        TIME 5:45 PLACE Milepost 123 I-10 Eastbound

I, RAY RONQUILLE III        AM 36        YEARS OF AGE,

MY ADDRESS IS 2600 Vulcan St. Harvey, LA. 70058.

AND MY TELEPHONE NUMBER IS (504) 366 - 8647.

504 368 - 3551
504 - 628 - 7700 - cell

Traffic was slowing in front of us. I looked
back & my wife was slowing down behi
me. I figured everything would be fine becaus
cars were slowing down on both sides. Out
of no where I see smoke & particals
flying everywhere. I held on tight & was
hit out of the left lane across the righ
lane & with a lot of force we we
thrown into the gaurd rail. A big orange 18
wheeler was on fire next to us & exploding. I ru
to my two kids & we crawled out the back of t
Sequoia we were in. I took my two kids to get
wife who was driving the Sienna van behind us. She didn
seem to be conscious. She was bleeding pretty
bad & at that time I carried her out of van to
the police car. The only thing I could get out of m
wife was she kept asking was she going to live & her back

THE ABOVE STATEMENT, TO THE BEST OF MY KNOWLEDGE, IS A TRUE AND CORRECT w
ACCOUNT OF MY RECOLLECTION IN THE ABOVE DESCRIBED MOTOR VEHICLE CRASH k.
h

SIGNED: _____

OFFICER TAKING STATEMENT: Tfc. Harold Williams

SIGNATURE: Tfc. Harold Williams    1765

INVESTIGATING OFFICER'S INITIALS

Jul 28 03 08:39a     B   h Bros Toyota        5( 3717018

*Computer Number*
3203751   Po
5.

I-3016 (bottom)



## W E S T B A N K



# Fax Blast

DATE: **7-28-03** _____     TIME: _____

TO: **Trooper Harold Williams Sr.** _____

FROM: **Ray Ronquillo (504) 628-7700** _____

FAX BACK # _____

_____

| | | | |
|---|---|---|---|
| SALES HOURS: | 8:30am - 9:00pm | MON - SAT. | |
| SERVICE HOURS: | 7:00am - 7:00pm | MON - FRI. | Saturday: 8am - 5pm |
| PARTS HOURS: | 7:00am - 7:00pm | MON - FRI. | Saturday: 8am - 5pm |



**BOHN BROTHERS**

**3611 LAPALCO Blvd**
**HARVEY, LA. 70058**

GROUP  GPI
AUTOMOTIVE

(504) 341-3300
(504) 371-7055   FAX
800-348-8180     TOLL FREE

WWW.BOHNBROSTOYOTA.COM

*Computer Number Page*

*3203751    55*

*I-3016 (358m)*

me if we were going to live. The passenger side was pinned against the guardrail. To the

driver side was the basin, and to the passenger side was fire. We were able to escape

through the rear window. It was already busted out. While we were climbing through the

rear window, both my sons asked me if we were going to live. I kept assuring them we

were ok. Just then, a huge explosion erupted. It was very loud and hot. We had to climb

over two seats to get out of the back. The first thing that came to mind after we got free

from the Sequoia, was my wife's condition. Her vehicle was right behind mine. It was

not pinned up against the rail. We had a little room to walk between her vehicle and the

railing. I could tell her vehicle was hit extremely hard. I could not see her in the vehicle

from where I was standing. I was holding my children's hands at this time. I did not want

to go in the vehicle with my kids watching. Assuming the worst, I moved my kids behind

the Sienna. There was no fire there. There were still explosions going off. I

put them there for protection from debris.  At that time, I was concerned about my

vehicle blowing up and catching the sienna on fire. My children were still very scared for

their life. I could not leave them alone until they were calmed. I did not want them to go

in the van. I still had assumed the worst for my wife. It did not take me more than a

minute to calm them down I pointed out a lady within spitting distance, that was bleeding

very badly, her body was burned. I told my children they had a lot to be thankful for.

Then I asked them to say a prayer regarding that we had a lot to be thankful for. I told

my 8 year old to stay with my 5 year old and hold his hand. I told them to pray. I then

went to get my wife. Assuming the worst, I tried to open the passenger side sliding door.

At first, the door would not open. Seconds later it opened up half way. I could see my

wife sitting in the second row passenger seat. She was awake but pretty much out of it.

*CODE A*

3203751    5;

I-3016 (BSSm)

seven fire trucks came through. An ambulance came for my wife. They strapped her

down in a stretcher. . At that time I was concentrating on my kids. I had not thought

about how we were going to get to the hospital to meet up with my wife. Shortly after

that, a paramedic came and asked me if I was ok. I told them my kids seem to be fine but

my left part of my chest hurt and my shoulder hurt as well. The paramedic wanted me to

go to the hospital. I told her I would not go unless my kids came along with me. She said

that they would come along. They strapped me to a stretcher and luckily put me in the

same ambulance as my wife.  My 5 year old sat in the back of the ambulance and my 8

year old sat in the front of the ambulance.

CODE
A

STATE OF LOUISIANA
UNIFORM MOTOR VEHICLE TRAFFIC CRASH REPORT
DRIVER/WITNESS VOLUNTARY STATEMENT

COMPUTER NUMBER 3 2 0 3 7 5 1 - PAGE # 59

I-3011 (85am)

DATE 7-19-2003   TIME 5:30   PLACE I-10

I, Noble Spear   AM   27   YEARS OF AGE

MY ADDRESS IS 1231 Millcrest Walk Conyers, GA 30012

AND MY TELEPHONE NUMBER IS (770) 602-1358 .

While driving in the right lane on the bridge the blue Jeep Cherokee was hit from behind by an 18 wheeler and pinned the Cherokee into the back of another 18 ~~~~~ Wheeler. The Cherokee instantly burs into flames. We got out of the way and stopped to help. They had already pulled a man out of the Cherokee, but we couldn't pull the lady out because she was trapped in the burning wreck. We stayed to see if we could help at all but the flam were too hot and there were many explosions.

THE ABOVE STATEMENT, TO THE BEST OF MY KNOWLEDGE, IS A TRUE AND CORRECT ACCOUNT OF MY RECOLLECTION IN THE ABOVE DESCRIBED MOTOR VEHICLE CRASH

CODE
A

SIGNED: Noble Spear

OFFICER TAKING STATEMENT: Tfc. Harold Williams

SIGNATURE: Tfc. Harold Williams 1285

INVESTIGATING OFFICER'S INITIALS H.W.

Computer Number
3203751

**STATE OF LOUISIANA**
**UNIFORM MOTOR VEHICLE TRAFFIC CRASH REPORT**

*2988372*

I30l6l05

TOTAL NUMBER OF VEHICLES INVOLVED: 01

LAT. 30.35303
LONG. 91.68199

DATE OF CRASH: 07 20 2003
TIME (0000): 1732
DISTRICT/ZONE:
TROOP: A

CONSTR/MAINT. ZONE
HIT & RUN
DOTD PROPERTY
PHOTOS MADE
RR TRAIN INVOLVED
FATAL-ITY

CODE

IN PARISH OF: ST MARTIN
PARISH CODE: 510

ON PRIMARY ROADWAY: I-10 EAST

MILEPOST: 124.3
CITY OR TOWN:

CRASH OCCURRED ON: A
A. INTERSTATE
B. U.S. HWY
C. STATE HWY
D. PARISH ROAD
E. CITY STREET
F. PRIVATE PROPERTY
G. TOLL ROAD
H. OTHER

DISTANCE: 0003.1
MILES: X
FEET:
N E
W SW
STREET/HIGHWAY: LA HWY 975
☐ AT INTERSECTION
X NOT AT INTERSECTION

DISTANCE:
MILES:
FEET:
N E
SW
STREET/HIGHWAY:
☐ AT INTERSECTION
☐ NOT AT INTERSECTION

**VEHICLE #01**

A. PASSENGER CAR    D. A, B, OR C WITH TRAILER    G. OFF-ROAD VEHICLE    J. OTHER BUS    M. TRUCK WITH TRAILER(S)
B. LT. TRUCK (P.U., ETC.)    E. MOTORCYCLE    H. EMERGENCY VEHICLE    K. MOTOR HOME    N. FARM EQUIPMENT
C. VAN    F. PEDALCYCLE    I. SCHOOL BUS    L. SINGLE UNIT TRUCK    O. OTHER    } A

YEAR: 1992
MAKE: FORD
MODEL: CROWN VICTOR
# DOORS: 4
# AXLES: 02
# TIRES: 04

V.I.N.: 2FACP74W2NX108084
VEHICLE TOWED: A
A. YES
B. NO
C. LEFT AT SCENE
REMOVED BY: Conway's

LICENSE PLATE
YEAR: 2005
STATE: LA
NUMBER: MEV203
TYPE: PRIVATE
REASON TOWED
A. VEHICLE DAMAGE
B. DRIVER ARRESTED
C. INSURANCE VIOLATION
D. OTHER    A

TRAILER DESCRIPTION
YEAR:
MAKE: NONE
TYPE:
YEAR:
STATE:
NUMBER:
LICENSE PLATE

DRIVER'S NAME (LAST,FIRST,MI): WEBB KAREN A
DATE OF BIRTH: 11 03 1978

| | POSI-TION | EJEC-TION | TRAP-CATED | AIR BAG | OCC-SYS | SEX | RACE | AGE | |
|---|---|---|---|---|---|---|---|---|---|
| | A | A | A | B | D | F | B | 2H | E |

STREET ADDRESS: 205 Hortense St.
TELEPHONE #: Unknown

CITY: New Iberia
STATE: LA
ZIP: 70560

TRANSPORTED TO MEDICAL FACILITY
A. YES    C. UNKNOWN
B. NO    D. REFUSED AID    E

STATE: LA
CLASS: E
ENDORSEMENTS:
DRIVER'S LICENSE NUMBER: 8488446
INSTRUCTED TO EXCHANGE INFORMATION?: YES ☐  NO X
NAME OF FACILITY: N/A

OWNER'S NAME (LAST,FIRST,MI OR COMPANY NAME): MOORE PATRICIA
SAME AS DRIVER?: YES ☐  N X

STREET ADDRESS: 1302 Adrian Apt. 50
SR-10 FURNISHED?: YES ☐  N X

CITY: New Iberia
STATE: LA
ZIP: 70560
PROOF OF INSURANCE?: YES ☐  N X

NOTICE OF VIOLATION ISSUED?: X YES    ☐ N

OCCUPANT'S NAME (LAST,FIRST,MI): MOORE PATRICIA

| | POSI-TION | EJEC-TION | TRAP-CATED | AIR BAG | OCC-SYS | SEX | RACE | AGE | |
|---|---|---|---|---|---|---|---|---|---|
| | C | A | A | D | D | F | B | 35 | E |

STREET ADDRESS: 1302 Adrian Apt 50
TRANSPORTED TO MEDICAL FACILITY
A. YES    C. UNKNOWN
B. NO    D. REFUSED AID    B
NAME OF FACILITY: N/A

CITY: New Iberia
STATE: LA
ZIP: 70560

INVESTIGATING AGENCY: Louisiana State Police
NAME OF AGENCY
TIME OF NOTIFICATION: 1832
TIME OF ARRIVAL: 1837
TIME ALL LANES OPENED: 1830

INVESTIGATION COMPLETE: X YES ☐ NO
INVESTIGATING POLICE AGENCY: A
A. STATE    C. PARISH
B. CITY    D. OTHER
REPORT COMPLETED: 07 20 200

Computer Number 320751



## STATE OF LOUISIANA
## UNIFORM MOTOR VEHICLE TRAFFIC CRASH REPORT
## CONTRIBUTING FACTORS AND CONDITIONS

WRITE APPROPRIATE LETTER IN BLOCK

### ROAD SURFACE
(ONE PER COLUMN)

[A]  [ ]

A. DRY          A. CONCRETE
B. WET          B. BLACK TOP
C. SNOW/SLUSH   C. BRICK
D. ICE          D. GRAVEL
E. CONTAMINANT  E. DIRT
   (SAND, MUD,  F. UNKNOWN
   DIRT, OIL, ECT.)  G. OTHER ____
F. UNKNOWN
G. OTHER ____

### TYPE OF ROADWAY  [C]

A. ONE-WAY ROAD
B. TWO-WAY ROAD WITH NO PHYS-
   ICAL SEPARATION
C. TWO-WAY ROAD WITH A PHYSI-
   CAL SEPARATION
D. TWO-WAY ROAD WITH A PHYSI-
   CAL BARRIER
E. UNKNOWN
F. OTHER ____

### ROADWAY CONDITIONS  [A]

A. NO DEFECTS
B. DEFECTIVE SHOULDERS
C. HOLES
D. DEEP RUTS
E. BUMPS
F. LOOSE SURFACE MATERIAL
G. CONSTRUCTION, REPAIR
H. OVERHEAD CLEARANCE LIMITED
I. CONSTRUCTION - NO WARNING
J. PREVIOUS CRASH
K. FLOODING
L. ANIMAL IN ROADWAY
M. OBJECT IN ROADWAY
N. OTHER DEFECTS

### WEATHER  [A]

A. CLEAR
B. CLOUDY
C. RAIN
D. FOG/SMOKE
E. SLEET/HAIL
F. SNOW
G. SEVERE CROSSWIND
H. BLOWING SAND, SOIL, DIRT, SNOW
I. UNKNOWN
J. OTHER ____

### LIGHTING  [A]

A. DAYLIGHT
B. DARK - NO STREET
   LIGHTS
C. DARK - CONTINUOUS STREET
   LIGHT
D. DARK - STREET LIGHT AT
   INTERSECTION ONLY
E. DUSK
F. DAWN
G. UNKNOWN

### VIOLATION  [1][2] [Q][ ]

A. EXCEEDING STATED SPEED LIMIT
B. EXCEEDING SAFE SPEED LIMIT
C. FAILURE TO YIELD
D. FOLLOWING TOO CLOSELY
E. DRIVING LEFT OF CENTER
F. CUTTING IN, IMPROPER PASSING
G. FAILURE TO SIGNAL
H. MADE WIDE RIGHT TURN
I. CUT CORNER ON LEFT TURN
J. TURNED FROM WRONG LANE
K. OTHER IMPROPER TURNING
L. DISREGARDED TRAFFIC CONTROL
M. IMPROPER STARTING
N. IMPROPER PARKING
O. FAILED TO SET FLAGS, FLARES
P. FAILED TO DIM HEADLIGHTS
Q. VEHICLE CONDITION
R. DRIVER CONDITION
S. CARELESS OPERATION
T. UNKNOWN VIOLATIONS
U. NO VIOLATIONS
V. OTHER ____

### KIND OF LOCATION  [G]

A. MANUFACTURING OR INDUSTRIAL
B. BUSINESS CONTINUOUS
C. BUSINESS, MIXED RESIDENTIAL
D. RESIDENTIAL DISTRICT
E. RESIDENTIAL SCATTERED
F. SCHOOL OR PLAYGROUND
G. OPEN COUNTRY
H. OTHER ____

### REASON FOR MOVEMENT  [1][2] [P][ ]

A. TO AVOID OTHER VEHICLE
B. TO AVOID PEDESTRIAN
C. TO AVOID ANIMAL
D. TO AVOID OTHER OBJECT
E. PASSING
F. VEHICLE OUT OF CONTROL,
   NOT PASSING
G. VEHICLE OUT OF CONTROL, PASSING
H. FOR TRAFFIC CONTROL
I. DUE TO CONGESTION
J. DUE TO PRIOR CRASH (COLLISION)
K. DUE TO DRIVER VIOLATION
L. DUE TO DRIVER CONDITION
M. DUE TO VEHICLE CONDITION
   (FAILURE)
N. DUE TO PAVEMENT CONDITION
O. HIGH WIND
P. NORMAL MOVEMENT
Q. REASON UNKNOWN
R. OTHER ____

### PRIMARY FACTOR  [E]

### SECONDARY FACTOR  [ ]

A. VIOLATIONS
B. MOVEMENT PRIOR TO CRASH
C. VISION OBSCUREMENTS
D. CONDITION OF DRIVER
E. VEHICLE CONDITIONS
F. ROAD SURFACE
G. ROADWAY CONDITION
H. LIGHTING
I. WEATHER
J. TRAFFIC CONTROL
K. KIND OF LOCATION
L. CONDITION OF PEDESTRIAN
M. PEDESTRIAN ACTIONS

### ACCESS CONTROL  [C]

A. NO CONTROL
   (UNLIMITED ACCESS TO
   ROADWAY)
B. PARTIAL CONTROL
   (LIMITED ACCESS TO ROADWAY)
C. FULL CONTROL
   (ONLY RAMP ENTRANCE & EXIT)
D. UNKNOWN
E. OTHER ____

### VISION OBSCUREMENTS  [1][2] [O][ ]

A. RAIN, SNOW, ETC. ON WINDSHIELD
B. WINDSHIELD OTHERWISE OBSCURED
C. VISION OBSCURED BY LOAD
D. TREES, BUSHES, ETC.
E. BUILDING
F. EMBANKMENT
G. SIGN BOARDS
H. HILLCREST
I. PARKED VEHICLES
J. MOVING VEHICLES
K. BLINDED BY HEADLIGHTS
L. BLINDED BY SUNGLARE
M. DISTRACTED BY NEON LIGHTS IN
   FIELD OF VIEW
N. UNKNOWN
O. NO OBSCURCIES
P. OTHER ____

### CONDITION OF DRIVER  [1][2] [A][ ]

A. NORMAL
B. INATTENTIVE OR DISTRACTED
C. PHYSICAL IMPAIRMENT (EYES, EAR,
   LIMB)
D. ILLNESS
E. FATIGUED
F. APPARENTLY ASLEEP/BLACKOUT
G. HAD BEEN DRINKING - IMPAIRED
H. HAD BEEN DRINKING - NOT IMPAIRED
I. DRUG USE - IMPAIRED
J. DRUG USE - NOT IMPAIRED
K. UNKNOWN
L. OTHER ____

### VEHICLE LIGHTING  [1][2] [B][ ]

A. HEADLIGHTS ON
B. HEADLIGHTS OFF
C. DAYTIME RUNNING LIGHTS
D. UNKNOWN

### HARMFUL EVENTS

|  |  | VEH 1 | VEH 2 |
|---|---|---|---|

A. OVERTURNED
B. FIRE/EXPLOSION
C. IMMERSION
D. JACKKNIFE
E. OTHER NONCOLLISION
F. PEDESTRIAN
G. PEDALCYCLE
H. RAILWAY TRAIN
I. ANIMAL
J. MOTOR VEHICLE
   IN TRANSPORT
K. MOTOR VEHICLE
   IN TRANSPORT IN OTHER
   ROADWAY
L. PARKED MOTOR VEHICLE
M. OTHER OBJECT (NOT FIXED)

N. IMPACT ATTENUATOR
O. BRIDGE-PIER OR
   ABUTMENT
P. BRIDGE-PARAPET END
Q. BRIDGE-RAIL
R. GUARDRAIL FACE
S. GUARDRAIL END
T. MEDIAN BARRIER
U. HIGHWAY TRAFFIC
   SIGN POST
V. OVERHEAD SIGN
   SUPPORT
W. LUMINAIRE/LIGHT
   SUPPORT
X. UTILITY POLE
Y. OTHER POLE

Z. CULVERT
AA. CURB
BB. EMBANKMENT
CC. MAIL BOX
DD. DITCH

EE. FENCE
FF. TREE
GG. UNKNOWN
HH. OTHER FIXED OBJECT____

FIRST HARMFUL EVENT — VEH 1 [Q]    VEH 2 [ ]
MOST HARMFUL EVENT — VEH 1 [Q]    VEH 2 [ ]

### RELATION TO ROADWAY  [B]

A. ON ROADWAY
B. SHOULDER
C. MEDIAN
D. BEYOND SHOULDER - LEFT
E. BEYOND SHOULDER - RIGHT
F. OFF ROADWAY
G. GORE
H. UNKNOWN
I. OTHER ____

### ALIGNMENT  [A]

A. STRAIGHT-LEVEL
B. STRAIGHT LEVEL ELEVATED
C. CURVE-LEVEL
D. CURVE-LEVEL ELEVATED
E. ON GRADE-STRAIGHT
F. ON GRADE-CURVE
G. HILLCREST-STRAIGHT
H. HILLCREST-CURVE
I. DIP, HUMP-STRAIGHT
J. DIP, HUMP-CURVE
K. UNKNOWN
L. OTHER ____

### MOVEMENT PRIOR TO CRASH  [1][2] [ ][ ]

A. STOPPED
B. PROCEEDING STRAIGHT AHEAD
C. TRAVELING WRONG WAY
D. BACKING
E. CROSSED MEDIAN INTO
   OPPOSING LANE
F. CROSSED CENTER LINE INTO
   OPPOSING LANE
G. RAN OFF ROAD (NOT WHILE
   MAKING TURN AT INTERSECTION)
H. CHANGING LANES ON
   MULTI-LANE ROAD
I. MAKING LEFT TURN
J. MAKING RIGHT TURN
K. STOPPED PREPARING TO,
   OR MAKING U-TURN
L. MAKING TURN, DIRECTION
   UNKNOWN
M. STOPPED, PREPARING TO
   TURN LEFT
N. STOPPED PREPARING TO
   TURN RIGHT
O. SLOWING TO MAKE LEFT TURN
P. SLOWING TO MAKE RIGHT
   TURN
Q. SLOWING TO STOP
R. PROPERLY PARKED
S. PARKING MANEUVER
T. ENTERING TRAFFIC FROM
   SHOULDER
U. ENTERING TRAFFIC FROM
   MEDIAN
V. ENTERING TRAFFIC FROM
   PARKING LANE
W. ENTERING TRAFFIC FROM
   PRIVATE LANE
X. ENTERING FREEWAY FROM
   ON RAMP
Y. LEAVING FREEWAY VIA
   OFF RAMP

### VEHICLE CONDITION  [1][2] [G][ ]

A. DEFECTIVE BRAKES
B. DEFECTIVE HEADLIGHTS
C. DEFECTIVE REAR LIGHTS
D. DEFECTIVE SIGNAL LIGHTS
E. ALL LIGHTS OUT
F. DEFECTIVE STEERING
G. TIRE FAILURE
H. WORN OR SMOOTH TIRES
I. ENGINE FAILURE
J. DEFECTIVE SUSPENSION
K. NO DEFECTS OBSERVED
L. UNKNOWN DEFECTS
M. OTHER ____

### TRAFFIC CONTROL CONDITIONS  [1] [A]

A. CONTROLS FUNCTIONING
B. CONTROLS NOT FUNCTIONING
C. CONTROLS OBSCURED
D. LANE MARKING UNCLEAR
   OR DEFECTIVE
E. NO CONTROLS
F. CONDITION UNKNOWN

### TRAFFIC CONTROL  [1][2] [R][ ]

A. STOP SIGN
B. YIELD SIGN
C. RED SIGNAL ON
D. YELLOW SIGNAL ON
E. GREEN SIGNAL ON
F. GREEN TURN ARROW ON
G. RIGHT TURN ON RED
H. LIGHT PHASE UNKNOWN
I. FLASHING YELLOW
J. FLASHING RED
K. OFFICER, WATCHMAN
L. RR CROSSING, SIGN
M. RR CROSSING, SIGNAL

N. RR CROSSING, NO CONTROL
O. WARNING SIGN (SCHOOL, ETC.)
P. SCHOOL FLASHING SPEED SIGN
Q. YELLOW NO PASSING LINE
R. WHITE DASHED LINE
S. YELLOW DASHED LINE
T. BIKE LANE
U. CROSSWALK
V. NO CONTROL
W. UNKNOWN
X. OTHER ____

### ALCOHOL/DRUG INVOLVEMENT

CODE A

|  | #1 | #2 |
|---|---|---|
| ALCOHOL/DRUGS PRESENT | A | |

A. NEITHER ALCOHOL OR DRUGS PRESENT
B. YES (ALCOHOL PRESENT)
C. YES (DRUGS PRESENT)
D. YES (ALCOHOL AND DRUGS PRESENT)
E. NOT REPORTED
F. UNKNOWN

| ALCOHOL | B | |
|---|---|---|

A. TEST REFUSED
B. NO TEST GIVEN
C. TEST GIVEN, RESULTS PENDING
D. TEST GIVEN, % ____
E. UNKNOWN

| DRUGS | A | |
|---|---|---|

A. TEST NOT GIVEN
B. TEST GIVEN, RESULTS PENDING
C. DRUGS REPORTED (SPECIFY)
D. UNKNOWN

SUSPECTED DRUGS ____

*Computer Number*
*3203751*
6

**STATE OF LOUISIANA**
**UNIFORM MOTOR VEHICLE TRAFFIC CRASH REPORT**
**ADDITIONAL OCCUPANT SUPPLEMENT**

COMPUTER NUMBER    PAGE #

2988872 - 05

I-3016 (03-01)

| VEH # | OCCUPANT'S NAME (LAST,FIRST,MI) | POSI-TION | EJEC-TION | TRAP/EXTRI-CATED | AIR BAG | OCC PROT SYS | SEX | RACE | AGE | INJURY |
|---|---|---|---|---|---|---|---|---|---|---|
| 01 | WEBB TIERRA | B | A | A | D | D | F | B | 08 | E |

STREET ADDRESS 205 Hortense St.
TRANSPORTED TO MEDICAL FACILITY
A. YES  C. UNKNOWN  **B**
B. NO  D. REFUSED AID
CITY New Iberia  STATE LA  ZIP 70560  NAME OF FACILITY N/A

| VEH # | OCCUPANT'S NAME (LAST,FIRST,MI) | POSI-TION | EJEC-TION | TRAP/EXTRI-CATED | AIR BAG | OCC PROT SYS | SEX | RACE | AGE | INJURY |
|---|---|---|---|---|---|---|---|---|---|---|
| 01 | CHARLES EUGENE | E | A | A | D | D | M | B | 50 | E |

STREET ADDRESS 314 Deer St.
TRANSPORTED TO MEDICAL FACILITY
A. YES  C. UNKNOWN  **B**
B. NO  D. REFUSED AID
CITY New Iberia  STATE LA  ZIP 70560  NAME OF FACILITY N/A

| VEH # | OCCUPANT'S NAME (LAST,FIRST,MI) | POSI-TION | EJEC-TION | TRAP/EXTRI-CATED | AIR BAG | OCC PROT SYS | SEX | RACE | AGE | INJURY |
|---|---|---|---|---|---|---|---|---|---|---|
| 01 | JACKSON BENJAMEN | D | A | A | D | D | M | B | 25 | E |

STREET ADDRESS 134120 Arpent Rd.
TRANSPORTED TO MEDICAL FACILITY
A. YES  C. UNKNOWN  **B**
B. NO  D. REFUSED AID
CITY New Iberia  STATE LA  ZIP 70560  NAME OF FACILITY N/A

| VEH # | OCCUPANT'S NAME (LAST,FIRST,MI) | POSI-TION | EJEC-TION | TRAP/EXTRI-CATED | AIR BAG | OCC PROT SYS | SEX | RACE | AGE | INJURY |
|---|---|---|---|---|---|---|---|---|---|---|
| 01 | WEBB KAMRY | E | A | A | D | F | F | B | 02 | E |

STREET ADDRESS 205 Hortense St.
TRANSPORTED TO MEDICAL FACILITY
A. YES  C. UNKNOWN  **B**
B. NO  D. REFUSED AID
CITY New Iberia  STATE LA  ZIP 70560  NAME OF FACILITY N/A

| VEH # | OCCUPANT'S NAME (LAST,FIRST,MI) | POSI-TION | EJEC-TION | TRAP/EXTRI-CATED | AIR BAG | OCC PROT SYS | SEX | RACE | AGE | INJURY |
|---|---|---|---|---|---|---|---|---|---|---|
| 01 | WEBB SHANICE | E | A | A | D | D | F | B | 06 | E |

STREET ADDRESS 205 Hortense St.
TRANSPORTED TO MEDICAL FACILITY
A. YES  C. UNKNOWN  **B**
B. NO  D. REFUSED AID
CITY New Iberia  STATE LA  ZIP 70560  NAME OF FACILITY N/A

| VEH # | OCCUPANT'S NAME (LAST,FIRST,MI) | POSI-TION | EJEC-TION | TRAP/EXTRI-CATED | AIR BAG | OCC PROT SYS | SEX | RACE | AGE | INJURY |
|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |  |  |

STREET ADDRESS
TRANSPORTED TO MEDICAL FACILITY
A. YES  C. UNKNOWN
B. NO  D. REFUSED AID
CITY  STATE  ZIP  NAME OF FACILITY

CODE A

| VEH # | OCCUPANT'S NAME (LAST,FIRST,MI) | POSI-TION | EJEC-TION | TRAP/EXTRI-CATED | AIR BAG | OCC PROT SYS | SEX | RACE | AGE | INJURY |
|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |  |  |

STREET ADDRESS
TRANSPORTED TO MEDICAL FACILITY
A. YES  C. UNKNOWN
B. NO  D. REFUSED AID
CITY  STATE  ZIP  NAME OF FACILITY

| VEH # | OCCUPANT'S NAME (LAST,FIRST,MI) | POSI-TION | EJEC-TION | TRAP/EXTRI-CATED | AIR BAG | OCC PROT SYS | SEX | RACE | AGE | INJURY |
|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |  |  |

STREET ADDRESS
TRANSPORTED TO MEDICAL FACILITY
A. YES  C. UNKNOWN
B. NO  D. REFUSED AID
NAME OF FACILITY

DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
OFFICE OF STATE POLICE

State of Louisiana

**UNIFORM TRAFFIC SUMMONS/**
**COMPLAINT AFFIDAVIT**

Computer Number
3203751

I-3016 (C

Parish of _St Martin_    SS [ ]    _16th_    Cour

The undersigned being duly sworn upon his oath deposes and says:

On the _20th_ day of _July_, 200_3_ at _1732_ Hrs

Name _KAREN A / WEBB_

Address _205 Hortense St_

City _New Iberia_ State _LA_ Zip _70560_

DOB _11/30/78_ Race _B_ Sex _F_ Ht. _5'2"_ Eyes _Brn_

OLN _8488446_ State _LA_ Class _E_

| ☐ Carrying Haz. Mat. | ☐ Comm. Veh. | ☐ CDL | ☒ Ins. Cxkd. | ☐ D/L Picked up for Bond | ☒ Prop. Acc. | ☐ Inj. Acc. | ☐ Fata Acc. |

Unlawfully Operated Year _1992_ Make _Ford_ Type _4d_ Color _Sil_

Veh. Lic. _MEV203_ State _LA_ Year _05_

VIN _2FACP74W2NX108084_

Location _I-10 Eastbound_

MP # _124.3_    Mult ☐    Single ☒

And did commit the following offense(s) in violation of Louisiana Revised Statute

| | Radar/ Laser | |
| Speeding | / M.P.H. in a / Zone | / |

| | Title / Section | (Describe) |
|---|---|---|
| 1 | _32:865_ | _No Insurance_ |
| 2 | | |
| 3 | | |

The undersigned authority further states that he has just and reasonable grounds to believe and does believe that the abo committed the offense(s) herein set forth contrary to law of the State of Louisiana in such case made and provided an against the peace and dignity of the same.

