

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUL 1 2 2004

Michael N. Milby
Clerk of Court

| | |
|---|---|
| GUADALUPE AND AMELIA GUERRA, § | |
| INDIVIDUALLY AND GUDALUPE § | |
| GUERRA AS ADMINISTRATOR § | |
| OF THE ESTATE OF CINDY GUERRA, § | |
| DECEASED; AMELIA GUERRA AS § | |
| TEMPORARY GUARDIAN OF THE § | |
| ESTATE AND PERSON OF LISA § | |
| GUERRA, AN INCAPACITATED § | |
| PERSON; RENE GARZA AND § | |
| PATRICIA GARZA, INDIVIDUALLY § | |
| AND RENE GARZA AS § | |
| ADMINISTRATOR OF THE ESTATE § | |
| OF JENNIFER GARZA, DECEASED; § | |
| GRACIELLA MARROQUIN AS § | CIVIL ACTION NO. B-03-142 |
| TEMPORARY GUARDIAN OF THE § | |
| ESTATE AND PERSON OF § | |
| JOSE ANGEL ALFARO, JR., § | |
| AN INCAPACITATED PERSON § | |
| § | |
| VS. § | |
| § | |
| ALLIED VAN LINES, INC. § | |

## DEFENDANT'S RESPONSE IN SUPPORT OF THIS COURT'S TRANSFER ORDER AND OPPOSITION TO PLAINTIFFS' MOTION TO RECONSIDER

**Tom Lockhart**
**Roger W. Hughes**
**ADAMS & GRAHAM, L.L.P.**
P. O. Drawer 1429
Harlingen, TX 78551-1429

**John W. Waters, Jr.**
**BIENVENU, FOSTER, RYAN**
**& O'BANNON**
1010 Common Street, Suite 2200
New Orleans, LA 70112-2401

**ATTORNEYS FOR DEFENDANT**
**ALLIED VAN LINES**

# TABLE OF CONTENTS

Page:

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.  The Federal Regulations On Which Plaintiffs Seek Reconsideration At
    Most Serve An Evidentiary Purpose, And Do Not Afford Plaintiffs A
    Private Cause Of Action. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.  All the States Through Which Gorski Drove Adopt the Same
        Federal Regulations at Issue. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.  Texas Regulations Are at Best Evidentiary About the Standard
        of Care, and the Louisiana District Court will Decide Whether
        Texas Law Applies. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    C.  The Evidence Pertaining To The Regulations Does Not Emanate
        From Texas, Increase Texas' Interest in the Case, or Strengthen
        Plaintiffs' Claim That Venue Is More Appropriate There. . . . . . . . 7

II. Plaintiffs' Repeat Arguments Add Nothing New And Were Fully
    Considered By This Court Prior To Its Decision To Transfer This
    Case To The District Where Three Other Suits Arising From The
    Same Accident Are Pending. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    A.  The Location and Convenience of All the Material Non-Party
        Witnesses Must be Considered. . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    B.  Plaintiffs' Physical Condition is Not a New Issue
        Nor Is It Decisive. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    C.  The Possibility of Delay is Not a New Issue Nor Does it
        Weigh in Their Favor. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    D.  The Public Interest Factors Still Do Not Favor Retaining
        Venue In Texas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

III. Plaintiffs' New Arguments Based On Federal Regulations Lack
     Merit And Are Waived. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Certificate of Service  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

Page:

Cites:

*Cates v. Creamer,* 2001 U.S. Dist. Lexis 12533 .............................. 7-9

*Continental Grain Co. v. The Barge FBL-585,*
    364 U.S. 19 (1960) .............................................. 12

*Fletcher v. Southern Pac. Transp.,* 648 F.Supp. 1400
    (E.D.Tex. 1986) ................................................ 11

*Freudiger v. Keller,* 104 S.W.3d 294
    (Tex. App.–Texarkana 2003) ....................................... 7

*Hess v. Gray,* 85 F.R.D. 15 (D.C.Ill. 1979) ..................................... 10

*In re VOLKSWAGEN AG; Volkswagen of America, Inc.,*
    — F.3d —, 2004 WL 1098840 (5th Cir., May 18, 2004) ................... 10

*Lemery v. Ford Motor Co.,* 244 F.Supp.2d 720
    (S.D. Tex. 2002) ............................................... 12

*Lowe v. General Motors Corp.,* 624 F.2d 1373
    (5th Cir. 1980) ................................................. 5

*Morgan v. Ill. Cent. R. Co.,* 161 F.Supp. 119
    (S.D.Tex. 1958) ................................................ 11

*Paul v. Internat'l Precious Metals,* 613 F.Supp. 174
    (D.C.Miss. 1985) ............................................... 10

*Perkins v. Dynasty Group Auto,* 2003 Tex. App. Lexis 1046
    (Tex. App.–El Paso 2003, no pet.) ................................. 7, 9

*Savers Fed. Sav. & Loan Ass'n v. Reetz,* 888 F.2d 1497
    (5th Cir. 1989) ................................................. 2

*Trust Co. Bank v. U.S. Gypsum Co.,* 950 F.2d 1144
    (5th Cir. 1992) ................................................. 2

*Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665
    (5th Cir. 2003) ............................................................... 7, 8

*Vizcarra v. Roldan*, 925 S.W.2d 89
    (Tex. App.–El Paso 1996, no writ) ..................................... 8


<u>Federal Statutes:</u>

28 U.S.C. §1391(a)(2) ........................................................... 9

28 U.S.C. §1404 ............................................................... 3, 10

42 U.S.C. §31100 ................................................................ 4

42 U.S.C. §31102 ................................................................ 3

42 U.S.C. §31103 ................................................................ 3


<u>Texas Administrative Code:</u>

§4.11 ........................................................................ 4, 6

§4.12 ......................................................................... 4


<u>Treatises:</u>

RESTATEMENT (SECOND) OF TORTS § 288 ..................................... 6


<u>Louisiana Administrative Code:</u>

§10303 ........................................................................ 4

§10305 ........................................................................ 4

New Mexico Administrative Code:

§18.2.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

§18.2.3.14 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

§18.2.3.15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Arizona Administrative Code:

§R17-5-202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

TO THE HONORABLE JUDGE HILDA TAGLE:

COMES NOW Defendant ALLIED VAN LINES, INC. (**"ALLIED"**) and files this RESPONSE IN SUPPORT OF THIS COURT'S TRANSFER ORDER AND OPPOSITION TO PLAINTIFFS' MOTION TO RECONSIDER.

## INTRODUCTION

Plaintiffs concede that "[t]his Court's opinion supporting the order of transfer is thorough and thoughtful, and reflects a difficult decision reached after careful consideration of voluminous briefing." (Pl. Motion at 1; dkt #53). Nonetheless, Plaintiffs ask this Court to reconsider some of the same arguments they originally made and have their retained experts repeat them instead of the Louisiana State Troopers.

Plaintiffs Motion focuses on two arguments: (1) the place of the "wrongdoing" was Texas because Texas law assimilates the federal regulations they claim Gorski and Allied violated; and (2) the nonparty fact witnesses in Louisiana are immaterial because they do not "favor" Allied and Plaintiffs' newly retained experts are really the "key" witnesses. (Dkt #53). Their "new" evidence is their expert reports (written well before the court ruled) that rely chiefly on the same evidence and conclusions found in the Louisiana Police report. Dkt #53, Pltfs' exhs. A (pp. 8-10), C (pp. 1-2, 7-8), D(pp. 1-3, 6-9), E. These are essentially the same arguments, facts and exhibits the Court considered before granting a transfer.

