**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
ENTERED

JAN 2 4 2005

Michael N. Milby, Clerk of Court
By Deputy Clerk _____

| | | |
|---|---|---|
| **GUADALUPE AND AMELIA** | § | |
| **GUERRA, ET AL.** | § | |
| **Plaintiffs** | § | |
| | § | |
| **v.** | § | **C.A. No. B-03-142** |
| | § | |
| **ALLIED VAN LINES, INC.** | § | |
| | § | |
| **Defendant.** | § | |

## ORDER

BE IT REMEMBERED that on January 21, 2005, the Court **DENIED** Plaintiffs' Motion to Reconsider [Dkt. No. 53].

### I. Factual and Procedural Background

This negligence case arises from an automobile accident that occurred in St. Martin Parish, Louisiana in which a truck owned by Sorensen Moving and Storage Company, Inc. ("Sorensen") allegedly collided with a car driven by Guadalupe Guerra. At the time of the accident, the truck, driven by Wladyslaw Gorski, was transporting goods for Defendant Allied Van Lines, Inc. ("Allied"). Plaintiffs previously dismissed their claims against co-defendant Sorensen. As a result of the collision, passengers in the car, Cindy Guerra and Jennifer Garza, died. Plaintiffs Jose Alfaro and Guadalupe, Amelia, and Lisa Guerra received severe burn injuries as a result of the accident. All Plaintiffs reside in the Southern District of Texas. Plaintiffs were originally hospitalized in Baton Rouge, Louisiana, but those surviving the accident were later released. The survivors are now receiving treatment and rehabilitation in medical facilities in Texas. Defendant Allied Van Lines, Inc. is incorporated in the state of Delaware and has its principal place of business in the state of Indiana. This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332 because complete diversity exists between the parties and the amount in controversy exceeds $75,000.00.

Defendant originally moved to transfer this case on two alternate grounds. First, Defendant argued that venue is improper in the Southern District of Texas because this

Court lacks personal jurisdiction over Sorensen, an original party that has since been dismissed. Second, and in the alternative, Defendant argued this Court should transfer venue as an act of discretion under 28 U.S.C. § 1404(a) to the Western District of Louisiana where the accident occurred. Plaintiffs originally responded with two arguments. First, they argued the propriety of venue in this district should be determined by analyzing the parties remaining in the suit at the time the motion to transfer venue is filed without consideration of a defendant that was voluntarily dismissed earlier. Second, Plaintiffs urged this Court to deny a discretionary transfer because Plaintiffs reside within the Southern District of Texas, and as such, their choice of forum should be protected. Additionally, Plaintiffs argued that all witnesses relevant to this case have agreed to appear voluntarily before this Court for trial.

## II. Court's Order Transferring Venue [Dkt. No. 49]

In its June 21, 2004, order, the Court analyzed the relevant factors used to determine whether a transfer of venue to the Western District of Louisiana pursuant to 28 U.S.C. § 1404(a) was appropriate. Section 1404(a) states, "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Defendant, as the movant, bore the burden of demonstrating to the Court that transfer was warranted. *See Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989). The decision to transfer a case rests within the sound discretion of the district court, and these decisions will be overturned only for an abuse of discretion. *See id.* at 1436.

In its order of transfer the Court determined the Western District of Louisiana, as the locus of the accident directly causing the injuries in this negligence case, was a district in which the case could have been filed. *See* 28 U.S.C. § 1391(a)(2) (stating venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . "); *see also In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir.) *cert. denied*, 124 U.S. 826 (2003). The Court analyzed both the public and private factors supporting and militating against a transfer. The public concern factors included: (1) the administrative delay resulting from court congestion in the receiving court; (2) the local interest in having localized interests decided at home;

2

(3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign laws. *Piper Aircraft v. Reyno*, 454 U.S. 235, 241 n.6 (1981). The Court additionally addressed the private "convenience" concerns: (1) the availability and convenience of witnesses and parties; (2) the location of relevant books and records; (3) the cost of obtaining attendance of witnesses and other trial expenses; (4) the place of the alleged wrong; and (5) the availability of compulsory process to secure the attendance of witnesses. *Id.* The Court acknowledged that Plaintiffs' choice of forum is given great deference. *See Lemery v. Ford Motor Co.*, 244 F. Supp.2d 720, 729 (S.D. Tex. 2002) (citations omitted).