_Carl Dyrer_    _2041_

RANK AND SIGNATURE    DATA

Sworn to before me this _____ day of _____ 200__

NOTARY OR EX OFFICIO NOTARY

| Court Appearance | ☐ Juv. | ☐ Upon Notice | ☐ Booked | No Court Date Issued Contact Agency Below |

Date _9/3/03_ Time _9:00A_ M. Phone _(337) 394.21_

At _St Martin Courthouse_ City _St Martinville_

I understand the terms and conditions of the summons and promise to appear at the time and place shown above. Failure will be cause for the suspension of my driving privileges and the imposition of additional fines and/or fees by the Department of Public Safety and Corrections.

Signature _Karen Webb_

SIGNATURE IS NOT AN ADMISSION OF GUILT

_Crash # 2988372 Single Vehicle_

_COD_

DPSSP 3101 R (5/97)

*3203751*
*I-3016 (CBSo)*

V).  **DECEASED:** ( complete for each individual ) *Use additional deceased sheet if needed.*

1).  Name: _Gorski, Wladyslaw_
2).  Pronounced dead by ( title ): _Deputy Coroner Scott Haydel_
3).  Location ( pronounced dead at ): _I-10 E/R m.P 123_  Time: _2126 Hrs_
4).  Preliminary cause of death: _Burn Trauma_
5).  Person taking charge of personal effects / agency: _Deputy Coroner Scott Haydel_
6).  Parish Coroner: _Dr. Daniel Wiltz_
7).  Deceased transported to / by: _Pellerin's / Pellerin's Funeral Home_
8).  Next of kin notified:
     a).  Name / relationship: _Theresa Wladyslaw_
     b).  Address: _1779 Eagle Ridge Blvd, Palm Harbor, Fl._
     c).  Telephone number: (    ) _Unknown_
     d).  Notified by / department: _Deputy Biga / Palm Harbor County Sheriff's Offic_
     e).  Notification date / time: _07/21/03 /0810 Hrs_

VI).  **WITNESSES:** *Use additional witnesses sheet if more witnesses are located.*

1).  Name: _See attached supplement_  Telephone Number: (    ) _____
     Address: _____
     Written statement:  Yes ☐  No ☐

2).  Name: _See attached supplement_  Telephone Number: (    ) _____
     Address: _____
     Written statement:  Yes ☐  No ☐

VII).  **PROPERTY DAMAGE:** *Use additional property damage sheet if more damage is located.*

1).  Owner:
     a).  Name / address: _N/A_
     b).  Telephone number / description of damage: _____

2).  Owner:
     a).  Name / address: _n/a_
     b).  Telephone number / description of damage: _____

VIII).  **OTHER EMERGENCY ASSISTANCE** ( Sheriff's office, police departments, rescue, fire departments, etc. ):
_St. Martin Sheriff's Office, Acadian Ambulance, Bayou Blue Fire_
_Department, Henderson Fire Department, Breaux Bridge Fire Department._

IX).  **OTHER COMPANIES ASSISTANCE** ( Utilities, cable, telephone, etc. ): _N/A_

CODE A

*3203751*
*71*
*I-3016(035m)*

**V).**   **DECEASED:** ( complete for each individual ) *Use additional deceased sheet if needed.*

1).   Name: _Jennifer M. Garza_
2).   Pronounced dead by ( title ): _Deputy Coroner Scott Haydel_
3).   Location ( pronounced dead at ): _I-10 E/B mp 123_   Time: _2130 Hrs_
4).   Preliminary cause of death: _Burn Trauma_
5).   Person taking charge of personal effects / agency: _Deputy Coroner Scott Haydel_
6).   Parish Coroner: _Dr. Daniel Wiltz_
7).   Deceased transported to / by: _Pellerin's / Pellerin's Funeral Home_
8).   Next of kin notified:
    a).   Name / relationship: _Guadalupe Guerra / Uncle_
    b).   Address: _P.O. Box 481 Santa Vista Ave, Santa Rosa Tx. 78593_
    c).   Telephone number: _(956) 636-1383_
    d).   Notified by / department: _Sgt. Conner / LSP-A_
    e).   Notification date / time: _7-21-03 / 0012 Hrs_

**VI).**   **WITNESSES:** *Use additional witnesses sheet if more witnesses are located.*

1).   Name: _See attached supplement_ Telephone Number: (   ) _____
    Address: _____
    Written statement:   Yes ☐   No ☐

2).   Name: _See attached supplement_ Telephone Number: (   ) _____
    Address: _____
    Written statement:   Yes ☐   No ☐

**VII).**   **PROPERTY DAMAGE:** *Use additional property damage sheet if more damage is located.*

1).   Owner:
    a).   Name / address: _N/A_
    b).   Telephone number / description of damage: _____

2).   Owner:
    a).   Name / address: _N/A_
    b).   Telephone number / description of damage: _____

**VIII).**   **OTHER EMERGENCY ASSISTANCE** ( Sheriff's office, police departments, rescue, fire departments, etc. ): _N/A_
_____

CODE A

**IX).**   **OTHER COMPANIES ASSISTANCE** ( Utilities, cable, telephone, etc. ): _N/A_
_____

3203751    7
I-3016(BS

**V).   DECEASED:** ( complete for each individual ) *Use additional deceased sheet if needed.*

1).   Name: *Melissa A. Dunn*
2).   Pronounced dead by ( title ): *Deputy Coroner Scott Haydel*
3).   Location ( pronounced dead at ): *I-10 ELR M.P. 123*   Time: *2135 Hrs*
4).   Preliminary cause of death: *Burn Trauma*
5).   Person taking charge of personal effects / agency: *Deputy Coroner Scott Haydel*
6).   Parish Coroner: *Dr. Daniel Wiltz*
7).   Deceased transported to / by: *Pellerin's / Pellerin's Funeral Home*
8).   Next of kin notified:
    a).   Name / relationship: *Chad A. Dunn / Brother*
    b).   Address: *2454 Sherry St. Denham Springs, LA 70726*
    c).   Telephone number: *(225) 664-5317*
    d).   Notified by / department: *Sgt. Connor / LSP-A*
    e).   Notification date / time: *07-21-03 / 0120 Hrs*

**VI).   WITNESSES:** *Use additional witnesses sheet if more witnesses are located.*

1).   Name: *See attached supplement* Telephone Number: (    ) _____
    Address: _____
    Written statement:   Yes ☐   No ☐

2).   Name: *See attached supplement* Telephone Number: (    ) _____
    Address: _____
    Written statement:   Yes ☐   No ☐

**VII).   PROPERTY DAMAGE:** *Use additional property damage sheet if more damage is located.*

1).   Owner:
    a).   Name / address: *N/A*
    b).   Telephone number / description of damage: _____

2).   Owner:
    a).   Name / address: *N/A*
    b).   Telephone number / description of damage: _____

**VIII).   OTHER EMERGENCY ASSISTANCE** ( Sheriff's office, police departments, rescue, fire departments, etc. ): *N/A*

_____

**IX).   OTHER COMPANIES ASSISTANCE** ( Utilities, cable, telephone, etc. ): *N/A*

_____

CODE
A

*3203751     75*

*I-3016 (OBSN)*

# OBSERVED INJURIES

## STATE COMPUTER NUMBER: *3203751*

### ( Can be pedestrian or occupant in / on vehicle )



Front view



Rear View

1).    Name: *Cindy Guerra*

2).    ☐ Pedestrian  /  ☒ Occupant of vehicle

*Correspond letter with injury area on diagram and give a description (ie: bruise, scratch, cut, bleeding, etc.).*

A).   *Burned beyond recognition*

B).

C).

D).

E).

F).

G).

H).

I).

J).

K).

Any other information:

*CODE A*

Observation made by: *Tfc Herold Williams 1740*

*3203751*

*I-3016 (CBS)*

# OBSERVED INJURIES

STATE COMPUTER NUMBER: *3203751*

*( Can be pedestrian or occupant in / on vehicle )*



Front view

Rear View

1).    Name: *Melissa A. Dunn*

2).    ☐ Pedestrian   /   ☒ Occupant of vehicle

*Correspond letter with injury area on diagram and give a description (ie: bruise, scratch, cut, bleeding, etc.).*

A).    *Burned beyond recognition*

B).

C).

D).

E).

F).

G).

H).

I).

J).

K).

*CODE A*

Any other information:

Observation made by: *Tfc. Harold Williams 1740*

*Computer Number Pg*
*3203751      7*
*I-3016 (BSS)*

# VEHICLE DAMAGE ANALYSIS

## VEHICLE NUMBER ( #2 ) [same as DPSSP 3105]

### STATE COMPUTER NUMBER : 3203751

Inspected by: TFC JAMES F. FLYNN II    Date: 07 / 20 / 03    Time: 2138 Hours

## MEASUREMENTS:



Motor Vehicle Inspection Number: 02-1169247    State: LA    Expiration Date: 05 04

Odometer Reading: 34086    Location Inspected at: BUTTE LAROSE REST AREA

Any physical defects observed: NONE OBSERVED

Any missing items prior to crash: (example; seatbelt, lights, etc.) NONE OBSERVED

CODE A

3203751
8.

# VEHICLE DAMAGE ANALYSIS   I-3016(033

## VEHICLE NUMBER ( __#4__ ) [same as DPSSP 3105]

STATE COMPUTER NUMBER : __3203751__

Inspected by: _TFC JAMES F. FLYNN II_    Date: _07 / 20 / 03_    Time: _2058_ Hours

## MEASUREMENTS:



Motor Vehicle Inspection Number: _MISSING_    State: ___    Expiration Date: ___

Odometer Reading: _DAMAGED_    Location Inspected at: _BUTTE LA ROSE REST AREA_

Any physical defects observed: _COMPLETELY BURNED (UNKNOWN)_

Any missing items prior to crash: (example; seatbelt, lights, etc.) _UNKNOWN_

CODE A

H24CNC-TX

*Computer Number*
*3203751*
*I-3016 (05)*

# VEHICLE DAMAGE ANALYSIS
## VEHICLE NUMBER ( _#6_ ) [same as DPSSP 3105]

### STATE COMPUTER NUMBER : _3203751_

Inspected by: _TFC JAMES F. FLYNN II_    Date: _07 / 20 / 03_    Time: _2037_ Hours

## MEASUREMENTS:



Motor Vehicle Inspection Number: _02-0199018_    State: _LA_    Expiration Date: _09-03_

Odometer Reading: _70,161_    Location Inspected at: _BUTTE LA ROSE REST AREA_

Any physical defects observed: _NONE OBSERVED_

Any missing items prior to crash: (example; seatbelt, lights, etc.) _NONE OBSERVED_

_CODE A_

*State Computer Number*
*3203751*
*I-3016 Loss*

# VEHICLE DAMAGE ANALYSIS
### Vehicle number (*#8*) [same as DPSSP 3116]
#### STATE COMPUTER NUMBER: *3203751*

Inspected by: *TFC JAMES F. FLYNN II*   Date: *07-20-03*   Time: *2124 HOURS*



Motor Vehicle Inspection Number: *01-2705298*   State: *LA*   Expiration Date: *03-03*

Odometer Reading: *DIGITAL*   Location Inspected at: *BUTTE LA ROSE REST AREA*

Any physical defects observed: *NONE OBSERVED*

Any missing items prior to crash: (example; seatbelt, lights, etc.) *NONE OBSERVED*



*Computer Numb*
*3.203751*
*I-30161(0*

# VEHICLE DAMAGE ANALYSIS

## VEHICLE NUMBER ( *#10* ) [same as DPSSP 3105]

### STATE COMPUTER NUMBER : *3203751*

Inspected by: *TFC JAMES F. FLYNN II*      Date: *07 / 20 / 03*      Time: *2212* Hours

# MEASUREMENTS:







Motor Vehicle Inspection Number: *MISSING*      State: *—*   Expiration Date: *—*

Odometer Reading: *DESTROYED*      Location Inspected at: _____

Any physical defects observed: *UNKNOWN (COMPLETELY BURNED)*

Any missing items prior to crash: (example; seatbelt, lights, etc.) *UNKNOWN*

*CODE A*

*JEEP CHEROKEE*

*Computer Number - Pa...*
*3203751          8*
*I-3016(essni*

# ADDITIONAL WITNESSES

## STATE COMPUTER NUMBER   _3203751_

3). Name: _Shawn Miller_     Telephone Number: (225) _754-7637_
     *225 892-7665*
Address: _16223 Bristoe Ave #C  Baton Rouge, LA. 70816_
Written statement:  Yes ☒  No ☐

4). Name: _Kristen Bybee_     Telephone Number: (504) _251-6472_
Address: _554 Brooklyn Ave.  Jefferson, LA. 70121_
Written statement:  Yes ☒  No ☐

5). Name: _Jason Bybee_     Telephone Number: (504) _701-4409_
Address: _554 Brooklyn Ave  Jefferson, LA. 70121_
Written statement:  Yes ☒  No ☐

6). Name: _Matthew Voelkel_     Telephone Number: (504) _231-7408_
Address: _2006 South Salcedo St._
Written statement:  Yes ☒  No ☐

7). Name: _James R. Brimer_     Telephone Number: (336) _434-1783_
     *336 688-1327*
Address: _2801 White Lane  Archdale, N.C. 27263_
Written statement:  Yes ☒  No ☐

8). Name: _Thomas J. Welborn_     Telephone Number: (336) _327-6152_
     *336 676-7713*
Address: _5329 Greywood Dr.  Greensboro, N.C. 27406_
Written statement:  Yes ☐  No ☒

9). Name: _Paul C. Brown_     Telephone Number: (409) _786-4308_
     *409 780-0639*
Address: _1205 West Circle Drive  Vidor, Tx. 77662_
Written statement:  Yes ☒  No ☐

10). Name: _Paul M. Trahan_     Telephone Number: (225) _274-9164_
     *225 932-2718*
Address: _746 Frwn Lake, Baton Rouge, LA. 70816_
Written statement:  Yes ☒  No ☐

11). Name: _Chad A. Dunn_     Telephone Number: (225) _664-5317_
Address: _2454 Sherry St. Denham Springs LA. 70726_
Written statement:  Yes ☒  No ☐

*CODE A*

*Computer Number-Page*
*3203751*
*I-3016(0554)*

# ADDITIONAL WITNESSES

## STATE COMPUTER NUMBER  *3203751*

3).   Name: *Andrew Nebert* _____ Telephone Number: (*225*) *806-9301*
Address: *10554 Oak Bend Dr.  Baton Rouge La. 70809*
Written statement:   Yes  ☒   No  ☐

4).   Name: ___ *N/A* _____ Telephone Number: (    ) _____
Address: _____
Written statement:   Yes  ☐   No  ☐

5).   Name: ___ *N/A* _____ Telephone Number: (    ) _____
Address: _____
Written statement:   Yes  ☐   No  ☐

6).   Name: ___ *N/A* _____ Telephone Number: (    ) _____
Address: _____
Written statement:   Yes  ☐   No  ☐

7).   Name: ___ *N/A* _____ Telephone Number: (    ) _____
Address: _____
Written statement:   Yes  ☐   No  ☐

8).   Name: ___ *N/A* _____ Telephone Number: (    ) _____
Address: _____
Written statement:   Yes  ☐   No  ☐

9).   Name: ___ *N/A* _____ Telephone Number: (    ) _____
Address: _____
Written statement:   Yes  ☐   No  ☐

10).   Name: ___ *N/A* _____ Telephone Number: (    ) _____
Address: _____
Written statement:   Yes  ☐   No  ☐

11).   Name: ___ *N/A* _____ Telephone Number: (    ) _____
Address: _____
Written statement:   Yes  ☐   No  ☐

*CODE A*

**STATE OF LOUISIANA**
**UNIFORM MOTOR VEHICLE TRAFFIC CRASH REPORT**
**NARRATIVE SUPPLEMENT**

COMPUTER NUMBER: 3 2 0 3 7 5 1 - 6 7 A    PAGE #

I-3016 (03 BW)

**OFFICER'S NARRATIVE:** DESCRIBE ANY UNUSUAL CIRCUMSTANCES ASSOCIATED WITH CRASH, INCLUDING OFFICER'S OBSERVATIONS AND OPINIONS. INCLUDE WITNESS NAMES, ADDRESSES, PHONE NUMBERS, ETC.
IF NECESSARY, INDICATE DAMAGE TO PRIVATE PROPERTY (WITH OWNER'S NAME & ADDRESS) AT THE END OF THE NARRATIVE.
REFER TO EACH BY VEHICLE NUMBER

On June 20, 2003, I, Tfc. Harold Williams received a M.V.R. video tape of the I-10 fatality crash scene from Tfc. James Flynn. The video tape was taken from Louisiana State Police Helicopter, Pilot Ryan Roberts. On September 22, 2003, I, Tfc. Harold Williams entered the M.V.R. video tape into evidence at Troop I, by Sgt. Troy Hebert. H.W.

INVESTIGATING OFFICER'S INITIALS: H.W.

# STATE OF LOUISIANA
## DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
### OFFICE OF STATE POLICE
### TRANSPORTATION AND ENVIRONMENTAL SAFETY SECTION
### COMMERCIAL VEHICLE POST-CRASH INVESTIGATIVE FORM

## SUPPLEMENTAL REPORT

INVESTIGATING AGENCY: ☒ STATE POLICE ☐ CITY POLICE ☐ SHERIFF ☐ OTHER

| TIME: 1730 | DATE: 07-20-03 | DAY: SUNDAY | PARISH: ST MARTIN | REPORT# LABF003584 |
| LOCATION: I10 EASTBOUND | | | MP : 123 | STATE #3203751 |

DESCRIBE ANY UNUSUAL CIRCUMSTANCE ASSOCIATED WITH THE ACCIDENT.  WITNESS NAMES, ADDRESSES, ETC. BY NO.

## MASTER TROOPER RICHARD C. ELLIOTT
## LOUISIANA STATE POLICE/TESS

# REFER

# TO

# ATTACHED

# DOCUMENT

**POST CRASH SUPPLEMENTAL REPORT 07-20-03 I10 MP 123**
**MASTER TROOPER RICHARD C ELLIOTT**

At approximately 2030 hours, on 07-20-03, I was notified of a crash which occurred on I10, eastbound lane, at milepost 123. I was advised that a tractor trailer was involved and fatalities had occurred.

I proceeded to that location and arrived at approximately 2130 hours. Interstate 10 was blocked off on the eastbound lanes from milepost 103 to milepost 123 where the accident occurred. When I arrived at the scene, I noticed that there was a large amount of debris and scorching on the surface of the interstate. I made contact with Sgt Hebert and Trooper Harold Williams. There were also other Troop I personnel at the scene conducting a crash investigation with work stations.

Sgt Hebert stated that an Allied Van Lines tractor trailer struck several other vehicles, erupting in fire. The driver of the vehicle died as a result of his injuries from the fire and collision. Investigating officers were unable to identify the driver due to the severity of the damage from the fire.

I checked the wreckage of the Allied Van Lines tractor trailer and noted that there was severe damage to the truck and the trailer. The cab was completely removed from the frame and had extensive fire damage. The trailer was burnt to the point that the only recognizable part of the trailer was the partial remains of the rear door (left). The floor of the trailer was intact but the tires were all burnt off. The cargo was also destroyed by fire with only parts of small furnishings left. The burnt remains of the cargo spilled on to the roadway around the trailer frame.

Investigating officers at the scene had no vehicle information, I looked through the wreckage and found the license plate of the trailer. The tag # was C2620R (FL). I ran a registration check on the trailer and it came back to a 1999 Kentucky Semitrailer, registered to Sorensen Moving and Storage Co, Melbourne, FL. Attempts to contact this company at that time met with negative results.

I made contact with Sorenson Moving and Storage Co on 07-21-03. The driver was identified as Wladyslaw Gorski, w/m, DOB 09-12-55, FL drivers license G620880553320, 1779 Eagle Ridge Blvd, Palm Harbor, FL 34685. The company also stated he was operating a 1999 Volvo TT FL License A5321K pulling a 1999 Kentucky trailer FL Lic C2620R. Debbie ,an employee of Sorenson Moving and Storage, stated that Mr Gorski was enroute to several locations in Florida and had picked up several loads in California and Arizona. I was referred to the Corporate Office in Missouri and made contact with Mark Davison, Safety Department, Allied Moving Van Company.

Mr Davison sent all the records that I requested and was cooperative in all requests.


**VEHICLE INSPECTIONS**

No vehicle inspection was done at the scene of crash due to the extensive damage and massive debris field involved. The fire damage was so extensive, no credible vehicle inspection could be conducted on the Volvo. SGT William Miller and I went to the storage yard of Rick's

Driving from Ventura CA to Santa Maria CA 1115-1400 . Mr Gorski failed to log the delivery of a HHG load to the residence of Elizabeth Johnson in Moore Park, CA at 1200 hours to 1400 hours CDT(ref written and verbal statements from Ms Johnson) and also failed to log any travel to Moore Park from Ventura CA then back to Ventura CA.. He then continued on to Santa Maria. Mr Patrick McDonald ,Safety Manager at Allied Van Lines, Santa Maria, CA, stated Mr Gorski stopped at both warehouses attempting to deliver a Military shipment in Ventura but was directed to Santa Maria. Mr Gorski did not arrive in Santa Maria until 2030 hrs CDT however his log book showed being off duty from 1400 to 2000 hrs in Santa Maria.

Mr Gorski was scheduled to deliver HHG shipments in Alameda CA and Castro Valley, CA on 07-07-03 and 07-09-03 respectively . His Record of Duty Status indicates that the only time he was anywhere near those locations, is when he logged driving to LeMoore , CA. from a city referred to as Katleman City , CA. He logged Off Duty from 0945-1500 then Driving from 1500-1745, stopping in Pipon, CA on 07-09-03.

His first pickup of Household Goods ,that started his final trip, started at San Diego, CA at the residence of Mr Charles T Fix . Mr Fix stated (verbally and in writing) that Mr Gorski arrived at 1100 CDT, 07-11-03 and departed at approximately 1800 CDT. Mr Gorski logged Off Duty from 0400-0500, Sleeper Berth 0500-1300, Off Duty 1300-1800 in San Diego,CA  Mr Fix stated that Mr Gorski participated in the loading process the entire time, inventorying the shipment and assisting in the moving and carrying of the shipment.

Mr Gorski was scheduled to pick up a shipment in Phoenix Az at the residence of Kirk Gamble. Mr Gamble stated that Mr Gorski arrived at his residence at approximately 1000 hrs CDT and departed approximately 1400 CDT. Mr Gamble submitted a written statement via his attorney which was less detailed than his verbal statements to me. Mr Gamble verbally stated to me that Mr Gorski indicated to him that he was rushed and intended to "fudge" on his hours in order to get home sooner. No log pages were available to me at this point in the trip due to the fact no log pages were submitted to the Carrier past 07-13-03.

The next appointment Mr Gorski had was in El Cajon, CA, where he picked up a Military HHG shipment. The shipment was at the Allied Moving Van local Agent(Valley Moving and Storage). I spoke with Mr Greg Shadoan who is a manager at that facility and he advised me that Mr Gorski arrived at his facility in the afternoon on 07-15-03 and spent at least two (2) hours loading the shipment. Mr Shadoan advised me that there is no documentation available to tell the exact time but he does recall that it was in the afternoon.

The next scheduled pickup was on 07-17-03 in Santa Barbara, CA. Mr Gorski arrived at the Beeler residence (2805 Miradero Drive Unit A) at approx 1030 CDT. According to Mr Beeler (written and verbal statements), Mr Gorski participated in the loading of the shipment and was finished around 1700 CDT.

Mr Gorski again travelled back to El Cajon, CA and picked up another military HHG shipment on 07-18-03. Mr Greg Shadon (Manager) at the Allied Moving and Storage advised me that it was late afternoon when he (Gorski) arrived and it took approximately two(2) hours for him to load it.

It is apparent ,through the documents that I have obtained ,that Mr Gorski immediately started his trip to Florida traveling to Phoenix, Arizona area (cell phone activity 1642 hrs to 2219 hrs, 07-18-03).

Mr Gorski  traveled  from the Phoenix AZ area to an area somewhere near Houston, Tx

3

on 07-19-03. (Cell phone activity from 1130 hrs until 2300 hours) . No further activity noted on that date.

On 07-20-03 the cell phone activity started again at approximately 1044 hours CDT changing cell towers at approx 1219 CDT(New Orleans).. In conversing with Mrs. Gorski's attorney, he indicated that Mr. Gorski advised his wife during a conversation that day, that he stopped in Louisiana for an extended period to eat. The last recorded cell phone activity occurred at approximately 1625 hrs CDT that lasted for approx six (6) minutes and twenty-two (22) seconds. This correlates with a recorded GPS hit that occurred at 1633 EDT with the location recorded at Evangeline, La.,07-20-03. No further documentation exists on his location or whereabouts prior to the crash.

I made contact with Mr. Adam Mulawa, a personal friend of Mr Gorski. Mr Mulawa stated that Mr. Gorski stated to him on 07-20-03, he stopped at some unknown location in Louisiana for at least two (2) hours where he ate and showered. He stated that he had no reason to believe that Mr. Gorski was ill or tired. He did advise me that Mr. Gorski told him that he was extremely tired on his trip from Phoenix, AZ because of the extreme heat. This telephone conversation occurred at approx 1108 CDT .

## CONCLUSIONS

It is my opinion that Mr Gorski was apparently fatigued and possibly distracted at the time of the crash. In reviewing the Duty Status Records and statements given by the individual customers he delivered Household Good shipments to, it is apparent that there were several times that the Duty Status Record was falsified in an attempt to conceal hours of On Duty time and also the driving time it took to get to the locations. It is also my opinion that Mr Gorski exceeded the 10 hour driving rule on 07-19-03 by 2- 4 hours(refer to cell phone records) .

Statements from customers also indicate that Mr Gorski was attempting to get to the Orlando, FL area and then drive back to Tallahasse, Florida for a 07-22-03 delivery appointment.