The attempt to recast these claims as "new" must be rejected as unmeritorious and/or waived. Represented by two (now four) prestigious law firms for more than six months of briefing, Plaintiffs' filed four responses/briefs which cumulatively comprised at least 275

1

pages of exhibits, factual and legal argument. Plaintiffs were well represented and given every opportunity to present their entire case to this Court; any failure to present their arguments (if they truly are new) constitutes a waiver under Fifth Circuit precedent. *See Trust Co. Bank v. U.S. Gypsum Co.,* 950 F.2d 1144, 1152 (5th Cir. 1992); *Savers Fed. Sav. & Loan Ass'n v. Reetz,* 888 F.2d 1497, 1501, 1508-9 (5th Cir. 1989) (and numerous citations therein).

Plaintiffs argument about Texas regulations neither requires nor justifies changing this Court's decision that the "wrong" occurred in Louisiana. First, Plaintiffs' argument puts the "choice of law" cart before the venue horse, because it assumes Texas law applies to show that a wrong occurred in Texas. This Court has already held that a final "choice of law" decision must be made in Louisiana. Second, Louisiana, Arizona, and New Mexico all have the same regulation adopting the same federal regulations. Thus, assuming the federal regulations were violated, this does not point to the Southern District of Texas any more than it does to Louisiana. The alleged violations that caused the accident, and the accident that caused injury and death, occurred in Louisiana, not Texas, Arizona, or New Mexico. Third, Texas cases place the wrongdoing in Louisiana where Gorski allegedly went to sleep and caused the collision.

Plaintiffs then rehash their earlier arguments about the location of material nonparty witnesses. Their twist is (1) to have their experts echo what the Louisiana State Police report found and (2) to declare that those experts are the only "key" material witnesses because the ones in Louisiana do not "favor" Allied. First however, Plaintiffs argued much

2

of this before. Second, the location of experts retained after the venue issue was raised is of no weight and should be disregarded as attempting to bootstrap themselves into venue. Plaintiffs cannot render all the fact witnesses in Louisiana "immaterial" because they hired experts to interpret the events and evidence in Louisiana. Third, whether the witnesses in Louisiana "favor" one side or the other does not determine if they are material to the case. Allied has a valuable right to cross-examine their testimony live to expose flaws or contradictions, a right that 28 U.S.C. section 1404 protects.

## ARGUMENT AND AUTHORITIES

I.    **The Federal Regulations On Which Plaintiffs Seek Reconsideration At Most Serve An Evidentiary Purpose, And Do Not Afford Plaintiffs A Private Cause Of Action.**

A.    **All the States Through Which Gorski Drove Adopt the Same Federal Regulations at Issue.**

Plaintiffs reason that if Texas law adopts the federal regulations, then the "place of wrong" for a subsequent collision in any state actually is in Texas because Gorski drove through and stopped in Texas. The evidence pertaining to this does not forge any greater connection with Texas (much less the Southern District of Texas) than existed when this Court ordered a transfer to Louisiana where the accident occurred.

The Texas Administrative Code adopts 49 CFR chap. 395-6[1] because federal law provides federal grants to states that adopt those regulations and enforce the federal standards. See 42 U.S.C. §§ 31102, 31103. The Texas regulation is not some unique Texas

---

[1]    Plaintiffs mistakenly refers to 37 TEX. ADMIN. CODE §3.62. In 2004, section 3.62 was recodified as 37 TEX. ADMIN. CODE §§ 4.11, 4.12.

3

policy. Rather, it is part of a federal policy to encourage the states and the Secretary of Transportation to work as partners. 42 U.S.C. §31100. In fact, Arizona, New Mexico, and Louisiana also have adopted the federal regulations at issue. See 33 LA. ADMIN. CODE §§10303, 10305 (adopting 49 CFR Chaps. 390-396)[attached Exh. 1]; 37 TEX. ADMIN. CODE §§4.11, 4.12; NEW MEX. ADMIN. CODE, §§18.2.3, 18.2.3.14, 18.2.3.15 (adopting 49 CFR chaps. 395 and 396); AZ. ADMIN. CODE §R17-5-202 (adopting 49 CFR chaps. 395-297). Therefore, Plaintiffs's reasoning applies with equal (if not greater) force to Louisiana.

At best, Plaintiffs' evidence shows that, if Gorski and Allied violated a Texas regulation adopting federal regulations, then they violated the same state regulations in Arizona, New Mexico, and Louisiana.[2] Under Plaintiffs evidence, Gorski would have violated the regulations in all four states. Plaintiffs emphasize their evidence that Gorski stopped near Houston the day before the accident, July 19. They ignore the fact the Louisiana State Police report found that Gorski also stopped in Louisiana the day of the accident for at least two hours to eat and shower. Pltf exh. E(2)(p. 4); dkt.#53. Louisiana must prevail because it is the only state where an alleged regulatory violation also was the alleged proximate cause of the collision. Plaintiffs' rationale provides no reason to select any district in Texas over New Mexico or Arizona, much less Louisiana.

---

[2] Moreover, Plaintiffs reasoning does not point to the Southern District of Texas as the location of the "wrong." Plaintiffs evidence indicates that Gorski drove across Texas via El Paso to Houston to the Lousiana border. Exhs A (pp. 9-10), E. dkt #53. This suggests Gorski drove through the Western, Southern, and Eastern Districts of Texas. Their argument provides no basis to determine in which Texas district the "wrong" occurred, much less that it occurred in the Brownsville Division of the Southern District.

**B.    Texas Regulations Are at Best Evidentiary About the Standard of Care, and the Louisiana District Court will Decide Whether Texas Law Applies.**

Plaintiffs' argument assumes its conclusion, i.e., that Texas law controls and thus Texas regulations establish the standard of care for an accident in another state. Plaintiffs' case is still a state law negligence action filed in federal court on grounds of diversity, and Plaintiffs' new allegations and use of the federal statutes are–at best–mere evidence relating to the issue of negligence, and not an independent cause of action. Plaintiffs have no private right of action under these federal statutes, and the federal statutes themselves do not change or add to the nature of Plaintiffs' underlying common law claim, even assuming they could now be added to the case.

The Fifth Circuit has held that the very type of statutes Plaintiffs now cite (motor vehicle statutes) might influence issues of breach and proximate cause under state law in a negligence case, but they do not themselves create a private cause of action for the plaintiffs. *See Lowe v. General Motors Corp.,* 624 F.2d 1373, 1379-80 (5th Cir. 1980). "The mere fact that the law which evidences negligence is Federal while the negligence action itself is brought under State common law does not mean that the state law claim metamorphoses into a private right of action under Federal regulatory law." *Id.* at 1379. In *Lowes,* the Court specifically held that similar statutes did not create a private right of action. *Id.* Here, the federal statutes are enforced by the Federal Motor Carrier Safety Administration through a string of federal governmental agencies and delegations.[3] These agencies oversee the

_____

[3] Section 204 of the Interstate Commerce Act, 49 U.S.C. § 304, authorized the Interstate Commerce Commission to establish rules governing the qualifications of drivers employed by

regulations and their application, which provide for both civil and criminal penalties. 49

C.F.R. §390.37.