As this Court noted in its original order, courts in the Southern District of Texas have often held that the convenience of key witnesses is the most important factor in the Court's determination. *See, e.g., Lemery*, 244 F. Supp.2d at 730 (citing *e.g., Gundle Lining Constr. Co. v. Fireman's Fund Ins. Co.*, 844 F. Supp. 1163, 1166 (S.D. Tex. 1994)). Defendant argued that all of Plaintiffs' key witnesses reside in Louisiana, including eye witnesses, police and fire personnel who responded to the accident, and treating physicians. The Court noted that seemingly none of Plaintiffs' nonparty witnesses reside in this district, although the surviving Plaintiffs were transferred to medical facilities in Texas and thus current treating physicians could be called as witnesses. Defendant's defense would likely require testimony from some of the witnesses residing in Louisiana.

In their responses to the Motion to Transfer Venue, Plaintiffs presented affidavits to the Court from various witnesses in Louisiana who indicated they were willing to travel voluntarily to Brownsville, Texas, to appear personally at the trial. The witnesses' statements concerning willingness to appear at the trial were understandably qualified based on their ability to receive adequate leave from their jobs and compensation for travel expenses and lost wages. The Court noted the witnesses' task in testifying at this trial would be far more convenient if they were required to travel only minimal distances to the courthouse. Furthermore, good intentions aside, the Court would not have full subpoena power over these witnesses, and any subpoenas requiring the

3

witnesses to travel over 100 miles would be subject to motions to quash under Federal Rule of Civil Procedure 45(c)(3). Although it was not the Plaintiffs' burden to do so, Plaintiffs did not attach the same reports and testimony from their experts that they now assert should be considered in the Court's transfer analysis. These reports were available prior to this Court's ruling on the Motion to Transfer Venue. Moreover, Plaintiffs did not argue in their earlier responses that the key witnesses in the trial would be their experts or that such experts' location outside of Louisiana should be more heavily weighed than the location of key eyewitnesses to the accident.

Additionally, the Court considered the location of the parties and acknowledged in its analysis that it was obviously of some concern that the Plaintiffs reside in this district and are still recovering from their injuries. The collision giving rise to this lawsuit occurred on July 20, 2003. The surviving plaintiffs are now receiving on-going medical and rehabilitative treatment in the Harlingen, Texas area, within the Southern District of Texas. This treatment is likely to continue for months or years. The Court agreed that the convenience to these Plaintiffs is entitled to great consideration. Overall, however, the Court determined that nearly all nonparty witnesses for trial reside in Louisiana. Defendant attached the statements of eyewitnesses and the investigating officer that it felt were key witnesses. The Court held that although some of these witnesses may be cumulative, *all* of the witnesses to the accident itself and many of the treating physicians reside in Louisiana. As a result, the Court held Defendant met its burden of demonstrating the convenience of those nonparty witnesses in the aggregate outweighed the inconvenience to Plaintiffs.

The Court's second main analysis concerned the place of the alleged wrong.[1]

---

[1] In their Motion to Reconsider, Plaintiffs make reference to the Court's sixth footnote in its order to transfer venue. Plaintiffs state, "[a]lthough Plaintiffs believed that it was Allied's burden, as the party seeking to transfer, to prove factors that favor Louisiana rather than Plaintiffs' burden to prove factors that favor Texas, . . .if the pleadings are a problem, Plaintiffs should be allowed to amend rather than have their case transferred." The Court did not shift the burden in its transfer analysis. Instead, the Court held that Allied sustained its burden in demonstrating that a transfer of the case to Louisiana was appropriate. In making its determination, the Court considered Plaintiffs' third amended complaint and Plaintiffs' numerous attachments to their responses to Defendant's Motion to Transfer Venue. These attachments were largely devoted to demonstrating that experts and witnesses at the scene of

4

As noted in the Court's transfer order, the car accident at issue in this case occurred on Interstate 10 between Butte La Rose and Whiskey Bay, Louisiana, which is within the Western District of Louisiana. Plaintiffs argued in their response that Allied failed to demonstrate the alleged wrong took place in Louisiana because "Allied's negligence in screening, hiring, training, and supervising the driver of the tractor-trailer vehicle in question, the falsification of driver's logs, and all of the violations of Department of Transportation regulations, did not occur in Louisiana." Pls' Response to Defendant's Motion to Transfer Venue, at p. 19 [Dkt. No. 32].