**State of Louisiana**
**Department of Public Safety and Corrections**
**Office of State Police**
**Transportation and Environmental Safety Section**
**Commercial Vehicle Post-Crash Investigative Report**

Investigating Agency:

☑ State Police    ☐ Sheriff
☐ City Police.    ☐ Other

MCSAP Inspection Report Number

LABF003584

| TIME | Date of Accident 07-20        2003 | Day of Week SUNDAY | Hour 1720 |
|---|---|---|---|

**LOCATION**

Parish where accident occurred ___ST. MARTIN___

Highway ___I-10 EB___    Milepost ___123___
Inside City Limits?  ☐ Yes  ☒ No    If yes, what city _____

Investigative Agency File Number I3016(035M)

State computer File Number 3203751

**TRUCK**

Carrier's name/Address    Allied Van Lines Inc.    5001 Hwy 30W, Ft Wayne,In    Carrier Phone number 260-429-3313

Owner's Name/Address    Interstate Carrier?  ☐ Yes    ☐ No

| Number of years this carrier has been in operation __81__ | Number of Axles __3__ | 4VG7DARJ1XN782348 | number of drivers currently employed by carrier (including lease drivers, owner-operators, company drivers) __3117__ |
|---|---|---|---|
| | Number of tires __10__ | VIN | |

**TRUCK/ TRACTOR**

Year 1999    Make Volvo    ☐ Cab Over    ☒ Conventional

DOT Number 76235
ICC Number 15735

**TRAILER**

License Year 2003    License State Fl    License Number A5321K

Owner's Name/Address    Sorenson Moving and Storage, Melbourne,Fl    License Year 2003    License State Fl

Year 1999    Make Kent    Number of Axles 2    Number of Tires 8    License NumberC2620R

**DRIVER(s)**

Driver's Name/Address    Vladislaw Gorski, 1779 Eagle Ridge, Palm Harbor,Fl    Age/Date of Birth 48/ 09-12-55

Driver's License State Fl    Class    A    License Number G620880553320    Alcohol test Given  ☒ Yes  ☐ NO

**CO- ER(s)**

Co-Driver's Name/Address    Age/Date of Birth

CO-Driver's License State    Class    License Number    Alcohol test Given  ☐ Yes  ☐ NO

**INJURIES**    Number non-fatal injuries in CMV 0    Number fatal injuries in CMV 1

**FATALITIES**    Number non-fatal injuries in other vehicle(s 7    number fatal injuries in other vehicle(s) 4

**CARGO**

☐ Empty-no cargo    ☐ Beverages    ☐ Building materials    ☐ Chemicals    ☐ Commodities,dry bulk    ☐ Produce
☐ Trash    ☐ Grain/hay    ☐ General freight    ☐ Intermodal    ☒ Household goods    ☐ Livestock
☐ Logs/lumber    ☐ Machinery    ☐ Meat    ☐ Motor vehicle    ☐ Mobile home    ☐ Coal
☐ Heavy equipment    ☐ Passengers    ☐ Paper products    ☐ Refrigerated foods    ☐ U.S. Mail    ☐ Furniture
☐ Hazmat    ☐ Other

**INTERIOR OF CAB**

Unauthorized passenger  ☐ Yes  ☐ No    Age/sex    DOB    Telephone Number:

Name    Address

Authorized passenger (not co-driver)    Age/sex    DOB    Telephone Number:
☐ Yes    ☐ No

Name    Address

Animals in Cab?  ☐ Yes  ☐ No    Food or Food Containers in cab?  ☐ Yes  ☐ No    If Yes, Describe:

Medicines in Cab?  ☐ Yes  ☐ NO
☐ prescription  ☐ non-prescription    If present, describe:

Narcotic paraphanalia present    ☐ Yes ☐ No    Describe:

Vehicle equipped with sleeper berth?  ☐ Yes  ☐ No    Has sleeper obviously been being utilized?  ☐ Yes ☐ No    stuffed animals, decalcomania, etc obstructing drivers view?  ☐ Yes  ☐ No

Sleeper occupant restraint present?  ☐ Yes  ☐ NO    Sleeper adequately equipped for sleeping?  ☐ Yes ☐ No    Details:

| Seat belt for driver installed?  ☐ Yes  ☐ No | Dash lights on?  ☐ Yes ☐ No | After-market lights present?  ☐ Yes  ☐ No |
|---|---|---|
| Windshield wiper switch on?  ☐ Yes  ☐ No | Headlamp switch on? ☐ Yes ☐ No | After-market lights in use?  ☐ Yes  ☐ No |
| Air conditioner on?  ☐ Yes  ☐ No | Defroster on?  ☐ Yes ☐ No | Refrigerator/ice chest present?  ☐ Yes  ☐ No |
| Heater on?    Yes  ☐ No  ☐ | Alcoholic beverages present?  ☐ Yes  ☐ No | If yes, describe: |

5

| )ITION OF INTERIOR | | | |
|---|---|---|---|
| | Generally clean or uncluttered? ☐ Yes ☐ No | Magazines/books/maps/etc. Present? ☐ Yes ☐ No | |
| | Television receiver present? ☐ Yes ☐ No | Television on? ☐Yes ☐ No | Cellular telephone present? ☐ Yes ☐ No |
| | Scanner radio present? ☐Yes ☐No | Scanner radio on? ☐ Yes ☐ No | Computer/satellite terminal Present? |
| | Radar detector present? ☐Yes ☐ No | Radar detector on? ☐ Yes ☐ No | ☐ Yes ☐ No |
| | Music radio present? ☐Yes ☐ No | Music radio on? ☐Yes ☐ No | Other possible distractors: |
| | CB Radio present? ☐Yes ☐ No | CB Radio on? ☐Yes ☐ No | |

DRIVER INTERVIEW

**READ MIRANDA WARNING (ATTACHMENT) TO THE DRIVER AND ASK HIM TO SIGN IT PRIOR TO ASKING THE FOLLOWING QUESTIONS.**

How much total experience do you have in operating commercial vehicles? Years Months

How long have you been operating commercial vehicles for this carrier? Years Months

How much total experience do you have operating the type of tractor that you were operating at the time of the accident?
☐ Conventional ☐ Cab-over
_________ Years _________ Months

How much total experience do you have operating the type of trailer that you were operating at the time of the accident?
☐ Flat bed ☐ Van trailer ☐ Cargo tank ☐ Dry bulk tank ☐ Double trailers
_________ Years _________ Months

How much total over-the-road commercial vehicle driving experience do you have?
_________ Years _________ Months

How much total local driving experience do you have? Years Months

Is the route that you were on at the time of the accident a ☐ Route that you have driven or normally drive ☐ Route that you have never driven

Where did you pick up or deliver your last load?

What date Time Did you pick up/deliver your last load?

What date Time Are you required to be at your next destination?

What Date Time Were you last dispatched?

Where were you when you were dispatched?

Are you on schedule? ☐ Yes ☐ No Did you load the trailer? ☐ Yes ☐ No

Did you supervise the loading of the trailer? ☐ Yes ☐ No

Did you secure the load? ☐ Yes ☐ No Did you inspect the load securement? ☐ Yes ☐ No

Where did you last stop? Date Time Of last stop

How long were you there? What was the purpose of your stop?

| What date and time did you last do the following? | date | time | What medication, if any, did you take? |
|---|---|---|---|
| Eat | / / | _____ | |
| drink alcohol | / / | _____ | |
| take medication | / / | _____ | |

What date Time Did you last sleep? How long did you sleep? Hours

Where did you sleep?

At the time of the accident were you doing any of the following?
☐ Yes ☐ No eating
☐ Yes ☐ No drinking
☐ Yes ☐ No reading (book/magazine/map)
☐ Yes ☐ No smoking

At the time of the accident were you operating any of the following?
☐ Yes ☐ No CB or two-way radio
☐ Yes ☐ No
☐ Yes ☐ No
☐ Yes ☐ No



| Officer's signature | Rank and Name | Badge no. | Region | Date |
|---|---|---|---|---|
| [signature] | MT Richard Elliott | 212 | 2 | 07-20-03 |

***Carrier S***

ALLIED V.
USDOT

**ID/Operations** | **Inspections/Crashes** | **Safety Rating** | **Insurance**

Other Infor
C

**Carriers:** If you would like to update the following ID/Operations information, please complete and submit form
MCS-150 which can be obtained online or from your State FMCSA office.

♥ SafeSta
♥ Licensin

**Carriers and other users:** If you would like to request more detailed information in the form of a MCMIS Carrier
Profile please call (800)832-5660 or (703)280-4001 (Fee Required).

*For help on the explanation of individual data fields, click on any field name or for help of a general nature click here.*

**The information below reflects the content of the FMCSA management information systems as of 07/20/2003.**

| | | | |
|---|---|---|---|
| **Entity Type:** | Carrier | **Status:** | Active |
| **Legal Name:** | ALLIED VAN LINES INC | | |
| **DBA Name:** | | | |
| **Physical Address:** | 5001 US HWY 30 WEST<br>FORT WAYNE, IN  46818 | | |
| **Phone:** | (219) 429-2511 | | |
| **Mailing Address:** | 5001 US HWY 30 WEST<br>FORT WAYNE, IN  46818 | | |
| **USDOT Number:** | 76235 | **State Carrier ID Number:** | |
| **MC or MX Number:** | 15735 | **DUNS Number:** | 00-479-0143 |
| **Power Units:** | 4,431 | **Drivers:** | 3,500 |
| **MCS-150 Form Date:** | 03/05/2003 | **MCS-150 Mileage (Year):** | 124,440,000 (2000) |

**Operation Classification:**

| | | |
|---|---|---|
| **X** Auth. For Hire | Priv. Pass.(Non-business) | State Gov't |
| Exempt For Hire | Migrant | Local Gov't |
| Private(Property) | U.S. Mail | Indian Nation |
| Priv. Pass. (Business) | Fed. Gov't | |

**Carrier Operation:**

| | | |
|---|---|---|
| **X** Interstate | Intrastate Only (HM) | Intrastate Only (Non-HM) |

**HM Shipper Operation:**

| | |
|---|---|
| Interstate | Intrastate |

**Cargo Carried:**

| | | |
|---|---|---|
| General Freight | Liquids/Gases | Chemicals |
| **X** Household Goods | Intermodal Cont. | Commodities Dry Bulk |
| Metal: sheets, coils, rolls | Passengers | Refrigerated Food |
| **X** Motor Vehicles | Oilfield Equipment | Beverages |
| Drive/Tow away | Livestock | Paper Products |
| Logs, Poles, Beams, Lumber | Grain, Feed, Hay | Utilities |
| Building Materials | Coal/Coke | Agricultural/Farm Supplies |
| Mobile Homes | Meat | Construction |
| **X** Machinery, Large Objects | Garbage/Refuse | Water Well |

7

SAFER Web - Carrier Snapshot ALLIED VAN LINES INC

Fresh Produce                     US Mail

**ID/Operations | Inspections/Crashes | Safety Rating | Insurance**

**Inspection results for 24 months prior to: 07/20/2003**

Total inspections: 4964
Note: Total inspections may be less than the sum of vehicle, driver, and hazmat inspections. Click here for further information.

Inspections:

| Inspection Type | Vehicle | Driver | Hazmat |
|---|---|---|---|
| Inspections | 3094 | 4931 | 2 |
| Out of Service | 596 | 585 | 0 |
| Out of Service % | 19.3% | 11.9% | 0% |
| Nat'l Average %(2002) | 22.90% | 7.21% | 5.72% |

**Crashes reported to FMCSA by states for 24 months prior to: 07/20/2003**

Crashes:

| Type | Fatal | Injury | Tow | Total |
|---|---|---|---|---|
| Crashes | 2 | 37 | 49 | 88 |

**ID/Operations | Inspections/Crashes | Safety Rating | Insurance**

*The Federal safety rating does not necessarily reflect the safety of the carrier when operating in intrastate commerce.*

**Carrier Safety Rating:**

**The rating below is current as of: 07/20/2003**

**Review Information:**

| Rating date: | 09/17/2002 | Review Date: | 08/23/2002 |
|---|---|---|---|
| Rating: | Satisfactory | Type: | Compliance Review |

**ID/Operations | Inspections/Crashes | Safety Rating | Insurance**

For the most current information on the status of operating authority
and insurance for this carrier, go to the **FMCSA Licensing & Insurance site**.



Copyright © 2000 Federal Motor Carrier Safety Administration (FMCSA)
Others may use by reference.

```
TRIP 25454  HAUL $   13383 REV/MILE   3.51 REV/DAY  836  COM-TYP CL R/C ST: E
      FIRST LOADING        LAST UNLOADING    TRAC FLT TRL FF AR   HAULING AGENT
1BC  SAN DIEGO  0711 4CF   MIAMI, FL  0726 36045   61558 X X  21851 SORENSEN MO
      DRIVER ONE           DRIVER TWO    MOT PROV PHYS1 PHYS2    INSP   TRC IN
36532 GORSKI     15   00000            V  1  022705          703103  803103
   REPORTED AT  DATE TIME  WHDO  PHONE CONTACT VFC PRF  AVAILABLE AT  DATE TIME
Evangeline LA  0720 1733       000 000 0000      A3  JACKSONVIL FL 0721 1100
   REPAIR SHOP NAME                     PRV.TRP 25453 NXT.TRP  00000   UPDATE
   REMARKSNXT TRIP TO CA....
   VAN SZ  TOT.CUB.FT   SP.AVL   TOT.WGT              TRP.MILES  SPD.FLT   STATUS
    4420     04313      0107    291.00                  3616      000   IMMEDIATE
      COS: 4.67
  U S REGISTRATION    ATS   ALP    LOAD     ADP    UNLD  C CUBE  WGT TOE REV  B R
  X L 181087000000.H    Y 0711-0711 0711  0722-0725 0722    0700 04300 R 01869 N E
  SHP FIX CHARLI   OA 00420 ATLAS TRAN ORG 1BC SAN DIEGO  CA DES 4CB TALLAHASSE FL
  X L 183834000000 H    Y 0714-0714 0714  0723-0726 0726    1327 08800 N 03180 N C
  SHP GAMBLE KIR   OA 05650 DIRCKS MOV ORG 1BF PHOENIX    AZ DES 4CF COCONUT GR FL
  X L 916581000000.A.   N 0714-0714 0715  0801-0801 0725    0286 02000 N 01227 N .
  SHP BONI/GARCI   OA 62970 VALLEY VAN ORG 1BC SAN DIEGO  CA DES 4CF OPA LOCKA  FL
  X L 916521000000.A.   N 0715-0715 0715  0801-0801 0723    0286 02000 N 01159 N .
  SHP BONI/ORTIZ   OA 62970 VALLEY VAN ORG 1BC CORONADO   CA DES 4CD JACKSONVIL FL
  X L 181485000000.H.   Y 0717-0717 0717  0724-0728 0724    1285 09000 P 04209 N C
  SHP PALMER SUS   OA 09300 HILFORD MO ORG 1BA SANTA BARB CA DES 4CD JACKSONVIL FL
```

```
07/22/03 14:02              Log Tracking By Safety #                    N363

Safety Contract                Load    Delivery Acct Agt          Div Flt
Number Number    Shipper Name  Date    Date     Code Hlr Hauler Nme Cd Ctl Car
------ --------  ------------  -------- -------- ---- --- ---------- --- --- ---
 36532 91686800 ID BONI/DUNC  07/18/03 07/23/03 2185 001 SORENSEN M RS  NED AV
 36532 18148500 PALMER SUSAN  07/17/03 07/24/03 2185 001 SORENSEN M RS  NED AV
 36532 91652100 EL M BONI/OR  07/15/03 07/23/03 2185 001 SORENSEN M RS  NED AV
 36532 91658100 LIAM BONI/GA  07/15/03 07/25/03 2185 001 SORENSEN M RS  NED AV valley
 36532 18383400 GAMBLE KIRK   07/14/03 07/26/03 2185 001 SORENSEN M RS  NED AV
 36532 18108700 FIX CHARLIE   07/11/03 07/22/03 2185 001 SORENSEN M RS  NED AV
 36532 91611200 YSTAL CLYL/J  07/03/03 07/08/03 2185 001 SORENSEN M RS  NED AV
 36532 17399500 SALIBA MOLLY  07/02/03 07/06/03 2185 001 SORENSEN M RS  NED AV


07/22/03 14:03              Log Tracking By Safety #                    N363

Safety Contract                 Origin      Destination
Number Number    Shipper Name  City State   City State
------ --------  ------------  ------------ ------------
 36532 91686800 ID BONI/DUNC  SAN DIEGO CA JACKSONVILLE
  532  18148500 PALMER SUSAN  SANTA BARBAR JACKSONVILLE
  532  91652100 EL M BONI/OR  CORONADO  CA JACKSONVILLE
 36532 91658100 LIAM BONI/GA  SAN DIEGO CA OPA LOCKA FL
 36532 18383400 GAMBLE KIRK   PHOENIX   AZ COCONUT GROV
 36532 18108700 FIX CHARLIE   SAN DIEGO CA TALLAHASSEE
 36532 91611200 YSTAL CLYL/J  PENSACOLA FL LEMOORE   CA
 36532 17399500 SALIBA MOLLY  ORLANDO   FL NEWPORT BEAC
```

# *ALLIED*

## DRIVER'S DAILY LOG
(One Calendar Day - 24 Hours)

CARRIER NAME & ADDRESS: ALLIED VAN LINES, INC.
5001 U.S. HIGHWAY 30 WEST
FT. WAYNE, IN 46818

| Month | Day | Year |
|-------|-----|------|
| 2 | 30 | 03 |

Total Miles / Kilometers Driven Today: 345

I certify these entries are true and correct. I agree to drive in a safe and professional manner.

Driver's name (Please print): VLADEK GORSKY

Driver's signature in full

Print Co-Driver's Name (If none, leave blank)

Tractor / Str. Truck 5 Digit AVL #: 36045

Driver's 5 Digit Code: 36532

Trailer Number (If none, leave blank): 61558

Co-Driver's Code (If none, leave blank)

**USE TIME STANDARD AT AGENCY**

| | TOTAL HOURS |
|---|---|
| Off Duty | 10.00 |
| Sleeper | 8.00 |
| Driving | 5.75 |
| On Duty (Not Driving) | 0.25 |
| TOTAL | 24 |

Must Total 24 Hours

REMARKS:
PALM HARBOR FL
PUNTA GORDA FL
HOMESTEAD FL

| Number / Identification | Agent Code | Agent Name | Home Terminal - Agent City, State |
|---|---|---|---|
| 10242 | 2185-1 | SORENSEN M&S | ORLANDO, FL |

### DAILY VEHICLE CONDITION REPORT

THIS IS AN END OF THE DAY INSPECTION (FMCSR 396.11). IF ANY COMPONENTS ARE FOUND TO BE DEFECTIVE, PLACE AN (X) IN THE APPROPRIATE BOX.
IF NO DEFECTS ARE FOUND, PLACE AN (X) IN THE BOX MARKED "NO DEFECTS".

- ☐ 1. Air Hoses and Connectors
- ☐ 2. Coupling Devices
- ☐ 3. Wheels & Rims
- ☐ 4. Tires
- ☐ 5. Glass and Mirrors
- ☐ 6. Fire Extinguisher
- ☐ 7. Triangles and Fuses
- ☐ 8. Horn (Air and/or Electric)
- ☐ 9. Windshield Wipers
- ☐ 10. Parking Brake
- ☐ 11. Steering Mechanism
- ☐ 12. Service Brakes
- ☐ 13. Speedometer
- ☐ 14. Lights and Reflectors
- ☒ 15. NO DEFECTS

DRIVER'S SIGNATURE

11

**ALLIED.**

# DRIVER'S DAILY LOG
(One Calendar Day - 24 Hours)

CARRIER
NAME & ADDRESS

ALLIED VAN LINES, INC.
5001 U.S. HIGHWAY 30 WEST
FT. WAYNE, IN 46818

Month: 7  Day: 02  Year: 03

Total Miles / Kilometers Driven Today: 383

I certify these entries are true and correct. I agree to drive in a safe and professional manner.

Tractor / St. Truck 5 Digit AVL #: 6 0 4 5

Driver's 5 Digit Code: 36532

Driver's name (Please print): VLADEK GORSKI

Driver's signature in full

Trailer Number (If none, leave blank): 61558

Co-Driver's Code (If none, leave blank):

Print Co-Driver's Name (If none, leave blank):

USE TIME STANDARD AT AGENCY

| | TOTAL HOURS |
|---|---|
| Off Duty | 7.75 |
| Sleeper | 8.00 |
| Driving | 7.75 |
| On Duty (Not Driving) | 0.50 |
| TOTAL | 24 |

REMARKS:
ONTARIO CA PTI
VENTURA CA
SANTA MARIA CA
SANTA MARIA CA
KETTLEMAN CITY CA OVCR

Must Total 24 Hours

| Reg. Number / Identification | Agent Code | Agent Name | Home Terminal - Agent City, State |
|---|---|---|---|
| 1942 | 2185-1 | SORENSEN M&S | ORLANDO, FL |

**DAILY VEHICLE CONDITION REPORT**

THIS IS AN END OF THE DAY INSPECTION (FMCSR 396.11). IF ANY COMPONENTS ARE FOUND TO BE DEFECTIVE, PLACE AN (X) IN THE APPROPRIATE BOX.
IF NO DEFECTS ARE FOUND, PLACE AN (X) IN THE BOX MARKED "NO DEFECTS".

- ☐ 1. Air Hoses and Connectors
- ☐ 2. Coupling Devices
- ☐ Wheels & Rims
- ☐ 4. Tires
- ☐ 5. Glass and Mirrors
- ☐ 6. Fire Extinguisher
- ☐ 7. Triangles and Fuses
- ☐ 8. Horn (Air and/or Electric)
- ☐ 9. Windshield Wipers
- ☐ 10. Parking Brake
- ☐ 11. Steering Mechanism
- ☐ 12. Service Brakes
- ☐ 13. Speedometer
- ☐ 14. Lights and Reflectors
- ☒ 15. NO DEFECTS

DRIVER'S SIGNATURE

**ALLIED**

**DRIVER'S DAILY LOG**
(One Calendar Day - 24 Hours)

CARRIER NAME & ADDRESS
ALLIED VAN LINES, INC.
5001 U.S. HIGHWAY 30 WEST
FT. WAYNE, IN 46818

| Month | Day | Year | Total Miles / Kilometers Driven Today |
|-------|-----|------|----------------------------------------|
| 7 | 01 | 03 | 404 |

I certify these entries are true and correct. I agree to drive in a safe and professional manner.

Factor / Str. Truck 5 Digit AVL #: 36045

Driver's 5 Digit Code: 36532

Driver's name (Please print): JVADEK GORSKI.

Driver's signature in full

Trailer Number (If none, leave blank): 61558

Co-Driver's Code (If none, leave blank):

Print Co-Driver's Name (If none, leave blank):

**USE TIME STANDARD AT AGENCY**

|  | TOTAL HOURS |
|---|---|
| : Off Duty | 7,00 |
| : Sleeper | 5,00 |
| : Driving | 9,00 |
| On Duty (Not Driving) | 2,00 |
| TOTAL | 24 |

REMARKS:
HOMESTED  KEY WEST DVCK BRIDGO  PC  KEYWEST PIT E CONDING  PC  KEY WEST  FLGHT PL  FT PIERCE DVCR.

Must Total 24 Hours

| Reg. Number / Identification | Agent Code | Agent Name | Home Terminal - Agent City, State |
|------------------------------|------------|------------|-----------------------------------|
| 0242 | 2185-1 | SORENSEN MES | ORLANDO, FC |

**DAILY VEHICLE CONDITION REPORT**

THIS IS AN END OF THE DAY INSPECTION (FMCSR 396.11). IF ANY COMPONENTS ARE FOUND TO BE DEFECTIVE, PLACE AN (X) IN THE APPROPRIATE BOX.
IF NO DEFECTS ARE FOUND, PLACE AN (X) IN THE BOX MARKED "NO DEFECTS".

☐ 1. Air Hoses and Connectors
☐ 2. Coupling Devices
☐ 3. Wheels & Rims
☐ 4. Tires
☐ 5. Glass and Mirrors
☐ 6. Fire Extinguisher
☐ 7. Triangles and Fuses
☐ 8. Horn (Air and/or Electric)
☐ 9. Windshield Wipers
☐ 10. Parking Brake
☐ 11. Steering Mechanism
☐ 12. Service Brakes
☐ 13. Speedometer
☐ 14. Lights and Reflectors
☑ 15. NO DEFECTS

DRIVER'S SIGNATURE

13

# ALLIED.

## DRIVER'S DAILY LOG
### (One Calendar Day - 24 Hours)

ALLIED VAN LINES, INC.
NAME & 5001 U.S. HIGHWAY 30 WEST
ADDRESS FT. WAYNE, IN 46818

| Month | Day | Year | Total Miles / Kilometers Driven Today |
|---|---|---|---|
| 07 | 02 | 03 | 373 |

I certify these entries are true and correct. I agree to drive in a safe and professional manner.

Driver's name (Please print) JZADEK GODJG

Driver's signature in full

Tractor / Str. Truck 5 Digit AVL #  56045

Driver's 5 Digit Code  36532

Trailer Number (If none, leave blank)  61558

Co-Driver's Code (If none, leave blank)

Print Co-Driver's Name (If none, leave blank)

**USE TIME STANDARD AT AGENCY**

| | TOTAL HOURS |
|---|---|
| Off Duty | 9.50 |
| Sleeper | 8.00 |
| Driving | 6.00 |
| On Duty (not Driving) | 0.50 |
| TOTAL | 24 |

Must Total 24 Hours

REMARKS: FT PIERCE FL, ORLANDO, FL, ORLANDO FL, QUINCY FL OVER

| Reg. Number / Identification | Agent Code | Agent Name | Home Terminal - Agent City, State |
|---|---|---|---|
| 9242 | 2185-1 | SORENSEN MFS | ORLANDO, FL |

**DAILY VEHICLE CONDITION REPORT**

THIS IS AN END OF THE DAY INSPECTION (FMCSR 396.11). IF ANY COMPONENTS ARE FOUND TO BE DEFECTIVE, PLACE AN (X) IN THE APPROPRIATE BOX.
IF NO DEFECTS ARE FOUND, PLACE AN (X) IN THE BOX MARKED "NO DEFECTS".

- [ ] 1. Air Hoses and Connectors
- [ ] 2. Coupling Devices
- [ ] 3. Wheels & Rims
- [ ] 4. Tires
- [ ] 5. Glass and Mirrors
- [ ] 6. Fire Extinguisher
- [ ] 7. Triangles and Fuses
- [ ] 8. Horn (Air and/or Electric)
- [ ] 9. Windshield Wipers
- [ ] 10. Parking Brake
- [ ] 11. Steering Mechanism
- [ ] 12. Service Brakes
- [ ] 13. Speedometer
- [ ] 14. Lights and Reflectors
- [X] NO DEFECTS

DRIVER'S SIGNATURE

# ALLIED

## DRIVER'S DAILY LOG
(One Calendar Day - 24 Hours)

CARRIER NAME & ADDRESS: ALLIED VAN LINES, INC.
5001 U.S. HIGHWAY 30 WEST
FT. WAYNE, IN 46818

| Month | Day | Year |
|---|---|---|
| 03 | 03 | |

Total Miles / Kilometers Driven Today: 640

I certify these entries are true and correct. I agree to drive in a safe and professional manner.

Driver's name (Please print): CADEK GORSKI

Driver's signature in full

tor / Str. Truck 5 Digit AVL #: 6045
Driver's 5 Digit Code: 36532

Trailer Number (if none, leave blank): 61558
Co-Driver's Code (if none, leave blank):

Print Co-Driver's Name (if none, leave blank)

USE TIME STANDARD AT AGENCY

|  | TOTAL HOURS |
|---|---|
| Off Duty | |
| Sleeper | 6.50 |
| Driving | 10.00 |
| On Duty (Not Driving) | 0.00 |
|  | TOTAL 24 |

REMARKS:

QUINCY FL PST
PENSACOLA FL
GULF PORT MS
HIGHLAND LA
BEAUMONT TX DVIR

Must Total 24 Hours

| Reg. Number / Local Identification | Agent Code | Agent Name | Home Terminal - Agent City, State |
|---|---|---|---|
| 2242 | 2185-1 | SORENSEN M&S | ORLANDO, FL |

## DAILY VEHICLE CONDITION REPORT

THIS IS AN END OF THE DAY INSPECTION (FMCSR 396.11). IF ANY COMPONENTS ARE FOUND TO BE DEFECTIVE, PLACE AN (X) IN THE APPROPRIATE BOX.
IF NO DEFECTS ARE FOUND, PLACE AN (X) IN THE BOX MARKED "NO DEFECTS".

- ☐ 1. Air Hoses and Connectors
- ☐ 2. Coupling Devices
- ☐ 3. Wheels & Rims
- ☐ 4. Tires
- ☐ 5. Glass and Mirrors
- ☐ 6. Fire Extinguisher
- ☐ 7. Triangles and Fuses
- ☐ 8. Horn (Air and/or Electric)
- ☐ 9. Windshield Wipers
- ☐ 10. Parking Brake
- ☐ 11. Steering Mechanism
- ☐ 12. Service Brakes
- ☐ 13. Speedometer
- ☐ 14. Lights and Reflectors
- ☒ NO DEFECTS

DRIVER'S SIGNATURE

15

# ALLIED.

## DRIVER'S DAILY LOG
(One Calendar Day - 24 Hours)

CARRIER: ALLIED VAN LINES, INC.
NAME & ADDRESS: 5001 U.S. HIGHWAY 30 WEST
FT. WAYNE, IN 46818

| Month | Day | Year |
|---|---|---|
| | 0 4 | 03 |

Total Miles / Kilometers Driven Today: 6 4 5

I certify these entries are true and correct: I agree to drive in a safe and professional manner.

Tractor / Str. Truck 5 Digit AVL #: 6 0 4 5
Driver's 5 Digit Code: 3 6 5 3 2

Driver's name (Please print): JADEK GORSIC

Trailer Number (If none, leave blank): 6 1 5 5 8
Co-Driver's Code (If none, leave blank):

Driver's signature in full:

Print Co-Driver's Name (if none, leave blank):

USE TIME STANDARD AT AGENCY

| | TOTAL HOURS |
|---|---|
| Off Duty | 4.50 |
| Sleeper | 9.00 |
| Driving | 10.50 |
| On Duty (Not Driving) | 0.50 |
| TOTAL | 24 |

Must Total 24 Hours

REMARKS:
BEAUMONT TX
SAN ANTONIO TX
ORANGE TX
KENT TX
DUCK

| Reg. Number / Identification | Agent Code | Agent Name | Home Terminal - Agent City, State |
|---|---|---|---|
| 10242 | 2195-1 | SORENSEN M & J | ORLANDO, FL |

**DAILY VEHICLE CONDITION REPORT**

THIS IS AN END OF THE DAY INSPECTION (FMCSR 396.11). IF ANY COMPONENTS ARE FOUND TO BE DEFECTIVE, PLACE AN (X) IN THE APPROPRIATE BOX.
IF NO DEFECTS ARE FOUND, PLACE AN (X) IN THE BOX MARKED "NO DEFECTS".