Moreover, while Plaintiffs devote much argument to the evidentiary issues subsumed

within this negligence action *(see* Pl. Motion at 2-7; dkt #53), these issues are ultimately for

a jury to decide, and whether these federal statutes will even influence them is unclear and

subject to state law interpretation.[4] Merely because a person benefits from a particular law

does not mean it sets a civil standard beyond that of the "reasonably prudent person." *See*

RESTATEMENT (SECOND) OF TORTS § 288. The state law governing the case determines this

issue, and this Court, upon transferring the case, has deferred to the transferee court the

choice of law determination.    Plaintiffs assume, without analysis, that 37 Texas

Administrative Code § 4.11 is relevant and governs, but there has been no choice of law

decision and Plaintiffs' arguments here are both premature and misplaced. The fact that the

Legislature adopts a criminal statute does not mean the State's courts will adopt it as a

---

common and contract carriers of passengers in interstate or foreign commerce. In Section 6 of the
Department of Transportation Act, 49 U.S.C. § 1655, the authority of the ICC in this respect was
transferred to the Secretary of Transportation. The Secretary, in turn, has delegated this authority
to the Federal Highway Administrator (49 C.F.R. § 1.48), which in turn has issued federal motor
carrier safety regulations. See 49 C.F.R. §§ 104, 350.1-399.207. Until January 1, 2000, the
FHA's Office of Motor Carriers administered these regulations. 35 F.R. § 5958. However,
today, responsibility for administering regulations governing interstate motor carriers is delegated
to the Federal Motor Carrier Safety Administration. The Motor Carrier Safety Act authorizes the
FHA to enforce safety regulations and conduct compliance reviews. 49 U.S.C. § 31115. The
FHA can bring a civil action or request that the Attorney General enforce a regulation or
prosecute an alleged violator. 49 U.S.C. § 507(b). The Act prescribes civil and criminal
penalties. 49 U.S.C. § 521.

 

   [4] Defendant Allied reserves the right to brief this issue completely once it has been
determined whether Louisiana or Texas law controls this action.

standard of civil liability, and the underlying state law governs this determination. *See e.g.,* *Freudiger v. Keller,* 104 S.W.3d 294, 297 (Tex. App.–Texarkana 2003) (holding 49 C.F.R. §392.14 does not create a special standard of liability).[5]  Further, Louisiana law will be applied in all of the related cases arising from this accident and filed in Louisiana.[6]

### C.    The Evidence Pertaining To The Regulations Does Not Emanate From Texas, Increase Texas' Interest in the Case, or Strengthen Plaintiffs' Claim That Venue Is More Appropriate There.

Arguing much of their evidence, which may or may not be admissible at the trial on negligence, Plaintiffs suggest that these federal statutes somehow change the "place of the wrong," despite this Court's clear and logical finding to the contrary (Op. at 6-7), and despite case law holding that the place where the wreck occurred is the place of the wrong. *Cates v. Creamer,* 2001 U.S. Dist. Lexis 12533 at *8, *and Perkins v. Dynasty Group Auto,* 2003 Tex. App. Lexis 1046, *10-12 (Tex. App.–El Paso 2003, no pet.).  Gorski's driving through or stopping in Texas, or any other state for that matter, was not the cause of the accident, and is far too attenuated in the causal chain to influence the choice of forum. *See* *Vasquez v. Bridgestone/Firestone, Inc.,* 325 F.3d 665, 374 (5th Cir. 2003).  Any argument that the "cause" of this accident and resulting injuries occurred a day earlier in Texas is too far removed from the alleged conduct–Gorski falling asleep–and the resulting accident,

---

[5]    Even assuming log falsification occurred–which Allied denies–this violation was not the cause of the accident the next day in Louisiana.  Even when violations of statutes are evidence of breach, the violation must also be the proximate cause of the accident. *See e.g.,* *Wallace v. Ener,* 521 F.2d 215, 222 (5th Cir. 1975) (violation of § 393.95 still requires independent proof of proximate cause).

[6]    Dkt # 34, 43, 46.

7

which actually caused the injuries the next day in Louisiana. *Vasquez*, 325 F.3d at 674.[7]

This Court also correctly noted in its footnote that Plaintiffs have not been able to show that any alleged "corporate misconduct" did not occur in Louisiana. (Op. at 6-7; dkt #49); *see supra* (assuming violations, they occurred in Louisiana as well). As this Court noted, Plaintiffs' emphasis on where Gorski exceeded hours and became tired "minimizes the importance of the driver's negligence at the time of the accident." (Op. at 6, n.2; dkt #49). If Gorski violated federal regulations during this trip, Gorski arguably did this in Louisiana as well as Texas, thus making Louisiana at the least an equally interested forum. Indeed, adopting Plaintiffs' argument, each of the hours contributing to Gorski's alleged violations would have to be assessed. If Plaintiffs' evidence is believed, these occurred in other states like Arizona, New Mexico, Florida and California. Of all these states–even assuming a violation of the regulations Plaintiffs' untimely assert–Louisiana still has the closest connection and greatest interest in this case.

Plaintiffs again argue that the accident's occurrence in Louisiana was merely "fortuitous," but this fails for the reasons recognized by this Court (Op. at 7; dkt #49) and briefed by Allied. Plaintiffs cite no Texas case agreeing with them. On the other hand, the

---

[7] The Fifth Circuit has also noted that the Restatement "place[s] more emphasis on the place of the alleged misconduct"–here, the accident in Louisiana–"than on the residential preferences of scattered plaintiffs," even in aircraft cases. *In re Air Disaster at Ramstein Air Base, Germany*, 81 F.3d at 576. As explained in Allied's prior briefing and recognized by this Court, air crash cases are distinguishable from automobile accidents involving bystanders on state soil. *Cates*, 2001 U.S.Dist. Lexis 12533, *8; *Vizcarra v. Roldan*, 925 S.W.2d 89, 91 (Tex. App.–El Paso 1996, no writ). Moreover, all of the alleged case support cited by Plaintiffs at page 11 of their brief should have been included in their prior briefing, and their failure to include it then constitutes waiver. *See infra* Pt. III.

El Paso court of appeals and the U.S. District Court in Dallas agree with this Court that the location of auto accidents is not usually "fortuitous." *Perkins*, 2003 Tex. App. Lexis 1046, *10-12; *Cates*, 2001 U.S.Dist.Lexis 12533 at *8. Plaintiffs' argument is highly suspect, because this accident could only occur in a location where Plaintiffs and Gorski were at the that time- that could only be in Louisiana.

Likewise, Plaintiffs' failure to monitor allegations do not put the "place of the wrong" in the Southern District of Texas.[8] All of Sorenson Moving & Storeage's offices and personnel are in Florida. Dkt #24, exh. 2. All of Allied's personnel involved in monitoring the drivers' hours work in Indiana. Attached exh. 2, p. 7 l.5 - p. 9 l.25; exh. 3 p. 5 l.3 - p. 8 l.20, p. 11 l.6 - p. 13 l.22. If Allied's agents failed to monitor, then they were in Indiana at the time.

**II.    Plaintiffs' Repeat Arguments Add Nothing New And Were Fully Considered By This Court Prior To Its Decision To Transfer This Case To The District Where Three Other Suits Arising From The Same Accident Are Pending.**

    **A.    The Location and Convenience of All the Material Non-Party Witnesses Must be Considered.**

Finally, Plaintiffs' repetitive arguments on pages 13-16 of their motion add nothing that this Court has not already considered and are no more convincing now than they were when first presented. Allied persuasively argued, and this Court held, that the convenience of the witnesses favored transfer to Louisiana (Op. at 4-6; dkt # 49). Plaintiffs erroneously

---

[8] Despite their current argument that the "wrong" occurred in Texas, Plaintiffs did not allege venue was proper in this District under 28 U.S.C. §1391(a)(2) (in diversity cases, venue is proper where substantial part of the events or omissions giving rise to their claims occurred). Dkt # 35, ¶¶ 6-8. The Fourth Amended Complaint they seek leave to file does not allege this either. Dkt # 52, ¶¶ 6-8.