The Court commented in a footnote that Plaintiffs' argument minimized the importance of the driver's negligence at the time of the accident. Furthermore, although not required to do so in their pleadings, Plaintiffs did not allege the negligence in question occurred in Texas or in the Southern District. Finally, to support their argument, Plaintiffs cited cases that were distinguishable because they involved product liability generally or negligence occurring during the course of a flight where the location of the alleged wrong could not be pinpointed. *See, e.g., Mohamed v. Mazda Motor Corp.,* 90 F. Supp.2d 757, 776-77 (E.D. Tex. 2000) (noting that the transfer analysis is different when the claim involves alleged negligent driving as opposed to defective design and manufacture of a product); *Blansett v. Continental Airlines, Inc.,* 203 F. Supp.2d 736, 738 (S.D. Tex. 2002) (determining alleged failure to warn occurred during a transatlantic flight, and thus the location of the alleged wrong could not be pinpointed to one exact location). Because the accident giving rise to injuries in this negligence action occurred in Louisiana, and because the Court believed it was more

---

the accident who reside in Louisiana would voluntarily appear for trial in Brownsville. The Court noted that despite Plaintiffs' contentions otherwise, the third amended complaint did not allege misconduct that occurred in Texas or in the Southern District, nor did the vast majority of Plaintiffs' attachments to their responses contain anything but references to witnesses in Louisiana or attending physicians in Louisiana. *See* Pls' Response, at p. 19 (referencing Exs. R, S). It was proper for the Court to consider the live pleading as well as Plaintiffs' responses to Defendant's motion and their attachments to the responses. In light of all the relevant filings, the Court found Plaintiffs' arguments unconvincing, and the Court was persuaded that Louisiana was the more appropriate forum.

than mere "fortuity"[2] that the accident occurred in Louisiana and not Texas, the Court found in its original order that the location of the occurrence greatly favored Louisiana. *See Henderson v. AT & T Corp.*, 918 F.Supp.1059, 1067 (S.D. Tex. 1996). *See also Lemery*, 244 F.Supp.2d at 732.

Finally, the Court concluded its analysis by considering the location of books and records, trial expenses, Plaintiffs' choice of forum and possibility of delay, and the public interest factors. The Court held that after examining the numerous relevant venue factors and applying them to the specific facts in this case, Defendant had carried its burden of demonstrating that a transfer to the Western Division of Louisiana where the accident giving rise to these injuries occurred is more convenient to the nonparty witnesses and promotes the interests of justice. The Court considered retaining this case based on the Plaintiffs' choice of forum and domicile within this district. However, after analyzing all the factors, the Court was satisfied that the appropriate considerations favored transfer and outweighed the substantial deference given to Plaintiffs' choice of forum.

### III. Reconsideration Standard

The Federal Rules of Civil Procedure do not recognize a motion for reconsideration per se. *See Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990), *abrogated on other grounds, Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994) (en banc). The Court will consider the motion as one to "alter or amend the judgment" under Federal Rule of Civil Procedure 59(e) if it is filed within ten (10) days after the Court entered final judgment. *See id. See also Fletcher v. Appel*, 210 F.3d 510, 512 (5th Cir. 2000). Motions for Reconsideration are generally disfavored and are not proper tools "to introduce evidence that was available at [the time of the summary judgment motion] but was not proffered, to relitigate old issues, to advance new theories, or to secure a rehearing on the merits." *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir. 1986). Generally, a Motion to Reconsideration may be granted under Rule 59(e) if the movant shows: (1) the motion

---

[2]*See infra* pp. 7-14 (discussing Plaintiffs' "fortuity" arguments on reconsideration).

6

is necessary to correct a manifest error of fact or law; (2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is necessary in order to prevent manifest injustice; or (4) the motion is justified by an intervening change in the controlling law. *Fields v. Pool Offshore*, 1998 WL 43217, *2 (E.D. La. Feb. 3, 1998), *aff'd* 182 F.3d 353 (5th Cir. 1999).

Thus, generally, a court will not reconsider its decision except on a showing of substantial error, a subsequent change in the facts, or some other reason justifying a deviation from the court's previous ruling. Plaintiffs have presented no facts or evidence that was unavailable at the time they filed their responses to the motion to transfer venue. Nevertheless, the Court considers the merits of Plaintiffs arguments, but upholds its original order of transfer.