☐ 1. Air Hoses and Connectors
☐ 2. Coupling Devices
☐ 3. Wheels & Rims
☐ 4. Tires
☐ 5. Glass and Mirrors
☐ 6. Fire Extinguisher
☐ 7. Triangles and Fuses
☐ 8. Horn (Air and/or Electric)
☐ 9. Windshield Wipers
☐ 10. Parking Brake
☐ 11. Steering Mechanism
☐ 12. Service Brakes
☐ 13. Speedometer
☐ 14. Lights and Reflectors
☒ 15. NO DEFECTS

DRIVER'S SIGNATURE

# ⚡ALLIED.

## DRIVER'S DAILY LOG
(One Calendar Day - 24 Hours)

CARRIER
NAME & ADDRESS     ALLIED VAN LINES, INC.
5001 U.S. HIGHWAY 30 WEST
FT. WAYNE, IN 46818

| Month | Day | Year | Total Miles / Kilometers Driven Today |
|---|---|---|---|
| | 05 | 03 | 807 |

I certify these entries are true and correct. I agree to drive in a safe and professional manner.

Driver's name (Please print)

Tractor / Str. Truck 5 Digit AVL #     6 0 4 5
Driver's 5 Digit Code     3 6 5 3 5

Driver's signature in full     VCADEK GORSKI

Trailer Number (if none, leave blank)     6 1 5 5 8
Co-Driver's Code (if none, leave blank)

Print Co-Driver's Name (if none, leave blank)

**USE TIME STANDARD AT AGENCY**

| | TOTAL HOURS |
|---|---|
| Off Duty | 2.75 |
| Sleeper | 8.00 |
| Driving | 13.50 |
| On Duty (Not Driving) | 0.75 |
| | TOTAL 24 |

REMARKS: KENT PA PTY · ANTHONY TX · TUCSON AZ · FLAGSTAFF AZ · PHOENIX AZ PH · CHRISCO SURMIT CA

Must Total 24 Hours

| Number / Identification | Agent Code | Agent Name | Home Terminal - Agent City, State |
|---|---|---|---|
| 10242 | 2185-1 | SORENSEN M&S | ORLANDO, FL |

**DAILY VEHICLE CONDITION REPORT**

THIS IS AN END OF THE DAY INSPECTION (FMCSR 396.11). IF ANY COMPONENTS ARE FOUND TO BE DEFECTIVE, PLACE AN (X) IN THE APPROPRIATE BOX.
IF NO DEFECTS ARE FOUND, PLACE AN (X) IN THE BOX MARKED "NO DEFECTS".

- ☐ 1. Air Hoses and Connectors
- ☐ 2. Coupling Devices
- ☐ 3. Wheels & Rims
- ☐ 4. Tires
- ☐ 5. Glass and Mirrors
- ☐ 6. Fire Extinguisher
- ☐ 7. Triangles and Fuses
- ☐ 8. Horn (Air and/or Electric)
- ☐ 9. Windshield Wipers
- ☐ 10. Parking Brake
- ☐ 11. Steering Mechanism
- ☐ 12. Service Brakes
- ☐ 13. Speedometer
- ☐ 14. Lights and Reflectors
- ☒ 15. NO DEFECTS

DRIVER'S SIGNATURE

17

# ALLIED.

## DRIVER'S DAILY LOG
(One Calendar Day - 24 Hours)

CARRIER
NAME &
ADDRESS

ALLIED VAN LINES, INC.
5001 U.S. HIGHWAY 30 WEST
FT. WAYNE, IN 46818

| Month | Day | Year |
|---|---|---|
| 07 | 06 | 03 |

Total Miles / Kilometers Driven Today: 196

I certify these entries are true and correct. I agree to drive in a safe and professional manner.

Driver's name (Please print)

Driver's signature in full: VLADEK GORSIG

Tractor / St. Truck 5 Digit AVL #: 6043
Driver's 5 Digit Code: 36532

Trailer Number (If none, leave blank): 61558
Co-Driver's Code (If none, leave blank)

Print Co-Driver's Name (If none, leave blank)

USE TIME STANDARD AT AGENCY

| | TOTAL HOURS |
|---|---|
| Off Duty | 13.75 |
| Sleeper | 6.00 |
| Driving | 4.00 |
| On Duty (Not Driving) | 0.25 |
| TOTAL | 24 |

Must Total 24 Hours

REMARKS:

| Reg. Number / Identification | Agent Code | Agent Name | Home Terminal - Agent City, State |
|---|---|---|---|
| 2242 | 2185-1 | SODENSEN MYS | ORLANDO, FC |

**DAILY VEHICLE CONDITION REPORT**

THIS IS AN END OF THE DAY INSPECTION (FMCSR 396.11). IF ANY COMPONENTS ARE FOUND TO BE DEFECTIVE, PLACE AN (X) IN THE APPROPRIATE BOX.
IF NO DEFECTS ARE FOUND, PLACE AN (X) IN THE BOX MARKED "NO DEFECTS".

- ☐ 1. Air Hoses and Connectors
- ☐ 2. Coupling Devices
- ☐ 3. Wheels & Rims
- ☐ 4. Tires
- ☐ 5. Glass and Mirrors
- ☐ 6. Fire Extinguisher
- ☐ 7. Triangles and Fuses
- ☐ 8. Horn (Air and/or Electric)
- ☐ 9. Windshield Wipers
- ☐ 10. Parking Brake
- ☐ 11. Steering Mechanism
- ☐ 12. Service Brakes
- ☐ 13. Speedometer
- ☐ 14. Lights and Reflectors
- ☒ 15. NO DEFECTS

DRIVER'S SIGNATURE

18

# ALLIED

## DRIVER'S DAILY LOG
### (One Calendar Day - 24 Hours)

CARRIER NAME & ADDRESS
ALLIED VAN LINES, .
5001 U.S. HIGHWAY 30 .
FT. WAYNE, IN 46818

| Month | Day | Year | Total Miles / Kilometers Driven Today |
|---|---|---|---|
| — | 11 | 03 | — 2 4 6 |

I certify these entries are true and correct. I agree to drive in a safe and professional manner.

Driver's name (Please print)
VLADEK GORSKY

Driver's signature in full

or / Sr. Truck 5 Digit AVL #
6 0 4 5

Driver's 5 Digit Code
3 6 5 3 2

Trailer Number (If none, leave blank)
6 1 5 5 8

Co-Driver's Code (If none, leave blank)

Print Co-Driver's Name (If none, leave blank)

**USE TIME STANDARD AT AGENCY**

| | TOTAL HOURS |
|---|---|
| ff Duty | 10,25 |
| eeper | 8,00 |
| riving | 5,00 |
| n Duty (riving) | 9,75 |
| TOTAL | 24 |

Must Total 24 Hours

ARKS:

SAN DIEGO CA
DVCR

SAN DIEGO CA
PIT
CAMPO CA
DVCR

| Reg Number / ntification | Agent Code | Agent Name | Home Terminal - Agent City, State |
|---|---|---|---|
| 1087 | 2185-1 | SORENSEN MFS | ORLANDO, FC |

## DAILY VEHICLE CONDITION REPORT

THIS IS AN END OF THE DAY INSPECTION (FMCSR 396.11). IF ANY COMPONENTS ARE FOUND TO BE DEFECTIVE, PLACE AN (X) IN THE APPROPRIATE BOX.
IF NO DEFECTS ARE FOUND, PLACE AN (X) IN THE BOX MARKED "NO DEFECTS".

- ☐ 1. Air Hoses and Connectors
- ☐ 2. Coupling Devices
- 3. Wheels & Rims
- ☐ 4. Tires
- ☐ 5. Glass and Mirrors
- ☐ 6. Fire Extingusher
- ☐ 7. Triangles and Fuses
- ☐ 8. Horn (Air and/or Electric)
- ☐ 9. Windshield Wipers
- ☐ 10. Parking Brake
- ☐ 11. Steering Mechanism
- ☐ 12. Service Brakes
- ☐ 13. Speedometer
- ☐ 14. Lights and Reflectors
- ☒ 15. NO DEFECTS

DRIVER'S SIGNATURE

19

# ALLIED

## DRIVER'S DAILY LOG
(One Calendar Day - 24 Hours)

CARRIER
NAME &
ADDRESS

ALLIED VAN LINES, INC.
5001 U.S. HIGHWAY 30 WEST
FT. WAYNE, IN 46818

| Month | Day | Year |
|---|---|---|
| | 08 | 03 |

Total Miles / Kilometers Driven Today
197

I certify these entries are true and correct. I agree to drive in a safe and professional manner.

/ Str. Truck 5 Digit AVL #
6045

Driver's 5 Digit Code
36532

Driver's name (Please print)
VLADER GOPSCI

Driver's signature in full

Trailer Number (If none, leave blank)
61558

Co-Driver's Code (If none, leave blank)

Print Co-Driver's Name (If none, leave blank)

USE TIME STANDARD AT AGENCY

|  | MIDNIGHT | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | NOON | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | TOTAL HOURS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ff Duty | | | | | | | | | | | | | | | | | | | | | | | | | 11.25 |
| leeper | | | | | | | | | | | | | | | | | | | | | | | | | 8.00 |
| riving | | | | | | | | | | | | | | | | | | | | | | | | | 4.25 |
| n Duty (Driving) | | | | | | | | | | | | | | | | | | | | | | | | | 0.50 |
| MIDNIGHT | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | NOON | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | TOTAL |
| ARKS: | | | | | | | | | | | | | | | | | | | | | | | | | 24 |

Must Total 24 Hours

Remarks locations (handwritten): SANTELWW CITY CA, LEMOORE CA, LEMOORE CA, PIXON CA, LIVERMORE CA DVM

| Reg. Number / Identification | Agent Code | Agent Name | Home Terminal - Agent City, State |
|---|---|---|---|
| √242 | 2185-1 | SORENSEN M&S | ORLANDO, FC |

DAILY VEHICLE CONDITION REPORT

THIS IS AN END OF THE DAY INSPECTION (FMCSR 396.11). IF ANY COMPONENTS ARE FOUND TO BE DEFECTIVE, PLACE AN (X) IN THE APPROPRIATE BOX. IF NO DEFECTS ARE FOUND, PLACE AN (X) IN THE BOX MARKED "NO DEFECTS".

- ☐ 1. Air Hoses and Connectors
- ☐ 2. Coupling Devices
- ☐ 4. Tires
- ☐ 5. Glass and Mirrors
- ☐ 6. Fire Extinguisher
- ☐ 7. Triangles and Fuses
- ☐ 8. Horn (Air and/or Electric)
- ☐ 9. Windshield Wipers
- ☐ 10. Parking Brake
- ☐ 11. Steering Mechanism
- ☐ 12. Service Brakes
- ☐ 13. Speedometer
- ☐ 14. Lights and Reflectors
- ☒ 15. NO DEFECTS

DRIVER'S SIGNATURE

20

# ALLIED.

## DRIVER'S DAILY LOG
### (One Calendar Day - 24 Hours)

CARRIER
NAME &
ADDRESS

ALLIED VAN LINES, INC.
5001 U.S. HIGHWAY 30 WEST
FT. WAYNE, IN 46818

| Month | Day | Year | Total Miles / Kilometers Driven Today |
|---|---|---|---|
| 09 | 03 | 9 2 |

I certify these entries are true and correct: I agree to drive in a safe and professional manner.

Driver's name (Please print)   JCADEK GERSL

Driver's signature in full

x / Str. Truck 5 Digit AVL #   6 0 4 5

Driver's 5 Digit Code   3 6 5 3 2

Co-Driver's Code (If none, leave blank)

Trailer Number (If none, leave blank)   6 1 5 5 8

Print Co-Driver's Name (If none, leave blank)

### USE TIME STANDARD AT AGENCY

| | TOTAL HOURS |
|---|---|
| Off Duty | 13.00 |
| Sleeper | 8.00 |
| Driving | 2.00 |
| On Duty (Not Driving) | 0.00 |
| TOTAL | 24 |

Must Total 24 Hours

REMARKS:

LIVERMORE CA PU
LIVERMORE CA DVCR

| Reg. Number / Identification | Agent Code | Agent Name | Home Terminal - Agent City, State |
|---|---|---|---|
| J242 | 21 85 - 1 | SORENSEN M&S | ORLANDO, FL |

THIS IS AN END OF THE DAY INSPECTION (FMCSR 396.11). IF ANY COMPONENTS ARE FOUND TO BE DEFECTIVE, PLACE AN (X) IN THE APPROPRIATE BOX.
IF NO DEFECTS ARE FOUND, PLACE AN (X) IN THE BOX MARKED "NO DEFECTS".

☐ 1. Air Hoses and Connectors
☐ 2. Coupling Devices
☐ 4. Tires
☐ 5. Glass and Mirrors
☐ 6. Fire Extinguisher
☐ 7. Triangles and Fuses
☐ 8. Horn (Air and/or Electric)
☐ 9. Windshield Wipers
☐ 10. Parking Brake
☐ 11. Steering Mechanism
☐ 12. Service Brakes
☐ 13. Speedometer
☐ 14. Lights and Reflectors
☐ 15. NO DEFECTS

DRIVER'S SIGNATURE

DAILY VEHICLE CONDITION REPORT

21

**ALLIED**

**DRIVER'S DAILY LOG**
(One Calendar Day - 24 Hours)

CARRIER NAME & ADDRESS
ALLIED VAN LINES, INC.
5001 U.S. HIGHWAY 30 WEST
FT. WAYNE, IN 46818

| Month | Day | Year |
|---|---|---|
| ) — | 1 0 | 0 3 |

Total Miles / Kilometers Driven Today: 3 1 1

I certify these entries are true and correct. I agree to drive in a safe and professional manner.

.7 St. Truck 5 Digit AVL #: 6 0 4 5

Driver's 5 Digit Code: 3 6 5 3 2

Driver's name (Please print): JCADEK GORSKI

Co-Driver's Code (If none, leave blank):

Driver's signature in full

Trailer Number (If none, leave blank): 6 1 5 5 8

Print Co-Driver's Name (If none, leave blank):

**USE TIME STANDARD AT AGENCY**

| | TOTAL HOURS |
|---|---|
| 'f Duty | 9.50 |
| eeper | 8.00 |
| 'iving | 6.25 |
| 1 Duty riving) | 0.25 |
| | TOTAL 24 |

REMARKS:

LIVERMORE CA PIT
AVENAL CA
LEBEC CA
LOS ANGELES CA

Must Total 24 Hours

| Reg. Number / Identification | Agent Code | Agent Name | Home Terminal - Agent City, State |
|---|---|---|---|
| .087 | 2185-1 | SORENSEN M&S | ORLANDO, FL |

**DAILY VEHICLE CONDITION REPORT**

THIS IS AN END OF THE DAY INSPECTION (FMCSR 396.11). IF ANY COMPONENTS ARE FOUND TO BE DEFECTIVE, PLACE AN (X) IN THE APPROPRIATE BOX.
IF NO DEFECTS ARE FOUND, PLACE AN (X) IN THE BOX MARKED "NO DEFECTS".

- [ ] 1. Air Hoses and Connectors
- [ ] 2. Coupling Devices
- [ ] 4. Tires
- [ ] 5. Glass and Mirrors
- [ ] 6. Fire Extinguisher
- [ ] 7. Triangles and Fuses
- [ ] 8. Horn (Air and/or Electric)
- [ ] 9. Windshield Wipers
- [ ] 10. Parking Brake
- [ ] 11. Steering Mechanism
- [ ] 12. Service Brakes
- [ ] 13. Speedometer
- [ ] 14. Lights and Reflectors
- [X] 15. NO DEFECTS

DRIVER'S SIGNATURE

22

# ALLIED.

## DRIVER'S DAILY LOG
(One Calendar Day - 24 Hours)

CARRIER NAME & ADDRESS

ALLIED VAN LINES, .
5001 U.S. HIGHWAY 30 .
FT. WAYNE, IN 46818

| Month | Day | Year | Total Miles / Kilometers Driven Today |
|---|---|---|---|
| 7 | 11 | 03 | 2 4 6 |

I certify these entries are true and correct. I agree to drive in a safe and professional manner.

Driver's name (Please print) VLADEK GORSKI

Driver's signature in full

Tr / Str. Truck 5 Digit AVL # 6 0 4 5

Driver's 5 Digit Code 3 6 5 3 2

Co-Driver's Code (If none, leave blank)

Trailer Number (If none, leave blank) 6 1 5 5 8

Print Co-Driver's Name (If none, leave blank)

USE TIME STANDARD AT AGENCY

| | TOTAL HOURS |
|---|---|
| Off Duty | 10,2 |
| Sleeper | 8,0 |
| Driving | 5,0 |
| On Duty (Not Driving) | 9,X |
| TOTAL | 2 4 |

Must Total 24 Hours

REMARKS: SAN DIEGO CA — DVCR — FIX — FIX — SAN DIEGO CA — PAT — CAMPO CA — DVCR

| Reg. Number / Load Identification | Agent Code | Agent Name | Home Terminal - Agent City, State |
|---|---|---|---|
| .087 | 2185-1 | SORENSEN M&S | ORLANDO, FL |

### DAILY VEHICLE CONDITION REPORT

THIS IS AN END OF THE DAY INSPECTION (FMCSR 396.11). IF ANY COMPONENTS ARE FOUND TO BE DEFECTIVE, PLACE AN (X) IN THE APPROPRIATE BOX.
IF NO DEFECTS ARE FOUND, PLACE AN (X) IN THE BOX MARKED "NO DEFECTS".

☐ 1. Air Hoses and Connectors
☐ 2. Coupling Devices
☐ 3. Wheels & Rims
☐ 4. Tires
☐ 5. Glass and Mirrors
☐ 6. Fire Extinguisher
☐ 7. Triangles and Fuses
☐ 8. Horn (Air and/or Electric)
☐ 9. Windshield Wipers
☐ 10. Parking Brake
☐ 11. Steering Mechanism
☐ 12. Service Brakes
☐ 13. Speedometer
☐ 14. Lights and Reflectors
☒ 15. NO DEFECTS

DRIVER'S SIGNATURE

23

# DRIVER'S DAILY LOG
(One Calendar Day - 24 Hours)

**ALLIED**

CARRIER NAME & ADDRESS
ALLIED VAN LINES, INC.
5001 U.S. HIGHWAY 30 WEST
FT. WAYNE, IN 46818

| Month 07 | Day 12 | Year 03 | Total Miles / Kilometers Driven Today | I certify these entries are true and correct. I agree to drive in a safe and professional manner. |

Driver's name (Please print) VLADEK GORSKI

Driver's signature in full

Tractor / Str. Truck 5 Digit AVL # 36045

Driver's 5 Digit Code 36532

Trailer Number (If none, leave blank) 61558

Co-Driver's Code (If none, leave blank)

Print Co-Driver's Name (If none, leave blank)

USE TIME STANDARD AT AGENCY

Off Duty
Sleeper
Driving
On Duty (Not Driving)

REMARKS:

Must Total 24 Hours

| Reg. Number / Load Identification | Agent Code | Agent Name | Home Terminal - Agent City, State |
| 3834 | 2185-1 | SORENSEN M&S | ORLANDO, FL |

## DAILY VEHICLE CONDITION REPORT

THIS IS AN END OF THE DAY INSPECTION (FMCSR 396.11). IF ANY COMPONENTS ARE FOUND TO BE DEFECTIVE, PLACE AN (X) IN THE APPROPRIATE BOX.
IF NO DEFECTS ARE FOUND, PLACE AN (X) IN THE BOX MARKED "NO DEFECTS".

☐ 1. Air Hoses and Connectors
☐ 2. Coupling Devices
☐ 3. Wheels & Rims
☐ 4. Tires
☐ 5. Glass and Mirrors
☐ 6. Fire Extinguisher
☐ 7. Triangles and Fuses
☐ 8. Horn (Air and/or Electric)
☐ 9. Windshield Wipers
☐ 10. Parking Brake
☐ 11. Steering Mechanism
☐ 12. Service Brakes
☐ 13. Speedometer
☐ 14. Lights and Reflectors

☐ 15. NO DEFECTS

DRIVER'S SIGNATURE _____

## MILES AND FUEL BY STATE - ALLIED VAN LINES, INC.

| Month 07 | Day 12 | Year 03 | Print Lead Driver's Name GORSKI | | Lead Driver's Code 36532 |

Tractor/Str. Truck 5 Digit AVL # 36045

PLACE AN (X) IF RENTAL UNIT (See Instructions) ☐

Agent Name SORENSEN M&S

Agent Code 2185-1

| ODOMETER READINGS REQUIRED BY IFTA | STATE/PROVINCE | ROUTES TRAVELED | MILES/KILOMETERS | GALLONS/LITERS PURCHASED |
|---|---|---|---|---|
| BEGINNING CITY CAMPO | CA | OFF DUTY | | |
| BEGINNING - ODOMETER 386674 | | | | |
| ENDING - ODOMETER 386674 | | | | |
| ENDING CITY CAMPO | | | | |

STAPLE FUEL RECEIPTS, MASSACHUSETTS AND NEW YORK TOLL RECEIPTS TO WHITE COPY

24

TOTAL MILES/KILOMETERS

# *ALLIED.*

## DRIVER'S DAILY LOG
### (One Calendar Day - 24 Hours)

| CARRIER | ALLIED VAN LINES, INC. |
| NAME & | 5001 U.S. HIGHWAY 30 WEST |
| ADDRESS | FT. WAYNE, IN 46818 |

I certify these entries are true and correct. I agree to drive in a safe and professional manner.

| Month | Day | Year | Total Miles / Kilometers Driven Today |
| | 1 3 | 0 3 | 2 8 3 |

Driver's name (Please print)
VLADEK GORSKI

Unit / St. Truck 5 Digit AVL # : 6 0 4 5
Driver's 5 Digit Code : 2 6 5 3 2

Driver's signature in full

Trailer Number (If none, leave blank) : 5 1 6 0 8
Co-Driver's Code (If none, leave blank)

Print Co-Driver's Name (If none, leave blank)

### USE TIME STANDARD AT AGENCY

| | TOTAL HOURS |
| Off Duty | 10.50 |
| Sleeper | 8.00 |
| Driving | 5.00 |
| On Duty (not driving) | 0.50 |
| | TOTAL 24 |

REMARKS: CAMPO CA PT   YUMA AZ   PHOENIX AZ DLVR

Must Total 24 Hours

| Reg. Number / Identification | Agent Code | Agent Name | Home Terminal - Agent City, State |
| 3834 | 2185-1 | SORENSEN MFS | ORLANDO, FL |

**DAILY VEHICLE CONDITION REPORT**

THIS IS AN END OF THE DAY INSPECTION (FMCSR 396.11). IF ANY COMPONENTS ARE FOUND TO BE DEFECTIVE, PLACE AN (X) IN THE APPROPRIATE BOX.
IF NO DEFECTS ARE FOUND, PLACE AN (X) IN THE BOX MARKED "NO DEFECTS".

☐ 1. Air Hoses and Connectors
☐ 2. Coupling Devices
☐ 3. Wheels & Rims
☐ 4. Tires
☐ 5. Glass and Mirrors
☐ 6. Fire Extinguisher
☐ 7. Triangles and Fuses
☐ 8. Horn (Air and/or Electric)
☐ 9. Windshield Wipers
☐ 10. Parking Brake
☐ 11. Steering Mechanism
☐ 12. Service Brakes
☐ 13. Speedometer
☐ 14. Lights and Reflectors
☒ 15. NO DEFECTS

DRIVER'S SIGNATURE

25

**VOLUNTARY STATEMENT**                    OFFICE OF STATE POLICE

| Place | | Started 2:30 · ☐AM ☒PM | Date 8/12/03 |

.. undersigned, CHARLES T. FIX , am 28 years of age, having been born

on 4-19-1975 , at IOWA CITY, IA .

I now live at KY4 E. THIRD AVE. TALLAHASSEE, FL 32303 .

I have been duly warned and advised by MT RICHARD C. ELLIOTT , a person who has identified himself as

LOUISIANA STATE POLICE , that I do not have to make any statement at all, nor answer any questions or do anything that might tend to go against me or incriminate me in any manner, and that any statement I make may be used against me on the trial or trials for the offense or offenses concerning which the following statement is herein made. I was also warned and advised of my right to the advice and presence of a lawyer of my own choice before or at any time during any questioning or statement I make, and if I am not able to hire a lawyer I may request and have a lawyer appointed for me, by the proper authority, without cost or charge to me.

I do not want to talk to a lawyer, and I hereby knowingly and purposely waive my right to the advice and presence of a lawyer before and during any questioning or at any time before or while I voluntarily make the following statement to the aforesaid person, knowing that anything I say can and will be used against me in a court or courts of law.

I declare that the following voluntary statement is made to the aforesaid person of my own free will without promise of hope or reward, without fear or threat of physical harm, without coercion, favor or offer of favor, without leniency or offer of leniency, by any person or persons whomsoever.

SEE TYPED SHEET.

26

ead this statement consisting of 3 page(s), and I certify that the facts contained therein are true and correct. I further ..y that I made no request for the advice or presence of a lawyer before or during any part of this statement, nor at any time before as finished did I request that this statement be stopped. I also declare that I was not told or prompted what to say in this statement.

This statement was completed at 3:40 P.M. on the 12TH day of AUGUST 19 2003

The movers arrived at our apartment approximately 9am on Friday July 11th. Mr. Gorski was assisted by two members of a local loading crew. Upon arrival, Mr. Gorski did a quick walk-through of the apartment with me and then began to inventory our belongings by placing numbered stickers on the boxes and furniture. With each new item, Mr. Gorski wrote down descriptions of each article and referenced it to the numbered sticker. As Mr. Gorski continued to inventory our belongings, the other two movers would take the numbered items out of the apartment and place them in the driveway to prepare them prior to loading them onto the truck. This process lasted until approximately noon after which all items had been accounted for and then the movers, including Mr. Gorski, began to load the truck. Loading of the truck was completed by approximately 4 pm.

Aside from questions related to inventory and loading of our belongings, we had a few conversations with Mr. Gorski and the other two movers when they would take short breaks. During these breaks we learned that Mr. Gorski was from Poland and while on vacation in America, he and his family decided to mover here permanently. He had mentioned that back in Poland he was an Environmental Engineer and that he was unable to get similar work in the US and began driving trucks. He mentioned that he lived near Orlando, FL with his wife. We talked briefly about his schedule and the route that he was going to be taking. He mentioned that after our loading (the first load on the truck) that he was to drive to Phoenix, AZ for the second load and then back to CA, either the LA area or San Diego area for the third load. He mentioned something about picking up a load in Texas and that there would be a total of five loads. Mr. Gorski told us that after picking up all of the loads that he was to drive to Orlando and take the day

P. 1 OF 2

(or two) off and then drive to Miami to drop off the first load. Then he
would drive on to Tallahassee to drop off our belongings and after that he
would drive on to Jacksonville. He felt that he would be arriving at our
place on Tuesday, July 22nd and would call the day before to set up a time
with us, since he knew that we would be staying in Huntsville, AL and could
drive to Tallahassee in a relatively short amount of time. He did mention
that his schedule was subject to change but still seemed to think that he
would be at our place on Tuesday, July 22nd. In general, Mr. Gorski, was
relatively quiet and didn't make idle conversation with us, however, he was
friendly and answered all our questions. He seemed very professional and
knew what he was doing.

Mr. Gorski took several smoking breaks and was considerate not to smoke in
our place but rather out by the truck. He did appear to be in good health and
had no obvious difficulties in lifting heavy objects and loading them into the
truck.

In general, we both tried to stay out of the way of the movers and let them
get the job done quickly. Before Mr. Gorski left, we signed the inventory
forms at which time he mentioned that he felt our belongings weighed more
than our estimate and while we would not be charged any more money, that
somehow (we are not clear why this was) this would cost him money
because it weighed more than the estimate. He didn't seem so much upset
but rather annoyed with the person who had done the estimate. Again, we
didn't really understand too much of what he was trying to explain to us
about the weight situation.

08/20/2003  09:43    8059226762    INTL VAN LINES INC    PAGE  02
AUG-19-2003  10:53    LSP REGION 2 TESS    337 262 3312    P.02

Started

AM  Date
PM

I, undersigned, **PATRICK JAMES MCDONALD** _____, am _____ years of age, having been born

on _____, at _____.

I now live at _____.

I have been duly warned and advised by _____, a person who has identified himself as

_____, that I do not have to make any statement at all, nor answer any questions or do anything that might tend to go against me or incriminate me in any manner, and that any statement I make may be used against me on the trial or trials for the offense or offenses concerning which the following statement is herein made. I was also warned and advised of my right to the advice and presence of a lawyer of my own choice before or at any time during any questioning or statement I make, and if I am not able to hire a lawyer I may request and have a lawyer appointed for me, by the proper authority, without cost or charge to me.