9

focus solely on the witnesses they believe Allied might favorably call at trial, but their argument is factually incorrect and legally improper in focus. In conducting § 1404 analysis, the convenience of all of the witnesses to the case must be taken into account. *In re VOLKSWAGEN AG; Volkswagen of America, Inc.*, — F.3d —, 2004 WL 1098840 (5th Cir., May 18, 2004). Here, the large majority of the eyewitnesses, police officers, emergency and medical personnel, etc. live and work in Louisiana see dkt # 32 (exhs. G-Q), 33 (exh. 5). The ability to cross-examine live the key adverse fact witnesses is substantial reason to transfer. *Paul v. Internat'l Precious Metals*, 613 F.Supp. 174,179 (D.C.Miss. 1985); *Hess v. Gray*, 85 F.R.D. 15, 25 (D.C.Ill. 1979).

This Court specifically found that Allied's "defense will likely require testimony from some of the witnesses residing in Louisiana," that "*all* of the witnesses to the accident itself and many of the treating physicians reside in Louisiana," and that these key witnesses reside outside the subpoena power of the Court. (Op. at 5-6; dkt #49). Additionally, much of the damage evidence will also emanate from the testimony of Louisiana residents and from Louisiana records, a factor which Plaintiffs virtually ignore. Only a transfer to Louisiana can give all the parties subpoena power over the fact witnesses to the accident, the cause of the injuries, and the treatment of those injuries, and the damages resulting from the accident.

Plaintiffs now claim that the only material witnesses are their experts in California, Alabama, and Texas. As is apparent from their reports, Plaintiffs retained them during suit and well before the Court ruled. Dkt #53, exhs. A, C, D. The convenience and location of

10

retained experts does not favor retention of venue or prevent transfer, especially when the experts are hired during suit. *Fletcher v. Southern Pac. Transp.,* 648 F.Supp. 1400, 1403 (E.D.Tex. 1986), citing *Morgan v. Ill. Cent. R. Co.,* 161 F.Supp. 119 (S.D.Tex. 1958). Plaintiffs experts bring no new facts or investigation to the case; they rely on information from other witnesses. Dkt #53, Pltfs' exhs. A (pp. 8-10), C (pp. 1-2, 7-8), D(pp. 1-3, 6-9), E. Their claim that the witnesses in Louisiana are not material is particularly unconvincing in light of their earlier emphatic arguments that they would reimburse the witnesses to testify live in Brownsville. Dkt # 32, pp. 16-18. Plaintiffs' efforts to obtain these agreements and to reimburse the witnesses discredits their belated argument these witnesses are immaterial.

Plaintiffs put great emphasis on Mr. Davidson's deposition, as if that rendered immaterial the witnesses in Louisiana. Mr. Davidson did not agree that Mr. Gorski was fatigued at the time of the accident or that this cause the accident. Dkt # 53, Plntf Exh. I, p. 32 (l. 17-22). Whether Gorski falsified logs is, at best, a debatable evidentiary issue for the jury to weigh in deciding what actually caused the accident. Whether the accident reconstruction points to sleepiness or a non-negligent cause depends on many evidentiary factors.

**B.    Plaintiffs' Physical Condition is Not a New Issue Nor Is It Decisive.**

Plaintiffs again argue that Lisa Guerra and Jose Alfaro, Jr., are too ill to attend trial in Louisiana. They argued this before. Dkt #32, pp. 14-15. The evidence is that they are not well enough to attend the trial anywhere, even in Brownsville. Dkt # 33, exhs. 6, 7. There is no evidence or assertion that the injured Plaintiffs will be active participants in the

trial, and there is no impediment to the Plaintiffs who were not injured to travel to Louisiana.

See *Lemery v. Ford Motor Co.*, 244 F.Supp.2d 720, 731 (S.D. Tex. 2002).

### C. The Possibility of Delay is Not a New Issue Nor Does it Weigh in Their Favor.

Plaintiffs assert the same delay argument they made before. Dkt # 32, p.22. First, the Fifth Circuit has said the possibility of delay or prejudice is a factor only in "rare and special circumstances." *In re Horseshoe Entertainment,* 332 F.3d at 424. Moreover, the existence of delay must be established by "clear and convincing evidence." *Id.* Plaintiffs have not shown that a transfer will actually cause a delay. Third, they ignore that some of the delay is attributable to their request to do discovery to justify their venue arguments.

### D. The Public Interest Factors Still Do Not Favor Retaining Venue In Texas

The pendency of three other cases in Louisiana–all from the same accident, applying Louisiana law, and all of which Allied must defend–lends a degree of efficiency and economy through joint discovery and pretrial preparation that will not be realized if this case remains in Texas. *See Continental Grain Co. v. The Barge FBL-585*, 364 U.S. 19, 26 (1960) (since *Continental Grain,* a number of courts, including the Fifth Circuit, have held that the existence of related litigation in a transferee court is a factor that weighs strongly in favor of transfer).

Moreover, trying this case in Louisiana should avoid creating a conflict in the application of the law to the facts of this case. The Court noted that, under Texas' choice of law rule, "much weighs" in favor applying Louisiana law. Dkt #49, pp. 8-9. Given the unique character of Louisiana's code-based law, much is to be gained by having a court

knowledgeable about Louisiana law handle the case.

### III.    Plaintiffs' New Arguments Based On Federal Regulations Lack Merit And Are Waived.

Plaintiffs' Third Amended Complaint did not allege violations of specific federal or Texas regulations, but it did allege negligence *per se*. Dkt # 35, ¶14. Plaintiffs did argue Allied and Gorski's conduct violated federal regulations concerning Gorski's driving time and Allied's supervision. Dkt #32 (p. 19), 45(p. 9). Assuming *arguendo* Plaintiffs have presented any new issues, then they are waived as a matter of law based on *Trust, Savers,* and extensive Fifth Circuit precedent.

Plaintiffs' repeat arguments present nothing new warranting reconsideration. *See* FED. R. CIV. P. 59(e) (new law or facts); *King v. Illinois Cent. R.R.*, 337 F.3d 550, 555 n. 2 (5th Cir. 2003). Any arguments based on allegations and regulations not previously plead come too late and must be rejected. In *Trust*, 950 F.2d at 1152, the district court also granted judgment after the parties had every opportunity to provide full briefing. By motion for reconsideration, the plaintiff added a new claim that it had not raised in the district court prior to judgment. The Fifth Circuit held that a motion for reconsideration cannot be used to expand a judgment to encompass new issues or claims. If they were not raised in responsive pleadings prior to the district court's judgment, those issues and claims are untimely and waived. *Id.* Similarly, in *Savers*, the district court granted judgment after the parties had provided full briefing. The Fifth Circuit refused to consider claims that were not raised in oppositions filed prior to judgment but instead included in the postjudgment briefing, stating that "[t]o allow them to be first raised after judgment 'would encourage trial

13

by ambush.'" *Savers*, 888 F.2d at 1501 (quoting *Smith v. Olin*, 555 F.2d 1283, 1285 (5th Cir. 1977)).

Indeed, the Fifth Circuit has consistently held that new arguments and theories raised in postjudgment motions are untimely and waived. *See First United Finan. Corp. v. Specialty Oil Co., Inc.*, 5 F.3d 944, 948 (5th Cir. 1993) (issue first raised in memorandum in support of motion for rehearing was not preserved); *Waltman v. Internat'l Paper Co.*, 875 F.2d 468, 473-74 (5th Cir. 1989) (correctness of district court's judgment will not be assessed based on evidentiary material or arguments first put in the record after judgment is granted); *Batterson v. Tex. Gen. Land Office*, 783 F.2d 1220, 1224-25 (5th Cir. 1989) (refusing to overturn judgment on a theory not advanced in opposition to the motion in the district court); *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1163-64 (5th Cir. 1983) (even a pleaded theory was waived when it was not raised in opposition to the motion in the district court); *Calmaquip Engin. Hemisphere Corp. v. West Coast Carriers, Ltd.*, 650 F.2d 633, 637 (5th Cir. 1981) (refusing to consider defenses not included in pleading or opposition memoranda).