## IV. Parties Arguments on Reconsideration

Plaintiffs present two main arguments in their Motion to Reconsider. First, they reassert their argument that although the accident leading to Plaintiffs' injuries in this case occurred in Louisiana, the real place of wrongdoing was near Houston, Texas. Second, Plaintiffs argue nonparty witnesses in Louisiana are not key witnesses, and Plaintiffs' key expert witnesses reside in states other than Louisiana. For the reasons that follow, the Court finds both arguments unpersuasive.

### A. Place of Wrongdoing

Plaintiffs' main contention in their Motion to Reconsider is that "their prior briefing may have failed to adequately apprise the Court of the nature of their cause of action, the facts already elicited in preliminary discovery and expert reports that support that cause of action, and the legal authorities that demonstrate how these facts impact the transfer analysis." Pls' Motion to Reconsider, at p. 1 [Dkt. No. 53]. Plaintiffs' central point is this:

> This case is not about a simple motor vehicle collision between private individuals, nor is it limited to the vicarious liability of an employer for the driving negligence of its truck driver. Rather, it is about a corporate failure to adhere to federal driving regulations, which, if enforced, would have caused this driver to be grounded for two days while still in Texas, so that he never would have even entered Louisiana for this collision to take place. The alleged negligence of Allied in Texas is neither theoretical nor attenuated–it was a but-for cause of the

7

collision. That fact significantly impacts the analysis of where the wrongful conduct occurred and the convenience of the "key" witnesses.

*Id.* at p. 1.

Plaintiffs contend that Allied's system-wide policies and procedures caused it to violate Texas and federal laws and regulations regarding the number of service hours a driver of a "commercial motor vehicle" for a "motor carrier" within the jurisdiction of the Federal Motor Carrier Safety Administration ("FMCSA") may accrue within defined time periods. Plaintiffs argue the Federal Motor Carrier Safety Regulations ("FMCSR"), prescribed by the U.S. Department of Transportation ("DOT") and adopted by the State of Texas, govern this negligence case. Plaintiffs allege that had Allied not violated these regulations governing the number of hours a truck driver can drive and work, the truck driver in this case would not have become fatigued, and the accident in Louisiana would not have occurred. According to Plaintiffs, the location of the accident was a mere fortuity because once Allied violated the regulations, the accident could have occurred anywhere. Moreover, Plaintiffs assert Allied's violations occurred in Texas because the truck driver violated all of the Texas and federal hours of service regulations on July 19-20 while he was in Texas, and Allied did nothing to stop the driver from continuing to drive.

According to Plaintiffs' assertions and attachments to their motion, the truck driver, Wladyslaw Gorski, began the relevant trip in Florida and delivered several loads of goods in California. After this delivery, Gorski drove back and forth between California and Arizona picking up several loads before beginning the journey back to Florida. On the day of the collision, July 20, 2003, Gorski was transporting several loads of goods that were scheduled to arrive in Florida on July 21, 2003. After stopping in Highlands, Texas at 1:30 a.m. on July 20, he continued driving toward Louisiana, and it was at this point that Plaintiffs argue Gorski violated the "maximum-hours-on-duty rule (70 hours in 8 days)." *Id.* at 4. While Gorski was in Texas, and indeed throughout his trip, Plaintiffs maintain "Allied had the tools readily available to electronically monitor, track the drivers' trip progress, and communicate with Gorski." *Id.*

Although Allied and Gorski may have first violated federal transportation

8

regulations in Texas, every hour that Gorski continued to drive after he reached the maximum number of hours under the federal regulations would constitute a continued violation. These additional alleged violations, or the continuation of the first violation, occurred and continued to occur, while Gorski was driving in both Louisiana and Texas. Additionally, like Texas, Louisiana has also incorporated federal motor carrier safety regulations into its state law, and as such, Allied's alleged negligence would likely be a violation of both Texas *and* Louisiana laws. *See* Def's Response, Ex. 1 (La. Admin. Code, tit. 33, pt. V, § 10303).

Furthermore, Plaintiffs alleged in both their third and proposed fourth amended complaints that "Defendant Allied Van Lines, Inc., and those for whom it is in law fully responsible, including but not limited to the driver of the tractor-trailer vehicle involved in the collision of July 20, 2003, engaged in conduct constituting negligence, negligence per se, and gross negligence in the operation of the tractor-trailer vehicle and in the screening, hiring, training, monitoring and supervising of the driver of the tractor-trailer vehicle in question." Pls' Third Amended Cmplt. ¶ 14. Plaintiffs attach to their Motion to Reconsider expert report findings concerning Allied's driver hiring and screening practices in general and as applied to Gorski. These findings relate to practices and decisions that were not specific to Texas and were made in 1999, long before the accident occurred in July 2003. *See* Pls' Motion, Exs. A & B (expert reports discussing, among other topics, Gorski's driver qualifications and Allied's hiring decisions concerning Gorski, which occurred in 1999 and earlier). The deposition testimony of Mark Davison, Allied's Director of Safety Administration, discussed Allied's alleged pattern of keeping inaccurate records or making false entries in the records, which was not specific to Texas. Although Gorski may have falsified his driving log while in Texas, there is no indication that the supervision by Allied, or lack thereof, occurred in Texas. *See* Pls' Motion, Ex. I.