I do not want to talk to a lawyer, and I hereby knowingly and purposely waive my right to the advice and presence of a lawyer before and during any questioning or at any time before or while I voluntarily make the following statement to the aforesaid person, knowing that anything I say can and will be used against me in a court or courts of law.

I declare that the following voluntary statement is made to the aforesaid person of my own free will without promise of hope or reward, without fear or threat of physical harm, without coercion, favor or offer of favor, without leniency or offer of leniency, by any person or persons whomsoever.

Allied driver Dorske was at our office on July 7 with an overflow for a shipment already in storage at our warehouse. It was a military shipment with a delivery address in Carpinteria Calif. A Dorske went to the nearest allied agent to clear the shipment before delivery. The military has to OK direct delivery or placement into storage. That agent is in Ventura Calif. about 100 miles south of our office. This was sometime around midday. The agent in Ventura called and asked for us to clear the shipment for them. After the military finally got in touch with the military member they said Mr. Dorske had to put the shipment in storage at our warehouse in Santa Maria. This was mid afternoon. Mr. Dorske realized that he would be arriving at our office after 5 p.m. normal business hours. He asked that I stay and recieve his shipment so he

have read this statement consisting of __2__ page(s), and I certify that the facts contained therein are true and correct. I further ___ that I made no request for the advice or presence of a lawyer before or during any part of this statement, nor at any time before ___ nished did I request that this statement be stopped. I also declare that I was not told or prompted what to say in this statement.

___ statement was completed at __9:30 A.__ M. on the __20TH__ day of __August__ __2003__

WITNESS: _____

_Patrick James McD_

29

08/20/2003  09:43    8059226762                INTL VAN LINES INC                    PAGE  03
   AUG-19-2003  10:53        LSP REGION 2 TESS                  337 262 3312        P.03

ntinuation
   Of        **VOLUNTARY STATEMENT** Of

schedule required him to be somewhere else on July 8. I agreed to wait and Mr. Dorske arrived at our office about 5 30. He was here for about an hour or hour, and a half. Mr. Dorske seemed to be a very conscientious driver and a nice guy.

Pat McDonald

Mike Gorski arrived driving h Allied truck Appnox 8 Am 7-14-3. Driver had 2 helpers to load truck. Gorski said he was glad to be going to Fl. as his shed was too emp... they finished loading about 12 noon. Saw Boys Gorski cataloged and marked every piece. My impression was he was a hard working family man

Statement of Person Giving Voluntary Statement

Page 1 of 1

Kirk Gamble   8-11-03 date signed
(7-25-50) DOB
434 E Poldock W.
PMK AZ 85042

31

```
TRIP 16241  HAUL S   09609 REV/MILE   2.55 REV/DAY  961  COM-TYP CL R/C ST: C
       FIRST LOADING        LAST UNLOADING   TRAC FLT TRL FE AR   HAULING AGENT
4CE    TAMPA, FL  0630 1AK  SANFRAN, CA 0709 36045   61558 X X 21852 SORENSEN NO
   DRIVER ONE          DRIVER TWO      MOT PROV PHYS1 PHYS2    INSP    TRC IN
36532 GORSKI    15  00000               V  1   022705          703103 803103
  REPORTED AT  DATE TIME  WHDO  PHONE CONTACT VFC PRF  AVAILABLE AT  DATE TIME
Union City CA  0709 1725        800 000 0000   VC  A3  ALAMEDA    CA 0709 0900
REPAIR SHOP NAME                          PRV.TRP 13033 NXT.TRP  25453   UPDATE
REMARKSDHT#03035 NEXT TRIP BACK HOME (FL)
VAN SZ  TOT.CUB.FT  SP.AVL  TOT.WGT            TRP.MILES  SPD.FLT    STATUS
 4420   00000       4420    20483               3770       000    MANIFESTED
       COS: 4.67
U S  REGISTRATION    ATS   ALP   LOAD     ADP    UNLD  C CUBE  WGT TOE REV B R
X D 162254000000 H    Y 0620-0623 0630  0628-0711 0709    0209 01359 P 00942 N C
SHP SIMONS CHR   OA 01370 BLOCKER TR ORG 4CE SAINT PETE FL DES 1AK CASTRO VAL CA
X D 173608000000 H    Y 0630-0701 0630  0708-0718 0707    0600 03084 P 01588 N C
SHP JOHNSON EL   OA 01370 BLOCKER TR ORG 4CE BELLEAIR  FL DES 1BA VENTURA     CA
X D 970242000000.A.   N 0701-0701 0701  0721-0721 0709    1800 07240 N 03344 N .
SHP CVLC/NICHO   OA 62770 PARADISE M ORG 4CF KEY WEST  FL DES 1AK ALAMEDA     CA
X D 970231000100.A.   N 0618-0618 0701  0707-0707 0707    0500 02220 N 00700 N .
SHP CVLC/LIEBE   OA 62770 PARADISE M ORG 4CF KEY WEST  FL DES 1BA CARPINTERI CA
X D 173995000000.H.   Y 0630-0701 0702  0707-0714 0706    0531 03580 P 01775 N C
SHP SALIBA MOL   OA 21851 SORENSEN M ORG 4CD ORLANDO   FL DES 1BB NEWPORT BE CA
```

```
07/22/03 13:19            Log Tracking By Safety #                    N363

    ty Contract                    Load     Delivery Acct Agt          Div Flt
    er Number      Shipper Name     Date     Date     Code Hlr Hauler Nme Cd  Ctl Car
    ------ --------  -------------  --------  --------  ----  ---  ---------- ---  --- ---
 36532  97023100 HT JO CVLC/L   07/01/03 07/07/03 2185 001 SORENSEN M RS  NED AV
 36532  97024200 JEFFR CVLC/N   07/01/03 07/09/03 2185 001 SORENSEN M RS  NED AV
 36532  16225400 SIMONS CHRIS   06/30/03 07/09/03 2185 001 SORENSEN M RS  NED AV
 36532  17360800 TH JOHNSON E   06/30/03 07/07/03 2185 001 SORENSEN M RS  NED AV
 36532  17152500 JENNINGS MEL   06/21/03 06/23/03 2185 001 SORENSEN M RS  NED AV
 36532  13174100 DAVEY, RUTH    06/19/03 06/24/03 2185 001 SORENSEN M RS  NED AV
 36532  16751400 GREEN DEBBIE   06/18/03 06/24/03 2185 001 SORENSEN M RS  NED AV
 36532  91611000 RGE INVA/GEO   06/18/03 06/21/03 2185 001 SORENSEN M RS  NED AV
 36532  14977000 BASTA WAYNE    06/12/03 06/16/03 2185 001 SORENSEN M RS  NED AV
 36532  91593700 PRICE CYTI/B   06/09/03 06/17/03 2185 001 SORENSEN M RS  NED AV
 36532  16455500 BOUGHT ROBER   06/07/03 06/10/03 2185 001 SORENSEN M RS  NED AV
 36532  15257200 DANIELS TONY   05/30/03 06/06/03 2185 001 SORENSEN M RS  NED AV
·36532  15196100 RICHMOND HAR   05/29/03 06/05/03 2185 001 SORENSEN M RS  NED AV
 36532  14087500 SHOWEN CLAYT   05/15/03 05/28/03 2185 001 SORENSEN M RS  NED AV
```

Safety Number: 36532_ Contract Number: _____ Load Date: 20030701
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
       HELP                                  FRWD  MENU  LEFT  RIGHT  DOWN

```
Safety Contract                   Origin       Destination
Number Number   Shipper Name      City State    City State
------ --------  -------------    -------------  -------------
36532  97023100 HT JO CVLC/L    KEY WEST FL   CARPINTERIA
36532  97024200 JEFFR CVLC/N    KEY WEST FL   ALAMEDA CA
36532  16225400 SIMONS CHRIS    SAINT PETERS  CASTRO VALLE
36532  17360800 TH JOHNSON E    BELLEAIR FL   VENTURA CA
   32  17152500 JENNINGS MEL    DALLAS TX     GROVELAND FL
36532  13174100 DAVEY, RUTH     TUCSON AZ     LEHIGH ACRES
36532  16751400 GREEN DEBBIE    OJAI CA       CAPE CORAL F
36532  91611000 RGE INVA/GEO    OJAI CA       SHREVEPORT L
36532  14977000 BASTA WAYNE     BLUE SPRINGS  LOS ANGELES
36532  91593700 PRICE CYTI/B    MILTON FL     SAN DIEGO CA
36532  16455500 BOUGHT ROBER    CRESTVIEW FL  FAIRWAY KS
36532  15257200 DANIELS TONY    MERRITT ISLA  MEMPHIS TN
36532  15196100 RICHMOND HAR    LAKE MARY FL  POWELL TN
36532  14087500 SHOWEN CLAYT    RAMONA CA     MELBOURNE FL
```

Safety Number: 36532  Contract Number:          Load Date: 20030701

STATE OF LOUISIANA
DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
OFFICE OF STATE POLICE
TRANSPORTATION AND ENVIRONMENTAL SAFETY SECTION
COMMERCIAL VEHICLE POST-CRASH INVESTIGATIVE FORM

SUPPLEMENTAL REPORT

INVESTIGATING AGENCY:  ☐ STATE POLICE  ☐ CITY POLICE  ☐ SHERIFF  ☐ OTHER

| TIME: 1730 | DATE: 07-20-03 | DAY: SUNDAY | PARISH: ST MARTIN | REPORT #LABF003584 |
| LOCATION:  I10 EASTBOUND | | | MP :123 | STATE #3203751 |

DESCRIBE ANY UNUSUAL CIRCUM STANCE ASSOCIATED WITH THE ACCIDENT.  WITNESS NAMES, ADDRESSES, ETC, BY NO.

## MASTER TROOPER RICHARD C. ELLIOTT
## LOUISIANA STATE POLICE/TESS

# WITNESS

# STATEMENTS

**VOLUNTARY STATEMENT**                    OFFICE OF STATE POLICE

| Place | Started 2:30 | AM ☒PM | Date 8/12/03 |

I, undersigned, CHARLES T. FIX , am 28 years of age, having been born

on 4-19-1975 , at Iowa City, IA

I now live at 104 E. Third Ave. Tallahassee, FL 32303

I have been duly warned and advised by MT Richard C. Elliott , a person who has identified himself as

Louisiana State Police , that I do not have to make any statement at all, nor answer any questions or do anything that might tend to go against me or incriminate me in any manner, and that any statement I make may be used against me on the trial or trials for the offense or offenses concerning which the following statement is herein made. I was also warned and advised of my right to the advice and presence of a lawyer of my own choice before or at any time during any questioning or statement I make, and if I am not able to hire a lawyer I may request and have a lawyer appointed for me, by the proper authority, without cost or charge to me.

I do not want to talk to a lawyer, and I hereby knowingly and purposely waive my right to the advice and presence of a lawyer before and during any questioning or at any time before or while I voluntarily make the following statement to the aforesaid person, knowing that anything I say can and will be used against me in a court or courts of law.

I declare that the following voluntary statement is made to the aforesaid person of my own free will without promise of hope or reward, without fear or threat of physical harm, without coercion, favor or offer of favor, without leniency or offer of leniency, by any person or persons whomsoever.

See Typed Sheet.

34

I Have Read this statement consisting of 3 page(s), and I certify that the facts contained therein are true and correct. I further swear that I made no request for the advice or presence of a lawyer before or during any part of this statement, nor at any time before it was finished did I request that this statement be stopped. I also declare that I was not told or prompted what to say in this statement.

This statement was completed at 3:40 P.M. on the 12th day of August 2003

WITNESS:

The movers arrived at our apartment approximately 9am on Friday July 11th. Mr. Gorski was assisted by two members of a local loading crew. Upon arrival, Mr. Gorski did a quick walk-through of the apartment with me and then began to inventory our belongings by placing numbered stickers on the boxes and furniture. With each new item, Mr. Gorski wrote down descriptions of each article and referenced it to the numbered sticker. As Mr. Gorski continued to inventory our belongings, the other two movers would take the numbered items out of the apartment and place them in the driveway to prepare them prior to loading them onto the truck. This process lasted until approximately noon after which all items had been accounted for and then the movers, including Mr. Gorski, began to load the truck. Loading of the truck was completed by approximately 4 pm.

Aside from questions related to inventory and loading of our belongings, we had a few conversations with Mr. Gorski and the other two movers when they would take short breaks. During these breaks we learned that Mr. Gorski was from Poland and while on vacation in America, he and his family decided to mover here permanently. He had mentioned that back in Poland he was an Environmental Engineer and that he was unable to get similar work in the US and began driving trucks. He mentioned that he lived near Orlando, FL with his wife. We talked briefly about his schedule and the route that he was going to be taking. He mentioned that after our loading (the first load on the truck) that he was to drive to Phoenix, AZ for the second load and then back to CA, either the LA area or San Diego area for the third load. He mentioned something about picking up a load in Texas and that there would be a total of five loads. Mr. Gorski told us that after picking up all of the loads that he was to drive to Orlando and take the day

P. 1 OF 2

C-F 8

(or two) off and then drive to Miami to drop off the first load. Then he would drive on to Tallahassee to drop off our belongings and after that he would drive on to Jacksonville. He felt that he would be arriving at our place on Tuesday, July 22nd and would call the day before to set up a time with us, since he knew that we would be staying in Huntsville, AL and could drive to Tallahassee in a relatively short amount of time. He did mention that his schedule was subject to change but still seemed to think that he would be at our place on Tuesday, July 22nd. In general, Mr. Gorski, was relatively quiet and didn't make idle conversation with us, however, he was friendly and answered all our questions. He seemed very professional and knew what he was doing.

Mr. Gorski took several smoking breaks and was considerate not to smoke in our place but rather out by the truck. He did appear to be in good health and had no obvious difficulties in lifting heavy objects and loading them into the truck.

In general, we both tried to stay out of the way of the movers and let them get the job done quickly. Before Mr. Gorski left, we signed the inventory forms at which time he mentioned that he felt our belongings weighed more than our estimate and while we would not be charged any more money, that somehow (we are not clear why this was) this would cost him money because it weighed more than the estimate. He didn't seem so much upset but rather annoyed with the person who had done the estimate. Again, we didn't really understand too much of what he was trying to explain to us about the weight situation.

36

p. 2 of 2                              Cater  8/12/03

08/20/2003  09:43  8059226762          INTL VAN LINES INC                    PAGE  02
AUG-19-2003  10:53     LSP REGION 2 TESS                         337 262 3312    P.02

Place                                    Started

                                              AM   Date
                                              PM

The undersigned, **PATRICK JAMES McDONALD** _____, am _____ years of age, having been born

on _____, at _____.

I now live at _____.

I have been duly warned and advised by _____, a person who has identified himself as

_____, that I do not have to make any statement at all, nor answer any questions or do anything that might tend to go against me or incriminate me in any manner, and that any statement I make may be used against me on the trial or trials for the offense or offenses concerning which the following statement is herein made. I was also warned and advised of my right to the advice and presence of a lawyer of my own choice before or at any time during any questioning or statement I make, and if I am not able to hire a lawyer I may request and have a lawyer appointed for me, by the proper authority, without cost or charge to me.

I do not want to talk to a lawyer, and I hereby knowingly and purposely waive my right to the advice and presence of a lawyer before and during any questioning or at any time before or while I voluntarily make the following statement to the aforesaid person, knowing that anything I say can and will be used against me in a court or courts of law.

I declare that the following voluntary statement is made to the aforesaid person of my own free will without promise of hope or reward, without fear or threat of physical harm, without coercion, favor or offer of favor, without leniency or offer of leniency, by any person or persons whomsoever.

Allied driver Dorske was at our office on July 7 with ans. overflow for a shipment already in storage at our warehouse. It was a military shipment with a delivery address in Carpinteria Calif. Mr. Dorske went to the nearest allied agent to clear the shipment before delivery. The military has to OK direct delivery or placement into storage. That agent is in Ventura Calif. about 100 miles south of our office. This was sometime around midday. The agent in Ventura called and asked for us to clear the shipment for them. After the military finally got in touch with the military member they said Mr. Dorske had to put the shipment in storage at our warehouse in Santa Maria. This was said afternoon. Mr. Dorske realized that he would be arriving at our office after 5 pm, normal business hours. He asked that I stay and recieve his shipment as his

I have read this statement consisting of _2_ page(s), and I certify that the facts contained therein are true and correct. I further certify that I made no request for the advice or presence of a lawyer before or during any part of this statement, nor at any time before it is finished did I request that this statement be stopped. I also declare that I was not told or prompted what to say in this statement.

This statement was completed at _9:30_ A.M. on the _20TH_ day of _August_ _2003_.

WITNESS: _____                                    37

_Patrick James M_
Signature of person giving voluntary statement

Continuation
Of    **VOLUNTARY STATEMENT** Of

schedule required him to be somewhere else on July 8. I agreed to wait, and Mr. Dorske arrived at our office about 5 30. He was here for about an hour or hour, and a half. Mr. Dorske seemed to be a very conscientious driver, and a nice guy.

Pat McDonald

Mr. Gorski arrived driving 1 Allied truck. Approx 8am 7-14-3. Driver had 2 helpers to load truck. Gorski said he was glad to be going to Flea as his truly was to empin. They finished loading about 12 noon. Saw large Gorski cataloged and marked every piece. My impression was he was a hard working family man.

_____
Signature of Person Giving Voluntary Statement

Kirk Gamble    8-11-3  dates given
(7-25-50)
AGE

4343 E Pollock LN.
PNX AZ, 85042

Page ___ of ___

39

Sep-02-03 09:34   Johnsons
AUG-19-2003 11:24    LSP REGION 2 TESS                    805 529-6434       P.01

Place _____

The undersigned, _Elizabeth Johnson_____, am _____ years of age, having been born

on _____ at _____

I now live at _California_____

I have been duly warned and advised by _____, a person who has identified himself as

_____, that I do not have to make any statement at all, nor answer any questions or do anything that might tend to go against me or incriminate me in any manner, and that any statement I make may be used against me on the trial or trials for the offense or offenses concerning which the following statement is herein made. I was also warned and advised of my right to the advice and presence of a lawyer of my own choice before or at any time during any questioning or statement I make, and if I am not able to hire a lawyer I may request and have a lawyer appointed for me, by the proper authority, without cost or charge to me.

I do not want to talk to a lawyer, and I hereby knowingly and purposely waive my right to the advice and presence of a lawyer before and during any questioning or at any time before or while I voluntarily make the following statement to the aforesaid person, knowing that anything I say can and will be used against me in a court or courts of law.

I declare that the following voluntary statement is made to the aforesaid person of my own free will without promise of hope or reward, without fear or threat of physical harm, without coercion, favor or offer of favor, without leniency or offer of leniency, by any person or persons whomsoever.

Mr Gorske picked up my items on Mon June 30, 2003. He asked if he could pick them up sooner, but the moving company Blocker transfer denied the request because it was not enough time to Schedule packers. He arrived at my house on July 7th earlier than I expected but not too much so. He wa Very professional, got the job done. and left

I have read this statement consisting of _____ page(s), and I certify that the facts contained therein are true and correct. I further certify that I made no request for the advice or presence of a lawyer before or during any part of this statement, nor at any time before it was finished did I request that this statement be stopped. I also declare that I was not told or prompted what to say in this statement.

This statement was completed at _____ .M. on the _8_ day of _Sept_, 2003

WITNESS: _____

_Elizabeth Johnson_
Signature of person giving s.

40

Aug 07 03 06:19a    Francis M. Beeler    (904) 388-5999    p.2

I, the undersigned, FRANCIS M BEELER am 60 years of age, having been born on APRIL 28, 1943 at SANTA MONICA, CA

I now live at 505 LANCASTER ST., UNIT 2B, JACKSONVILLE, FL 32204

I have been duly warned and advised by (NOT APPLICABLE) a person who has identified himself as _____, that I do not have to make any statement at all, nor answer any questions or do anything that might tend to go against me or incriminate me in any manner, and that any statement I make may be used against me on the trial or trials for the offense or offenses concerning which the following statement is herein made. I was also warned and advised of my right to the advice and presence of a lawyer of my own choice before or at any time during any questioning or statement I make, and if I am not able to hire a lawyer I may request and have a lawyer appointed for me, by the proper authority, without cost or charge to me.

I do not want to talk to a lawyer, and I hereby knowingly and purposely waive my right to the advice and presence of a lawyer before and during any questioning or at any time before or while I voluntarily make the following statement to the aforesaid person, knowing that anything I say can and will be used against me in a court or courts of law.

I declare that the following voluntary statement is made to the aforesaid person of my own free will without promise of hope or reward, without fear or threat of physical harm, without coercion, favor or offer of favor, without leniency or offer of leniency by any person or persons whomsoever.

VLADEK Gorski arrived at 2805 Miradero Drive, Unit A, Santa Barbara, CA around 8:30 AM on July 17, 2003. He had two helpers with him. They had both gotten up very early that morning and driven to Santa Barbara from far on the eastern edge of the LA basin (Hemet or some such place?). I do not know where Mr. Gorski drove the rig from that morning. He seemed very businesslike and focused when he was supervising the loading of our furniture and boxes. He seemed to pay a lot of attention to detail. It was a hot and muggy day and all three men were sweating quite profusely by the time the truck was fully loaded and ready to go. Mr. Gorski assisted in carrying items to the truck, but seemed mostly focused on the organizational aspects of the loading process itself. The loading was finished around 2:30 or 3:00 PM on the 17th. Around mid-day, I had asked him (had a conversation about) the delivery time in Jacksonville. He estimated 8:30 or 9:00 am on Monday morning the 21st. An hour or so later he told me he had just gotten notice that he would be picking up another load after our load (he had previously — (over)

I have read this statement consisting of _____ page(s), and I certify that the facts contained therein are true and correct. I further certify that I made no request for the advice or presence of a lawyer before or during any part of this statement, nor at any time before it was finished did I request that this statement be stopped. I also declare that I was not told or prompted what to say in this statement.

This statement was completed at _____ M. on the _____ day of _____ 19 _____

WITNESS: _____

41

Signature of person giving voluntary statement

(cont. from other side)

thought that our load was "last on, first off"). I remember this clearly because he commented about how that was going to change his driving schedule (as follows):

① He would have to deliver our load closer to mid day on Monday
② He would not be able to stop (near New Orleans?) at his favorite restaurant for a specific meal he had enjoyed on his many drives across the country. He actually named the "dish" he was talking about, but I don't remember it.

Mr. Gorski provided me with his cell phone number (727) 415-8015 and told me I could call him if I wished to check the progress of his drive across the country. I called the number only after he failed to show up in Jacksonville midday Monday morning. The phone did not answer (of course, due to the accident) and I finally called Allied directly. That's when we first heard about the accident and loss of lives and possessions.

In general, Mr. Gorski was friendly but very focused on doing his job. He seemed to be very very efficient, but also seemed to be wanting to get loaded and start driving as soon as possible. He displayed a bit of frustration when he found out about the last minute extra load he would have to put on the truck after our load. I do not remember if he told me where he had to drive to pick up that load. If I had to characterize his demeanor in a few words (on that day), it would be somewhat "overly focused, if not intense" on getting the load on the truck and getting on the road. The conversation we had was limited, other than a brief discussion about our daughters.

Sincerely,
Francis M Beeler    (904) 388-5999  or
                     (805) 452-5350 (mobile)

42

**STATE OF LOUISIANA**
**DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS**
**OFFICE OF STATE POLICE**
**TRANSPORTATION AND ENVIRONMENTAL SAFETY SECTION**
**COMMERCIAL VEHICLE POST-CRASH INVESTIGATIVE FORM**

**SUPPLEMENTAL REPORT**

INVESTIGATING AGENCY: ☒ STATE POLICE ☐ CITY POLICE ☐ SHERIFF ☐ OTHER

| TIME: 1730 | DATE: 07-20-03 | DAY: SUNDAY | PARISH: ST MARTIN | REPORT #LABF003584 |
|---|---|---|---|---|
| LOCATION: I10 EASTBOUND | | | MP :123 | STATE #3203751 |

DESCRIBE ANY UNUSUAL CIRCUM STANCE ASSOCIATED WITH THE ACCIDENT. WITNESS NAMES, ADDRESSES, ETC, BY NO.

**MASTER TROOPER RICHARD C. ELLIOTT**
**LOUISIANA STATE POLICE/TESS**

# TRIP

# INFORMATION

```
                                        07/23 '03 12:22 NO.170  04/05
 TRIP 18241  HAUL S   09609 REV/MILE   2.55 REV/DAY  961  COM-TYP CL R/C ST: C
    FIRST LOADING        LAST UNLOADING   TRAC FLT TRL EE BR   HAULING AGENT
4CE    TAMPA, FL  0630 1AK   SANFRAN, CA 0709 36045   61558 X X · 21852 SORENSEN MO
    DRIVER ONE          DRIVER TWO    MOT PROV  PHYS1 PHYS2   INSP   TRC IN
36532 GORSKI      15  00000           V  1     022705          703103 803103
   REPORTED AT  DATE TIME  WHDO  PHONE CONTACT VFC PRF  AVAILABLE AT  DATE TIME
Union City CA  0709 1725         800 000 0000   VC  A3  ALAMEDA    CA 0709 0900
   REPAIR SHOP NAME                   PRV.TRP 13033 NXT.TRP  25453    UPDATE
   REMARKSDHT#03035 NEXT TRIP BACK HOME (FL)
VAN SZ  TOT.CUB.FT  SP.AVL  TOT.WGT             TRP.MILES  SPD.FLT   STATUS
 .4420    00000     4420    20483                 3770       000   MANIFESTED
    COS: 4.67
U S REGISTRATION     ATS   ALP    LOAD     ADP     UNLD  C CUBE  WGT TOE REV  B R
X D 162254000000 H    Y 0620-0623 0630  0628-0711 0709    0209 01359 ? 00942 N C
SHP SIMONS CHR   OA 01370 BLOCKER TR ORG 4CE SAINT PETE FL DES 1AK CASTRO VAL CA
X D 173608000000 H    Y 0630-0701 0630  0708-0718 0707    0600 03084 P 01588 N C
SHP JOHNSON EL   OA 01370 BLOCKER TR ORG 4C3 BELLEAIR    FL DES 1BA VENTURA    CA
X D 970242000000.A.   N 0701-0701 0701  0721-0721 0709    1800 07240 N 03344 N .
SHP CVLC/NICHO   OA 62770 PARADISE M ORG 4CF KEY WEST    FL DES 1AK ALAMEDA    CA
X D 970231000100.A.   N 0618-0618 0701  0707-0707 0707    0500 02220 N 00700 N .
SHP CVLC/LIEBE   OA 62770 PARADISE M ORG 4CF KEY WEST    FL DES 1BA CARPINTERI CA
X D 173995000000.H.   Y 0630-0701 0702  0707-0714 0706    0531 03580 P 01775 N C
SHP SALIBA MOL   OA 21851 SORENSEN M ORG 4CD ORLANDO     FL DES 1BB NEWPORT BE CA
```

43

```
07/22/03 13:19              Log Tracking By Safety #                    N363
```

| Safety ber | Contract Number | Shipper Name | Load Date | Delivery Date | Acct Code | Agt Hlr | Hauler Nme | Div Cd | Flt Ctl | Car |
|---|---|---|---|---|---|---|---|---|---|---|
| 36532 | 97023100 | HT JO CVLC/L | 07/01/03 | 07/07/03 | 2185 | 001 | SORENSEN M | RS | NED | AV |
| 36532 | 97024200 | JEFFR CVLC/N | 07/01/03 | 07/09/03 | 2185 | 001 | SORENSEN M | RS | NED | AV |
| 36532 | 16225400 | SIMONS CHRIS | 06/30/03 | 07/09/03 | 2185 | 001 | SORENSEN M | RS | NED | AV |
| 36532 | 17360800 | TH JOHNSON E | 06/30/03 | 07/07/03 | 2185 | 001 | SORENSEN M | RS | NED | AV |
| 36532 | 17152500 | JENNINGS MEL | 06/21/03 | 06/23/03 | 2185 | 001 | SORENSEN M | RS | NED | AV |
| 36532 | 13174100 | DAVEY, RUTH | 06/19/03 | 06/24/03 | 2185 | 001 | SORENSEN M | RS | NED | AV |
| 36532 | 16751400 | GREEN DEBBIE | 06/18/03 | 06/24/03 | 2185 | 001 | SORENSEN M | RS | NED | AV |
| 36532 | 91611000 | RGE INVA/GEO | 06/18/03 | 06/21/03 | 2185 | 001 | SORENSEN M | RS | NED | AV |
| 36532 | 14977000 | BASTA WAYNE | 06/12/03 | 06/16/03 | 2185 | 001 | SORENSEN M | RS | NED | AV |
| 36532 | 91593700 | PRICE CYTI/B | 06/09/03 | 06/17/03 | 2185 | 001 | SORENSEN M | RS | NED | AV |
| 36532 | 16455500 | BOUGHT ROBER | 06/07/03 | 06/10/03 | 2185 | 001 | SORENSEN M | RS | NED | AV |
| 36532 | 15257200 | DANIELS TONY | 05/30/03 | 06/06/03 | 2185 | 001 | SORENSEN M | RS | NED | AV |
| 36532 | 15196100 | RICHMOND HAR | 05/29/03 | 06/05/03 | 2185 | 001 | SORENSEN M | RS | NED | AV |
| 36532 | 14087500 | SHOWEN CLAYT | 05/15/03 | 05/28/03 | 2185 | 001 | SORENSEN M | RS | NED | AV |

```
Safety Number: 36532_ Contract Number: _____ Load Date: 20030701
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
     HELP                                    FRWD  MENU  LEFT  RIGHT  DOWN
```

| Safety Number | Contract Number | Shipper Name | Origin City State | Destination City State |
|---|---|---|---|---|
| 36532 | 97023100 | HT JO CVLC/L | KEY WEST FL | CARPINTERIA |
| 36532 | 97024200 | JEFFR CVLC/N | KEY WEST FL | ALAMEDA CA |
| 36532 | 16225400 | SIMONS CHRIS | SAINT PETERS | CASTRO VALLE |
| 36532 | 17360800 | TH JOHNSON E | BELLEAIR FL | VENTURA CA |
| 532 | 17152500 | JENNINGS MEL | DALLAS TX | GROVELAND FL |
| 36532 | 13174100 | DAVEY, RUTH | TUCSON AZ | LEHIGH ACRES |
| 36532 | 16751400 | GREEN DEBBIE | OJAI CA | CAPE CORAL F |
| 36532 | 91611000 | RGE INVA/GEO | OJAI CA | SHREVEPORT L |
| 36532 | 14977000 | BASTA WAYNE | BLUE SPRINGS | LOS ANGELES |
| 36532 | 91593700 | PRICE CYTI/B | MILTON FL | SAN DIEGO CA |
| 36532 | 16455500 | BOUGHT ROBER | CRESTVIEW FL | FAIRWAY KS |
| 36532 | 15257200 | DANIELS TONY | MERRITT ISLA | MEMPHIS TN |
| 36532 | 15196100 | RICHMOND HAR | LAKE MARY FL | POWELL TN |
| 36532 | 14087500 | SHOWEN CLAYT | RAMONA CA | MELBOURNE FL |

```
Safety Number: 36532  Contract Number:              Load Date: 20030701
```