## CONCLUSION

In short, for these reasons and those discussed in our prior briefs, this Court correctly decided to transfer the case to the Western District of Louisiana, the Court's decision was not in error, and Plaintiffs' Motion for Reconsideration must be denied.

Respectfully submitted,

By: _____

**Tom Lockhart**
Texas State Bar No. 12473500
Texas Federal I.D. No. 2257
**Roger W. Hughes**
Texas State Bar No. 10229500
Texas Federal ID No. 5950

**ADAMS & GRAHAM, L.L.P.**
P. O. Drawer 1429
Harlingen, TX 78551-1429
Phone No.: (956)428-7495;
Fax:(956)428-2954

**John W. Waters, Jr.**
LA State Bar No. 13258
LA Federal I.D. No. 13258
**BIENVENU, FOSTER, RYAN
   & O'BANNON**
1010 Common Street, Suite 2200
New Orleans, LA  70112-2401
Phone: (504) 581-2146;
Fax: (504) 522-7859

Attorneys for *Defendant* ALLIED VAN LINES

## Certificate of Service

I hereby certify that on this the 12th day of July, 2004, a true and correct copy of the above and foregoing pleading was mailed to counsel for Plaintiffs as follows:

Mr. Richard Warren Mithoff          *Via CM/RRR 7003 2260 0000 0440 3456*
Mr. William J. Stradley
Ms. Janie J. Jordan
**MITHOFF & JACKS, L.L.P.**
500 Dallas Street, Suite 3450
Houston, Texas 77002
***Attorneys for Plaintiffs***

15

Mr. Eduardo Rodriguez                                          *Via Ordinary Mail*
Mr. Joseph A. Rodriguez
Mr. R. Patrick Rodriguez
**RODRIGUEZ, COLVIN & CHANEY, L.L.P.**
1201 East Van Buren
Brownsville, TX 78520

Kevin Dubose
ALEXANDER DUBOSE JONES
        & TOWNSEND, LLP
1844 Harvard
Houston, TX 77008

Russell J. Weintraub
727 E. 26th Street
Austin, TX 78705

TOM LOCKHART

Westlaw.

33 LA ADC Pt V, § 10303
La. Admin Code. tit. 33, pt. V, § 10303
LAC 33:V.10303

**This document has been amended.
Use UPDATE.
See <u>SCOPE</u> for more information.**

**LOUISIANA ADMINISTRATIVE
CODE
TITLE 33. ENVIRONMENTAL
QUALITY
PART V. HAZARDOUS WASTE
AND HAZARDOUS MATERIALS
SUBPART 2. DEPARTMENT OF
PUBLIC SAFETY AND
CORRECTIONS(HAZARDOUS
MATERIALS
CHAPTER 103. MOTOR CARRIER
SAFETY AND HAZARDOUS
MATERIALS**
Current through March 1,
2004

§ 10303. FederalCMotor Carrier Safety
and Hazardous Materials

A. The following federal motor carrier
safety regulations and hazardous materials
regulations promulgated by the United
States Department of Transportation,
revised as of December 20, 1993, and
contained in the following parts of 49
CFR as now in effect or as hereafter
amended, are made a part of this Chapter.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Hazardous Material Regulations
Part 171   General Information, Regulations, and Definitions
Part 172   Hazardous Materials Tables and Hazardous Materials
Communications
                    Regulations
Part 173   ShippersCGeneral Requirements for Shipping and
Packagings
Part 177   Carriage by Public Highway
Part 178   Shipping Container Specifications
Part 180   Qualification and Maintenance of Packagings
                    Motor Carrier Safety Regulations
Part 382   Controlled Substances and Alcohol Use and Testing
Part 383   Commercial Drivers' License Standards
Part 385   Safety Fitness Procedures
Part 390   Federal Motor Carrier Safety Regulations: General
Part 391   Qualifications of Drivers
Part 392   Driving of Motor Vehicles
Part 393   Parts and Accessories Necessary for Safe Operation
Part 395   Hours of Service of Drivers
Part 396   Inspection, Repair, and Maintenance
Part 397   Transportation of Hazardous Materials, Driving and
Parking Rules

## AUTHORITY AND SOURCE

AUTHORITY NOTE: Promulgated in
accordance with R.S. 32: 1501 et seq.

HISTORICAL NOTE

HISTORICAL NOTE: Promulgated by the Department of Public Safety and
  Corrections, Office of State Police, LR 14:31 (January 1988),
amended LR

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

17:1115 (November 1991), LR 19:351 (March 1993), LR 20:58 (January 1994), LR
 24:956 (May 1998), LR 24:2321 (December 1998).


33 LA ADC Pt V, § 10303
END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

GUADALUPE and AMELIA GUERRA, )
INDIVIDUALLY and GUADALUPE )
GUERRA AS ADMINISTRATOR OF THE)
ESTATE OF CINDY GUERRA, )
DECEASED; AMELIA GUERRA AS )
TEMPORARY GUARDIAN OF THE )
PERSON AND ESTATE OF LISA )
GUERRA, AN INCAPACITATED )
PERSON; RENE GARZA AND )
PATRICIA GARZA, INDIVIDUALLY )
AND RENE GARZA AS )
ADMINISTRATOR OF THE ESTATE OF)
JENNIFER GARZA, DECEASED; AND )
GRACIELA MARROQUIN AS )
TEMPORARY GUARDIAN OF THE )
PERSON AND ESTATE OF JOSE )
ANGEL ALFARO, JR., AN )
INCAPACITATED PERSON, )
      Plaintiffs )
       )
  vs. ) Civil Action No. B-03-142
       )
ALLIED VAN LINES, INC., )
      Defendant. )

**COPY**

---

The Videotaped Deposition of SAM JAMESON

DATE:     March 31, 2004
TIME:     8:47 o'clock a.m.
PLACE:    Fort Wayne Hilton Hotel
         Nuckols Room
         1020 South Calhoun Street
         Fort Wayne, Indiana

Called as a Witness herein, in
Accordance with the Rules of Civil
Procedure
Before Angela A. O'Neill
Registered Professional Reporter

SUMMIT CITY REPORTING
Certified Professional Reporters
3492-B Stellhorn Road
Fort Wayne, Indiana  46815
(260) 486-3954

| | | |
|---|---|---|
| 1 | can address which sets of documents? | 09:06:24 |
| 2 | MR. LOCKHART:  That's correct. | 09:06:27 |
| 3 | DIRECT EXAMINATION | 09:06:28 |
| 4 | BY MR. MITHOFF: | 09:06:28 |
| 5 | Q.  All right.  Umm, state your full name, please? | 09:06:28 |
| 6 | A.  Samuel Young Jameson. | 09:06:31 |
| 7 | Q.  Mr. Jameson, what is your age, please? | 09:06:34 |
| 8 | A.  My age?  I'm 63. | 09:06:36 |
| 9 | Q.  And you live where? | 09:06:38 |
| 10 | A.  I live here in Fort Wayne. | 09:06:39 |
| 11 | Q.  Fort Wayne, Indiana? | 09:06:41 |
| 12 | A.  Uh-huh. | 09:06:42 |
| 13 | Q.  Have you given testimony before? | 09:06:42 |
| 14 | A.  15 years ago or so, yeah. | 09:06:46 |
| 15 | Q.  My name is Richard Mithoff.  I'm one of the lawyers | 09:06:50 |
| 16 | representing -- | 09:06:55 |
| 17 | A.  Uh-huh. | 09:06:55 |
| 18 | Q.  -- the families involved in this accident, which | 09:06:56 |
| 19 | involves Allied.  Do you understand that? | 09:07:01 |
| 20 | A.  Uh-huh. | 09:07:03 |
| 21 | MR. LOCKHART:  You need to say yes or no. | 09:07:03 |
| 22 | THE WITNESS:  I beg your pardon.  Yes. | 09:07:05 |
| 23 | BY MR. MITHOFF: | 09:07:06 |
| 24 | Q.  What is your present position? | 09:07:06 |
| 25 | A.  I'm the director of operations for | 09:07:13 |