Plaintiffs' arguments concerning the fortuity of the accident's location in Louisiana apply with equal force to the violations Plaintiffs argue occurred in Texas. The real concern is that according to Plaintiffs, Allied had "system-wide polices and procedures" that led to Gorski's violation of "Texas and federal hours of service

regulations. . . and Allied did nothing about it." Allied's violations were not specific to Texas; it was fortuitous that the alleged violations occurred while Gorski was in Texas.[3] Had Gorski been transporting goods from Florida to Maine, for example, the violation of federal regulations could have easily occurred in any east coast state.

Furthermore, the Court distinguishes Plaintiffs' fortuity argument from the case law they cite–not because the cases concern products liability per se or negligence that occurred during transatlantic flights, but because in this case a majority of the wrongdoing can be pinpointed to Louisiana and presumably outside of Texas. The Court draws support for its analysis concerning the location of the wrongdoing from a case it cited in its original transfer order, *In re Volkswagen*, 371 F.3d 201 (5th Cir. 2004). In *Volkswagen*, the Fifth Circuit granted mandamus relief and held a transfer of venue was required. There, the Plaintiff driving a Volkswagen was injured when a truck collided with her vehicle. Originally, the Plaintiff's complaint included only a products liability action for crashworthiness. Later, but before the district court denied transfer, the Defendant, Volkswagen, sought permission to file its original third-party complaint against the driver and owner of the truck that struck Plaintiff. The Fifth Circuit determined the lower court abused its discretion when it considered only the convenience of parties and witnesses in Plaintiffs' products liability claim against Volkswagen, and not the parties and witnesses added by the Defendants who would

---

[3]In fact, Plaintiffs state in their Motion to Reconsider:
Gorski also consistently engaged in "log falsification" by recording his daily loading and unloading time as off-duty or in the sleeper berth of his vehicle. That practice allowed him to conceal a major portion of his on-duty time, presumably to reduce the amount of on-duty time accumulated over a 7 or 8-day period. One of Plaintiffs' experts has expressed the opinion that Allied 'well knew that the activities of Mr. Gorski (and other drivers as well) during the loading and unloading process of his vehicle were not "off duty" . . . . In my opinion, it appears they chose to "look the other way" and allow the drivers to record such time as off duty or in the sleeper berth. Concealing on duty time under the circumstances is considered log falsification.
Pls' Motion, at p. 5 (citations omitted). Plaintiffs are not alleging Gorski's log falsification only occurred while he was in Texas. Similarly, Allied's failure to take action was not specific to Texas only. The alleged falsifications were happening on a broader scale. Gorski simply happened to be in Texas at the time he first drove longer than the maximum the service hours regulations allowed.

10

testify concerning the driver and owner's liability in the accident.  *See id.* at 204.

*In re Volkswagen* is as analogous, and more so than the cases Plaintiffs cite in their Motion to Reconsider.  A reading of Plaintiffs' third amended complaint, and indeed their proposed fourth amended complaint, reveal their claim includes allegations against Allied for both direct and vicarious liability.  Plaintiffs' liability theory alleges Allied is directly liable for its negligent screening, hiring, and monitoring of Gorski, which focuses on events or actions that occurred before the accident in Louisiana, but not necessarily in Texas.  Plaintiffs also plead Allied is vicariously liable for Gorski's negligence as the direct cause of the accident.  *See* Pls' Third Am. Cmplt, ¶¶ 14 &15.