07/23 '0_ 12:22 NO.170  05/05

```
TRIP 25454  HAUL $   13383 REV/MILE   3.51 REV/DAY  836  COM-TYP CL R/C ST: E
     FIRST LOADING       LAST UNLOADING     TRAC FLT TRL FF AR   HAULING AGENT
1BC   SAN DIEGO  071J 4CF   MIAMI, FL  0726 36045    61558 X X  21851 SORENSEN MO
     DRIVER ONE        DRIVER TWO      MOT PROV  PHYS1  PHYS2   INSP     TRC IN
36532 GORSKI     15  00000          V  1   022705         703103  803103
   REPORTED AT   DATE TIME  WHDO  PHONE CONTACT VFC PRF  AVAILABLE AT   DATE TIME
Evangeline LA  0720 1733        000 000 0000      A3  JACKSONVIL FL 0721 1100
   REPAIR SHOP NAME                    PRV.TRP 25453 NXT.TRP  00000   UPDATE
REMARKSNXT TRIP TO CA....
VAN SZ  TOT.CUB.FT  SP.AVL  TOT.WGT          TRP.MILES  SPD.FLT   STATUS
 4420      04313     0107   29100             3616      000    IMMEDIATE
     COS: 4.67
U S REGISTRATION    ATS  ALP    LOAD    ADP    UNLD  C CUBE  WGT TOE REV  B R
X L 181087000000 H   Y 0711-0711 0711  0722-0725 0722   0700 04300 R 01869 N E
SHP FIX CHARLI   OA 00420 ATLAS TRAN ORG 1BC SAN DIEGO  CA DES 4CB TALLAHASSE FL
X L 183834000000 H   Y 0714-0714 0714  0723-0726 0726   1327 08800 N 03180 N C
SHP GAMBLE KIR   OA 05650 DIRCKS MOV ORG 1BF PHOENIX    AZ DES 4CF COCONUT GR FL
X L 916581000000.A.  N 0714-0714 0715  0801-0801 0725   0286 02000 N 01227 N .
SHP BONI/GARCI   OA 62970 VALLEY VAN ORG 1BC SAN DIEGO  CA DES 4CF OPA LOCKA   FL
X L 916521000000.A.  N 0715-0715 0715  0801-0801 0723   0286 02000 N 01159 N .
SHP BONI/ORTIZ   OA 62970 VALLEY VAN ORG 1BC CORONADO   CA DES 4CD JACKSONVIL FL
X L 181485000000.H.  Y 0717-0717 0717  0724-0728 0724   1285 09000 P 04209 N C
SHP PALMER SUS   OA 09300 HILFORD MO ORG 1BA SANTA BARB CA DES 4CD JACKSONVIL FL
```

45

```
07/22/03 14:02              Log Tracking By Safety #                    N363

Safety  Contract                      Load     Delivery  Acct  Agt              Div  Flt
Number  Number    Shipper Name        Date     Date      Code  Hlr  Hauler Nme  Cd   Ctl Car
------  --------  ------------        --------  --------  ----  ---  ----------  ---  --- ---
 36532  91686800  ID BONI/DUNC        07/18/03 07/23/03  2185  001  SORENSEN M  RS   NED AV
 36532  18148500  PALMER SUSAN        07/17/03 07/24/03  2185  001  SORENSEN M  RS   NED AV
 36532  91652100  EL M BONI/OR        07/15/03 07/23/03  2185  001  SORENSEN M  RS   NED AV
 36532  91658100  LIAM BONI/GA        07/15/03 07/25/03  2185  001  SORENSEN M  RS   NED AV  valley
 36532  18383400  GAMBLE KIRK         07/14/03 07/26/03  2185  001  SORENSEN M  RS   NED AV
 36532  18108700  FIX CHARLIE         07/11/03 07/22/03  2185  001  SORENSEN M  RS   NED AV
 36532  91611200  YSTAL CLYL/J        07/03/03 07/08/03  2185  001  SORENSEN M  RS   NED AV
 36532  17399500  SALIBA MOLLY        07/02/03 07/06/03  2185  001  SORENSEN M  RS   NED AV


07/22/03 14:03              Log Tracking By Safety #                    N363

Safety  Contract                 Origin          Destination
Number  Number    Shipper Name   City State      City State
------  --------  ------------   ------------    ------------
 36532  91686800  ID BONI/DUNC   SAN DIEGO CA    JACKSONVILLE
 36532  18148500  PALMER SUSAN   SANTA BARBAR    JACKSONVILLE
   532  91652100  EL M BONI/OR   CORONADO CA     JACKSONVILLE
  .532  91658100  LIAM BONI/GA   SAN DIEGO CA    OPA LOCKA FL
 36532  18383400  GAMBLE KIRK    PHOENIX AZ      COCONUT GROV
 36532  18108700  FIX CHARLIE    SAN DIEGO CA    TALLAHASSEE
 36532  91611200  YSTAL CLYL/J   PENSACOLA FL    LEMOORE CA
 36532  17399500  SALIBA MOLLY   ORLANDO FL      NEWPORT BEAC
```

```
                                                      07/23 '05 12:22 NO.170  03/05
   TRIP 13033  HAUL $  07992 REV/MILE   2.60 REV/DAY 1.142  COM-TYP CL R/C ST: C
       FIRST LOADING          LAST UNLOADING    TRAC FLT TRL FF AR   HAULING AGENT
1BA    SANTABARB  0618 4CF   MIAMI, FL  0624 36045   61558 X X  21851 SORENSEN MO
   DRIVER ONE              DRIVER TWO   MOT PROV  PHYS1  PHYS2   INSP    TRC LN
36532 GORSKI     15  00000                V  1      022705       703103  803103
   REPORTED AT  DATE TIME  WHDO  PHONE CONTACT VFC PRF  AVAILABLE AT  DATE TIME
Safety Har FL  0625 1040        800 000 0000   VC  A3  TAMPA        FL 0625 0900
   REPAIR SHOP NAME                     PRV.TRP 13035 NXT.TRP  18241    UPDATE
   REMARKS                    NXT TRIP TO CA....
VAN SZ   TOT.CUB.FT  SP.AVL  TOT.WGT          TRP.MILES  SPD.FLT    STATUS
   4420     00000     4420   26200               3075    000     MANIFESTED
     COS: 4.67
U S  REGISTRATION     ATS   ALP    LOAD     ADP    UNLD  C CUBE  WGT TOE REV  B R
X D 167514000000 H    Y  0617-0618 0618  0625-0701 0624   0400 02850 P 01596 N C
SHP GREEN DEBB  OA 09300 HILFORD MO ORG 1BA OJAI     CA DES 4CF CAPE CORAL  FL
X D 916110000000 A    N  0612-0612 0618  0627-0627 0621   0085 00600 N 00308 N .
SHP INVA/GEOSO  OA 47640 INTERSTATE ORG 1BA OJAI     CA DES 2CD SHREVEPORT LA
X D 131741000000 H.   Y  0619-0619 0619  0626-0626 0624   2809 22400 R 05702 N C
SHP DAVEY, RUT  OA 03410 CITIZENS T ORG 1BF TUCSON   AZ DES 4CF LEHIGH ACR FL
X D 171525000000 H.   Y  0621-0625 0621  0625-0708 0623   0050 00350 N 00386 N C
SHP JENNINGS M  OA 03960 BERGER/DAL ORG 2BB DALLAS   TX DES 4CD GROVELAND  FL
X       ...........   0000 0000 0000  0000 0000 0000   0000 00000 0 00000
```

```
                                              07/23 '03 12:22 NO.170  02/05
  TRIP 07510  HAUL $  07799 REV/MILE  3.04 REV/DAY  867  COM-TYP CL R/C ST: .
    FIRST LOADING       LAST UNLOADING    TRAC FLT TRL FF AR   HAULING AGENT
2CK   MOBILE, AL 0609 1BC   SAN DIEGO  0617 36045   61558 X X  21851 SORENSEN MO
    DRIVER ONE          DRIVER TWO     MOT PROV PHYS1 PHYS2   INSP   TRC IN
36532 GORSKI    15  00000              V  3    022705         703103  803103
   REPORTED AT  DATE TIME  WHDO  PHONE CONTACT VFC PRF  AVAILABLE AT  DATE TIME
Santee    CA 0617 1304        000 000 0000     VC A3  SAN DIEGO CA 0617 0900
  REPAIR SHOP NAME                       PRV.TRP 09902 NXT.TRP  13035   UPDATE
  REMARKSDRV WILL TAKE 4K TO 5K FOR FILL  NEXT TRIP TO FL
  VAN SZ  TOT.CUB.FT  SP.AVL  TOT.WGT             TRP.MILES  SPD.FLT   STATUS
   4420     00000    4420    20940                  2565      000   MANIFESTED
      COS: 4.67
  U S REGISTRATION   ATS   ALP    LOAD    ADP    UNLD  C CUBE  WGT TOE REV  B R
  X D 915937000000 A   N 0606-0606 0609  0630-0630 0617    0600 03000 N 00994 N .
  SHP CYTI/BALDE  OA 47940 CITY TRANS ORG 2CK MILTON     FL DES 1BC SAN DIEGO  CA
  X D 149770000000 H   N 0613-0613 0612  0618-0621 0616    3610 17940 N 06805 Y .
  SHP BASTA WAYN  OA 06380 BERGER KAN ORG 2AF BLUE SPRIN MO DES 1BB LOS ANGELE CA
  X       ...........   0000 0000 0000  0000 0000 0000    0000 00000 0 00000

  X       ...........   0000 0000 0000  0000 0000 0000    0000 00000 0 00000

  X       ...........   0000 0000 0000  0000 0000 0000    0000 00000 0 00000
```

*Trip Information*

07/22/03 13:23          Log Tracking By Safety #                    N363

| ~ fety ber | Contract Number | Shipper Name | Load Date | Delivery Date | Acct Code | Agt Hlr | Hauler Nme | Div Cd | Flt Ctl | Car |
|-----------|-----------------|--------------|-----------|---------------|-----------|---------|------------|--------|---------|-----|
| 36532 | 10128600 | KOZMA MARY | 03/01/03 | 03/06/03 | 2185 | 001 | SORENSEN M | RS | NED | AV |
| 36532 | 10413200 | INE MCDOUGLE | 02/28/03 | 03/04/03 | 2185 | 001 | SORENSEN M | RS | NED | AV |
| 36532 | 10923000 | ZAZULA EVELY | 02/28/03 | 03/05/03 | 2185 | 001 | SORENSEN M | RS | NED | AV |
| 36532 | 91388400 | DARRI JUFW/T | 02/25/03 | 03/07/03 | 2185 | 001 | SORENSEN M | RS | NED | AV |
| 36532 | 10441500 | MAY SUE | 02/20/03 | 03/08/03 | 2185 | 001 | SORENSEN M | RS | NED | AV |
| 36532 | 79845400 | DENTON MICHE | 02/14/03 | 02/17/03 | 2185 | 001 | SORENSEN M | RS | NED | AV |
| 36532 | 79397000 | LODGEK KARL | 02/13/03 | 02/17/03 | 2185 | 001 | SORENSEN M | RS | NED | AV |
| 36532 | 79762600 | RA MARINELLI | 02/12/03 | 02/19/03 | 2185 | 001 | SORENSEN M | RS | NED | AV |
| 36532 | 79385200 | A SCHMIDT, C | 02/11/03 | 02/18/03 | 2185 | 001 | SORENSEN M | RS | NED | AV |
| 36532 | 79540300 | TOWNSEND MOL | 02/06/03 | 02/08/03 | 2185 | 001 | SORENSEN M | RS | NED | AV |
| 36532 | 79836300 | ZONFRILLI JO | 02/05/03 | 02/09/03 | 2185 | 001 | SORENSEN M | RS | NED | AV |
| 36532 | 79554800 | K, FRANK LYON | 02/03/03 | 02/10/03 | 2185 | 001 | SORENSEN M | RS | NED | AV |
| 36532 | 79839600 | DUNN JOHN | 02/03/03 | 02/11/03 | 2185 | 001 | SORENSEN M | RS | NED | AV |

07/22/03 13:23          Log Tracking By Safety #                    N363

| Safety Number | Contract Number | Shipper Name | Origin City State | Destination City State |
|---------------|-----------------|--------------|-------------------|------------------------|
| 36532 | 10128600 | KOZMA MARY | NEW PORT RIC | ESCONDIDO CA |
| 36532 | 10413200 | INE MCDOUGLE | CASSELBERRY FL | BURBANK CA |
| 36532 | 10923000 | ZAZULA EVELY | PINE HILLS FL | LAS VEGAS NV |
| 36532 | 91388400 | DARRI JUFW/T | ORANGE PARK FL | LEMOORE CA |
| 32 | 10441500 | MAY SUE | MERRITT ISLA | ROSEVILLE CA |
| 32 | 79845400 | DENTON MICHE | LAUREL MD | ALPHARETTA G |
| 36532 | 79397000 | LODGEK KARL | MARLTON NJ | ATLANTA GA |
| 36532 | 79762600 | RA MARINELLI | OAKVILLE CT | MELBOURNE FL |
| 36532 | 79385200 | A SCHMIDT, C | FAIRFIELD CT | NAPLES FL |
| 36532 | 79540300 | TOWNSEND MOL | WINTER SPRIN | ROCKVILLE MD. |
| 36532 | 79836300 | ZONFRILLI JO | PALM BAY FL | SURF CITY NJ |
| 36532 | 79554800 | K, FRANK LYON | MIAMI LAKES | ALLAMUCHY NJ |
| 36532 | 79839600 | DUNN JOHN | BOCA RATON F | WESTERLY RI |

| Vehicle # | Position Date | (hhmmss) | Miles | Direction / From | Nearest Large City / | ST | Miles | Direction / From | Nearest Small City / | ST |
|---|---|---|---|---|---|---|---|---|---|---|
| 36045 | 20000000 | 0 | 0 | | | | 0 | | | |
| 36045 | 20000000 | 0 | 0 | | | | 0 | | | |
| 36045 | 7/2/2003 | 2143 | 3 | ENE | Hollywood | FL | 1 | ESE | Hollywood Hills | FL |
| 36045 | 7/2/2003 | 11126 | 1 | SE | West Palm Beach | FL | 1 | SE | West Palm Beach | FL |
| 36045 | 7/2/2003 | 22042 | 2 | NNE | West Palm Beach | FL | 1 | W | Mangonia Park | FL |
| 36045 | 7/2/2003 | 32958 | 2 | NNE | West Palm Beach | FL | 1 | W | Mangonia Park | FL |
| 36045 | 7/2/2003 | 43914 | 14 | N | West Palm Beach | FL | 2 | W | Jupiter | FL |
| 36045 | 7/2/2003 | 52335 | 2 | NW | Fort Pierce | FL | 2 | NW | Fort Pierce | FL |
| 36045 | 7/2/2003 | 61841 | 2 | NW | Fort Pierce | FL | 2 | NW | Fort Pierce | FL |
| 36045 | 7/2/2003 | 72758 | 30 | WSW | Melbourne | FL | 9 | NW | Kenansville | FL |
| 36045 | 7/2/2003 | 74801 | 23 | S | Orlando | FL | 7 | WSW | Saint Cloud | FL |
| 36045 | 7/2/2003 | 83234 | 6 | S | Orlando | FL | 2 | SSE | Belle Isle | FL |
| 36045 | 7/2/2003 | 103611 | 6 | S | Orlando | FL | 2 | SSE | Belle Isle | FL |
| 36045 | 7/2/2003 | 112611 | 6 | S | Orlando | FL | 2 | SSE | Belle Isle | FL |
| 36045 | 7/2/2003 | 123527 | 6 | S | Orlando | FL | 2 | SSE | Belle Isle | FL |
| 36045 | 7/2/2003 | 134444 | 6 | S | Orlando | FL | 2 | SSE | Belle Isle | FL |
| 36045 | 7/2/2003 | 145400 | 6 | S | Orlando | FL | 2 | SSE | Belle Isle | FL |
| 36045 | 7/2/2003 | 160316 | 6 | S | Orlando | FL | 2 | SSE | Belle Isle | FL |
| 36045 | 7/2/2003 | 163244 | 6 | S | Orlando | FL | 2 | SSE | Belle Isle | FL |
| 36045 | 7/2/2003 | 173612 | 7 | SSW | Orlando | FL | 2 | SSW | Sky Lake | FL |
| 36045 | 7/2/2003 | 184528 | 19 | W | Orlando | FL | 1 | WNW | Killarney | FL |
| 36045 | 7/2/2003 | 195444 | 12 | SSE | Gainesville | FL | 1 | SW | Micanopy | FL |
| 36045 | 7/2/2003 | 210403 | 65 | NW | Gainesville | FL | 7 | WNW | Live Oak | FL |
| 36045 | 7/2/2003 | 221319 | 4 | NE | Tallahassee | FL | 2 | SSW | Centerville | FL |
| 36045 | 7/2/2003 | 223408 | 10 | WNW | Tallahassee | FL | 2 | E | Midway | FL |
| 36045 | 20000000 | 0 | 0 | | | | 0 | | | |
| 36045 | 7/3/2003 | 62406 | 10 | WNW | Tallahassee | FL | 1 | E | Midway | FL |
| 36045 | 7/3/2003 | 83900 | 54 | NW | Panama City | FL | 1 | SW | Mossy Head | FL |
| 36045 | 7/3/2003 | 92300 | 8 | NE | Pensacola | FL | 4 | E | Ferry Pass | FL |
| 36045 | 7/3/2003 | 94944 | 2 | SW | Pensacola | FL | 1 | S | Brownsville | FL |
| 36045 | 7/3/2003 | 100755 | 2 | SW | Pensacola | FL | 1 | S | Brownsville | FL |
| 36045 | 7/3/2003 | 103201 | 2 | SW | Pensacola | FL | 1 | SSW | Brownsville | FL |
| 36045 | 7/3/2003 | 123539 | 2 | SW | Pensacola | FL | 1 | SSW | Brownsville | FL |
| 36045 | 7/3/2003 | 125540 | 2 | SW | Pensacola | FL | 1 | S | Brownsville | FL |
| 36045 | 7/3/2003 | 140457 | 20 | WNW | Pensacola | FL | 6 | NE | Robertsdale | AL |
| 36045 | 7/3/2003 | 150104 | 25 | SW | Mobile | AL | 4 | W | Grand Bay | AL |
| 36045 | 7/3/2003 | 155648 | 49 | WSW | Mobile | AL | 2 | NW | Gulf Hills | MS |
| 36045 | 7/3/2003 | 170541 | 65 | ENE | New Orleans | LA | 4 | NW | Gulfport | MS |
| 36045 | 7/3/2003 | 172155 | 64 | ENE | New Orleans | LA | 4 | NW | Gulfport | MS |
| 36045 | 7/3/2003 | 183111 | 64 | ENE | New Orleans | LA | 4 | NW | Gulfport | MS |
| 36045 | 7/3/2003 | 194027 | 29 | NNE | Metairie | LA | 4 | ENE | Mandeville | LA |
| 36045 | 7/3/2003 | 203750 | 38 | NNW | Metairie | LA | 2 | SSE | Hammond | LA |
| 36045 | 7/3/2003 | 221745 | 38 | NNW | Metairie | LA | 2 | SSE | Hammond | LA |
| 36045 | 7/3/2003 | 232708 | 21 | ENE | Lafayette | LA | 6 | ENE | Henderson | LA |
| 36045 | 20000000 | 0 | 0 | | | | 0 | | | |
| 36045 | 7/4/2003 | 3624 | 33 | E | Lake Charles | LA | 2 | N | Jennings | LA |
| 36045 | 7/4/2003 | 11141 | 0 | NW | Lake Charles | LA | 0 | NW | Lake Charles | LA |
| 36045 | 7/4/2003 | 31819 | 0 | NW | Lake Charles | LA | 0 | NW | Lake Charles | LA |
| 36045 | 7/4/2003 | 42648 | 0 | NW | Lake Charles | LA | 0 | NW | Lake Charles | LA |