| | | | |
|---|---|---|---|
| 1 | | Allied Van Lines. | 09:07:16 |
| 2 | Q. | And -- and what are your duties as director of | 09:07:16 |
| 3 | | operations? | 09:07:24 |
| 4 | A. | Umm, we have the, umm, responsibility of assigning | 09:07:25 |
| 5 | | shipments in to the driver to -- to get the | 09:07:31 |
| 6 | | shipments moved for our customers. | 09:07:34 |
| 7 | Q. | Responsibility for assigning shipments? | 09:07:36 |
| 8 | A. | Uh-huh. | 09:07:41 |
| 9 | | MR. LOCKHART:  Yes? | 09:07:42 |
| 10 | | THE WITNESS:  Yes, sir.  Yes. | 09:07:46 |
| 11 | BY MR. MITHOFF: | | 09:07:46 |
| 12 | Q. | And -- and tell me what that involves? | 09:07:46 |
| 13 | A. | Umm, that is taking a -- either a shipment, putting | 09:07:50 |
| 14 | | it on -- on a trip screen, determining which one of | 09:08:00 |
| 15 | | our drivers that are available should be assigned | 09:08:05 |
| 16 | | that trip. | 09:08:07 |
| 17 | Q. | Okay. | 09:08:08 |
| 18 | A. | Could be one shipment on a trip, or two or three, | 09:08:09 |
| 19 | | how many ever fill the truck up. | 09:08:12 |
| 20 | Q. | Okay.  So your responsibility is to match shipments | 09:08:14 |
| 21 | | with trucks? | 09:08:18 |
| 22 | A. | Yep. | 09:08:19 |
| 23 | Q. | Is that correct? | 09:08:20 |
| 24 | A. | Correct.  Yes.  Yes, sir. | 09:08:20 |
| 25 | Q. | And you said you put it up on a trip something, but | 09:08:22 |

9

| | | | |
|---|---|---|---|
| 1 | | I didn't hear you. | 09:08:25 |
| 2 | A. | Screen. | 09:08:26 |
| 3 | Q. | Screen? | 09:08:27 |
| 4 | A. | Uh-huh. | 09:08:27 |
| 5 | Q. | How long have you been employed by Allied? | 09:08:28 |
| 6 | A. | Working on 38 years. | 09:08:33 |
| 7 | Q. | And for how long have you served as director of | 09:08:36 |
| 8 | | operations? | 09:08:44 |
| 9 | A. | The last two. | 09:08:44 |
| 10 | Q. | Prior to becoming director, were you working in | 09:08:46 |
| 11 | | this same general area? | 09:08:52 |
| 12 | A. | Umm, yes.  I worked in another group of operations, | 09:08:54 |
| 13 | | umm, roughly three years prior to that. | 09:09:00 |
| 14 | Q. | Okay.  As you know, we requested testimony from | 09:09:05 |
| 15 | | Allied with respect to satellite records and | 09:09:21 |
| 16 | | satellite system, specifically in reference to | 09:09:29 |
| 17 | | logging issues, as well as other issues. | 09:09:34 |
| 18 | | Uh, what is your involvement as far as | 09:09:38 |
| 19 | | director of operations with any satellite systems? | 09:09:42 |
| 20 | A. | We use -- the purpose that we use the satellite | 09:09:46 |
| 21 | | system for is to communicate with our drivers.  And | 09:09:51 |
| 22 | | it provides a -- the other -- the second purpose, | 09:09:56 |
| 23 | | it provides a tracking function for our customers, | 09:10:00 |
| 24 | | for our agent network, and for the staff in | 09:10:05 |
| 25 | | operations to find trucks to service shipments. | 09:10:11 |

CERTIFICATE OF THE REPORTER

I, Angela A. O'Neill, a Registered Professional Reporter and Notary Public, in and for the State of Ohio, Mercer County, (acting in Allen County, Indiana) hereby certify there appeared before me on March 31, 2004, SAM JAMESON, who was duly sworn to testify the truth, the whole truth, and nothing but the truth to questions propounded at the taking of the foregoing deposition in a cause now pending and undetermined in said court.

I further certify that I then and there reported in machine shorthand the proceedings at the said time and place; that the proceedings were then transcribed from my original shorthand notes; and that the foregoing transcript is a true and correct record thereof.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed this seal this ____4th____ day of ____April____, 2004, A.D.


____Angela A. O'Neill____

Angela A. O'Neill, RPR

My Commission Expires:  Aug. 10, 2007

1

```
1                    IN THE UNITED STATES DISTRICT COURT
                         SOUTHERN DISTRICT OF TEXAS
2                          BROWNSVILLE DIVISION

3    GUADALUPE and AMELIA GUERRA,  )
     INDIVIDUALLY and GUADALUPE    )
4    GUERRA AS ADMINISTRATOR OF THE)
     ESTATE OF CINDY GUERRA,       )
5    DECEASED; AMELIA GUERRA AS     )
     TEMPORARY GUARDIAN OF THE      )
6    PERSON AND ESTATE OF LISA      )
     GUERRA, AN INCAPACITATED       )
7    PERSON; RENE GARZA AND         )
     PATRICIA GARZA, INDIVIDUALLY   )
8    AND RENE GARZA AS              )            COPY
     ADMINISTRATOR OF THE ESTATE OF )
9    JENNIFER GARZA, DECEASED; AND  )
     GRACIELA MARROQUIN AS          )
10   TEMPORARY GUARDIAN OF THE      )
     PERSON AND ESTATE OF JOSE      )
11   ANGEL ALFARO, JR., AN          )
     INCAPACITATED PERSON,          )
12          Plaintiffs             )
                                   )
13      vs.                        )  Civil Action No. B-03-142
                                   )
14   ALLIED VAN LINES, INC.,       )
            Defendant.             )
15   _____

16       The Videotaped Deposition of THERESA M. SWYGART

17             DATE:      March 31, 2004
               TIME:      10:33 o'clock a.m.
18             PLACE:     Fort Wayne Hilton Hotel
                          Nuckols Room
19                        1020 South Calhoun Street
                          Fort Wayne, Indiana

20             Called as a Witness herein, in
                 Accordance with the Rules of Civil
21                         Procedure
     Before Angela A. O'Neill
22   Registered Professional Reporter

23                  SUMMIT CITY REPORTING
                  Certified Professional Reporters
24                   3492-B Stellhorn Road
                  Fort Wayne, Indiana  46815
25                     (260) 486-3954
```