> *At all times material to this cause of action the Defendant Allied Van Lines, Inc., and those for whom it is in law fully responsible, including but not limited to the driver of the tractor-trailer vehicle involved in the collision of July 20, 2003, engaged in conduct constituting negligence, negligence per se, and gross negligence in the operation of the tractor-trailer vehicle* and in the screening, hiring, training, monitoring and supervising of the driver of the tractor-trailer vehicle in question.
>
> More specifically at the time of the collision, the driver of the tractor-trailer was the statutory employee of such Defendant by operation of law under the Federal Motor Carrier Safety Act, 49 U.S.C. § 14102 (2001); 49 C.F.R. § 376.11-12 (2001), and other applicable law, and *such Defendant had a duty to exercise ordinary care and operate such tractor-trailer vehicle reasonably and prudently at the time of the collision in question.*

*Id.* (emphasis added).

As much as Plaintiffs wish to analogize their case to a products liability action, and admittedly some comparisons are valid, the present claim is distinguishable. Plaintiffs' claim does not focus on a product in which wrongdoing involving the manufacture and design of a vehicle is separate from negligence of the driver or owner of the vehicle that directly causes the accident.  In light of Plaintiffs' entire claim, which includes "negligence in the operation of the tractor-trailer vehicle," and factual allegations that "at the time of the collision, the driver of the tractor-trailer was the statutory employee of [Allied] . . ., and such Defendant had a duty to exercise ordinary care and operate such tractor-trailer vehicle *reasonably and prudently at the time of the*

*collision in question*," this Court cannot dismiss the importance of the collision. It is in this respect that the present case differs significantly from a products liability action in which "it is questionable just how many witnesses to the accident itself would be necessary for the trial of the case." *In re Volkswagen*, 371 F.3d at 205. Even in the context of a products liability action, the Fifth Circuit held in *Volkswagen* that although the premise was valid that the place of the alleged wrong was the design shop and factory, once the driver and owner of the vehicle were added as third-party defendants, the district court was required to consider the changed nature of the lawsuit. "In other words, it was incumbent upon the [district court] to consider the site of the accident. . . ." *In re Volkswagen*, 371 F.3d at 205. "By failing to consider in its calculus the situs of the accident as it related to the . . . third-party claim against [the driver and owner of the vehicle causing the collision], the [district court] abused its discretion." This Court must consider the entire nature of Plaintiffs' claim. As pled, the site of the accident in Louisiana is of great importance.

Plaintiffs' other cited case law is unconvincing as well. For example, Plaintiffs cite *Lemery v. Ford Motor Company*, 244 F. Supp.2d 720 (S.D. Tex. 2002), for the proposition that the court there "'f[ou]nd some merit to the plaintiffs' reasoning" that the place of the wrong was where the car was manufactured, not where the accident occurred. That court decided to transfer, but only because the place of the manufacture was not in Texas, where the plaintiffs were asserting venue." Pls' Motion, at p. 8. It is true that the Court in *Lemery* found it persuasive that in a products liability case, the design, manufacture, and marketing of the vehicle ultimately involved in an accident could constitute the place of the alleged wrong.

The Court repeats in this case that although Gorski allegedly falsified some of his driving logs while in Texas, Plaintiffs do not allege these falsifications caused the accident. Rather, they argue Allied failed to properly monitor his driving and failed to stop Gorski from driving once he exceeded the allowable service hours. Plaintiffs do not state in their complaint or argue in any briefings before the Court where Allied's alleged negligence in its monitoring occurred. The Court reasonably assumes that if Allied's corporate actions in screening, hiring, or monitoring Gorski occurred within

12

Texas, Plaintiffs would state so clearly. Instead, Plaintiffs allege these corporate actions, which allegedly constituted violations of federal and Texas motor carrier safety laws and regulations, occurred while *Gorski* was in Texas. This distinction is important, for Allied's negligence in hiring Gorski occurred long before July 19 and 20; Allied screened Gorski for employment long before July 19 and 20; and Allied supervised and monitored Gorski throughout his employment with Allied and not only while Gorski drove in Texas. Where specifically these corporate acts took place is not clear. If they did take place in Texas, Plaintiffs would have been wise to "marshal[ ] sufficient facts" to allege a "sufficient corporate act occurring in Texas" to assist the Court in its transfer analysis. *Vizcarra v. Roldan*, 925 S.W.2d 89, 92 & n.1 (Tex. App. –El Paso 1996, no writ). Make no mistake, however, the Court is not shifting the movant's burden in the transfer analysis. Rather, Defendant sufficiently demonstrated the relevant factors weigh in favor of transfer, and Plaintiffs have failed to demonstrate to the Court that Allied's alleged negligence is sufficiently tied to Texas.