02798

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 36045 | 7/4/2003 | 53515 | 0 | NW | Lake Charles | LA | 0 | NW | Lake Charles | LA |
| 36045 | 7/4/2003 | 64343 | 0 | NW | Lake Charles | LA | 0 | NW | Lake Charles | LA |
| 36045 | 7/4/2003 | 75211 | 0 | NW | Lake Charles | LA | 0 | NW | Lake Charles | LA |
| 36045 | 7/4/2003 | 90039 | 0 | NW | Lake Charles | LA | 0 | NW | Lake Charles | LA |
| 36045 | 7/4/2003 | 100907 | 0 | NW | Lake Charles | LA | 0 | NW | Lake Charles | LA |
| 36045 | 7/4/2003 | 110318 | 1 | NW | Lake Charles | LA | 1 | NW | Lake Charles | LA |
| 36045 | 7/4/2003 | 110557 | 1 | NW | Lake Charles | LA | 1 | NW | Lake Charles | LA |
| 36045 | 7/4/2003 | 110918 | 0 | NW | Lake Charles | LA | 0 | NW | Lake Charles | LA |
| 36045 | 7/4/2003 | 121835 | 17 | E | Beaumont | TX | 3 | NNE | Orangefield | TX |
| 36045 | 7/4/2003 | 132751 | 14 | NE | Pasadena | TX | 4 | N | Baytown | TX |
| 36045 | 7/4/2003 | 143753 | 45 | W | Houston | TX | 1 | SE | Sealy | TX |
| 36045 | 7/4/2003 | 154709 | 47 | SSE | Austin | TX | 2 | ESE | Harwood | TX |
| 36045 | 7/4/2003 | 180912 | 50 | NW | San Antonio | TX | 8 | NNE | Center Point | TX |
| 36045 | 7/4/2003 | 191828 | 118 | NW | San Antonio | TX | 3 | WSW | Roosevelt | TX |
| 36045 | 7/4/2003 | 201728 | 108 | SSE | Midland | TX | 7 | E | Ozona | TX |
| 36045 | 7/4/2003 | 204852 | 107 | SSE | Midland | TX | 6 | E | Ozona | TX |
| 36045 | 7/4/2003 | 221411 | 108 | SSE | Midland | TX | 6 | E | Ozona | TX |
| 36045 | 7/4/2003 | 231416 | 71 | SSE | Odessa | TX | 11 | WSW | Iraan | TX |
| 36045 | 7/5/2003 | 2334 | 70 | SSW | Odessa | TX | 14 | E | Fort Stockton | TX |
| 36045 | 7/5/2003 | 13250 | 70 | SSW | Odessa | TX | 14 | E | Fort Stockton | TX |
| 36045 | 7/5/2003 | 24207 | 69 | SSW | Odessa | TX | 14 | E | Fort Stockton | TX |
| 36045 | 7/5/2003 | 35123 | 70 | SSW | Odessa | TX | 14 | E | Fort Stockton | TX |
| 36045 | 7/5/2003 | 50047 | 69 | SSW | Odessa | TX | 14 | E | Fort Stockton | TX |
| 36045 | 7/5/2003 | 61003 | 69 | SSW | Odessa | TX | 14 | E | Fort Stockton | TX |
| 36045 | 7/5/2003 | 71929 | 69 | SSW | Odessa | TX | 14 | E | Fort Stockton | TX |
| 36045 | 7/5/2003 | 81151 | 73 | SSW | Odessa | TX | 2 | W | Fort Stockton | TX |
| 36045 | 7/5/2003 | 92107 | 88 | SW | Odessa | TX | 14 | ESE | Saragosa | TX |
| 36045 | 7/5/2003 | 103026 | 112 | ESE | El Paso | TX | 3 | E | Van Horn | TX |
| 36045 | 7/5/2003 | 110321 | 110 | ESE | El Paso | TX | 0 | SSE | Van Horn | TX |
| 36045 | 7/5/2003 | 121238 | 93 | ESE | El Paso | TX | 16 | WNW | Van Horn | TX |
| 36045 | 7/5/2003 | 132155 | 18 | ESE | El Paso | TX | 3 | N | Clint | TX |
| 36045 | 7/5/2003 | 141835 | 17 | NNW | El Paso | TX | 2 | NE | Anthony | TX |
| 36045 | 7/5/2003 | 152758 | 21 | WSW | Las Cruces | NM | 14 | W | Mesilla | NM |
| 36045 | 7/5/2003 | 163713 | 102 | W | Las Cruces | NM | 16 | ESE | Lordsburg | NM |
| 36045 | 7/5/2003 | 174640 | 87 | E | Tucson | AZ | 14 | WNW | Portal | AZ |
| 36045 | 7/5/2003 | 185808 | 18 | SE | Tucson | AZ | 5 | NNW | Vail | AZ |
| 36045 | 7/5/2003 | 200724 | 31 | SSE | Chandler | AZ | 4 | E | Casa Grande | AZ |
| 36045 | 7/5/2003 | 223844 | 33 | WSW | Glendale | AZ | 9 | NNW | Palo Verde | AZ |
| 36045 | 7/5/2003 | 234811 | 118 | W | Glendale | AZ | 2 | WSW | Quartzsite | AZ |
| 36045 | 20000000 | 0 | 0 | | | | 0 | | Desert Center | CA |
| 36045 | 7/6/2003 | 5726 | 102 | E | Moreno Valley | CA | 0 | S | Indio | CA |
| 36045 | 7/6/2003 | 20642 | 57 | ESE | Moreno Valley | CA | 2 | E | Indio | CA |
| 36045 | 7/6/2003 | 31558 | 57 | ESE | Moreno Valley | CA | 2 | E | Indio | CA |
| 36045 | 7/6/2003 | 42514 | 57 | ESE | Moreno Valley | CA | 2 | E | Indio | CA |
| 36045 | 7/6/2003 | 52250 | 57 | ESE | Moreno Valley | CA | 2 | E | Indio | CA |
| 36045 | 7/6/2003 | 63208 | 57 | ESE | Moreno Valley | CA | 2 | E | Indio | CA |
| 36045 | 7/6/2003 | 74124 | 57 | ESE | Moreno Valley | CA | 2 | E | Indio | CA |
| 36045 | 7/6/2003 | 85040 | 57 | ESE | Moreno Valley | CA | 2 | E | Indio | CA |
| 36045 | 7/6/2003 | 90248 | 57 | ESE | Moreno Valley | CA | 2 | E | Indio | CA |
| 36045 | 7/6/2003 | 101204 | 44 | E | Moreno Valley | CA | 1 | WNW | Thousand Palms | CA |
| 36045 | 7/6/2003 | 112133 | 2 | SSE | Fontana | CA | 1 | WNW | Bloomington | CA |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 36045 | 7/6/2003 | 123049 | 3 | WNW | Corona | CA | 1 | WNW | Frontera | CA |
| 36045 | 7/6/2003 | 133607 | 8 | S | Santa Ana | CA | 1 | NNE | Newport Beach | CA |
| 36045 | 7/6/2003 | 154007 | 8 | S | Santa Ana | CA | 1 | NNE | Newport Beach | CA |
| 36045 | 7/6/2003 | 164843 | 8 | S | Santa Ana | CA | 1 | NNE | Newport Beach | CA |
| 36045 | 7/6/2003 | 165618 | 8 | S | Santa Ana | CA | 2 | NNE | Newport Beach | CA |
| 36045 | 7/6/2003 | 180535 | 4 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/6/2003 | 191500 | 5 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/6/2003 | 202415 | 4 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/6/2003 | 202706 | 5 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/6/2003 | 213634 | 4 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/6/2003 | 224551 | 5 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/6/2003 | 235507 | 5 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 20000000 | 0 | 0 | | | | 0 | | | |
| 36045 | 7/7/2003 | 10433 | 5 | E | Ontario | CA | 1 | ENE | Guasti | CA |
| 36045 | 7/7/2003 | 11436 | 4 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/7/2003 | 31813 | 4 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/7/2003 | 42648 | 4 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/7/2003 | 53524 | 4 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/7/2003 | 64400 | 4 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/7/2003 | 75237 | 4 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/7/2003 | 90201 | 5 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/7/2003 | 101118 | 5 | NNE | El Monte | CA | 1 | SE | Monrovia | CA |
| 36045 | 7/7/2003 | 112036 | 7 | SW | Canoga Park | CA | 3 | WSW | Hidden Hills | CA |
| 36045 | 7/7/2003 | 113126 | 1 | W | Thousand Oaks | CA | 1 | W | Thousand Oaks | CA |
| 36045 | 7/7/2003 | 120407 | 1 | SE | Ventura | CA | 1 | SSE | East Ventura | CA |
| 36045 | 7/7/2003 | 140600 | 1 | SE | Ventura | CA | 1 | SSE | East Ventura | CA |
| 36045 | 7/7/2003 | 151516 | 7 | N | Thousand Oaks | CA | 1 | ESE | Moorpark | CA |
| 36045 | 7/7/2003 | 153815 | 7 | N | Thousand Oaks | CA | 1 | ESE | Moorpark | CA |
| 36045 | 7/7/2003 | 174200 | 7 | N | Thousand Oaks | CA | 1 | ESE | Moorpark | CA |
| 36045 | 7/7/2003 | 182714 | 2 | SE | Ventura | CA | 1 | SSE | East Ventura | CA |
| 36045 | 7/7/2003 | 193630 | 25 | W | Santa Barbara | CA | 9 | S | Solvang | CA |
| 36045 | 7/7/2003 | 204639 | 54 | NW | Santa Barbara | CA | 1 | NW | Santa Maria | CA |
| 36045 | 7/7/2003 | 220541 | 54 | NW | Santa Barbara | CA | 0 | N | Santa Maria | CA |
| 36045 | 7/7/2003 | 221517 | 52 | NW | Santa Barbara | CA | 1 | ESE | Santa Maria | CA |
| 36045 | 7/7/2003 | 235122 | 53 | NW | Santa Barbara | CA | 1 | ESE | Sisquoc | CA |
| 36045 | 7/8/2003 | 524 | 66 | NW | Santa Barbara | CA | 3 | SE | Halcyon | CA |
| 36045 | 7/8/2003 | 11440 | 78 | SW | Visalia | CA | 3 | W | Shandon | CA |
| 36045 | 7/8/2003 | 13604 | 62 | SW | Visalia | CA | 14 | NE | Shandon | CA |
| 36045 | 7/8/2003 | 20942 | 44 | WSW | Visalia | CA | 2 | S | Kettleman City | CA |
| 36045 | 7/8/2003 | 21126 | 44 | WSW | Visalia | CA | 2 | S | Kettleman City | CA |
| 36045 | 7/8/2003 | 23545 | 44 | WSW | Visalia | CA | 2 | S | Kettleman City | CA |
| 36045 | 7/8/2003 | 41059 | 44 | WSW | Visalia | CA | 2 | S | Kettleman City | CA |
| 36045 | 7/8/2003 | 51927 | 44 | WSW | Visalia | CA | 2 | S | Kettleman City | CA |
| 36045 | 7/8/2003 | 62755 | 44 | WSW | Visalia | CA | 2 | S | Kettleman City | CA |
| 36045 | 7/8/2003 | 73622 | 44 | WSW | Visalia | CA | 2 | S | Kettleman City | CA |
| 36045 | 7/8/2003 | 84450 | 44 | WSW | Visalia | CA | 2 | S | Kettleman City | CA |
| 36045 | 7/8/2003 | 95406 | 44 | WSW | Visalia | CA | 2 | S | Kettleman City | CA |
| 36045 | 7/8/2003 | 103144 | 28 | W | Visalia | CA | 1 | S | Lemoore | CA |
| 36045 | 7/8/2003 | 105105 | 28 | W | Visalia | CA | 1 | S | Lemoore | CA |
| 36045 | 7/8/2003 | 110442 | 28 | W | Visalia | CA | 1 | S | Lemoore | CA |
| 36045 | 7/8/2003 | 110601 | 28 | W | Visalia | CA | 1 | S | Lemoore | CA |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 36045 | 7/8/2003 | 111014 | 28 | W | Visalia | CA | 1 | S | Lemoore | CA |
| 36045 | 7/8/2003 | 125614 | 28 | W | Visalia | CA | 1 | S | Lemoore | CA |
| 36045 | 7/8/2003 | 132351 | 28 | W | Visalia | CA | 1 | S | Lemoore | CA |
| 36045 | 7/8/2003 | 143410 | 28 | W | Visalia | CA | 1 | S | Lemoore | CA |
| 36045 | 7/8/2003 | 154326 | 7 | S | Fresno | CA | 1 | NNE | Easton | CA |
| 36045 | 7/8/2003 | 165245 | 30 | SE | Modesto | CA | 1 | SE | Atwater | CA |
| 36045 | 7/8/2003 | 180201 | 11 | NW | Modesto | CA | 1 | NW | Ripon | CA |
| 36045 | 7/8/2003 | 180450 | 11 | NW | Modesto | CA | 1 | NW | Ripon | CA |
| 36045 | 7/8/2003 | 180506 | 11 | NW | Modesto | CA | 1 | NW | Ripon | CA |
| 36045 | 7/8/2003 | 191421 | 11 | NW | Modesto | CA | 1 | NW | Ripon | CA |
| 36045 | 7/8/2003 | 202337 | 11 | NW | Modesto | CA | 1 | NW | Ripon | CA |
| 36045 | 7/8/2003 | 213507 | 19 | NE | Fremont | CA | 4 | ENE | Livermore | CA |
| 36045 | 7/8/2003 | 233846 | 19 | NE | Fremont | CA | 4 | ENE | Livermore | CA |
| 36045 | 7/8/2003 | 234910 | 19 | NE | Fremont | CA | 4 | ENE | Livermore | CA |
| 36045 | 7/9/2003 | 12343 | 19 | NE | Fremont | CA | 4 | ENE | Livermore | CA |
| 36045 | 7/9/2003 | 32723 | 19 | NE | Fremont | CA | 4 | ENE | Livermore | CA |
| 36045 | 7/9/2003 | 43551 | 19 | NE | Fremont | CA | 4 | ENE | Livermore | CA |
| 36045 | 7/9/2003 | 54419 | 19 | NE | Fremont | CA | 4 | ENE | Livermore | CA |
| 36045 | 7/9/2003 | 65247 | 19 | NE | Fremont | CA | 4 | ENE | Livermore | CA |
| 36045 | 7/9/2003 | 80114 | 19 | NE | Fremont | CA | 4 | ENE | Livermore | CA |
| 36045 | 7/9/2003 | 84431 | 19 | NE | Fremont | CA | 4 | ENE | Livermore | CA |
| 36045 | 7/9/2003 | 95349 | 3 | SW | Hayward | CA | 1 | WSW | Mount Eden | CA |
| 36045 | 7/9/2003 | 100908 | 4 | S | Hayward | CA | 2 | NNW | Union City | CA |
| 36045 | 7/9/2003 | 111446 | 4 | S | Hayward | CA | 2 | NNW | Union City | CA |
| 36045 | 7/9/2003 | 113413 | 1 | N | Hayward | CA | 1 | SE | Castro Valley | CA |
| 36045 | 7/9/2003 | 114731 | 1 | N | Hayward | CA | 1 | SE | Castro Valley | CA |
| 36045 | 7/9/2003 | 125647 | 2 | NNW | Hayward | CA | 0 | S | Castro Valley | CA |
| 36045 | 7/9/2003 | 132312 | 4 | SSE | Hayward | CA | 2 | N | Union City | CA |
| 36045 | 7/9/2003 | 135559 | 4 | SSE | Hayward | CA | 2 | N | Union City | CA |
| 36045 | 7/9/2003 | 142552 | 4 | SSE | Hayward | CA | 2 | N | Union City | CA |
| 36045 | 7/9/2003 | 143314 | 4 | SSE | Hayward | CA | 2 | N | Union City | CA |
| 36045 | 7/9/2003 | 145319 | 4 | S | Hayward | CA | 2 | N | Union City | CA |
| 36045 | 7/9/2003 | 145831 | 4 | S | Hayward | CA | 2 | NNW | Union City | CA |
| 36045 | 7/9/2003 | 164433 | 4 | SSE | Hayward | CA | 2 | N | Union City | CA |
| 36045 | 7/9/2003 | 172504 | 4 | SSE | Hayward | CA | 2 | N | Union City | CA |
| 36045 | 7/9/2003 | 183423 | 4 | S | Hayward | CA | 2 | NNW | Union City | CA |
| 36045 | 7/9/2003 | 194339 | 10 | ENE | Hayward | CA | 1 | NE | Pleasanton | CA |
| 36045 | 7/9/2003 | 203351 | 19 | NE | Fremont | CA | 4 | ENE | Livermore | CA |
| 36045 | 7/9/2003 | 214721 | 19 | NE | Fremont | CA | 3 | ENE | Livermore | CA |
| 36045 | 7/9/2003 | 234855 | 19 | NE | Fremont | CA | 3 | ENE | Livermore | CA |
| 36045 | 7/9/2003 | 235059 | 19 | NE | Fremont | CA | 3 | ENE | Livermore | CA |
| 36045 | 7/10/2003 | 5926 | 19 | NE | Fremont | CA | 3 | ENE | Livermore | CA |
| 36045 | 7/10/2003 | 20754 | 19 | NE | Fremont | CA | 3 | ENE | Livermore | CA |
| 36045 | 7/10/2003 | 31622 | 19 | NE | Fremont | CA | 3 | ENE | Livermore | CA |
| 36045 | 7/10/2003 | 42450 | 19 | NE | Fremont | CA | 3 | ENE | Livermore | CA |
| 36045 | 7/10/2003 | 53318 | 19 | NE | Fremont | CA | 3 | ENE | Livermore | CA |
| 36045 | 7/10/2003 | 64145 | 19 | NE | Fremont | CA | 3 | ENE | Livermore | CA |
| 36045 | 7/10/2003 | 75013 | 19 | NE | Fremont | CA | 3 | ENE | Livermore | CA |
| 36045 | 7/10/2003 | 85724 | 19 | NE | Fremont | CA | 3 | ENE | Livermore | CA |
| 36045 | 7/10/2003 | 85841 | 19 | NE | Fremont | CA | 3 | ENE | Livermore | CA |
| 36045 | 7/10/2003 | 100932 | 19 | NE | Fremont | CA | 3 | ENE | Livermore | CA |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 36045 | 7/10/2003 | 102755 | 19 | NE | Fremont | CA | 4 | ENE | Livermore | CA |
| 36045 | 7/10/2003 | 110237 | 19 | NE | Fremont | CA | 4 | ENE | Livermore | CA |
| 36045 | 7/10/2003 | 123120 | 19 | NE | Fremont | CA | 4 | ENE | Livermore | CA |
| 36045 | 7/10/2003 | 133948 | 19 | NE | Fremont | CA | 4 | ENE | Livermore | CA |
| 36045 | 7/10/2003 | 144816 | 19 | NE | Fremont | CA | 4 | ENE | Livermore | CA |
| 36045 | 7/10/2003 | 145325 | 19 | NE | Fremont | CA | 4 | ENE | Livermore | CA |
| 36045 | 7/10/2003 | 145759 | 19 | NE | Fremont | CA | 4 | ENE | Livermore | CA |
| 36045 | 7/10/2003 | 151249 | 19 | NE | Fremont | CA | 4 | ENE | Livermore | CA |
| 36045 | 7/10/2003 | 153244 | 19 | NE | Fremont | CA | 4 | ENE | Livermore | CA |
| 36045 | 7/10/2003 | 164202 | 20 | SSW | Modesto | CA | 6 | WSW | Crows Landing | CA |
| 36045 | 7/10/2003 | 165942 | 36 | S | Modesto | CA | 5 | SSW | Santa Nella | CA |
| 36045 | 7/10/2003 | 180920 | 49 | W | Fresno | CA | 16 | WSW | Mendota | CA |
| 36045 | 7/10/2003 | 191836 | 44 | SW | Visalia | CA | 9 | SSE | Kettleman City | CA |
| 36045 | 7/10/2003 | 202752 | 16 | SSW | Bakersfield | CA | 10 | SSW | Pumpkin Center | CA |
| 36045 | 7/10/2003 | 213709 | 28 | S | Bakersfield | CA | 10 | N | Frazier Park | CA |
| 36045 | 7/10/2003 | 224627 | 34 | NW | Saugus | CA | 2 | SW | Lebec | CA |
| 36045 | 7/10/2003 | 235543 | 34 | NW | Saugus | CA | 2 | SW | Lebec | CA |
| 36045 | 7/11/2003 | 10459 | 2 | SW | San Fernando | CA | 1 | WSW | Mission Hills | CA |
| 36045 | 7/11/2003 | 21416 | 6 | SSE | Santa Ana | CA | 1 | SW | Irvine | CA |
| 36045 | 7/11/2003 | 32332 | 4 | ESE | Oceanside | CA | 3 | WSW | Vista | CA |
| 36045 | 7/11/2003 | 40148 | 12 | NNW | El Cajon | CA | 2 | S | Poway | CA |
| 36045 | 7/11/2003 | 60535 | 12 | NNW | El Cajon | CA | 2 | S | Poway | CA |
| 36045 | 7/11/2003 | 71412 | 12 | NNW | El Cajon | CA | 2 | S | Poway | CA |
| 36045 | 7/11/2003 | 82248 | 12 | NNW | El Cajon | CA | 2 | S | Poway | CA |
| 36045 | 7/11/2003 | 93124 | 12 | NNW | El Cajon | CA | 2 | S | Poway | CA |
| 36045 | 7/11/2003 | 104421 | 12 | NNW | El Cajon | CA | 2 | SSW | Poway | CA |
| 36045 | 7/11/2003 | 110752 | 13 | S | Escondido | CA | 5 | WSW | Poway | CA |
| 36045 | 7/11/2003 | 112526 | 5 | ENE | San Diego | CA | 3 | WNW | La Mesa | CA |
| 36045 | 7/11/2003 | 123249 | 1 | N | San Diego | CA | 1 | N | San Diego | CA |
| 36045 | 7/11/2003 | 143626 | 1 | N | San Diego | CA | 1 | N | San Diego | CA |
| 36045 | 7/11/2003 | 154454 | 1 | N | San Diego | CA | 1 | N | San Diego | CA |
| 36045 | 7/11/2003 | 161334 | 1 | N | San Diego | CA | 1 | N | San Diego | CA |
| 36045 | 7/11/2003 | 182029 | 1 | N | San Diego | CA | 1 | N | San Diego | CA |
| 36045 | 7/11/2003 | 192946 | 13 | E | El Cajon | CA | 2 | E | Alpine | CA |
| 36045 | 7/11/2003 | 203902 | 35 | ESE | El Cajon | CA | 1 | WNW | Boulevard | CA |
| 36045 | 7/11/2003 | 210234 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/11/2003 | 221200 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/11/2003 | 225315 | 35 | ESE | El Cajon | CA | 1 | WNW | Boulevard | CA |
| 36045 | 7/12/2003 | 5701 | 35 | ESE | El Cajon | CA | 1 | WNW | Boulevard | CA |
| 36045 | 7/12/2003 | 20537 | 35 | ESE | El Cajon | CA | 1 | WNW | Boulevard | CA |
| 36045 | 7/12/2003 | 31453 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/12/2003 | 34150 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/12/2003 | 54533 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/12/2003 | 65410 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/12/2003 | 80246 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/12/2003 | 91114 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/12/2003 | 101951 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/12/2003 | 112827 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/12/2003 | 112845 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/12/2003 | 112901 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/12/2003 | 123724 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 36045 | 7/12/2003 | 134600 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/12/2003 | 145436 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/12/2003 | 160313 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/12/2003 | 191908 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/12/2003 | 200947 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/12/2003 | 221225 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/12/2003 | 223123 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 20000000 | 0 | 0 | | | | 0 | | | |
| 36045 | 7/13/2003 | 3509 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/13/2003 | 14345 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/13/2003 | 25213 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/13/2003 | 40041 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/13/2003 | 50919 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/13/2003 | 61756 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/13/2003 | 72632 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/13/2003 | 83508 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/13/2003 | 94344 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/13/2003 | 105220 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/13/2003 | 112730 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/13/2003 | 115029 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/13/2003 | 125946 | 35 | ESE | El Cajon | CA | 1 | WNW | Boulevard | CA |
| 36045 | 7/13/2003 | 141024 | 89 | E | El Cajon | CA | 3 | SSW | Holtville | CA |
| 36045 | 7/13/2003 | 151938 | 141 | WSW | Glendale | AZ | 12 | E | Martinez Lake | AZ |
| 36045 | 7/13/2003 | 162857 | 80 | SW | Glendale | AZ | 15 | ENE | Dateland | AZ |
| 36045 | 7/13/2003 | 173813 | 18 | WSW | Glendale | AZ | 8 | WNW | Goodyear | AZ |
| 36045 | 7/13/2003 | 181706 | 7 | W | Phoenix | AZ | 3 | ENE | Tolleson | AZ |
| 36045 | 7/13/2003 | 192624 | 7 | W | Phoenix | AZ | 3 | ENE | Tolleson | AZ |
| 36045 | 7/13/2003 | 203540 | 7 | W | Phoenix | AZ | 3 | ENE | Tolleson | AZ |
| 36045 | 7/13/2003 | 214456 | 7 | W | Phoenix | AZ | 3 | ENE | Tolleson | AZ |
| 36045 | 7/13/2003 | 225412 | 7 | W | Phoenix | AZ | 3 | ENE | Tolleson | AZ |
| 36045 | 20000000 | 0 | 0 | | | | 0 | | | |
| 36045 | 7/14/2003 | 328 | 7 | W | Phoenix | AZ | 3 | ENE | Tolleson | AZ |
| 36045 | 7/14/2003 | 11244 | 7 | W | Phoenix | AZ | 3 | ENE | Tolleson | AZ |
| 36045 | 7/14/2003 | 22200 | 7 | W | Phoenix | AZ | 3 | ENE | Tolleson | AZ |
| 36045 | 7/14/2003 | 33117 | 7 | W | Phoenix | AZ | 3 | ENE | Tolleson | AZ |
| 36045 | 7/14/2003 | 44033 | 7 | W | Phoenix | AZ | 3 | ENE | Tolleson | AZ |
| 36045 | 7/14/2003 | 54949 | 7 | W | Phoenix | AZ | 3 | ENE | Tolleson | AZ |
| 36045 | 7/14/2003 | 65905 | 7 | W | Phoenix | AZ | 3 | ENE | Tolleson | AZ |
| 36045 | 7/14/2003 | 80821 | 7 | W | Phoenix | AZ | 3 | ENE | Tolleson | AZ |
| 36045 | 7/14/2003 | 91738 | 7 | W | Phoenix | AZ | 3 | ENE | Tolleson | AZ |
| 36045 | 7/14/2003 | 92158 | 7 | W | Phoenix | AZ | 3 | ENE | Tolleson | AZ |
| 36045 | 7/14/2003 | 103115 | 4 | WNW | Tempe | AZ | 3 | NNW | Guadalupe | AZ |
| 36045 | 7/14/2003 | 112350 | 4 | WSW | Tempe | AZ | 2 | WNW | Guadalupe | AZ |
| 36045 | 7/14/2003 | 113505 | 4 | WSW | Tempe | AZ | 2 | WNW | Guadalupe | AZ |
| 36045 | 7/14/2003 | 133820 | 4 | WSW | Tempe | AZ | 2 | WNW | Guadalupe | AZ |
| 36045 | 7/14/2003 | 144648 | 4 | WSW | Tempe | AZ | 2 | WNW | Guadalupe | AZ |
| 36045 | 7/14/2003 | 155516 | 4 | WSW | Tempe | AZ | 2 | WNW | Guadalupe | AZ |
| 36045 | 7/14/2003 | 171054 | 7 | W | Phoenix | AZ | 3 | ENE | Tolleson | AZ |
| 36045 | 7/14/2003 | 182020 | 7 | W | Phoenix | AZ | 3 | ENE | Tolleson | AZ |
| 36045 | 7/14/2003 | 192939 | 28 | WSW | Glendale | AZ | 3 | W | Buckeye | AZ |
| 36045 | 7/14/2003 | 203902 | 90 | SW | Glendale | AZ | 3 | ENE | Dateland | AZ |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 36045 | 7/14/2003 | 215031 | 128 | E | El Cajon | CA | 7 | WNW | Marine Corps Air | AZ |
| 36045 | 7/14/2003 | 224943 | 77 | E | El Cajon | CA | 3 | SW | El Centro | CA |
| 36045 | 7/14/2003 | 235901 | 39 | ESE | El Cajon | CA | 3 | ESE | Boulevard | CA |
| 36045 | 7/15/2003 | 918 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/15/2003 | 2648 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/15/2003 | 21945 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/15/2003 | 32901 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/15/2003 | 43827 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/15/2003 | 54745 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/15/2003 | 65709 | 35 | ESE | El Cajon | CA | 1 | WNW | Boulevard | CA |
| 36045 | 7/15/2003 | 80625 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/15/2003 | 91551 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/15/2003 | 92622 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/15/2003 | 94506 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/15/2003 | 105423 | 7 | NE | El Cajon | CA | 4 | E | Lakeside | CA |
| 36045 | 7/15/2003 | 114201 | 2 | NW | El Cajon | CA | 2 | S | Santee | CA |
| 36045 | 7/15/2003 | 134709 | 2 | NW | El Cajon | CA | 2 | S | Santee | CA |
| 36045 | 7/15/2003 | 150056 | 3 | SW | Chula Vista | CA | 3 | ENE | Imperial Beach | CA |
| 36045 | 7/15/2003 | 150915 | 3 | SW | Chula Vista | CA | 3 | ENE | Imperial Beach | CA |
| 36045 | 7/15/2003 | 153153 | 3 | SW | Chula Vista | CA | 3 | ENE | Imperial Beach | CA |
| 36045 | 7/15/2003 | 164341 | 4 | NNE | Chula Vista | CA | 2 | N | Bonita | CA |
| 36045 | 7/15/2003 | 175257 | 2 | NE | El Cajon | CA | 1 | SW | Bostonia | CA |
| 36045 | 7/15/2003 | 190213 | 8 | NNW | Escondido | CA | 5 | SE | Bonsall | CA |
| 36045 | 7/15/2003 | 201129 | 23 | NNE | Oceanside | CA | 1 | SSE | Rancho Californi | CA |
| 36045 | 7/15/2003 | 212200 | 4 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/15/2003 | 223116 | 5 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/15/2003 | 234033 | 5 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/16/2003 | 3236 | 5 | E | Ontario | CA | 2 | ENE | Guasti | CA |
| 36045 | 7/16/2003 | 23613 | 5 | E | Ontario | CA | 2 | ENE | Guasti | CA |
| 36045 | 7/16/2003 | 34441 | 5 | E | Ontario | CA | 2 | ENE | Guasti | CA |
| 36045 | 7/16/2003 | 45309 | 5 | E | Ontario | CA | 2 | ENE | Guasti | CA |
| 36045 | 7/16/2003 | 60136 | 5 | E | Ontario | CA | 2 | ENE | Guasti | CA |
| 36045 | 7/16/2003 | 71004 | 5 | E | Ontario | CA | 2 | ENE | Guasti | CA |
| 36045 | 7/16/2003 | 81832 | 5 | E | Ontario | CA | 2 | ENE | Guasti | CA |
| 36045 | 7/16/2003 | 92700 | 5 | E | Ontario | CA | 2 | ENE | Guasti | CA |
| 36045 | 7/16/2003 | 103528 | 5 | E | Ontario | CA | 2 | ENE | Guasti | CA |
| 36045 | 7/16/2003 | 110312 | 4 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/16/2003 | 110433 | 4 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/16/2003 | 115825 | 4 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/16/2003 | 130749 | 4 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/16/2003 | 132844 | 5 | E | Ontario | CA | 1 | ENE | Guasti | CA |
| 36045 | 7/16/2003 | 143808 | 5 | E | Ontario | CA | 2 | E | Guasti | CA |
| 36045 | 7/16/2003 | 154725 | 5 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/16/2003 | 165650 | 5 | E | Ontario | CA | 1 | ENE | Guasti | CA |
| 36045 | 7/16/2003 | 180607 | 4 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/16/2003 | 191532 | 5 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/16/2003 | 202449 | 4 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/16/2003 | 213414 | 4 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/16/2003 | 214211 | 4 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/16/2003 | 223944 | 4 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/17/2003 | 1541 | 5 | E | Ontario | CA | 1 | E | Guasti | CA |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 36045 | 7/17/2003 | 12458 | 4 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/17/2003 | 23414 | 5 | E | Ontario | CA | 2 | E | Guasti | CA |
| 36045 | 7/17/2003 | 34330 | 5 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/17/2003 | 45258 | 4 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/17/2003 | 60215 | 4 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/17/2003 | 71140 | 5 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/17/2003 | 72604 | 5 | E | Ontario | CA | 2 | E | Guasti | CA |
| 36045 | 7/17/2003 | 83520 | 2 | NNE | Pomona | CA | 0 | SW | Yorba | CA |
| 36045 | 7/17/2003 | 94436 | 7 | ESE | Thousand Oaks | CA | 2 | ESE | Cornell | CA |
| 36045 | 7/17/2003 | 102829 | 2 | SE | Ventura | CA | 1 | SSE | East Ventura | CA |
| 36045 | 7/17/2003 | 113747 | 5 | E | Santa Barbara | CA | 0 | SE | Montecito | CA |
| 36045 | 7/17/2003 | 122101 | 2 | N | Santa Barbara | CA | 2 | N | Santa Barbara | CA |
| 36045 | 7/17/2003 | 124801 | 2 | N | Santa Barbara | CA | 2 | N | Santa Barbara | CA |
| 36045 | 7/17/2003 | 142439 | 2 | N | Santa Barbara | CA | 2 | N | Santa Barbara | CA |
| 36045 | 7/17/2003 | 153315 | 2 | N | Santa Barbara | CA | 2 | N | Santa Barbara | CA |
| 36045 | 7/17/2003 | 153422 | 2 | N | Santa Barbara | CA | 2 | N | Santa Barbara | CA |
| 36045 | 7/17/2003 | 153827 | 2 | N | Santa Barbara | CA | 2 | N | Santa Barbara | CA |
| 36045 | 7/17/2003 | 164641 | 2 | N | Santa Barbara | CA | 2 | N | Santa Barbara | CA |
| 36045 | 7/17/2003 | 175557 | 1 | NE | Santa Barbara | CA | 1 | NE | Santa Barbara | CA |
| 36045 | 7/17/2003 | 175641 | 1 | NE | Santa Barbara | CA | 1 | NE | Santa Barbara | CA |
| 36045 | 7/17/2003 | 190613 | 7 | WNW | Thousand Oaks | CA | 3 | WNW | Newbury Park | CA |
| 36045 | 7/17/2003 | 201530 | 2 | SSE | Van Nuys | CA | 1 | ENE | Sherman Oaks | CA |
| 36045 | 7/17/2003 | 212647 | 5 | N | West Covina | CA | 1 | SW | Azusa | CA |
| 36045 | 7/17/2003 | 223603 | 5 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/17/2003 | 234519 | 5 | E | Ontario | CA | 2 | ENE | Guasti | CA |
| 36045 | 7/18/2003 | 5640 | 4 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/18/2003 | 5938 | 5 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/18/2003 | 30325 | 5 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/18/2003 | 41201 | 5 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/18/2003 | 52037 | 5 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/18/2003 | 62914 | 5 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/18/2003 | 73740 | 5 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/18/2003 | 84619 | 5 | E | Ontario | CA | 1 | E | Guasti | CA |
| 36045 | 7/18/2003 | 95701 | 5 | E | Ontario | CA | 1 | ENE | Guasti | CA |
| 36045 | 7/18/2003 | 110617 | 22 | NNE | Oceanside | CA | 1 | SSE | Rancho Californi | CA |
| 36045 | 7/18/2003 | 121541 | 11 | N | San Diego | CA | 6 | SW | Poway | CA |
| 36045 | 7/18/2003 | 124504 | 2 | NW | El Cajon | CA | 2 | S | Santee | CA |
| 36045 | 7/18/2003 | 131411 | 2 | NW | El Cajon | CA | 2 | S | Santee | CA |
| 36045 | 7/18/2003 | 132435 | 2 | NW | El Cajon | CA | 2 | S | Santee | CA |
| 36045 | 7/18/2003 | 140714 | 2 | NW | El Cajon | CA | 2 | S | Santee | CA |
| 36045 | 7/18/2003 | 141215 | 2 | NW | El Cajon | CA | 2 | S | Santee | CA |
| 36045 | 7/18/2003 | 152131 | 3 | NW | El Cajon | CA | 2 | S | Santee | CA |
| 36045 | 7/18/2003 | 163047 | 23 | E | El Cajon | CA | 2 | SSE | Guatay | CA |
| 36045 | 7/18/2003 | 170654 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/18/2003 | 191038 | 35 | ESE | El Cajon | CA | 1 | W | Boulevard | CA |
| 36045 | 7/18/2003 | 201955 | 52 | E | El Cajon | CA | 5 | SW | Ocotillo | CA |
| 36045 | 7/18/2003 | 212911 | 118 | E | El Cajon | CA | 14 | NNW | Gadsden | AZ |
| 36045 | 7/18/2003 | 223830 | 115 | WSW | Glendale | AZ | 7 | WSW | Tacna | AZ |
| 36045 | 7/18/2003 | 234908 | 44 | SW | Chandler | AZ | 19 | ESE | Gila Bend | AZ |
| 36045 | 7/19/2003 | 1522 | 33 | S | Chandler | AZ | 6 | SW | Casa Grande | AZ |
| 36045 | 7/19/2003 | 20724 | 26 | SE | Tucson | AZ | 17 | W | Benson | AZ |