4

| | | |
|---|---|---|
| 1 | THE VIDEOGRAPHER:  This is the videotaped | 10:31:46 |
| 2 | deposition of Terrie Swygart, taken by the | 10:33:04 |
| 3 | Plaintiff.  Case Number B-03-142, in the United | 10:33:06 |
| 4 | States District Court, Southern District of Texas, | 10:33:13 |
| 5 | Brownsville Division, held in the Fort Wayne Hilton | 10:33:17 |
| 6 | Hotel, 1020 South Calhoun Street on March 31, 2004. | 10:33:20 |
| 7 | The time is 10:33 a.m. | 10:33:25 |
| 8 | The court reporter is Angela O'Neill of the | 10:33:28 |
| 9 | firm of Summit City Reporting.  The videotaped | 10:33:30 |
| 10 | specialist is Mark Lee.  The court reporter can | 10:33:33 |
| 11 | swear in the witness. | 10:33:35 |
| 12 | THERESA M. SWYGART, | 10:33:36 |
| 13 | Called as a Witness herein, | 10:33:36 |
| 14 | having been first duly sworn, | 10:33:36 |
| 15 | was examined and testified as follows: | 10:33:36 |
| 16 | DIRECT EXAMINATION | 10:33:36 |
| 17 | BY MR. MITHOFF: | 10:33:36 |
| 18 | Q.   State your full name, please? | 10:33:44 |
| 19 | A.   Umm, Theresa Marie Swygart, known as Terrie. | 10:33:47 |
| 20 | Q.   Ms. Swygart, my name is Richard Mithoff.  I'm one | 10:33:51 |
| 21 | of the lawyers representing the families in this | 10:33:53 |
| 22 | lawsuit against Allied.  Do you understand that? | 10:33:56 |
| 23 | A.   Yes. | 10:33:58 |
| 24 | Q.   Are you employed by Allied? | 10:33:58 |
| 25 | A.   Umm, by Sirva. | 10:34:00 |

5

| | | | |
|---|---|---|---|
| 1 | Q. | Okay.  Is Sirva the parent company of Allied? | 10:34:02 |
| 2 | A. | Yes. | 10:34:06 |
| 3 | Q. | And where do you live? | 10:34:06 |
| 4 | A. | In Fort Wayne. | 10:34:10 |
| 5 | Q. | Okay.  Where is the corporate headquarters for | 10:34:11 |
| 6 | | Sirva? | 10:34:17 |
| 7 | A. | 5001 U.S. 30 West, Fort Wayne, Indiana. | 10:34:17 |
| 8 | Q. | And where is the corporate headquarters for Allied? | 10:34:21 |
| 9 | A. | Umm, the corporate headquarters, Westmont, | 10:34:26 |
| 10 | | Illinois. | 10:34:30 |
| 11 | Q. | Outside of Chicago? | 10:34:31 |
| 12 | A. | Correct. | 10:34:32 |
| 13 | Q. | Have you ever at any time worked for Allied, or has | 10:34:33 |
| 14 | | your entire work been for Sirva, insofar as any | 10:34:41 |
| 15 | | connection to Allied is concerned? | 10:34:48 |
| 16 | A. | Umm, I worked with North American Van Lines that | 10:34:51 |
| 17 | | was based here in Fort Wayne.  And then when Allied | 10:34:55 |
| 18 | | merged with North American Van Lines and moved | 10:34:58 |
| 19 | | their operations here, I continued that work and | 10:35:01 |
| 20 | | brought on Allied, along with my other duties. | 10:35:04 |
| 21 | Q. | Uh-huh.  Well, what is your present title or | 10:35:07 |
| 22 | | position? | 10:35:13 |
| 23 | A. | Safety supervisor. | 10:35:14 |
| 24 | Q. | Are -- are there other, umm, entities owned by | 10:35:15 |
| 25 | | Sirva, aside from the Allied, North American? | 10:35:30 |

| | | | |
|---|---|---|---|
| 1 | A. | There is also Global. | 10:35:35 |
| 2 | Q. | I'm sorry? | 10:35:36 |
| 3 | A. | Global Van Lines. | 10:35:37 |
| 4 | Q. | Okay. | 10:35:39 |
| 5 | A. | There is three van lines. | 10:35:40 |
| 6 | Q. | So there are three, Allied, North American and | 10:35:41 |
| 7 | | Global? | 10:35:44 |
| 8 | A. | Correct. | 10:35:45 |
| 9 | Q. | And are you the supervisor, safety supervisor with | 10:35:45 |
| 10 | | respect to each of those three entities? | 10:35:52 |
| 11 | A. | Correct. | 10:35:54 |
| 12 | Q. | And who do you report to? | 10:35:54 |
| 13 | A. | Mark Davison. | 10:36:00 |
| 14 | Q. | Okay.  Have you read, umm, Mr. Davison's testimony? | 10:36:02 |
| 15 | A. | No. | 10:36:14 |
| 16 | Q. | Mr. Davison told us, if I understood him correctly, | 10:36:15 |
| 17 | | that you were primarily responsible for activities | 10:36:19 |
| 18 | | in the safety area with respect to Allied, and that | 10:36:30 |
| 19 | | Becky Butler was responsible for North American. | 10:36:36 |
| 20 | | Has that changed? | 10:36:39 |
| 21 | A. | Yes. | 10:36:40 |
| 22 | Q. | Okay.  When did that change take place? | 10:36:41 |
| 23 | A. | Uh, the second week of February. | 10:36:43 |
| 24 | Q. | Of this year? | 10:36:45 |
| 25 | A. | Correct. | 10:36:46 |

| | | | |
|---|---|---|---|
| 1 | Q. | And are there still separate, umm, safety | 10:36:47 |
| 2 | | supervisors for each of the -- the three entities | 10:36:55 |
| 3 | | Allied, North American and Global? | 10:36:58 |
| 4 | A. | No.  One position was eliminated. | 10:37:00 |
| 5 | Q. | Okay.  And where is Becky Butler now? | 10:37:02 |
| 6 | A. | She's no longer with the company. | 10:37:07 |
| 7 | Q. | Okay.  What about the person who held that position | 10:37:09 |
| 8 | | at Global? | 10:37:14 |
| 9 | A. | She primarily was responsible for Global and | 10:37:15 |
| 10 | | North American, and I was primarily responsible for | 10:37:19 |
| 11 | | Allied. | 10:37:21 |
| 12 | Q. | Okay.  Why was that change made? | 10:37:22 |
| 13 | A. | I do not know. | 10:37:24 |
| 14 | Q. | Who made that change? | 10:37:25 |
| 15 | A. | Umm, Mark announced it. | 10:37:27 |
| 16 | Q. | Okay. | 10:37:30 |
| 17 | A. | I'm not sure if he -- he was in charge of that, | 10:37:30 |
| 18 | | yes. | 10:37:34 |
| 19 | Q. | Okay.  But you still, nevertheless, report directly | 10:37:34 |
| 20 | | to Mark Davison? | 10:37:41 |
| 21 | A. | That's correct. | 10:37:43 |
| 22 | Q. | And is he employed by Allied Van Lines, or is he | 10:37:44 |
| 23 | | employed by Sirva? | 10:37:54 |
| 24 | A. | I would say Sirva.  He is the safety director for | 10:37:55 |
| 25 | | all three van lines. | 10:37:58 |