The remaining cases Plaintiffs cite are also distinguishable from the present case. For example, in *Vizcarra v. Roldan*, a Texas state court conducted a choice of law analysis under Texas law and reviewed a negligence claim against an employer based on the negligence of the driver of a vehicle involved in an accident. The court stated in a footnote, "[h]ad [plaintiff'] marshaled sufficient facts, the negligent hiring of [the employee] or the negligent entrustment of the truck to [the employee] may have involved a sufficient corporate act occurring in Texas to give Texas an interest in applying its law to this case." 925 S.W.2d 89, 92 & n.1 (Tex. App. –El Paso 1996, no writ). Plaintiffs similarly cite *Simon v. United States*, 341 F.3d 193 (3d Cir. 2003) in which the Third Circuit held in a choice of law case that where air traffic controllers were located in Indiana, but a plane accident and resulting injuries occurred in Kentucky, the place where the conduct caused the injury favored the application of Indiana law.

Unlike in *Simon* and the footnote reference in *Vizcarra*, Plaintiffs have not alleged a sufficient corporate act occurred in Texas. The only argument Plaintiffs make concerning Allied's negligence in Texas is that at the exact moment Gorski exceeded his allowed service hours, and while Gorski was physically located in Texas, Allied

13

failed to do anything about the violations. Allied's failures on the whole did not occur in Texas because it is apparent from Plaintiffs' arguments that Allied had the technology and communication equipment to track Gorski remotely. As a result, any negligence in screening, hiring, monitoring or supervising that Allied committed was not done in the same location with Gorski present. Rather, this negligence occurred somewhere outside of Texas.

Additionally, unlike some of the cases Plaintiffs cite, the present case does not involve a tort that arose in an unknown location. *See, e.g., Blansett v. Continental Airlines, Inc.*, 203 F. Supp. 736, 743 (S.D. Tex. 2002) (determining alleged failure to warn occurred during a transatlantic flight, and thus the location of the alleged wrong could not be pinpointed to one exact location); *Mohamed v. Mazda Motor Corp.*, 90 F.Supp.2d 757 (holding in products liability action that defective design and manufacturing cause of action arose in an *unknown* location, thus transfer to district where the accident occurred was not warranted) (emphasis added).

Finally, the Court disagrees that an earlier decision by this court, *Marca-Tel, S.A. de C.V. v. Garner, et al.*, Civil Action No. B-02-034, is dispositive to this case or persuasive. *Marca-Tel* was a case involving a company that was in the business of providing international long distance telephone service and owned a fiber-optic network in Mexico and Texas. Defendants, also in the business of providing long distance phone service, owned switching equipment in Texas and used third party fiber-optic networks. The parties entered into an agreement, and Plaintiffs alleged Defendants defrauded them and failed to pay for certain services that were part of the agreement. Defendants filed a Motion to Transfer Venue and this Court denied the motion after Defendants failed to persuade the Court, with a letter that was not a part of the record, that venue was inconvenient for all the witnesses. In fact, the Court noted that the trial's progression in Brownsville made it more likely that witnesses could attend. Defendants argued the contract was negotiated in Austin and statements at issue were made in Austin, making the Western District of Texas the most convenient venue. Additional acts forming the basis of the complaint allegedly took place in Mexico. Plaintiff, however, asserted in its complaint that telephone traffic, part of which was the

14

subject of the agreement, traveled through switching stations and fiber-optic networks located in the Southern District of Texas. This Court ruled that because the very subject of the agreement involved telephone traffic through the Southern District, the place of the alleged wrong sufficiently involved the Southern District and this factor did not weigh in favor of transfer.

The present case does not involve a contract covering telephone services and traffic traveling through the Southern District of Texas. Furthermore, the greatest portion of the conduct forming the basis of the complaint occurred in Louisiana and outside of Texas. As the Court has discussed above, only Gorski's falsification of logs is alleged to have occurred in Texas, and these falsifications are not alleged to have *caused* the accident. Conversely, Allied's screening, hiring, and monitoring of Gorski occurred in locations outside of Texas. The Court finds its earlier decision in *Marca-Tel* does not involve sufficiently analogous facts and circumstances to the present case to warrant reversal of the Court's order of transfer.