9

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 36045 | 7/19/2003 | 31640 | 93 | E | Tucson | AZ | 7 | WNW | Portal | AZ |
| 36045 | 7/19/2003 | 33116 | 99 | E | Tucson | AZ | 1 | WNW | Portal | AZ |
| 36045 | 7/19/2003 | 53348 | 99 | E | Tucson | AZ | 1 | WNW | Portal | AZ |
| 36045 | 7/19/2003 | 64224 | 99 | E | Tucson | AZ | 1 | WNW | Portal | AZ |
| 36045 | 7/19/2003 | 75100 | 99 | E | Tucson | AZ | 1 | WNW | Portal | AZ |
| 36045 | 7/19/2003 | 90141 | 94 | W | Las Cruces | NM | 22 | NE | Playas | NM |
| 36045 | 7/19/2003 | 100710 | 12 | WSW | Las Cruces | NM | 6 | W | Mesilla | NM |
| 36045 | 7/19/2003 | 101242 | 6 | WSW | Las Cruces | NM | 2 | N | Mesilla | NM |
| 36045 | 7/19/2003 | 104717 | 17 | NNW | El Paso | TX | 2 | NE | Anthony | TX |
| 36045 | 7/19/2003 | 110255 | 14 | NNW | El Paso | TX | 1 | N | Canutillo | TX |
| 36045 | 7/19/2003 | 113755 | 16 | ESE | El Paso | TX | 3 | SW | Horizon City | TX |
| 36045 | 7/19/2003 | 125021 | 65 | SE | El Paso | TX | 15 | W | Sierra Blanca | TX |
| 36045 | 7/19/2003 | 151822 | 84 | SW | Odessa | TX | 22 | ESE | Saragosa | TX |
| 36045 | 7/19/2003 | 162950 | 78 | SSW | Odessa | TX | 11 | W | Fort Stockton | TX |
| 36045 | 7/19/2003 | 164303 | 73 | SSW | Odessa | TX | 1 | W | Fort Stockton | TX |
| 36045 | 7/19/2003 | 175540 | 80 | SSE | Odessa | TX | 8 | NW | Sheffield | TX |
| 36045 | 7/19/2003 | 190818 | 134 | SE | Midland | TX | 4 | E | Sonora | TX |
| 36045 | 7/19/2003 | 202408 | 68 | NW | San Antonio | TX | 5 | E | Mountain Home | TX |
| 36045 | 7/19/2003 | 213646 | 5 | SE | San Antonio | TX | 4 | S | Fort Sam Houston | TX |
| 36045 | 7/19/2003 | 220258 | 9 | E | San Antonio | TX | 2 | SE | Kirby | TX |
| 36045 | 7/19/2003 | 231425 | 57 | SE | Austin | TX | 1 | ENE | Flatonia | TX |
| 36045 | 7/20/2003 | 2341 | 26 | W | Houston | TX | 3 | WSW | Katy | TX |
| 36045 | 7/20/2003 | 13446 | 12 | NE | Pasadena | TX | 2 | SE | Highlands | TX |
| 36045 | 7/20/2003 | 14706 | 12 | NE | Pasadena | TX | 2 | SE | Highlands | TX |
| 36045 | 7/20/2003 | 32953 | 12 | NE | Pasadena | TX | 2 | SE | Highlands | TX |
| 36045 | 7/20/2003 | 34000 | 12 | NE | Pasadena | TX | 2 | SE | Highlands | TX |
| 36045 | 7/20/2003 | 54337 | 12 | NE | Pasadena | TX | 2 | SE | Highlands | TX |
| 36045 | 7/20/2003 | 65205 | 12 | NE | Pasadena | TX | 2 | SE | Highlands | TX |
| 36045 | 7/20/2003 | 80033 | 12 | NE | Pasadena | TX | 2 | SE | Highlands | TX |
| 36045 | 7/20/2003 | 90949 | 12 | NE | Pasadena | TX | 2 | SE | Highlands | TX |
| 36045 | 7/20/2003 | 101905 | 12 | NE | Pasadena | TX | 2 | SE | Highlands | TX |
| 36045 | 7/20/2003 | 110108 | 12 | NE | Pasadena | TX | 2 | SE | Highlands | TX |
| 36045 | 7/20/2003 | 123618 | 16 | NE | Pasadena | TX | 4 | SW | Mont Belvieu | TX |
| 36045 | 7/20/2003 | 134534 | 17 | E | Beaumont | TX | 3 | N | Orangefield | TX |
| 36045 | 7/20/2003 | 135739 | 18 | E | Beaumont | TX | 3 | W | Orange | TX |
| 36045 | 7/20/2003 | 150850 | 10 | W | Lake Charles | LA | 2 | SW | Sulphur | LA |
| 36045 | 7/20/2003 | 152425 | 0 | NNW | Lake Charles | LA | 0 | NNW | Lake Charles | LA |
| 36045 | 7/20/2003 | 162038 | 0 | NNW | Lake Charles | LA | 0 | NNW | Lake Charles | LA |
| 36045 | 7/20/2003 | 173341 | 34 | W | Lafayette | LA | 2 | SW | Evangeline | LA |
| 36045 | 20000000 | 0 | 0 | | | | 0 | | | |
| 36045 | 20000000 | 0 | 0 | | | | 0 | | | |

L

## PRELIMINARY OPINION

### STATEMENT RE: GUERRA ET. AL VS. ALLIED VAN LINES
### ACCIDENT OCCURING AT APPROXIMATELY 5:07 P.M. ON JULY 20, 2003

WILLIAM C. DEMENT, M.D., Ph.D.
Stanford University
May 3, 2004

To whom it may concern:

This is a preliminary opinion. It may be revised following additional, careful scrutiny of the relevant documents.

The following factors were taken into account in reaching an opinion about the role of fatigue in the accident:

1. **The nature of the accident. Was the accident due to human error?**
   Traffic began to slow to a stop due to a previous crash on eastbound I10. The visibility of the road ahead was completely unimpaired and the driver was not looking into the sun. The Allied Van Line truck was said by witnesses to be moving at a speed in excess of 60mph. The impact must have been at such a high speed because the crash was so damaging. The Allied Van Line truck apparently made no attempt to slow, brake, or avoid the line of trucks and cars. The failure of driver number one (Mr. Gorski) to avoid the crash was an egregious human error.

2. **The age and general health of the driver (person thought to be cause of incident/accident):**
   Aside from being a cigarette smoker there was no indication of a health problem in the documents reviewed. The male driver was 47 years old.

3. **Time of Day:**
   The accident occurred between 5:10 and 5:20pm. This time of day is generally within the nadir of midday circadian alertness.

4. **Duration of continued wakefulness prior to accident:**
   It appears that the driver, Mr. Gorski, had been awake about six and one half hours up to the crash. Prior to this, he is reported to be in the sleeper berth approximately eight hours.

5. **Prior sleep history and likelihood of accumulated sleep debt:**
   Reconstructed driver's daily logs suggest the possibility that Mr. Gorski was continuously awake for an estimated maximum of 42 hours, followed by (as noted in #4) a possible 8 hours in the sleeper berth prior to his final period of wakefulness and driving. During this 42 hour period, he may have been asleep in the sleeper berth one or two hours and there were several relatively brief periods logged as "off duty." When "on duty" is logged, Mr. Gorski is assumed to be awake. There is other documentation

*Guerra et al. Vs. Allied Van Lines*
*Preliminary Opinion*

*1 of 2*

that hours of service regulations were violated. These data plus the nature of the accident strongly suggest that Mr. Gorski had accumulated a sleep debt of major magnitude.

**6. Presence of disordered sleep:**
   No information was supplied regarding possible sleep disorders.

**Opinion:**
   The cause of the accident involved an egregious error on the part of driver number one. Such an error is almost always caused by a lapse of consciousness. In a healthy younger or middle-aged persons, the only highly probable direct causes of such a lapse are sleep deprivation (fatigue) or drugs and alcohol. Drugs and alcohol were not found in the driver's remains. Since a strong sleep tendency due to sleep deprivation is only weakly opposed by circadian alerting in the afternoon, it is my very firm opinion that the cause of the accident was the impaired consciousness of driver number one due to sleep deprivation and fatigue.

Opinions were based on the documents provided for review and the studies listed as references on the report.

William C. Dement, M.D., Ph.D.

# References

1. Effects of Sleep Schedules on Commercial Motor Vehicle Driver Performance. U.S. Department of Transportation. Federal Motor Carrier Safety Administration: Report No. DOT-MC-00-133, May 2000
   * The above studies show that many drivers remain pathologically sleepy when awake after three consecutive full nights of sleep and no driving in the daytime.

2. Wake Up America: a national sleep alert. Final report of the National Commission on Sleep Disorders Research to the U.S. Congress, 1993. Chairman, William C. Dement

3. Carskadon, M.A., Dement, W.C., Mitler, M.M., Roth, T., Westbrook, P.R., Keenan, S. Guidelines for the Multiple Sleep Latency Test (MSLT): a standard measure of sleepiness. Sleep 9(4):519-524, 1986

4. Dement, WC, The perils of drowsy driving (editorial), New England Journal of Medicine 337 (11): 783-4 Sept. 1997

5. Rosekind, M.R., Gregory, K.B., Miller, D.L., Co, ElL., & lebacqz, J.V. Analysis of Crew Fatigue Factors in AIA Guantanamo Bay Aviation Accident. In Aircraft Accident Report: Uncontrolled Collision with Terrain, American International Airways Flight 808, Douglas DC-8, N814CK, U.S. Naval Air Station, Guantanamo Bay, Cuba, August 18, 1993 (NTSB/AAR-94/04). Washington, DC: National Transportation Safety Board. 1994. (NTIS No. PB94-910406).

6. Pack, A.I., Pack, M.A., Rodgman, E., Cucchiara, A., dinges, D.F., and Schwab, C.W. Characteristics of crashes attributed to the driver having fallen asleep. Accident Analysis and Prevention, 1995, 27(6):769-775

7. Mitler MM, Miller JC, Lipsits JJ, Walsh JK, Wylie CD. The sleep of long-haul truck drivers. N Engl J Med 1997; 337:755-61

8. Factors that affect fatigue in heavy truck accidents. Vol 1. Analysis. Washington, D.C.: National Transportation Safety Board, 1995. (Safety study NTSB/SS-95/01)

9. Pack Al, Pack AM, Rodgman E, Cucchiara A, dinges DF, Schwab CW. Characteristics of crashes attributed to the driver having fallen asleep. Accid Anal Prev 1995; 27:769-75

**Appendix H**

**Excerpts from Witness Statements**
**Louisiana State Police Uniform Motor Vehicle Traffic Crash Report**
**Tfc. Harold Williams**

(1) **Jeffrey Hebert** stated—"the Allied Van Line 18 wheeler was coming at a great amount of speed when he hit the back car. Then he kept on swivering [sic] into the opposite lane where he hit the white truck and it caught fire instantly. Then he hit several other vehicles before coming to a stop." App. E-1, at p. 38.

(2) **Dr. Ken S. LeBlanc** stated—the traffic was stopped and he "was about 1/4 mile behind when the Orange Allied Van 18 wheeler passed me on my left. I was traveling approx. 60 when the van passed me on my left at at [sic] least 10 mph faster than me. The next thing I saw was the Orange Allied Van plow into the rear of the stopped traffic. I saw a white SUV fly up in the air and burst into flames, then another 2-3 vehicles .... all at the same time. It appeared that the Allied Van was still traveling at a fair rate of speed when he hit due to the significant "Domino" effect that I saw. My 2 daughters were afraid to let me go try to help the injured due to the massive fire. I was the 1ˢᵗ vehicle behind the accident, 2-3 seconds faster I would have been in it. In my opinion, the entire accident was caused by the Allied Van lin (Orange) 18 wheeler. He failed to slow down." App. E-1, at p. 39.

(3) **Gerald D. Valentine** stated—"All of a sudden a Allied Van Line 18 wheeler came blowing by us at a very high rate of speed. The driver did not even seem to slow until he was right on top of the dead still traffic. The 18 wheel wheeler careened off another 18 wheeler, then smashed into a white Suburban, then kept smashing cars for a long distance. The Suburban and other vehicles caught fire immediately causing deaths and severe casualties." App. E-1, at p. 41.

(4) **Shawn Miller** stated—"Traffic came to a stand still on Atchafalaya swamp freeway bridge. I was in the right hand lane next to an 18 wheeler. I looked in the rear view mirror & saw an orange Allied 18 wheeler coming right behind me very fast. I knew it was not going to stop so I started to pull of the road to the side. The 18 wheeler hit me & kept going & I saw it hit a white vehicle & kept going. Then it blew up – couldn't see anything else." App. E-1, at p. 42.

(5) **Lisa M. Guerra** stated —"On July 20, 2003, my family and I were traveling on I-10 eat in the outside lane. We approached slow moving traffic and my father also slowed down. There were several moving vehicles ahead of us who slowed down for unknown reasons. Suddenly our van was struck from the rear and I was thrown out onto the road. When I looked back our van was on fire and started to move back to avoid the flames." App. E-1, at p. 43.

-1-

(6) **Mathew Voelkel** stated—"I was a passenger in a van going east on I-10 we slowed down for an accident in front of us and then I heard tires lock up and we were hit by a white van that was hit by a semi truck and then we got out and saw a woman on fire!!!" App. E-1, at p. 44.

(7) **James Robby Brimer** stated—"I, Rob Brimer, come around curve 1.5 miles b/4 accident and seen traffic was stopped. I turned on my 4 way flashers to warn traffic & slowed to a stop. I looked in my mirror and saw Allied transfer in right lane change to left lane, the lane I was in, and then change back to the right lane to avoid hitting my rear. In doing so the Allied transfer clipped my trailer, on the right side, causing it to burst into flames. Then the Allied truck slid into left rail on bridge and came to a stop. At that time I tried to help as much as I could." App. E-1, at p. 45.

(8) **Jason Bybee** stated—"I was the passenger in the front driver side my wife Kristin yelled hold on and I looked in the passenger side mirror to see the Orange Allied Truck hit the white truck behind us and swerve into the left hand lane. After the initial crash we sat for a few moments in shock from the impact until matt said that girl is on fire, I grabbed a sheet and jumped out of the van and proceeded to beat the flames out o[f] the little girl who was running down the road , then checked my wife and friend were ok and moved back up the road where the allied truck started to let of explosions." App. E-1, at p. 46.

(9) **Kristin Bybee** stated—"I was driving and saw a tow truck on the r.h. side of the Hwy & it looked like there were cars stopped in the road up ahead about 100 ft. or so, so I immediately slowed down and got in the r.h. lane I think we came to a stop and all of a sudden we heard crashing behind us and I looked in the mirror and saw the orange Allied truck plowing through and debris flying and next thing I know we were hit from behind. When we were able to get out, we saw the lady on fire behind us from the white van." App. E-1, at p. 47.

(10) **Chad A. Dunn** stated—"On I-10 the last town I remember was Breau Bridge. I remember a sign "Landry's" & though about a place for all of us to eat. I remember approaching the bridge but don't recall being stopped. The next thing I remember was I was walking around and a couple of paramedics asked me "what I was doing?" I don't remember the timing but I remember going to the emergency room. They wheeled me into the emergency dept, examined me & had a brain CT & chest X-ray. I do remember that Melissa was asleep on the back seat & Karla was in the front passenger seat asleep. They both had their seat belt on." App. E-1, at p. 48.

(11) **Paul C. Brown** stated—"I was traveling eastbound I-10 at mile mkr 123 slowing to traffic conquestion [sic] because of an accident ahead merging traffic was to a stop & go crawl I was hit from the rear of my vehicle. I got out saw flames then tried to call for help." App. E-1, at p. 49.

(12) **Lea Guidry** stated— "was driving down I-10 and saw that the traffic ahead on the bridge was stopped. I slowed and got into the right hand lane and came to a complete stop. I looked in my rearview and saw the orange eighteen wheeler coming very fast and he plowed through all of us who were stopped. My car spun and all I could see was flying glass, smoke & fire. I got out of my car and saw a young girl on fire. People put her out and carried her away. I don't know what else happened." App. E-1, at p. 50.

(13) **Ray Ronquillo III** stated—"Traffic was slowing in front of us. I looked back & my wife was slowing down behind me. I figured everything would be fine because cars were slowing down on both sides. Out of no where I see smoke & particals flying everywhere. I held on tight & was hit out of the left lane across the right lane & with a lot of force we were thrown into the gaurd [sic] rail. A big orange 18 wheeler was on fire next to us & exploding. I rush to my two kids & we crawled out of the back of the sequoia we were in. I took my two kids to get my wife who was driving the sienna van behind us. She was bleeding pretty bad & at that time I carried her out of van to the police car. The only thing I could get out of my wife was she kept asking was she going to live & her back was killing her." App. E-1, at p. 51; *see also id.* at pp. 53-7.

(14) **Paul M. Trahan** stated—"While traveling east bound on I-10 Atch Basin bridge I was in right lane slowing down due to stalled traffic. I may have been going about 10 miles an hour when I heard a collision then felt myself being hit from rear. Went to right and stopped saw orange blur going by. Stopped my vehicle assisted putting girl out that was on fire and assisted where I could." App. E-1, at p. 52.

(15) **Richard R. Reed** stated—"While driving east on I-10 traffic began to slow in front of me. I was in the right hand lane. As I slowed down I, at first, heard behind me a crash, I quickly looked in my outside mirror and saw a large semi-tractor trailer on fire coming up on my left. I moved over to the right as far as I could and kept moving. Traffic seemed to stop - but then the semi-truck and fire started moving forward again - the way in front of my opened up and we "hit the gas" and moved forward as much as possible. Once in the relative clear I got out of my vehicle to run back to the wreck to see if I could help. Three other men did also. The fire at the back of the front tractor-trailer and the car that I now see smashed into it was raging. Explosions were going off (someone later told me it was tires popping. One man (later I learned was Chat Dunn) was climbing out of the window. He staggered past us. One of the three men got a fire extinguisher on the car in the back of the Lead semi-truck - but did very little. I ran back to my vehicle a got my small fire extinguisher but" App. E-1, at p. 58.

(16) **Noble Spear** stated—"While driving in the right lane on the bridge the blue Jeep Cherokee was hit from behind by on 18 wheeler and pinned the Cherokee into the back of another 18 wheeler. The Cherokee instantly burst into flames. We got out of the way and stopped to help. They had already pulled a man out of the Cherokee, but we couldn't pull the lady out because she was trapped in the burning wreck. We stayed to see if we could help at all but the flame were too hot and there were many explosions." App. E-1, at p. 59.

(17) **Andrew Hebert** stated—"Cars were stopped, I was in right lane next to truck. Happened so quickly, but it looks like the car was stopped behind a 18 wheeler and another 18 wheeler was coming to fast and hit the car and crashed it between both 18 wheelers. I get out the way with my vehicle and ran to the second truck, the driver was burning but I couldn't get close enough to help because the flames were so hot. I ran to the other side and the 'Jeep' was on fire. I grabbed a fire ext. and put out most of the flames on the "Jeep". The passenger was on fire and looked to be trapped so I jumped to the driver and pulled him out and that is all we, I could do." App. E-1, at p. 60.

1

```
 1              IN THE UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF TEXAS
 2                     BROWNSVILLE DIVISION

 3    GUADALUPE & AMELIA GUERRA )(
      INDIVIDUALLY AND GUADALUPE)(
 4    GUERRA AS ADMINISTRATOR OF)(
      THE ESTATE OF CINDY GUERRA)(
 5    DECEASED; AMELIA GUERRA AS)(
      TEMPORARY GUARDIAN OF THE )(
 6    PERSON AND ESTATE OF LISA )(
      GUERRA, AN INCAPACITATED   )(
 7    PERSON; RENE GARZA AND     )(
      PATRICIA GARZA,            )(
 8    INDIVIDUALLY AND RENE      )(
      GARZA AS ADMINISTRATOR OF  )( CIVIL ACTION NO. B-03-142
 9    THE ESTATE OF JENNIFER     )(   TRIAL BY JURY REQUESTED
      GARZA, DECEASED; AND       )(
10    GRACIELA MARROQUIN AS      )(
      TEMPORARY GUARDIAN OF THE  )(
11    PERSON AND ESTATE OF JOSE  )(
      ANGEL ALFARO, JR., AN      )(
12    INCAPACITATED PERSON       )(
               Plaintiffs        )(
13    VS.                        )(       ORIGINAL
                                 )(
14    ALLIED VAN LINES, INC.     )(
               Defendant         )(
15    _____

16
              ORAL AND VIDEOTAPED DEPOSITION OF
17                      MARK DAVISON
                     FEBRUARY 11, 2004
18
      _____
19
      _____
20         ORAL AND VIDEOTAPED DEPOSITION OF MARK DAVISON,
      produced as a witness at the instance of the
21    PLAINTIFFS, taken in the above styled and numbered
      cause on FEBRUARY 11, 2004, reported by PEGGY BRYANT,
22    Certified Court Reporter No. 1208, in and for the State
      of Texas, at the offices of Adams & Graham, L.L.P., 222
23    East Van Buren, West Tower, Harlingen, Texas, pursuant
      to the Federal Rules of Civil Procedure.
24

25
```

2

1                              APPEARANCES

2          COUNSEL FOR PLAINTIFFS:

3              RICHARD WARREN MITHOFF
               WILLIAM J. STRADLEY
4              JANIE L. JORDAN
               MITHOFF & JACKS, L.L.P.
5              One Allen Center - Penthouse
               500 Dallas, Suite 3450
6              Houston, Texas  77002

7

           COUNSEL FOR DEFENDANT:
8
               TOM LOCKHART
9              ADAMS & GRAHAM, L.L.P.
               222 East Van Buren, West Tower
10             Harlingen, Texas  78550

11

12         ALSO PRESENT:  Braden Walker, Videographer
                          Chris Shifflett
13

14

15                               INDEX

16                                                        PAGE
      Appearances .................................    2
17
      MARK DAVISON
18    Examination by Mithoff ......................    4

19    Errata Sheet/Signature Page .................   86

20    Reporter's Certificate ......................   87

21

22

23

24

25

4

|  |  |
|---|---|
| 1 | MARK DAVISON, |
| 2 | having been duly sworn, testified as follows: |
| 3 | EXAMINATION |
| 11:05 4 | BY MR. MITHOFF: |
| 11:10 5 | Q.  State your full name, please, sir. |
| 11:10 6 | A.  Mark Wayne Davison. |
| 11:10 7 | Q.  Mr. Davison, my name is Richard Mithoff.  I'm |
| 11:10 8 | one of the lawyers representing several families |
| 11:10 9 | involved in the tragic accident that has brought us |
| 11:10 10 | here.  You understand that? |
| 11:10 11 | A.  Sure. |
| 11:10 12 | Q.  I understand that you are with Allied Van |
| 11:10 13 | Lines, Inc.; is that correct? |
| 11:10 14 | A.  That's correct. |
| 11:10 15 | Q.  What is your title or position, please? |
| 11:10 16 | A.  I'm the director of safety administration. |
| 11:10 17 | Q.  How long have you held that position? |
| 11:10 18 | A.  Since 2000. |
| 11:11 19 | Q.  And prior to that, were you with Allied in one |
| 11:11 20 | or more other capacities? |
| 11:11 21 | A.  Actually, I was with North American Van Lines |
| 11:11 22 | -- in the safety department with North American Van |
| 11:11 23 | Lines. |
| 11:11 24 | Q.  Okay.  And then there was a merger, as I |
| 11:11 25 | understand it, between Allied and North American? |

11:48  1    heading Driver Record of Duty Status are in error?

11:48  2        A.  No, I don't.

11:48  3        Q.  He states, as you know, that he reviewed

11:48  4    records of duty status for the previous six months,

11:48  5    along with supporting documents.  Have all of those

11:48  6    documents been provided to us or do you know?

11:49  7        A.  I actually believe you may have gotten more

11:49  8    than he had requested.

11:49  9        Q.  So to the best of your knowledge, all of those

11:49 10    have been provided to us, plus perhaps more?

11:49 11        A.  Yes.

11:49 12        Q.  And he goes on to say that Allied provided him

11:49 13    with those records up to July the 13th of '03 and that

11:49 14    presumably the documents from July 14, '03 through July

11:49 15    20 were consumed in the fire.

11:49 16        A.  That's our guess, yes.

11:49 17        Q.  He says that he examined the two-week period

11:49 18    from June 30, '03 to July 13, '03, and determined,

11:49 19    using supporting documents, that there was a distinct

11:49 20    pattern of inaccurate and/or false entries in those

11:50 21    records.  I assume you have not done any independent

11:50 22    research that would indicate that that is a false

11:50 23    conclusion?

11:50 24        A.  We have not done an independent study

      25    ourselves.

32

11:50  1      Q.  Do you believe that to be an accurate

11:50  2   conclusion based on his study?

11:50  3      A.  Yes, I do.

11:50  4      Q.  He then goes through and itemizes each of those

11:50  5   failures, which I won't take you through now because

11:50  6   you have obviously been through them, and concludes

11:50  7   that, "It is apparent that there were several times

11:50  8   that the duty status record was falsified in an attempt

11:50  9   to conceal hours of on-duty time and also the driving

11:50 10   time it took to get to the locations.  It is also my

11:50 11   opinion that Mr. Gorski exceeded the 10-hour driving

11:50 12   rule on 7-19-03 by two to five -- by two to four

      13   hours."

11:51 14           And you believe that to be an accurate

11:51 15   statement as well based on his investigation?

11:51 16      A.  Yes, I do.

11:51 17      Q.  And finally, he concludes that it is his

11:51 18   opinion that Mr. Gorski was apparently fatigued and

11:51 19   possibly distracted at the time of the crash.  Do you

11:51 20   have any reason to disagree with that conclusion?

11:51 21      A.  It could have been.  Those are two possible

11:51 22   explanations, but they are different explanations.

11:51 23      Q.  Although you would agree that sometimes a

11:51 24   person who is fatigued could be more easily distracted

11:51 25   than one who is not, so they could be related?

```
 1              IN THE UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF TEXAS
 2                   BROWNSVILLE DIVISION

 3   GUADALUPE & AMELIA GUERRA ) (
     INDIVIDUALLY AND GUADALUPE) (
 4   GUERRA AS ADMINISTRATOR OF) (
     THE ESTATE OF CINDY GUERRA) (
 5   DECEASED; AMELIA GUERRA AS) (
     TEMPORARY GUARDIAN OF THE ) (
 6   PERSON AND ESTATE OF LISA ) (
     GUERRA, AN INCAPACITATED  ) (
 7   PERSON; RENE GARZA AND     ) (
     PATRICIA GARZA,           ) (
 8   INDIVIDUALLY AND RENE      ) (
     GARZA AS ADMINISTRATOR OF ) ( CIVIL ACTION NO. B-03-142
 9   THE ESTATE OF JENNIFER     ) (  TRIAL BY JURY REQUESTED
     GARZA, DECEASED; AND       ) (
10   GRACIELA MARROQUIN AS      ) (
     TEMPORARY GUARDIAN OF THE ) (
11   PERSON AND ESTATE OF JOSE ) (
     ANGEL ALFARO, JR., AN      ) (
12   INCAPACITATED PERSON       ) (
             Plaintiffs         ) (
13   VS.                        ) (
                                ) (
14   Allied VAN LINES, INC.     ) (
             Defendant          ) (
15
                       REPORTER'S CERTIFICATE
16

17        I, PEGGY BRYANT, Certified Court Reporter in

18   and for the State of Texas, certify that the witness,

19   MARK DAVISON, was duly sworn by me, and that the

20   deposition is a true and correct record of the

21   testimony given by the witness on FEBRUARY 11, 2004;

22   that the deposition was reported by me in stenograph

23   and was subsequently transcribed by me or under my

24   supervision.

25        I FURTHER CERTIFY that I am not a relative,
```

1    employee, attorney or counsel for any of the parties,

2    nor a relative or employee of such attorney or counsel,

3    nor am I financially interested in the action.

4        WITNESS MY HAND on this the *16th* day of

5    *February*_____, 2004.

6

7

8    _____
     PEGGY BRYANT, Texas CSR 1208
9    Expiration Date:  12-31-04
     Firm Registration No. 41
10   Bryant & Stingley, Inc.
     2010 East Harrison
11   Harlingen, Texas  78550
     (956) 428-0755
12

13

14

15

16

17

18

19

20

21

22

23

24

25