| | | | |
|---|---|---|---|
| 1 | Q. | I'm sorry? | 10:37:59 |
| 2 | A. | He is the safety director for all three van | 10:38:00 |
| 3 | | lines. | 10:38:02 |
| 4 | Q. | Okay.  What are your responsibilities as safety | 10:38:03 |
| 5 | | supervisor? | 10:38:06 |
| 6 | A. | I manage the customer service area, which includes | 10:38:07 |
| 7 | | ten people.  Umm, I have some responsibilities as | 10:38:11 |
| 8 | | far as reporting responsibilities for statistical | 10:38:19 |
| 9 | | reports.  Umm, my primary duties are the ten people | 10:38:22 |
| 10 | | that report to me. | 10:38:27 |
| 11 | Q. | So you have responsibilities in the customer | 10:38:28 |
| 12 | | service area, and you have statistical reporting | 10:38:34 |
| 13 | | responsibilities? | 10:38:38 |
| 14 | A. | Correct. | 10:38:38 |
| 15 | Q. | Are those your two major responsibilities? | 10:38:39 |
| 16 | A. | And anything that Mark needs that travels down from | 10:38:41 |
| 17 | | him, from his responsibilities.  It's pretty | 10:38:44 |
| 18 | | expansive.  I mean, it covers anything to do with | 10:38:47 |
| 19 | | safety, as far as the federal regulations, company | 10:38:50 |
| 20 | | policy, enforcement. | 10:38:53 |
| 21 | Q. | I asked Mr. Davis (sic) at page 12 of his | 10:38:55 |
| 22 | | deposition, "And who is it that would be reporting | 10:39:14 |
| 23 | | to you, if anyone, relating to the responsibility | 10:39:18 |
| 24 | | for driver conduct, accident investigation, | 10:39:21 |
| 25 | | accident prevention?" | 10:39:25 |

| | | | |
|---|---|---|---|
| 1 | A. | (Witness shakes head.) | 10:42:03 |
| 2 | Q. | Or making findings about conclusions as to the | 10:42:03 |
| 3 | | cause of the accident, umm, that would all be | 10:42:10 |
| 4 | | Mark Davison's responsibility? | 10:42:13 |
| 5 | A. | That's -- that's correct. | 10:42:15 |
| 6 | Q. | Let's talk then about the two areas that you | 10:42:16 |
| 7 | | mentioned at the outset.  Your first area of | 10:42:21 |
| 8 | | responsibility that you described is customer | 10:42:25 |
| 9 | | service? | 10:42:28 |
| 10 | A. | That's correct. | 10:42:29 |
| 11 | Q. | What does that involve? | 10:42:30 |
| 12 | A. | Umm, my staff takes all phone calls from the | 10:42:31 |
| 13 | | drivers, from agents, they, umm, work with all | 10:42:35 |
| 14 | | compliance issues with the federal regulations, | 10:42:40 |
| 15 | | such as the driver physicals, the logs, umm, annual | 10:42:43 |
| 16 | | certificates, which are required -- required for us | 10:42:48 |
| 17 | | to pull yearly of the driver's driving record.  We | 10:42:51 |
| 18 | | pull motor vehicle records for each driver each | 10:42:54 |
| 19 | | year.  Umm, we do inspections on our vehicles twice | 10:42:57 |
| 20 | | a year.  We do -- we maintain the roadside | 10:43:03 |
| 21 | | inspections that the drivers get stopped at at | 10:43:08 |
| 22 | | scales, or along the roadside.  Then I also have | 10:43:10 |
| 23 | | accidents that come down to me for review, and then | 10:43:15 |
| 24 | | I have a person on my staff that checks for logs, | 10:43:17 |
| 25 | | matches the logs.  Umm, also when they find a | 10:43:21 |

| | | | |
|---|---|---|---|
| 1 | | problem with a driver, then they bring it to me. | 10:43:28 |
| 2 | | Problem would be we have a standards of how many | 10:43:30 |
| 3 | | citations, how many accidents, umm, anything that | 10:43:33 |
| 4 | | raises a flag of noncompliance, then they come to | 10:43:36 |
| 5 | | me to review. | 10:43:39 |
| 6 | Q. | Okay.  Do you have any role in verification of | 10:43:40 |
| 7 | | drivers' logs, that is determining whether or not | 10:44:02 |
| 8 | | the logs are true or false? | 10:44:04 |
| 9 | A. | When my staff finds that, depending on which | 10:44:06 |
| 10 | | document, roadside inspections are checked, | 10:44:11 |
| 11 | | accidents are checked.  If they find a problem with | 10:44:13 |
| 12 | | that, there are notices that are sent to the driver | 10:44:16 |
| 13 | | identifying that.  If there are multiple | 10:44:18 |
| 14 | | occurrences, then I get involved. | 10:44:21 |
| 15 | Q. | Okay.  And who is it on your staff who has the | 10:44:23 |
| 16 | | responsibility of monitoring reports, either by way | 10:44:27 |
| 17 | | of roadside inspections or accidents, that would in | 10:44:33 |
| 18 | | turn bring a problem to your attention? | 10:44:38 |
| 19 | A. | Roadside inspections is Judy Kindley, and accidents | 10:44:40 |
| 20 | | is Patty Thoma. | 10:44:46 |
| 21 | Q. | Patty who? | 10:44:47 |
| 22 | A. | Thoma, T-H-O-M-A. | 10:44:48 |
| 23 | Q. | Is anyone on your staff charged with the | 10:44:50 |
| 24 | | responsibility of monitoring on a regular basis the | 10:44:57 |
| 25 | | drivers' logs in order to verify whether those logs | 10:45:03 |

13

| | | | |
|---|---|---|---|
| 1 | | are true or false? | 10:45:05 |
| 2 | A. | Umm, it's pretty much spread out between different | 10:45:06 |
| 3 | | people, but those two primarily. | 10:45:10 |
| 4 | Q. | Okay.  Well, we heard a description from | 10:45:12 |
| 5 | | Mark Davison with respect to reporting, that I | 10:45:15 |
| 6 | | understood to -- to go directly to Judy Kindley. | 10:45:22 |
| 7 | | And that was the kind of periodic reports that | 10:45:26 |
| 8 | | would come in either through roadside inspections | 10:45:31 |
| 9 | | or accidents.  You're saying roadside inspection | 10:45:34 |
| 10 | | reports go to Judy Kindley and accident reports go | 10:45:37 |
| 11 | | to Patty Thoma? | 10:45:40 |
| 12 | A. | That's correct. | 10:45:41 |
| 13 | Q. | Aside from those sources, that is a roadside | 10:45:42 |
| 14 | | inspection that may pick up, umm, a false log, or | 10:45:47 |
| 15 | | an accident investigation that may pick up a false | 10:45:53 |
| 16 | | log, is there any other source that Allied utilizes | 10:45:56 |
| 17 | | to monitor whether or not logs are true or false? | 10:46:01 |
| 18 | A. | Rarely, but we have used fuel receipts. | 10:46:04 |
| 19 | Q. | Used what? | 10:46:07 |
| 20 | A. | Fuel receipts.  Umm, rarely we in -- and that's | 10:46:08 |
| 21 | | only if -- well, usually we just use fuel receipts | 10:46:13 |
| 22 | | or, umm, rarely use toll tickets. | 10:46:17 |
| 23 | Q. | And on the rare occasions when you use fuel | 10:46:21 |
| 24 | | receipts or toll receipts, what -- why is it that | 10:46:25 |
| 25 | | you do so on those rare occasions? | 10:46:30 |

CERTIFICATE OF THE REPORTER

I, Angela A. O'Neill, a Registered Professional Reporter and Notary Public, in and for the State of Ohio, Mercer County, (acting in Allen County, Indiana) hereby certify there appeared before me on March 31, 2004, THERESA M. SWYGART, who was duly sworn to testify the truth, the whole truth, and nothing but the truth to questions propounded at the taking of the foregoing deposition in a cause now pending and undetermined in said court.

I further certify that I then and there reported in machine shorthand the proceedings at the said time and place; that the proceedings were then transcribed from my original shorthand notes; and that the foregoing transcript is a true and correct record thereof.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed this seal this _4th_ day of ____April____, 2004, A.D.


_Angela A. O'Neill_

Angela A. O'Neill, RPR

My Commission Expires:  Aug. 10, 2007