### B. Convenience of Key Witnesses

Plaintiffs argue Allied did not demonstrate how the testimony from the eye witnesses at the accident scene can be used by Allied to support its defenses because there is no disagreement in this case about the circumstances under which the collision occurred, –"all witnesses agree about what happened –the Allied truck collided violently at a high speed with stopped traffic, causing several vehicles to explode into flames, killing and seriously burning a number of occupants of those vehicles." Pls' Motion, at p. 13. Plaintiffs go on to state,

> [o]bviously, Allied would not want to call any of these witnesses who would testify *against* Allied. Since all the witnesses agree on how the accident occurred, the central question is why Gorski plowed through stopped traffic, killing and injuring Plaintiffs. The critical testimony on this question will come from Plaintiffs' experts and Allied's experts–if any–who will testify to what caused Gorski to violently collide with stopped traffic.

*Id.* at 13-14.

Plaintiffs did not make many of these arguments in their response to Defendant's Motion to Transfer Venue. *See* Pls' Response to Motion to Transfer Venue, at pp. 16-

18 [Dkt. No. 32]. In fact, Plaintiffs attached 26 exhibits to their response, which included affidavits of a treating physician in the Burn Unit at Baton Rouge General Medical Center in Baton Rouge and affidavits and letters to and from eyewitnesses and police officers confirming their availability to give video deposition and attend trial in Brownsville. *See* Pls' Response, Exs. B, D, F, G -Q. Additionally, Plaintiffs never cited *American General Fire & Cas. v. Wal-Mart Stores, Inc.*, 791 F. Supp. 763, 768 (W.D. Ark. 1992), a case they state "is remarkably similar" to the present case. Pls' Motion to Reconsider, at p. 14.

In *American General Fire,* the Court noted that although the issue was what caused the fire and why, the case nevertheless was based in products liability and thus focused on the product and not the actions of those at the scene of the fire. *See American General Fire,* 791 F. Supp. 768. The "key witnesses," the Court pointed out, were likely to be experts, rather than witnesses of the fire per se. This case involving an accident in Louisiana is not similar enough to a products liability case in which a faulty iron caused a house fire. Obviously, expert witnesses will be important in the present case. But, in determining the driver's negligence, and Allied's vicarious liability for his negligence, the driver's fatigue as evidenced by the driver's logged hours, witnesses' observations of inattentive driving, physical evidence indicative of fatigue such as the absence of skid marks, road conditions, and other factors involving the accident scene are also relevant. Stated differently, there may not be a dispute that Gorski rear-ended the stopped cars. But, Defendant clearly disagrees that Gorski's fatigue was the cause of the accident. Nor does it appear at this point in the litigation, without assessing and weighing evidence, that it is a foregone conclusion that fatigue was a cause of the accident. Thus, it is not unexpected or unreasonable that Defendant would desire to cross-examine eyewitnesses at the scene of the accident—even if they may ultimately provide unfavorable testimony for the Defendant.

Perhaps most convincingly, the location of key nonparty fact witnesses, rather than party witnesses and *expert witnesses*, is of paramount concern. *See Houston Trial Reports, Inc. v. LRP Publications, Inc.*, 85 F. Supp.2d 663, 669 (S.D. Tex. 1999) ("The convenience of expert witnesses weights little in the analysis.") (citing *Fletcher v.*

*Southern Pacific Transp. Co.*, 648 F. Supp. 1400, 1401 (E.D. Tex. 1986)).  Plaintiffs' arguments concerning the location of their key expert witnesses is unpersuasive and they do not convince the Court to alter its original order of transfer.[4]

<h3 style="text-align:center">V. Conclusion</h3>

Reviewing all the relevant factors, the Court upholds its original decision.  The Court, therefore, **DENIES** Plaintiffs' Motion to Reconsider [Dkt. No. 53]; **GRANTS** Plaintiffs' Unopposed Motion for Leave to File Supplemental Authority [Dkt. No. 59]; and **DENIES AS MOOT** all other pending motions: Plaintiffs' Motion for Leave to File Fourth Amended Complaint [Dkt. No. 52]; Plaintiffs' Motion to Compel Defendant to Designate Experts [Dkt. No. 61]; and Plaintiffs' Motion for Scheduling Order and Status Conference [Dkt. No. 63].  As the Court previously granted Defendant's Motion to Transfer Venue [Dkt. No. 49], the Court **ORDERS** the Clerk of the Court to transfer this case to the District Court for the Western District of Louisiana.

DONE at Brownsville, Texas, this 21st day of January, 2005.

Hilda G. Tagle
United States District Judge

---

[4]To the extent Plaintiffs reiterate the argument that inevitable delay will result from a transfer and this factor weighs in favor of retaining the case, the Court declines to alter its original order in which it addressed the concern of delay.